UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DARRYL BOYD,

Plaintiff,

v.

CITY OF BUFFALO, ET AL.,

Defendants.

Case No.: 1:22-cv-00519

---

JOHN WALKER, JR.,

Plaintiff,

v.

CITY OF BUFFALO, ET AL.,

Defendants.

Case No.: 1:22-cv-00520

---

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT COUNTY OF ERIE'S MOTION TO BIFURCATE AND STAY DISCOVERY

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ..... i

TABLE OF AUTHORITIES ..... II

I. INTRODUCTION ..... 1

II. RELEVANT FACTS ..... 2

III. ARGUMENT ..... 4

a. The Court Should Bifurcate Discovery ..... 4

b. The Importance of Efficiency and the Speedy Resolution of Claims ..... 6

c. Likelihood of Prejudice ..... 9

IV. CONCLUSION ..... 11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aquino v. City of New York*,
2017 WL 2223921, *1 (S.D.N.Y. 2017)....................5

*Askins v. Doe*,
727 F.3d 248 (2d Cir. 2013)....................6

*Baker v. Orleans County*,
1997 WL 436703, at *1 (W.D.N.Y. July 21, 1997)....................4

*Bellamy v. City of New York*,
914 F.3d 727 (2d Cir. 2019)....................6, 7

*Bolden v. Cnty. of Sullivan*,
523 F. App'x 832 (2d Cir. 2013)....................7

*Busch v. City of New York*,
2002 WL 31051589, at *2 (E.D.N.Y. Sept. 9, 2002)....................7

*Connick v. Thompson*,
131 S. Ct. 1350 (2011)....................8

*Fisher v. City of New York*,
1992 WL 77606, at *2 (S.D.N.Y. Mar. 23, 1992)....................10

*Gavin v. City of New York*,
2021 WL 3774113, *5 (S.D.N.Y. 2021)....................7

*Ismail v. Cohen*,
706 F. Supp. 243 (S.D.N.Y.1989)....................6, 10

*Jones v. City of New York*,
2013 U.S. Dist. LEXIS 179265 (E.D.N.Y. Dec. 20, 2013)....................10

*Matter of Potenza v. Kane*,
79 A.D.2d 467 (4th Dept. 1981)....................3

*Monell v. Dep't of Soc. Srvcs.*,
436 U.S. 658 (1978)....................6

*Morales v. Irizarry*,
1996 WL 609416, *1 (S.D.N.Y. 1996)....................7

*Oliver v. City of New York*,
2021 WL 2007444 (S.D.N.Y. 2021) ....................4

*People v. Anderson*,
25 A.D.2d 602 (4th Dept. 1966)....................3

*People v. Balsano*,
51 A.D.2d 130 (4th Dept. 1976)....................4

*People v. Boyd*,
84 A.D.2d 689 (4th Dep't 1981) ....................1

*People v. Cadby*,
75 A.D.2d 713 (4th Dept. 1980)....................3

*People v. Cardinale*,
35 A.D.2d 1073 (4th Dept. 1970)....................3

*People v. Christopher*,
170 A.D.2d 1020 (4th Dept. 1991)....................3

*People v. Clark*,
89 A.D.2d 820 (4th Dept. 1982)....................3

*People v. Damon*,
24 N.Y.2d 256 (1969)....................3

*People v. Donaldson*,
49 A.D.2d 1004 (4th Dept. 1975)....................4

*People v. Grafton*,
115 A.D.2d 952 (4th Dept. 1985)....................4

*People v. Greer*,
49 A.D.2d 297 (4th Dept. 1975)....................3

*People v. Herlan*,
99 A.D.2d 647 (4th Dept. 1984)....................4

*People v. Ivey*,
83 A.D.2d 788 (4th Dept. 1981)....................3

*People v. Johnson*,
62 A.D.2d 555 (4th Dept. 1978)....................3

*People v. Kampshoff*,
53 A.D.2d 325 (4th Dept. 1976)....................3

*People v. Keller*,
67 A.D.2d 153 (4th Dept. 1979)....................................................................................4

