STATE OF NEW YORK
SUPREME COURT : COUNTY OF ERIE

---

THE PEOPLE OF THE STATE OF NEW YORK

vs.

JOHN WALKER, JR. and DARRYL BOYD,

Indictment No.
41413

---

Paul J. Cambria, Jr., Esq.
Justin D. Ginter, Esq.
For Defendants

John J. Flynn, Esq.
Erie County District Attorney
By: David A. Heraty, Esq.
Assistant District Attorney
Attorney for the People

**DECISION AND ORDER**

**CHRISTOPHER J. BURNS, J.S.C.**

Presently before the Court is the defendants' motion pursuant to CPL §440.10 to vacate their conviction. A Hearing was granted and conducted on June 3, 2021. Oral Argument was then heard on July 20, 2021.

The original indictment in this matter named four individuals: Darryn Gibson, Floyd Martin and the above defendants, John Walker and Darryl Boyd. The indictment charged each with Murder in the Second Degree and Robbery in the first degree regarding the death of William Crawford on January 2, 1976.

Before discussing the instant motion and the arguments of counsel, a history of the proceedings is necessary. Each of the four individuals named in the indictment proceeded to trial. Separate trials were conducted for each of the defendants. The first trial was that of defendant Darryn Gibson. The Gibson trial was commenced on or about January 10, 1977 and ended with a conviction for Murder in the Second Degree on January 21, 1977. The second case to go to trial was that of Darryl Boyd which commenced on April 21, 1977 and ended with a conviction for Murder in the Second Degree and Robbery in the First Degree on April 29, 1977. The third case to go to trial was that of John Walker which commenced on June 6, 1977 and ended with a conviction for Murder in the Second Degree and Robbery in the First Degree on June 13, 1977. The final trial conducted was that of Floyd Martin which commenced on July 6, 1977 and ended with an acquittal on July 14, 1977.

Since the conclusion of these trials, Mr. Walker and Mr. Boyd have sought new trials by way of appeal [*People v Boyd*, 84 Ad2d 689 (1981), *lv denied* 55 NY2d 879 and *People v Walker*, 147 AD2d 929 (1989], *lv denied* 74 NY2d 821] and have made various applications pursuant to CPL 440.10 to set aside their convictions. Each of those previous appeals and applications was denied.

On the instant motion, the defendants seek relief pursuant to CPL §440.10(1) alleging ineffective assistance of counsel premised upon the failure to request crime scene photographs which could have altered the outcome of their trials. Specifically, the defendants contend that certain photos were available and used by the defense in the trial of Floyd Martin that were not presented or made available to their counsel in their earlier trials. Defendants contend that their counsel failed to properly request

these photographs and that the failure to do so resulted in ineffective assistance of counsel. The People opposed the motion.

Prior to ordering a hearing on the instant motion, this Court issued an Order unsealing the records of the Floyd Martin trial and directed both counsel to make efforts to locate any files or transcripts associated with those proceedings. Additional photographs were located by the District Attorney's office. However, because the Martin trial had resulted in an acquittal, there was no appeal and no transcript of the trial was produced. As a result, no transcripts were located. A hearing was then conducted on June 3, 2021. At the hearing, defense counsel offered testimony from retired Judge James McLeod who had served as defense counsel for Floyd Martin when he was acquitted in 1977. The People offered testimony from retired Judge Timothy Drury who had served as the prosecutor in the Gibson and Boyd trials. The People also offered testimony from former prosecutor David Henry, Esq. who was the prosecutor in the Walker and Martin trials. Nine (9) photographs were offered into evidence which purport to be Exhibits 1-9 from the Floyd Martin trial. In addition, the Court received into evidence the summation notes of Mr. Henry from the Martin Trial. Counsel was then offered some time to prepare some final oral arguments which they presented to the Court on July 20, 2021.

After the hearing was complete and arguments were made, the Court, sua sponte, made further inquiry into the existence of the court reporter's notes from the Martin trial based upon this Court's understanding that a stenographer's original notes are maintained in storage for fifty (50) years. Initially, staff from the Court Reporter's office identified four (4) boxes that would contain notes from the court reporter and corresponded to the year the case was tried. These boxes were

requested from storage. Only one box was located and a note indicated that the additional three were not where they were supposed to be. The initial box did not contain notes from the Martin trial. The Court then directed a further search of the facility for the additional boxes. On August 9, 2021, the additional boxes were located and produced. Again, they did not yield the notes from the Martin trial. Subsequently, on August 11, 2021, on further direction by the Court, staff from the Court Reporter's office went to the storage facility and searched an additional twenty-three (23) boxes in the hopes of locating the missing notes. Again, the efforts did not yield any original notes from the Martin trial. As such, the Court and all parties, after an exhaustive search carried out at the direction of the Court, are without a transcript of the Martin trial. The Court, however, was able to review the Court file in the Gibson, Walker and Boyd cases, including the prior trial transcripts. These materials were also available and reviewed by counsel.