*People v. Ketchum*,
35 N.Y.2d 740 (1974)...........................................................................................................3

*People v. King*,
72 A.D.2d 930 (4th Dept. 1979)....................................................................................4

*People v. Mitchell*,
99 Misc.2d 332 (Sup. Ct., Erie Co. 1979) ......................................................................3

*People v. Moore*,
26 A.D.2d 902 (4th Dept. 1966)....................................................................................3

*People v. Mordino*,
58 A.D.2d 197 (4th Dept. 1977)....................................................................................4

*People v. Reingold*,
44 A.D.2d 191 (4th Dept. 1974)....................................................................................3

*People v. Slaughter*,
28 A.D.2d 1082 (4th Dept. 1967)..................................................................................3

*People v. Terry*,
83 A.D.2d 491 (4th Dept. 1981)....................................................................................4

*People v. Vance*,
89 A.D.2d 347 (4th Dept. 1982)....................................................................................4

*People v. Walker*,
147 A.D.2d 929 (4th Dep't 1989) .................................................................................1

*People v. Washington*,
32 A.D.2d 605 (4th Dept. 1969)....................................................................................3

*People v. Weston*,
51 A.D.2d 881 (4th Dept. 1976)....................................................................................4

*People v. Zachery*,
31 A.D.2d 732 (4th Dept. 1968)....................................................................................3

*Rankel v. Town of Somers*,
999 F. Supp. 2d 527 (S.D.N.Y. 2014) ...........................................................................7

*Ricciuti v. New York City Trans. Auth.*,
796 F. Supp 84 86 (S.D.N.Y. 1992) ........................................................................6, 10

*Robinson v. Smith*,
451 F. Supp. 1278 (W.D.N.Y. 1978)....................................................................4

*Segal v. City of New York*,
459 F.3d 207 (2d Cir. 2006)................................................................................6

*Tabor v. New York City*,
2012 U.S. Dist. LEXIS 29004, at *33-35 (E.D.N.Y. Feb. 23, 2012)......................................10

*Van de Kamp v. Goldstein*,
555 U.S. 335 (2009) ..........................................................................................10

*Vichare v. AMBAC, Inc.*,
F.3d 457 (2d Cir. 1996) ...................................................................................5, 6

*West v. City of New York*,
1996 U.S. Dist. LEXIS 6239 at *16 (S.D.N.Y. May 8, 1996)..................................................6

**Statutes**

Civil Rights Law § 50-b .........................................................................................8

Criminal Procedure Law § 440.10 .......................................................................1, 2

Federal Rules of Civil Procedure Rule 42(a)...........................................................1

Federal Rules of Civil Procedure Rule 26(c)........................................................4, 5

Federal Rules of Civil Procedure Rule 26(d) .......................................................4, 5

Federal Rules of Civil Procedure Rule 30(b)(6).......................................................5

Federal Rules of Civil Procedure Rule 42(b) ...........................................................6

New York Criminal Procedure Law § 160.50............................................................8

New York Criminal Procedure Law §160.55.............................................................8

## I. INTRODUCTION

Messrs. Boyd and Walker (hereinafter, collectively, "Plaintiffs") were both convicted of second degree murder and first degree robbery in 1977 after separate jury trials in connection with the January 1976 murder of William Crawford (hereinafter, the "Crawford murder"). They each exhausted their appellate rights, resulting in their convictions being upheld. *People v. Boyd*, 84 A.D.2d 689 (4th Dep't 1981), *lv. to app. den.*, 55 N.Y.2d 879 (1982); *People v. Walker*, 147 A.D.2d 929 (4th Dep't 1989), *lv to app. den.*, 74 N.Y.2d 821 (1989). Plaintiffs also each collaterally attacked their convictions on several occasions, with Mr. Walker filing unsuccessful motions pursuant to Criminal Procedure Law § 440.10 in 1982, 1986, and 2012, while Mr. Boyd filed unsuccessful Criminal Procedure Law § 440.10 motions in 1984, 1986, and 2012.