As noted above, the Court has reviewed the testimony and evidence from the hearing, the papers submitted by the parties and the Court files related to the original indictment including the unsealed Martin files. From that review, the proof establishes that during the course of the proceedings, Mr. Walker's attorney, David Gerald Jay, Esq., filed a Notice of Motion requesting various things, including pretrial discovery and *Brady* material. Mr. Boyd's attorney, Mark Hulnick, Esq., also filed similar omnibus motions seeking discovery pursuant to Art. 240 of the Criminal Procedure Law and *Brady*. Finally, Mr. Martin's attorney, James McCleod, Esq., filed omnibus motions seeking discovery pursuant to Art. 240 of the Criminal Procedure Law and *Brady* material and noted a request for "photographs". The word "photographs" was not present in the requests from Mr. Hulnick or Mr. Jay. The testimony shows that the

motions were responded to by Mr. Drury who was handling the indictment. According to Mr. Henry, at some point during the prosecution of the case, something came up and he was assigned to handle the trials of Mr. Walker and Mr. Martin. Neither Mr. Drury nor Mr. Henry could recall the exact number of photographs turned over to the defense and indicated there was nothing in the DA's files that indicated an exact number or description of the photos. Mr. Drury did testify that twelve photos were admitted into evidence in the Gibson trial. Mr. Henry indicated he believed that nine (9) or eleven (11) photographs had been produced by Mr. Drury. Both indicated that if they had any "exculpatory" information or photographs they would have been turned over. Mr. McLeod was shown nine (9) photographs. The photographs included two stamps on the back of each. The first stamp indicated a case number, date and the name of the photographer from the Buffalo Police Department. The second stamp was from James E. Knapp, Supreme Court Reporter, and noted the Exhibit number and date admitted. The Reporter's stamp would indicate these photos were received into evidence at the Martin trial. Mr. McLeod testified that he recalled two (2) additional photos being part of the Martin trial. A photo that depicted "footprints in the back of the house" where the deceased, Mr. Crawford was found. Mr. McLeod asserted that the photo "would have shown footprints in the rear" and that those footprints led to the home of the last person seen with Mr. Crawford at the bar. Mr. McLeod also testified that there was another photo that clearly showed there had been no dragging of Mr. Crawford's body as suggested by the People's witness Tyrone Woodruff. Mr. Woodruff was granted immunity from prosecution in this case for his testimony against the others. Mr. McLeod also testified that the Detective who testified in the case suggested the footprints defense

counsel was referring to were made by a heavyset individual. Mr. Henry testified that he believed the detective testified that there were no footprints in the back yard.

In this case, the defense would have the Court say that counsel for Mr. Boyd and Mr. Walker, over 40 years ago, were ineffective by failing to request photographs from the prosecution and that the photographs would have resulted in a different outcome at trial. Based solely on the discovery requests of counsel for the various defendants, the Court is unwilling to agree. Today's discovery is conducted in a very different manner than it was over 40 years ago. Today, virtually every item exchanged between the prosecution and defense is documented in some manner. This was not the case over 40 years ago and the Court would not expect any records of the number or description of photographs to exist. The Court also does not find the lack of the word "photograph" in the omnibus demands of Mr. Walker and Mr. Boyd's counsel to be controlling. The demands were sufficient to require the prosecution to turnover all "discoverable" material.

This is not the end of the argument, though, as the question still remains regarding whether or not counsel for Mr. Boyd and Mr. Walker had the same photographs as those provided to Mr. McLeod in the Martin trial. The defense asserts that Mr. McLeod had additional photographs available in the Martin trial that led to his acquittal. First, it is impossible for this Court to say definitively that the photos described by Mr. McLeod existed. We know that at least nine photos were offered into evidence in the Martin trial. However, without a trial transcript the most we can say is, according to the minutes of the Court Clerk in the Court records, that nine photographs were shown to the jury shortly before the People rested their case. We know that twelve (12) photographs were received into evidence

in the Gibson trial and that Mr. Henry believed there were either nine or eleven photographs turned over. While we can deduce that there were more than nine photographs taken, we do not know what the missing photographs depict. We also do not know which photographs, if any, were provided to each counsel. No evidence or photos were offered to the Court from the other trials which may have clarified the issue. Regardless, the Court has no reason to doubt the testimony from Mr. Drury and Mr. Henry that any exculpatory material would have been turned over, including photographs. Again, it is impossible for the Court to reconcile these issues without a transcript of the Martin trial which would have clearly identified any additional photographs referred to by Mr. McLeod during the trial. It is for this reason that the Court directed the Court Reporter's Office to conduct an exhaustive search of their old records as outlined above. As such, in this Court's view, the evidence submitted remains evenly balanced at this juncture of the Court's review. However, at the hearing, there was testimony that the defense in the Martin trial set forth a theory during summation that a view of the evidence supported a conclusion that a single heavyset individual was responsible for the death of Mr. Crawford and that this view was supported by the photographs and the testimony of the detective. This argument is supported by a single notation on Mr. Henry's notes that he attributes to the defense summation. Although Mr. Henry testified he did not deem it necessary to address the claim during his summation, it tends to support that the argument was made. Again, a transcript of the Martin trial would have been able to answer this question.

It is not this Court's place to second-guess or replace the jury's determination in the trials of Mr. Walker and Mr. Boyd. Similarly, it is not this Court's place to alter the previous appeals or 440 motions which were

denied by the Court. The only issues for this Court are those brought forward for the first time on this motion. As noted repeatedly above, the proof presented on the instant motion is far less than perfect due to the time that has passed and the ability to locate old records. Uncertainty abounds. The Court is put in a position to make a decision based on available facts as best it can. After a thorough review of all the materials submitted, including the Court files maintained in the case, the Court finds the scales tip ever so slightly in favor of the defendants. As such, by a preponderance of the evidence presented, the motion is granted, the convictions are vacated and the defendants are granted a new trial. This is not an exoneration of the defendants. That determination is left for a new trial.

Christopher J Burns, JSC

Hon. Christopher J. Burns
Supreme Court Justice

DATED: Buffalo, New York
August 18, 2021