On August 18, 2021, after a hearing on a new CPL § 440.10 motion, the New York State Supreme Court, County of Erie issued a decision vacating Plaintiffs' convictions. The Court made clear however, that its decision was not an exoneration of either Mr. Walker or Mr. Boyd. *See* Decision of Hon. Christopher J. Burns dated August 18, 2021 attached as Exhibit 1 to the Declaration of Jennifer C. Persico.

This case is not about whether Messrs. Boyd and Walker were or were not guilty of murder or any other crime. This case is about whether Messrs. Boyd or Walker were subject to unconstitutional conduct and/or deprived constitutional rights in the investigation and prosecution that led to their convictions.

Plaintiffs' respective Complaints against the defendant County of Erie (hereinafter, the "County" or "defendant") are substantially identical[1] and only contain one single *Monell* cause of

[1] By agreement of the parties, Mr. Walker's and Mr. Boyd's actions have been joined for discovery pursuant to Fed. R. Civ. P. Rule 42(a). (*See Doc. 32, Doc. 33 fn1).*

action against the County, alleging that the Erie County District Attorney's Office (hereinafter, the "ECDAO"), as the policymaker for the County of Erie, at the time of the investigations and prosecutions, maintained prosecutorial procedures, policies, customs, patterns, or practices of facilitating or condoning improper illegal violations of *Brady* and other discovery obligations. (1:22-cv-00519, Dkt. 1, at ¶¶ 493-663; 1:22-cv-00520, Dkt. 1, at ¶¶ 486-655).

As is further detailed in the declaration of Jennifer C. Persico, Esq. and the exhibits attached thereto, Plaintiffs seek discovery of voluminous documents and information relative to the policies and procedures of the ECDAO from over forty (40) years ago in order to support their *Monell* claims against the County.

As the Court is aware, municipality liability cannot arise unless and until it is first established that an individual municipal officer violated Plaintiffs' civil rights.

If, as is expected, it is established through dispositive motion practice, that the individuals in the ECDAO did not violate Plaintiffs' constitutional rights, there can be no *Monell* claim against the County as a matter of law. For the reasons set forth below, this Court should grant the County's Motion to bifurcate discovery in these matters and to stay discovery on Plaintiffs' *Monell* claims until after dispositive motion practice.

## II. RELEVANT FACTS

Before the action that resulted in the vacatur of Plaintiffs' convictions, they each appealed their convictions and filed multiple CPL § 440.10 motions, all of which resulted in their respective convictions being affirmed.

In 2021, Plaintiffs moved to vacate their convictions based upon ineffective assistance of counsel premised upon the failure to request crime scene photographs they contend could have altered the outcome of the trials. *See* Exhibit 1 to the Declaration of Jennifer C. Persico. In that

decision, the trial court acknowledged the proof presented in the motion sequence was "…far less than perfect due to the time that has passed and the ability to locate old records." *Id*. at 8.

Plaintiffs then initiated the instant matters on July 6, 2022. (1:22-cv-00519, Dkt. 1; 1:22-cv-00520, Dkt. 1). Pursuant to the Court's Case Management Order, all fact discovery is to be completed by not later than August 2, 2023. (1:22-cv-00519, Dkt. 34, at 2).

As is more fully detailed in the Declaration of Jennifer C. Persico, Esq., Plaintiffs' First Set of Interrogatories and Requests for Production to the County of Erie, requests voluminous information and documentation going back over forty (40) years almost all of which relates only to their *Monell* claims. By way of example, Interrogatories Nos. 9-10 seek "All hearing and trial transcripts, discovery requests and responses, and appellate briefs, as well as documents sufficient to identify the prosecutors who handled each trial, for the prosecutions underlying"…the following thirty (30) decisions:

*People v. Anderson*, 25 A.D.2d 602 (4th Dept. 1966); *People v. Kampshoff*, 53 A.D.2d 325 (4th Dept. 1976); *People v. Mitchell*, 99 Misc.2d 332 (Sup. Ct., Erie Co. 1979); *People v. Cadby*, 75 A.D.2d 713 (4th Dept. 1980); *Matter of Potenza v. Kane*, 79 A.D.2d 467 (4th Dept. 1981) (listed twice by Plaintiffs in Exhibit 2 to the Declaration of Jennifer C. Persico); *People v. Clark*, 89 A.D.2d 820 (4th Dept. 1982); *People v. Ivey*, 83 A.D.2d 788 (4th Dept. 1981); *People v. Johnson*, 62 A.D.2d 555 (4th Dept. 1978); *People v. Christopher*, 170 A.D.2d 1020 (4th Dept. 1991); *People v. Moore*, 26 A.D.2d 902 (4th Dept. 1966); *People v. Slaughter*, 28 A.D.2d 1082 (4th Dept. 1967); *People v. Zachery*, 31 A.D.2d 732 (4th Dept. 1968); *People v. Washington*, 32 A.D.2d 605 (4th Dept. 1969); *People v. Damon*, 24 N.Y.2d 256 (1969); *People v. Cardinale*, 35 A.D.2d 1073 (4th Dept. 1970); *People v. Reingold*, 44 A.D.2d 191 (4th Dept. 1974); *People v. Ketchum*, 35 N.Y.2d 740 (1974); *People v. Greer*, 49 A.D.2d 297 (4th Dept. 1975); *People v.*

*Donaldson*, 49 A.D.2d 1004 (4th Dept. 1975); *People v. Balsano*, 51 A.D.2d 130 (4th Dept. 1976); *People v. Weston*, 51 A.D.2d 881 (4th Dept. 1976); *People v. Mordino*, 58 A.D.2d 197 (4th Dept. 1977); *Robinson v. Smith*, 451 F. Supp. 1278 (W.D.N.Y. 1978); *People v. Keller*, 67 A.D.2d 153 (4th Dept. 1979); *People v. King*, 72 A.D.2d 930 (4th Dept. 1979); *People v. Terry*, 83 A.D.2d 491 (4th Dept. 1981); *People v. Mordino*, 83 A.D.2d 775 (4th Dept. 1981); *People v. Vance*, 89 A.D.2d 347 (4th Dept. 1982); *People v. Herlan*, 99 A.D.2d 647 (4th Dept. 1984); and *People v. Grafton*, 115 A.D.2d 952 (4th Dept. 1985). *See* Exhibit 2 to the Declaration of Jennifer C. Persico, Esq. at 13-14.

Plaintiffs also seek production of *all records* of the federal habeas proceedings in *Robinson v. Smith*, 451 F. Supp. 1278 (W.D.N.Y. 1978), another entirely unrelated matter. *Id*, at 14.

None of the above-captioned cases nor the demanded policies and personnel files bear any relevance to Plaintiffs' claims beyond the potential imposition of *Monell* liability, which will only be of use to Plaintiffs should they succeed in demonstrating their constitutional rights were violated in the underlying prosecutions of their own cases.

## III. ARGUMENT

### a. The Court Should Bifurcate Discovery

"[U]pon a showing of good cause a district court has considerable discretion to stay discovery pursuant to [Fed. R. Civ. P. ("Rule")] 26(c). Rule 26(d) also allows the Court to control the sequence and timing of discovery, particularly where [, as here,] resolution of a preliminary matter may determine the entire case." *Oliver v. City of New York*, 19CV11219PGGJLC, 2021 WL 2007444 (S.D.N.Y. 2021) (internal citations omitted). *See also Baker v. Orleans County*, No. 96-CV-0503E(SC), 1997 WL 436703, at *1 (W.D.N.Y. July 21, 1997) ("district courts are given

reasonable latitude and discretion to establish a priority or to fashion an appropriate sequence of the discovery to be performed in each case").

In accord to Fed. R. Civ. P. Rule 26(c-d) and well-established precedent, the Court should bifurcate discovery in the interests of judicial economy and expediency and stay discovery on Messrs. Boyd and Walker's *Monell* claims until after dispositive motion practice regarding the underlying prosecutions. Bifurcation is appropriate where the evidence offered on two different issues will be wholly distinct, or where litigation of one issue may obviate the need to try another issue. *Vichare v. AMBAC, Inc.*, F.3d 457, 466 (2d Cir. 1996) (citations omitted).

It is well-established that a plaintiff must prove the denial of a constitutional right by a municipal officer in order to hold a municipality liable under *Monell*. *Aquino v. City of New York*, 2017 WL 2223921, *1 (S.D.N.Y. 2017). Here, Plaintiffs' municipal liability claims are precursors to extensive and potentially unnecessary discovery requests, and, in turn, discovery that defendants are likely to produce in support of their defenses in the event the case is not dismissed in dispositive motion practice. In addition to producing 30(b)(6) witnesses for depositions, if Messrs. Boyd and Walker can demonstrate a colorable *Monell* claim as to their own cases, defendants will also likely be tasked with reviewing and producing records from several other criminal cases handled by the ECDAO in the years leading up to the prosecutions of Messrs. Boyd and Walker in order to establish that the ECDAO had sufficient practices and protocols and did not engage in the systemic misconduct alleged in the Complaints.

Nonetheless, a far narrower scope of discovery on Plaintiffs' own prosecutions will likely lead to a dispositive summary judgment motion. Thus, the broader universe of *Monell* discovery will likely be wholly unnecessary. Further, and as is set forth below, bifurcating these actions for the purposes of discovery will foster the goals of convenience and efficiency and will conserve the

time and resources of the Court and the parties. These are precisely the goals that bifurcation is intended to achieve. *See* Fed. R. Civ. P. 42(b); *Vichare*, at 466; *Bellamy v. City of New York*, 914 F.3d 727 (2d Cir. 2019); *Ricciuti v. New York City Trans. Auth.,* 796 F. Supp 84 86 (S.D.N.Y. 1992). Indeed, if even one of these criteria is met, a court should bifurcate discovery. *Ricciuti*, 796 F. Supp. at 86; *West v. City of New York*, 1996 U.S. Dist. LEXIS 6239 at *16 (S.D.N.Y. May 8, 1996); *Ismail v. Cohen*, 706 F. Supp. 243,251 (S.D.N.Y.1989), *aff d*, 899 F.2d 183 (2d Cir. 1990).

Here, the Rule 42(b) criteria favor bifurcation. Bifurcation will expedite the resolution of the case. No prejudice will result to Plaintiffs, because if the County does not meet its burden on summary judgment of proving that Plaintiffs suffered no underlying constitutional violations committed by the ECDAO, Plaintiffs may then be entitled to broader *Monell* discovery.

b. **The Importance of Efficiency and the Speedy Resolution of Claims**

Plaintiffs' municipal liability claims are dependent on proof that the alleged policies and practices were the moving force behind the alleged violation of Plaintiffs' constitutional rights. *Monell v. Dep't of Soc. Srvcs*., 436 U.S. 658, 694-95 (1978). As the Second Circuit has held, "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (citations omitted). The same is true where there are no individually named defendants in the case, as is the situation in the cases at bar as they pertain to the County. *See Askins v. Doe*, 727 F.3d 248, 253 (2d Cir. 2013) ("It suffices to plead and prove against the municipality that municipal actors committed the tort against the Plaintiff and that the tort resulted from a policy or custom of the municipality. In fact, the Plaintiff need not sue the individual tortfeasors at all, but may proceed solely against the municipality.").

Absent an underlying constitutional violation, a *Monell* claim cannot lie. *Rankel v. Town of Somers*, 999 F. Supp. 2d 527, 550 (S.D.N.Y. 2014) (*citing Bolden v. Cnty. of Sullivan*, 523 F. App'x 832, 834 (2d Cir. 2013)).

For this reason, among others, courts in the Second Circuit favor bifurcating *Monell* claims. *Bellamy v. City of New York*, 914 F.3d 727 (2d Cir. 2019); *Gavin v. City of New York*, 2021 WL 3774113, *5 (S.D.N.Y. 2021) ("It has long been the position of courts in the Second Circuit that since the [municipality's] liability is derivative of the individual defendants' liability, and since the proof to establish a *Monell* claim is substantially different from the proof necessary to establish individual liability, the most prudent course is to address the *Monell* claims separately and to stay discovery concerning those claims until the liability of the individual defendants is established."); *Busch v. City of New York*, No. 00 CV 5211 (SJ), 2002 WL 31051589, at *2 (E.D.N.Y. Sept. 9, 2002); *Morales v. Irizarry*, 1996 WL 609416, *1 (S.D.N.Y. 1996).

First, Plaintiffs are seeking documents and information concerning the ECDAO and its practices and policies that are over forty (40) years old. This alone creates an immense burden.

Second, in order to defend against Plaintiffs' allegation that the ECDAO was deliberately indifferent in its alleged failures, defendants may need to review possibly hundreds of criminal cases tried in the years prior to Plaintiffs' criminal trials. Indeed, in Plaintiffs' Complaints, they allege that the misconduct at issue was widespread, pervasive and condoned. In order to defend against these municipal liability claims, the County must evaluate the unrelated cases referenced by Plaintiffs in the context of each, larger, unrelated criminal prosecution, determine if there were any constitutional implications, and then review corresponding personnel and other files for each of the non-party ADAs involved in said unrelated prosecutions. Defendants' position is borne out by Plaintiffs' voluminous document requests. This task alone would require an extraordinary

expenditure of government resources, not only because of the age of the cases at issue and the slim likelihood that the those involved are still employed by the ECDAO, but also because of the statutory and common law need to protect the privacy interests of non-party ADAs, criminal defendants whose charges may have since been sealed, and the witnesses and victims in those unrelated cases. The discovery on this claim alone likely implicates, *inter alia*, New York Crim. Proc. Law §§ 160.50, 160.55, Civil Rights Law § 50-b, the attorney-client, work product, law enforcement and official information privileges. The County submits that Plaintiffs should first conduct discovery on their own criminal prosecutions, which the County believes will lead to the clear conclusion that Plaintiffs' prosecutions and criminal trials did not violate either of their constitutional rights, thus entitling the County summary judgment on Plaintiffs' municipal liability claims and rendering the discovery at issue in this motion moot.

Third, for the same reasons, *Monell* discovery on Plaintiffs' claims that there existed, at the relevant time period, an ECDAO policy to hide or obfuscate *Brady* material and other exculpatory materials, would require an extraordinary review of an unknown universe of criminal cases. Plaintiffs will likely attempt to prove the existence of such a "policy" via a widespread practice or deliberate indifference to the need for training regarding discovery violations. The Supreme Court made clear in *Connick v. Thompson*, 131 S. Ct. 1350, 1361 (2011) that *Brady* claims simply do not "fall within the narrow range of *Canton's* hypothesized single-incident liability." The necessity for Plaintiffs to develop evidence of a widespread practice or deliberate indifference, or for the County to defend against this allegation, would be wholly obviated if Plaintiffs cannot *first* prove that there was an underlying constitutional violation in either of their own prosecutions.

Fourth, the potentially unnecessary and certainly burdensome task of procuring the aforementioned ECDAO case files will significantly delay dispositive motion practice. Regardless of the whether some or all of the case files are found, counsel will have to thoroughly review their contents for privileged material – another exceptionally time-consuming aspect of satisfying Plaintiffs' demands, which, again, may be wholly unnecessary following dispositive motion practice.

In sum, all of the *Monell* discovery in this case will be superfluous if the Plaintiffs fail to first establish that their constitutional rights were violated. The effect of bifurcation, as proposed herein, will be to greatly expedite the resolution of Plaintiffs' claims and conserve resources until it is clear that it is necessary for the parties to expend resources for far broader discovery and a trial of the *Monell* claims.

Moreover, judicial economy would best be served by bifurcation. If *Monell* discovery is stayed, it will avoid the need for judicial intervention in what will doubtlessly prove to be ongoing issues regarding the appropriate scope of discovery, the application of various privileges, the relevance of certain witnesses, etc. If the County moves for summary judgment on the grounds that there is no dispute of fact concerning the constitutionality of Plaintiffs' prosecutions, as anticipated, discovery with respect to the *Monell* theories is not needed. For these reasons, the interests of convenience and economy favor bifurcation of Plaintiffs' *Monell* claim and a stay of *Monell* discovery, except as it pertains directly to Plaintiffs' own criminal prosecutions.

**c. Likelihood of Prejudice**

The great potential for prejudice also warrants bifurcation of discovery. Bifurcated discovery (and possibly separate trials) should be ordered where a danger exists that evidence admissible on one issue will cause prejudice by confusing jurors in considering liability on other

issues. *Ricciuti*, 796 F. Supp. at 86; *Ismail*, 706 F. Supp. at 251 ("issues relating to conduct by the City or [the individual officers] will "contaminate" the mind of the finder of fact in its consideration of the liability of the other defendant); *Fisher v. City of New York, No.* 90 CIV. 8163 (LJF), 1992 WL 77606, at *2 (S.D.N.Y. Mar. 23, 1992).

Here, the evidence of any alleged constitutional violations during the investigation and prosecution of Messrs. Walker and Boyd is discrete, and the possibility that Plaintiffs can prove an actionable underlying constitutional violation is exceedingly minimal, particularly in light of *Van de Kamp v. Goldstein*, 555 U.S. 335 (2009) (establishing that the training provided by a district attorney's office to its prosecutors concerning the proper disclosure of exculpatory or impeachment material is a prosecutorial function entitled to absolute prosecutorial immunity); and it's progeny, specifically, *Jones v. City of New York*, 2013 U.S. Dist. LEXIS 179265 (E.D.N.Y. Dec. 20, 2013) (holding that the defendant City cannot be liable for alleged deliberate indifference to the need for better training in the District Attorney's office). On the other hand, any evidence concerning the constitutionality of purported policies of the ECDAO as they pertain to countless other prosecutions (necessary to prove deliberate indifference) could require what amounts to retrials of criminal cases wholly unrelated to Plaintiffs' prosecutions.

Given the risk of prejudice and the limited scope of discovery on the alleged underlying constitutional violations, discovery should be stayed on Plaintiffs' *Monell* claims, except as they pertain to alleged constitutional violations in their own prosecutions.

Defendants expect that Plaintiff will argue that defendants' fear of extensive *Monell* discovery may be unfounded. But courts in this circuit have rejected similar arguments, and, more importantly, that it is within the Court's discretion to bifurcate discovery and address the bifurcation of trial subsequent to dispositive motion practice. *See Tabor v. New York City*, 11 CV

0195 (FB)(CLP), 2012 U.S. Dist. LEXIS 29004, at *33-35 (E.D.N.Y. Feb. 23, 2012) (rejecting Plaintiff's argument regarding narrow *Monell* discovery and bifurcating discovery through summary judgment).

## IV. CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court issue an Order bifurcating discovery in these cases so that Plaintiffs' *Monell* claims be the subject of disclosure after dispositive motion practice.

Dated: February 15, 2023
Buffalo, New York

**LIPPES MATHIAS LLP**

s/Jennifer C. Persico
Jennifer C. Persico, Esq.
Brian C. Mahoney, Esq.
Alexander W. Eaton, Esq.
Lippes Mathias LLP
*Attorneys for Defendant, County of Erie*
50 Fountain Plaza, Suite 1700
Buffalo, New York 14202
Telephone: (716) 853-5100
Email: jpersico@lippes.com
bmahoney@lippes.com
aeaton@lippes.com