**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

DARRYL BOYD,

Plaintiff,

- against -

THE CITY OF BUFFALO; THE COUNTY OF ERIE; MICHAEL G. GUADAGNO; JOHN MONTONDO; LINDA J. FIAL AS EXECUTOR FOR THE ESTATE OF ROBERT GRABOWSKI; AND MARTIN BULLOCK AS EXECUTOR FOR THE ESTATE OF JAMES E. HUNTER,

Defendants.

**Case No. 1:22-cv-519**

JOHN WALKER, JR.

Plaintiff,

- against -

THE CITY OF BUFFALO; THE COUNTY OF ERIE; MICHAEL G. GUADAGNO; JOHN MONTONDO; LINDA J. FIAL AS EXECUTOR FOR THE ESTATE OF ROBERT GRABOWSKI; AND MARTIN BULLOCK AS EXECUTOR FOR THE ESTATE OF JAMES E. HUNTER,

Defendants.

**Case No. 1:22-cv-520**

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DISCOVERY

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................1
BACKGROUND ....................................................................................................3
I. The Complaints ....................................................................................................3
II. The Court's Scheduling Order ....................................................................................................5
III. Plaintiffs' Discovery Requests....................................................................................................6
IV. Defendants' Failures to Produce Responsive Documents and Information ....................7
ARGUMENT....................................................................................................11
I. The Court Should Order the County to Produce Responsive Documents and Information ....................................................................................................12
II. The Court Should Order the City to Produce Responsive Documents and Updated Discovery Responses ....................................................................................................19
CONCLUSION....................................................................................................21

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Bellamy v. City of New York*,
914 F.3d 727, 757-61 (2d Cir. 2019) .......... 2, 17

*Benitez v. Straley*,
2008 WL 4093479, at *3 (S.D.N.Y. Sept. 2, 2008) .......... 14,20

*Bordanaro v. McLeod*,
871 F .2d 1151, 1166-67 (lst Cir. 1989) .......... 17

*Cash v. County of Erie*,
654 F.3d 324, 339 (2d Cir. 2011) .......... 16

*Collins v. City of New York*,
923 F. Supp. 2d 462, 476-80 (E.D.N.Y. 2013) .......... 17, 18

*Dixon v. Buffalo, et al.*,
No. 1:19-cv-1678 (WMS) (JJM) (W.D.N.Y. Jan. 19, 2023) .......... 11, 13

*Dobson v. Dougherty*,
2018 WL 6321390, at *4 (W.D.N.Y. Dec. 4, 2018) .......... 16

*Fiacco v. City of Rensselaer*,
783 F.2d 319, 330-32 (2d Cir. 1986) .......... 16

*Galgano v. County of Putnam*,
2018 WL 11190663, at *1 (S.D.N.Y. 2018) .......... 13

*Gentile v. County of Suffolk*,
926 F.2d 142, 146, 151, 152-53 (2d Cir. 1991) .......... 2, 16, 17

*GEOMC Co., Ltd. v. Calmare Therapeutics, Inc.*,
918 F.3d 92, 98-99 (2d Cir. 2019) .......... 19

*Gugino v. City of Buffalo*,
2021 WL 5239901, at *3 (W.D.N.Y. Nov. 10, 2021) .......... 16

*Hansel v. Shell Oil Corp.*,
169 F.R.D. 303, 305 (E.D. Pa.1996) .......... 12

*Heron v. Millington*,
1990 WL 138960 at *2 (S.D.N.Y. Sept. 19, 1990) ........ 12

*Matter of Potenza v. Kane*,
79 A.D.2d 467 (4th Dept. 1981) ........ 15

*McLennon v. City of New York*,
171 F. Supp. 3d 69, 97 (E.D.N.Y. 2016) ........ 17

*Mingo v. City of New York*,
2020 WL 7085359, at *2 (E.D.N.Y. Dec. 3, 2020) ........ 17

*Obiajulu v. City of Rochester, Dep't of Law*,
166 F.R.D. 293, 297 (W.D.N.Y. 1995) ........ 12

*People v. Anderson*,
25 A.D.2d 602 (4th Dept. 1966) ........ 15

*People v. Balsano*,
51 A.D.2d 130 (4th Dept. 1976) ........ 15

*People v. Cadby*,
75 A.D.2d 713 (4th Dept. 1980) ........ 15

*People v. Cardinale*,
35 A.D.2d 1073 (4th Dept. 1970) ........ 15

*People v. Christopher*,
170 A.D.2d 1020 (4th Dept. 1991) ........ 15

*People v. Clark*,
89 A.D.2d 820 (4th Dept. 1982) ........ 15

*People v. Damon*,
24 N.Y.2d 256 (1969) ........ 15

*People v. Donaldson*,
49 A.D.2d 1004 (4th Dept. 1975) ........ 15

*People v. Grafton*,
115 A.D.2d 952 (4th Dept. 1985) ........ 15

*People v. Greer*,
49 A.D.2d 297 (4th Dept. 1975) ........ 15

*People v. Herlan*,
99 A.D.2d 647 (4th Dept. 1984) ........ 15

*People v. Ivey*,
83 A.D.2d 788 (4th Dept. 1981) ........ 15

*People v. Johnson*,
62 A.D.2d 555 (4th Dept. 1978) ........ 15

*People v. Kampshoff*,
53 A.D.2d 325 (4th Dept. 1976) ........ 15

*People v. Keller*,
67 A.D.2d 153 (4th Dept. 1979) ........ 15

*People v. Ketchum*,
35 N.Y.2d 740 (1974) ........ 15

*People v. King*,
72 A.D.2d 930 (4th Dept. 1979) ........ 15

*People v. Mitchell*,
99 Misc.2d 332 (Sup. Ct., Erie Co. 1979) ........ 15

*People v. Moore*,
26 A.D.2d 902 (4th Dept. 1966) ........ 15

*People v. Mordino*,
58 A.D.2d 197 (4th Dept. 1977) ........ 15

*People v. Mordino*,
83 A.D.2d 775 (4th Dept. 1981) ........ 15

*People v. Reingold*,
44 A.D.2d 191 (4th Dept. 1974) ........ 15

*People v. Slaughter*,
28 A.D.2d 1082 (4th Dept. 1967) ........ 15

*People v. Terry*,
83 A.D.2d 491 (4th Dept. 1981) ........ 15

*People v. Vance*,
89 A.D.2d 347 (4th Dept. 1982) ........ 15

*People v. Washington*,
32 A.D.2d 605 (4th Dept. 1969) ........................................................................................ 15

*People v. Weston*,
51 A.D.2d 881 (4th Dept. 1976) ........................................................................................ 15

*People v. Zachery*,
31 A.D.2d 732 (4th Dept. 1968) ........................................................................................ 15

*Robinson v. Smith*,
451 F. Supp. 1278 (W.D.N.Y. 1978) ................................................................................. 15

*Shamis v. Ambassador Factors Corp.*,
34 F. Supp. 2d 879, 894 (S.D.N.Y. 1999)……………………………………………..12

*Shamis v. Ambassador Factors Corp.*,
187 F.R.D. 148 (S.D.N.Y. 1999) ………...…………………………………………...12

*Shcherbakovskiy v. Da Capo Al Fine, Ltd.*,
490 F.3d 130, 138 n.1 (2d Cir. 2007) …………… ……………………………………… 14, 20

*Sommer v. United States*,
2011 WL 4433631, at *7 (S.D. Cal. 2011) ........................................................................ 13

*T.H. by Shepherd v. City of Syracuse*,
2018 WL 3738945, at *5 (N.D.N.Y. Aug. 7, 2018) ........................................................... 16

*Vann v. City of New York*,
72 F.3d 1040, 1050 (2d Cir. 1995)..................................................................................... 17

*Velasquez v. Kiner's Corner LLC,*
2020 WL 6151110, at *3 (S.D.N.Y. Oct. 19, 2020)…………………………………………14

## STATUTES

Fed. R. Civ. P. 26(b)(1)…………………………………………………………………. 11

Fed. R. Civ. P. 26(b)(5)(A)(ii) ........................................................................................... 11

Plaintiffs John Walker, Jr. and Darryl Boyd (collectively, "Plaintiffs") respectfully submit this memorandum of law in support of their motion to compel the City of Buffalo (the "City") and the County of Erie (the "County" and collectively with the City, the "Defendants") to produce documents and information responsive to Plaintiffs' discovery requests.

## INTRODUCTION

Plaintiffs Darryl Boyd and John Walker, Jr. spent 28 and 22 years, respectively, incarcerated and an additional 17 years (individually) on parole after being prosecuted for and convicted of a crime they did not commit—the 1976 murder of William Crawford (the "Crawford Murder"). Boyd Compl. ¶ 2.[1] In 2021, the Erie County Court vacated their convictions, holding that their constitutional rights were violated because evidence favorable to them under *Brady v. Maryland*, 373 U.S. 83 (1963)—photographs contradicting the testimony of the prosecution's key witnesses and corroborating the defense that another individual had committed the crime—were not disclosed to them or their counsel at or before their criminal trials. *Id.*

Plaintiffs bring these civil lawsuits to recover compensation for the injuries they suffered as a result of their wrongful convictions. As alleged in their Complaints, Plaintiffs' wrongful convictions did not result only from the *Brady* violation described above. Individual detectives in the Buffalo Police Department (the "BPD") initiated Plaintiffs' prosecution without probable cause based upon manufactured and coerced witness statements, while suppressing favorable evidence that would have negated the cases against Messrs. Boyd and Walker. *E.g.*, *id.* ¶¶ 124-247, 343, 431-47, 458-63. Prosecutors in the Erie County District Attorney's Office (the "ECDA"),

[1] To avoid duplication, Plaintiffs cite to the paragraph numbers for the Complaint in *Darryl Boyd v. The City of Buffalo, et al.*, Case No. 22-cv-519, to refer to the Complaints in both cases. The Complaints are materially identical for purposes of this motion. Likewise, Plaintiffs cite to the document numbers in *Boyd*, Case No. 22-cv-519, to refer to the docket entries in both cases.

thereafter, suppressed crucial *Brady* material and engaged in summation-related and other misconduct at trial. *E.g.*, *id.* ¶¶ 350-87, 621-61.

This misconduct was not solely the result of individual bad actors. Police and prosecutors committed the errors they did as a direct result of the unconstitutional, inadequate, and otherwise illegal policies, practices, and customs of both the BPD and the ECDA. Both the BPD and ECDA had histories of tolerating and thereby encouraging misconduct through inadequate training, supervision, and discipline. *E.g.*, *id.* ¶¶ 464-663. Supervisors repeatedly failed to adequately supervise, train, and discipline BPD officers in the exercise of their constitutional obligations, including their obligations not to fabricate evidence, commit perjury, or hide favorable evidence. *Id.* ¶¶ 186, 273, 295, 349, 469, 492. The ECDA habitually failed to disclose favorable evidence; failed to discipline prosecutorial misconduct; ignored and suborned police misconduct; failed to train prosecutors on essential *Brady* and *Rosario* requirements; failed to prosecute police misconduct; encouraged or participated in the fabrication of evidence; worked to destroy or hide favorable evidence; and maliciously prosecuted defendants with fabricated evidence. *Id.* ¶¶ 342-387; 501-663. Municipal liability for these forms of misconduct is well established in this Circuit. *See, e.g.*, *Bellamy v. City of New York*, 914 F.3d 727, 757-61 (2d Cir. 2019); *Walker v. City of New York*, 974 F.2d 293, 295-98 (2d Cir. 1992); *Gentile v. County of Suffolk*, 926 F.2d 142, 152-53 (2d Cir. 1991).

Unfortunately, the City and County have chosen as their defense strategy obstruction and delay at every opportunity. Defendants have sat on Plaintiffs' discovery requests for over four months and repeatedly delayed producing materials and responses until immediately prior to deadlines set by the Court—and have not produced at all entire categories of requested information and documents. The County's conduct in this case has been particularly egregious. The County

has repeatedly ignored Plaintiffs' requests for meet-and-confers, retracted promises to produce documents by specified dates, refused to describe their attempts to locate responsive documents and information, and refused to state in writing when they have concluded that there are no responsive documents and information. And after Plaintiffs approached the Court to compel this discovery, Defendants chose to file a waived and untimely motion to bifurcate *Monell* discovery, after successfully persuading the Court four months earlier, over Plaintiffs' objection, to enter a scheduling order based on the very premise that additional time was needed for such *Monell* discovery. *See* Dkt. 34. Their tactics are now exposed as a cynical effort to delay.

This Court should not countenance Defendants' conduct, especially where, as here, Plaintiffs are both 63 years old, they lost decades of their lives due to wrongful convictions, and the relevant events date back more than four decades. Mr. Walker's health challenges are readily apparent from public reporting, and many critical witnesses are in their 70s, 80s, even 90s. Efforts to delay this case, thus, present a heightened risk of the loss of critical testimony, information, and documents. That is among the reasons Plaintiffs have diligently pushed discovery at every turn, only to be frustrated by Defendants' deliberate delays. Plaintiffs therefore respectfully request that the Court order Defendants to comply with their discovery obligations by producing outstanding documents and information and amending their discovery responses as described below.

## BACKGROUND

### I. The Complaints

On July 6, 2022, Plaintiffs filed their Complaints against the City, County, and the individual defendants Michael G. Guadagno, John Montondo, Linda J. Fial as Executor for the Estate of Robert Grabowski, and Martin Bullock as Executor for the Estate of James E. Hunter

(collectively, the "Individual Defendants"). Boyd Compl. ¶¶ 9-14.[2] Plaintiffs assert claims against the Individual Defendants for malicious prosecution under state and federal law; federal claims for evidence fabrication, wrongful pretrial withholding of favorable evidence, and violations of *Brady*; and a state law claim for negligent infliction of emotional distress. Boyd Compl. Counts I-V, IX. These claims rest on, among others, allegations that:

- The Individual Defendants unlawfully coerced two teenage boys, Andre Hough and Tyrone Woodruff, to tell a story the detectives knew was false. *Id.* at ¶¶ 186-247, 288-339.

- The Individual Defendants covered up favorable evidence that revealed this coercion and also implicated the victim's neighbor, Lawrence Watson, as the likely perpetrator. *Id.* at ¶¶ 340-429.

- The Individual Defendants manipulated and doctored police reports through the staging of anonymous phone calls, the failure to record coercive threats and unlawful interrogations, and the inclusion of false or misleading information. *Id.* at ¶ 343.

Plaintiffs also assert a claim against the City pursuant to *Monell* and a state law claim for negligent failure to properly hire, train, and supervise BPD employees. Boyd Compl. Counts VI, VIII. These claims rest on, among others, allegations that:

- Key City policy makers, including the Chief of the Homicide Detectives Unit, Leo J. Donovan, participated in the unconstitutional actions of the Individual Defendants. *Id*. at ¶¶ 33-34, 223-38, 248, 270-73, 488.

- The City failed to discipline BPD officers for prior instances of misconduct involving illegal detention, coercive interrogation, and the use of allegedly anonymous phone calls. *Id.* at ¶¶ 473-78.

- The City failed to train its officers regarding their obligations to preserve and disclose *Brady* material or to obtain probable cause prior to arrest. *Id*. at ¶¶ 479-85.

---

2 Plaintiffs' motions to amend their Complaints by adding several additional estate-defendants were filed on December 21, 2022 and remain *sub judice.*

Plaintiffs assert a claim against the County pursuant to *Monell* as well, along with a state law claim for negligent failure to properly hire, train, and supervise ECDA employees. Boyd Compl. Counts VII, X. These claims rest on, among others, allegations that:

- ECDA prosecutors covered up favorable evidence that revealed police coercion and implicated Watson as the likely perpetrator in order to bring about Plaintiffs' indictments and pretrial loss of liberty. *Id.* at ¶¶ 350-429, 517-522.

- ECDA prosecutors caused Plaintiffs' convictions by withholding compelling evidence of third-party culpability as well as powerful impeachment evidence, and through egregious summation misconduct. *Id.*

- These actions resulted from the ECDA's failure to adequately train and supervise prosecutors, adopt necessary office-wide policies, and discipline misconduct. *Id.* at ¶¶ 493-663.

- Numerous cases both before and after Plaintiffs' convictions reveal similar misconduct by prosecutors, demonstrating that the misconduct in this case was part of an unlawful custom or practice and/or resulted from policymakers' deliberate indifference. *Id.* at ¶¶ 477, 553-614.

## II. The Court's Scheduling Order

Prior to the parties' initial meet-and-confer to negotiate a scheduling order for discovery in this case, Plaintiffs proposed an order providing for a six-month period to complete all fact discovery. Dkt. 33 at 1-2. During the meet-and-confer, the City initially agreed to Plaintiffs' proposal, but the County requested a 30-day expansion of the fact discovery period (and the City joined in that request). *Id.* After Plaintiffs agreed to Defendants' counterproposal, Defendants retracted their agreement and said that the proposed schedule was no longer acceptable. *Id.* Defendants argued in this meeting a more extended discovery window was necessary because Plaintiffs would likely seek discovery to support their *Monell* claims. Dkt. 33 at 3-4.

Having failed to agree to a scheduling order, the parties submitted competing proposals to the Court. Plaintiffs, abiding by their prior offer, proposed a 7-month period to complete all fact discovery. Dkt. 33, Ex. A. Defendants proposed a 13-month period—7 months longer than their

proposal during the meet-and-confer. Dkt. 33, Ex. B. After hearing from both sides, the Court entered a scheduling order that included a period of 11 months to complete all fact discovery. Dkt. 34. The Court's order also provided that no extension of the deadlines would be granted except upon a motion filed prior to an applicable deadline showing good cause to modify the deadline. *Id.*

### III. Plaintiffs' Discovery Requests

Plaintiffs served their initial document requests and interrogatories on Defendants on September 29, 2022—the day before the scheduling conference.[3] *See* Hanft Decl. Exs. 1, 2 (collectively, the "Requests").

To support their *Monell* and state law claims against the County, Plaintiffs sought, among others, the following categories of documents and information:

- All documents from the Crawford Murder prosecution, including attorney notes. Hanft Decl. Ex. 1, Request No. 4.

- Documents concerning key witnesses and suspects in the Crawford Murder. *Id.*, Request Nos. 4-8.

- The ECDA's files for the cases involving prosecutor misconduct referenced in Plaintiffs' Complaints, a list of the ECDA prosecutors who worked on those cases, and any associated disciplinary or personnel records. *Id.*, Interrogatory Nos. 4-5; Request Nos. 9-10, 16.

- ADAs employed by the ECDA during the relevant time period, including those disciplined for misconduct similar to that which occurred in the prosecution of the Crawford Murder, and identification of the ECDA's policymakers for several relevant functions and its organizational structure. *Id.*, Interrogatory Nos. 1-2, 8; Request Nos. 2, 11.

- The process for investigating and disciplining ADAs for misconduct, disciplinary investigation procedures, training materials for ADAs, complaints against ADAs,

---

[3] In accordance with the Court's September 30, 2022 Scheduling Order, *see* Dkt. 34, Plaintiffs served their initial Rule 26(a) disclosures on October 14, 2022 and produced over 25,000 pages of documents and several video files, including records from Plaintiffs' prior attorneys, court proceedings, FOIL responses, and employers, and public reporting concerning the subject matter of these actions. *See* Declaration of Gideon Hanft, dated February 15, 2023 (the "Hanft Declaration" or "Hanft Decl.").

conviction percentages, and any lawsuits against the ECDA that resulted in damages, as well as the personnel files for the individual ADAs who worked on the prosecution of the Crawford Murder. *Id.*, Interrogatory Nos. 3, 6-9, 12; Request Nos. 13-15, 18.

- The basis for the County's affirmative defenses. *Id.*, Interrogatory No 11; Request Nos. 19-21.

To support their *Monell* and state law claims against the City and the Individual Defendants, Plaintiffs sought, among others, the following categories of documents and information:

- All documents from the Crawford Murder investigation. *See* Hanft Decl. Ex. 2, Request Nos. 4, 6-7.

- Personnel records for all BPD personnel involved in the investigation of the Crawford Murder. *Id.*, Request No. 21.

- The process for investigating and disciplining BPD officers for misconduct, records of misconduct investigations and disciplined officers, police training materials, homicide closure rates, and records from any lawsuits against the City for the BPD's violations of individuals' civil rights. *Id.*, Interrogatory Nos. 5-8, 11; Request Nos. 17, 18, 20.

## IV. Defendants' Failures to Produce Responsive Documents and Information

The City and County served responses to Plaintiffs' Requests on October 31, 2022. Dkt. 48, Exs. A, B. Both Defendants objected to every document request and to every interrogatory. *Id.* The County produced only the transcripts from Plaintiffs' criminal trials (documents that Plaintiffs already produced to the County with their Rule 26(a) disclosures) and did not provide a substantive response to any of the interrogatories. The City only produced a few pages of records from the 2019 cold-case reinvestigation of the Crawford Murder and a police procedures manual, but nothing more; it produced nothing at all from the original investigative file for the Crawford Murder. Dkt. 48, Exs. A, B. On November 15 and 17, Plaintiffs sent the City and the County, respectively, letters describing why their objections were invalid and requesting meet-and-confers to resolve outstanding issues. Dkt. 48, Exs. C, G.

The County did not respond to Plaintiffs' November 17 request for a meet-and-confer until November 29 and did not agree to schedule that meet-and-confer with Plaintiffs until December 6. During that meet-and-confer, the County promised to produce the Crawford Murder investigation and prosecution file by December 12 and to search for and produce other responsive documents prior to the parties' next meet-and-confer, which was delayed, at the County's request, until December 27. Dkt. 48, Ex. D. But the County did not produce the Crawford Murder investigation and prosecution file by December 12. Dkt. 48, Exs. E, F. It then cancelled the December 27 meet-and-confer due to the storm that had occurred several days earlier and ignored Plaintiffs' attempts to reschedule it. *See id.* It did not produce the Crawford Murder investigation and prosecution file or respond further to Plaintiffs until Plaintiffs raised these issues to the Court. *See* Dkt 48.

The City agreed to a meet-and-confer on November 28 and provided a written response to Plaintiffs' letter only minutes in advance of that meeting. *See id.*, Ex. H. At the meet-and-confer, the City pledged to amend its interrogatory responses identifying the factual bases for its boilerplate affirmative defenses and to produce personnel files prior to the parties' next meet-and-confer, which was scheduled for December 15. *Id.*, Ex. I. But the City did not respond or produce anything before December 15. During the December 15 meet-and-confer, the City promised to provide by December 31 the same documents and responses it had already agreed to provide. *Id.*, Ex. J. But December 31 came and went, and the City failed to either amend their interrogatory responses or provide additional documents. *See Id.* at 2-3.

Having received almost nothing from the County or City by year-end, and after having their requests for meet-and-confers ignored, Plaintiffs filed a pre-motion letter with this Court on January 6, 2023. *Id.* The Court scheduled a hearing for January 13, 2023. Dkt. 49. Approximately

one hour before that hearing, the City produced additional documents. *See* Hanft Decl. Ex. 3. The County, employing a similar tactic, waited until *three minutes* before the hearing to produce additional documents (its first production aside from the trial transcripts) in response to Plaintiffs' September 29 Requests. *See* Hanft Decl. Ex. 4.

At the January 13 conference, Plaintiffs described the Defendants' pattern of delay and obstruction. The Court reminded the parties of their obligations and the potential penalties for delay: "I will caution everyone that, you know, if there's any foot-dragging and a motion to compel is necessary, there may be fees or other bad things that accompany that." Dkt. 60 at 7:20-24. Due to Defendants' last-minute productions, the Court gave Plaintiffs time to review them, scheduled a new hearing for January 25, and ordered the parties to provide, in writing, an update on outstanding discovery issues prior to the hearing. Dkt. 53. Plaintiffs followed the Court's order, submitting a letter on January 23 that identified the issues that remained in dispute. Dkt. 56. Defendants failed to do so, instead submitting letters asking the Court to bifurcate *Monell* discovery, even though they had secured the current schedule based on representations to the Court that an elongated schedule was necessary to accommodate *Monell* discovery, and thereafter waited four months to raise the issue for the first time. Dkt. 33, 55, 57.

The Court held a second hearing on January 25. The Court asked Defendants to update Plaintiffs about what they still intended to produce and noted the wide gap between the parties. *See* Tr. of Jan. 25, 2023 Conference at 4:22-5:3; 6:12-15. The Court cautioned Defendants that it seemed, at least in some respects, that the failure to produce was not justified. *See id.* at 6:22-25. After reminding the parties of their obligations, the Court set a briefing schedule on Plaintiffs' motion to compel and Defendants' proposed motion to bifurcate and ordered the parties to meet-and-confer in advance to attempt to resolve remaining disputes. *Id.* at 11:1-16.

In a meet-and-confer with the County on February 2, the County agreed to produce a publicly filed exhibit from Plaintiffs' 2021 440 hearing that was pivotal to the court's decision to overturn their convictions by February 8. Hanft Decl. Ex 5. The County also promised to produce a privilege log and a detailed description of search efforts for responsive materials by February 8. On February 8, the County informed Plaintiffs that it would be unable to meet this deadline. *Id*. Ex 6.

On February 13, two days before this motion's due date, the County produced the 440 exhibit (with no explanation of why this had taken numerous requests and four months) but no privilege log and a short statement discussing its search for documents at the highest level of generality. *See id.* Ex 7. The affirmation provided no detail on the dates of searches, the length of time spent searching, the specific individuals who searched, or whether any additional responsive materials were located. *See id.* Indeed, in the affirmation, the County describes touring a document holding facility to look at boxes of records but does not state whether anyone even *opened* a single box or reviewed a single piece of paper. *See id.*

In a meet-and-confer with the City on February 1, the City pledged to produce a detailed written statement in support of its assertion that it could not find the vast majority of relevant materials. Hanft Decl. Ex. 8. The City continued to object to Plaintiffs' other requests. *Id.* The City provided a letter from counsel describing its search efforts and the absence of responsive materials on February 10. *Id.* Ex. 9.

To date, the County has not provided a substantive response to a single interrogatory. Unproduced documents include some of the ADA notes from the prosecution of the Crawford Murder (or a privilege log, if the County is withholding notes on that basis), a roster of ADAs employed by the ECDA during the relevant time period, personnel files, disciplinary files, policy

and training materials, the ECDA's files for the cases referenced in Plaintiffs' Complaints involving similar misconduct as the misconduct in Plaintiffs' cases, and a list of the prosecutors who worked on those cases.

For its part, the City has not provided a substantive response to interrogatories regarding lawsuits against the City or records of lawsuits against the City. Neither the County nor the City has updated its discovery responses to account for the numerous instances where it claims no responsive documents or information exists.

## ARGUMENT

It has been over four months since Plaintiffs served discovery requests on the County and the City, and a substantial part of the fact discovery period has passed. Defendants can no longer fend off Plaintiffs' attempts to obtain crucial discovery by ignoring Plaintiffs' inquiries, giving evasive half answers, and claiming to need an indeterminate amount of additional time. The time has come for Defendants to answer Plaintiffs' requests once and for all—either by producing responsive documents and providing responsive information, or by amending their discovery responses to indicate that no such documents and information exist. If Defendants cannot or will not do so, they should be precluded from relying on any belatedly disclosed documents or taking any positions inconsistent with their failure to produce responsive discovery at trial.

The documents and information that Plaintiffs seek through this motion are relevant to Plaintiffs' claims and proportional to the needs of this case, and Defendants have no valid basis to refuse to produce them. *See* Fed. R. Civ. P. 26(b)(1). Defendants must comply with standard discovery obligations. If they are withholding documents or information based on a claimed privilege or immunity, then they must produce a privilege log. *See* Fed. R. Civ. P. 26(b)(5)(A)(ii); *Dixon v. Buffalo, et al.*, No. 1:19-cv-1678 (WMS) (JJM) (W.D.N.Y. Jan. 19, 2023), Dkt. 128 (the "*Dixon* Order"). If they claim that no documents or information responsive to a particular request

exist, then they must say so in their formal, written discovery responses. *See Shamis v. Ambassador Factors Corp.*, 34 F. Supp. 2d 879, 894 (S.D.N.Y. 1999), *on reargument*, 187 F.R.D. 148 (S.D.N.Y. 1999) ("If a party is unable to supply the requested information, the party may not simply refuse to answer, but must state under oath that he is unable to provide the information and set forth the efforts he used to obtain the information.") (citing *Hansel v. Shell Oil Corp.*, 169 F.R.D. 303, 305 (E.D. Pa.1996)); *see also Heron v. Millington*, 1990 WL 138960 at *2 (S.D.N.Y. Sept. 19, 1990). And if Defendants contend that a particular request is unduly burdensome such that they are unable to answer it, then they must meet the burden of showing what steps they have taken to search for responsive documents and information and substantiating that the claimed burden is actually "undue." *See Obiajulu v. City of Rochester, Dep't of Law*, 166 F.R.D. 293, 297 (W.D.N.Y. 1995). Defendants have done none of this.

## I. The Court Should Order the County to Produce Responsive Documents and Information

### *a. ECDA Trial Notes*

After initially stalling to produce even the most basic information relevant to Plaintiffs' claims—the investigation and prosecution file for the Crawford Murder—the County has now produced some documents from that file, though Plaintiffs have no way of confirming that it is complete. Conspicuously missing were notes of the ADAs who prosecuted Plaintiffs for the Crawford Murder. After promises to produce ADA trial notes by December 12, January 13, and February 8, the County finally provided portions of the notes of former ADA David Henry on February 13—five days after another missed deadline and two days before a Court deadline. *See* Dkt. 48, Ex. D at 5; Dkt. 60, Tr. of Jan. 13, 2023 Conference at 10:18-24; Hanft Decl. Ex. 5. The County offered no explanation for this four-month delay.

As for the notes of the other ADAs who prosecuted the Crawford Murder, including notes from the prosecution of Mr. Boyd and that of co-defendant Darryn Gibson, the County has produced nothing. To the extent the County is withholding prosecutor notes based on its blanket assertion that all ADA trial notes are privileged, *see* Hanft Decl. Ex. 5, that assertion is wrong. As this Court recently explained:

> [I]n a case involving allegations of prosecutorial misconduct related to a closed criminal investigation, the prosecutor's files are discoverable to the extent that the documents "go to the heart" of the litigation, even where the file reveals "core" or "opinion" work product containing the prosecutor's mental impressions, conclusions, opinions, or legal theories.

*Dixon* Order, No. 1:19-cv-1678 (WMS) (JJM) (W.D.N.Y. Jan. 19, 2023) at 7, (quoting *Galgano v. County of Putnam*, 2018 WL 11190663, at *1 (S.D.N.Y. 2018)). In *Dixon*, this Court found that certain notes went "to the heart" of the litigation because such notes could reveal the very prosecutorial misconduct alleged in the complaint. *Id.* at *8 (citing *Sommer v. United States*, 2011 WL 4433631, at *7 (S.D. Cal. 2011)). The same is true here. Notes may reveal the bad faith of prosecutors in withholding *Brady* or *Rosario* material, or in presenting testimony they knew or should have known was false, misleading, or incomplete. At minimum, the County must provide a privilege log of any documents withheld from production on that basis, so that Plaintiffs may adequately assess the claimed privilege.

*b. ECDA Personnel Files, Disciplinary Records, and Policy and Training Materials*

Plaintiffs bring *Monell* claims against the County alleging that the County had an unlawful policy or practice of withholding *Brady* and *Rosario* material from criminal defendants and engaging in summation and other trial misconduct, that the County negligently failed to train ECDA employees on their constitutional obligations, and that it similarly neglected to discipline employees who failed to meet those obligations. *See supra* at 6. Consequently, Plaintiffs requested from the County documents and information that go to the heart of those claims: the County's

policy and training materials during the relevant period, records of any ADAs during this period who were disciplined for misconduct, and the personnel files and any disciplinary records of the ADAs who prosecuted the Crawford Murder. *See* Hanft Decl. Ex. 1, Interrogatory Nos. 1, 7-8; Request Nos. 2, 11, 13-14. If the County has no such documents, that, too, is relevant. The County tries to have it both ways, conducting virtually no search while maintaining that "[t]he fact that ADA and ECDA-related materials have yet to be produced is neither an admission of their existence, nor a statement of their nonexistence." *See* Hanft Decl. Ex. 7.[4] That is the kind of obfuscation that must be put to an end. Either the County searches for and produces the records, or it must live with the representation that such records do not exist. *See Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138 n.1 (2d Cir. 2007) ("[A] party may not 'blow hot or cold' and, having persuaded the court in discovery of its inability to produce such documents, later seek to use them to help its case at trial."); *Velasquez v. Kiner's Corner LLC*, 2020 WL 6151110, at *3 (S.D.N.Y. Oct. 19, 2020); *Benitez v. Straley*, 2008 WL 4093479, at *3 (S.D.N.Y. Sept. 2, 2008).

4 The County claims in its February 13 affirmation that records responsive to these requests cannot be searched because of the presence of asbestos in the building where the records are likely to be located. *See* Hanft Decl. Ex. 7. As that issue is unlikely to be resolved during the period set for discovery in this case, the County must either propose a solution for accessing the records or forfeit its right to continue insisting that such documents *may* exist. Otherwise, this case will be held open in perpetuity.

*c. Documents and Information Concerning Cases of ECDA Misconduct*

Plaintiffs' requests for the ECDA case files from the other cases identified in the Complaints are similarly integral to Plaintiffs' *Monell* claims against the County. *See* Hanft Decl. Ex. 1, Interrogatory Nos. 4-5; Request Nos. 9-10, 16.[5] Those cases—which Plaintiffs did painstaking research to identify prior to filing their Complaints—involved prosecutorial misconduct similar to the misconduct Plaintiffs allege occurred in their criminal cases. The transcripts and other records of those cases, along with the identities of the ADAs who prosecuted them and their disciplinary records, are highly relevant to all three of Plaintiffs' *Monell* theories. Similar errors repeated by different prosecutors across numerous cases over an extended period of time demonstrate the existence of a policy or practice within the ECDA, as well as the failure of the County to train ECDA employees to avoid such errors and to impose discipline to prevent the errors from recurring.

While the County initially agreed to review the list of cases and identify in writing the cases for which it could produce the requested records, *see* Dkt. 48, Ex. D at 2, the County now

5 These cases are: *Robinson v. Smith*, 451 F. Supp. 1278 (W.D.N.Y. 1978); *People v. Ketchum*, 35 N.Y.2d 740 (1974); *People v. Damon*, 24 N.Y.2d 256 (1969); *People v. Christopher*, 170 A.D.2d 1020 (4th Dept. 1991); *People v. Herlan*, 99 A.D.2d 647 (4th Dept. 1984); *People v. Grafton*, 115 A.D.2d 952 (4th Dept. 1985); *People v. Clark*, 89 A.D.2d 820 (4th Dept. 1982); *People v. Vance*, 89 A.D.2d 347 (4th Dept. 1982); *Matter of Potenza v. Kane*, 79 A.D.2d 467 (4th Dept. 1981); *People v. Ivey*, 83 A.D.2d 788 (4th Dept. 1981); *People v. Terry*, 83 A.D.2d 491 (4th Dept. 1981); *People v. Mordino*, 83 A.D.2d 775 (4th Dept. 1981); *People v. Cadby*, 75 A.D.2d 713 (4th Dept. 1980); *People v. Keller*, 67 A.D.2d 153 (4th Dept. 1979); *People v. King*, 72 A.D.2d 930 (4th Dept. 1979); *People v. Johnson*, 62 A.D.2d 555 (4th Dept. 1978); *People v. Mordino*, 58 A.D.2d 197 (4th Dept. 1977); *People v. Kampshoff*, 53 A.D.2d 325 (4th Dept. 1976); *People v. Balsano*, 51 A.D.2d 130 (4th Dept. 1976); *People v. Weston*, 51 A.D.2d 881 (4th Dept. 1976); *People v. Greer*, 49 A.D.2d 297 (4th Dept. 1975); *People v. Donaldson*, 49 A.D.2d 1004 (4th Dept. 1975); *People v. Reingold*, 44 A.D.2d 191 (4th Dept. 1974); *People v. Cardinale*, 35 A.D.2d 1073 (4th Dept. 1970); *People v. Washington*, 32 A.D.2d 605 (4th Dept. 1969); *People v. Zachery*, 31 A.D.2d 732 (4th Dept. 1968); *People v. Slaughter*, 28 A.D.2d 1082 (4th Dept. 1967); *People v. Moore*, 26 A.D.2d 902 (4th Dept. 1966); *People v. Anderson*, 25 A.D.2d 602 (4th Dept. 1966); *People v. Mitchell*, 99 Misc.2d 332 (Sup. Ct., Erie Co. 1979). *See* Compl. ¶¶ 553-614.

objects that Plaintiffs are not entitled to *any Monell* discovery. *See* Hanft Decl. Ex. 5. Notwithstanding that objection, the County claims that it made an effort to determine the facility where such records are stored but took no further steps to locate the specific records requested. *See* Hanft Decl. Ex. 7.

These materials are plainly relevant and discoverable. *See, e.g.*, *Gugino v. City of Buffalo*, 2021 WL 5239901, at *3 (W.D.N.Y. Nov. 10, 2021) ("[C]omplaints, lawsuits, and notices of claims involving use of chokeholds by defendants' police officers similar to chokehold alleged by plaintiff subject to discovery in support of plaintiff's *Monell* claim.") (citation omitted). Specifically, other cases in which the ECDA engaged in the same type of misconduct Plaintiffs allege "may assist in illustrating a causal relationship between these policies and constitutional deprivations." *T.H. by Shepherd v. City of Syracuse*, 2018 WL 3738945, at *5 (N.D.N.Y. Aug. 7, 2018); *see also Dobson v. Dougherty*, 2018 WL 6321390, at *4 (W.D.N.Y. Dec. 4, 2018).

Records from cases with similar misconduct are also relevant and discoverable to show the ECDA's failure to train, supervise, or discipline employees to avoid that misconduct. *See, e.g.*, *Cash v. County of Erie*, 654 F.3d 324, 339 (2d Cir. 2011) (relying, in a prison sexual assault case, on prior incident of invited sexual contact between a prisoner and guards to "support[] a jury inference that defendants were not committed ... to protect prisoners from sexual exploitation"); *Gentile*, 926 F.2d at 146 (plaintiff properly relied, in police brutality case, on "employee misconduct ... in several different areas of criminal law"); *Fiacco v. City of Rensselaer*, 783 F.2d 319, 330-32 (2d Cir. 1986) (basing liability on a history of "uninterested and superficial" responses to complaints). Indifference to prosecutorial misconduct, including failure to discipline ADAs for constitutional violations, may have emboldened the prosecutors handling Plaintiffs' criminal trials. *See Bellamy*, 914 F.3d at 757-61 (2d Cir. 2019) (upholding *Monell* claim alleging county DA had

policy of deliberate indifference to *Brady* violations and summation misconduct by prosecutors, and requiring discovery to proceed); *Vann v. City of New York*, 72 F.3d 1040, 1050 (2d Cir. 1995) (upholding reliance, in a police brutality case, on "evidence of the Department's general methods of dealing with problem policemen ... "); *Collins v. City of New York*, 923 F. Supp. 2d 462, 476-80 (E.D.N.Y. 2013) (upholding *Monell* claim against City of New York for county prosecutor's deliberate indifference to misconduct shown by failure to discipline prosecutors and other evidence of ratification).

Incidents that occurred prior to Plaintiffs' wrongful arrest and conviction especially demonstrate that Defendants had notice of prosecutorial misconduct and thus of a need for training, supervision, and discipline. *See, e.g.*, *Mingo v. City of New York*, 2020 WL 7085359, at *2 (E.D.N.Y. Dec. 3, 2020) (finding "disciplinary summaries and performance evaluations relevant to … *Monell* claim as possible evidence of the [defendant's] notice of misconduct"). And cases that occurred after Messrs. Boyd and Walker's wrongful convictions create a reasonable inference that the same deliberate indifference by the County also existed at the time of Plaintiffs' prosecutions. *See Gentile*, 926 F.2d at 151 (post-incident ratification permits inference that unlawful policy existed at the time of the violation of the plaintiffs rights); *McLennon v. City of New York*, 171 F. Supp. 3d 69, 97 (E.D.N.Y. 2016) ("Because the disposition of the policymaker may be inferred from his conduct after the events giving rise to the constitutional violation, a policymaker's implicit ratification may be established by his or her reward or encouragement of the unlawful conduct."); *see also Bordanaro v. McLeod*, 871 F .2d 1151, 1166-67 (lst Cir. 1989) (holding that post-incident violations are relevant, not to demonstrate notice, but to "shed some light on what policies existed in the city on the date of an alleged deprivation of constitutional right"); *Collins*, 923 F. Supp. 2d at 477.

Plaintiffs will respond to the County's contention that *Monell* discovery should be bifurcated in their opposition to the County's motion. But the Court should reject the County's assertion that, five months after discovery opened, it has conducted an adequate search for responsive materials based on a *single tour of a facility* without taking any further steps. As with Plaintiffs' other requests, the County must make an adequate search, which it documents in an appropriately detailed affidavit, and either produce responsive documents or update its discovery responses to reflect that no such documents exist.

d. *Criminal Records of Key Figures in the Crawford Murder Investigation*

Plaintiffs requested documents related to any arrests, investigations, and prosecutions of key figures in the Crawford Murder investigation: Shirley Floyd, Andre Hough, Jerome Boyd, Lawrence Watson, Joseph Tatar, and William Crawford. Two of the individuals, Watson and Jerome Boyd, were third-party suspects in the investigation of the crime for which Plaintiffs were wrongfully imprisoned, and thus any information about their criminal histories would be additional undisclosed *Brady* material. Plaintiffs have also requested the criminal records of (1) Andre Hough, who testified he was coerced into providing an incriminating statement against Plaintiffs; (2) Joseph Tatar, a jailhouse witness convinced to testify against Mr. Walker in exchange for leniency; and (3) Shirley Floyd, who Plaintiffs have reason to believe was arrested for contempt of court for refusing to cooperate with the BPD during the investigation of the Crawford Murder. *See* Hanft Decl. Ex. 1, Request Nos. 10-13.

The County originally cited unspecified statutory objections to producing the requested documents, and later claimed that it was not able to locate any of the criminal records for the specified witnesses. *See* Hanft Decl. Ex. 5. Again, the County provided no explanation of the search it conducted. *Id*. As with their other requests, Plaintiffs ask the Court to order the County

to conduct a proper search, document that search, and produce responsive materials or state unequivocally in updated discovery responses that no such documents exist.

*e. The Factual Bases for the County's Affirmative Defenses*

Finally, Plaintiffs requested documents and information regarding the factual bases for the County's asserted affirmative defenses. *See* Hanft Decl. Ex. 1, Interrogatory No. 11; Request Nos. 19-21. In meet-and-confers, Plaintiffs agreed to limit this request to the affirmative defenses that depend on the facts already known to the County. This concession was conditioned upon the County's agreement to provide a response. *See* Dkt. 48, Ex. D.

The County, however, continues to stand on its initial objection. A party must have a good faith factual basis to assert an affirmative defense. *See GEOMC Co., Ltd. v. Calmare Therapeutics, Inc.*, 918 F.3d 92, 98-99 (2d Cir. 2019). The County has raised affirmative defenses regarding failure to make a timely notice of claim, improper service, failure to comply with Article 4 of the General Municipal Law, collateral estoppel, res judicata, and judicial estoppel. To the extent the County continues to assert these defenses, it must respond to Plaintiffs' interrogatories and document requests with relevant information, or else the defenses should be dismissed due to the absence of a good-faith basis to assert them.

## II. The Court Should Order the City to Produce Responsive Documents and Updated Discovery Responses

*a. BPD Personnel Files, Disciplinary Records*

The City maintains that it has conducted a thorough search and identified no relevant training materials or disciplinary records for the police officers who conducted the Crawford Murder investigation. *See* Hanft Decl. Exs. 8, 9. If that is the case, the City must update its response to Interrogatory Nos. 6 and 7, and Document Request Nos. 17-19 and 21 to state that no responsive documents exist, and the City can identify no instances of discipline being imposed on

the officers who conducted the Crawford Murder investigation. As set forth above regarding Plaintiffs' motion to compel this category of documents from the County, the absence of responsive documents is highly probative of claims for failure to train and failure to discipline, and Defendants must clearly state in a formal discovery response whether or not it is producing any responsive documents or information. *See Benitez*, 2008 WL 4093479 at *3 (ordering a party to make "a concrete determination" as to "whether or not the requested materials exist" and either produce or affirm that the materials did not exist); *Shcherbakovskiy,* 490 F.3d at 138 n.1.

*b. Documents and Information Related to BPD Misconduct*

As with the County, Plaintiffs requested from the City information related to lawsuits for police misconduct similar to the misconduct Plaintiffs allege in their Complaints. *See* Hanft Decl. Ex. 2, Interrogatory No. 11. The City offered to produce the records of City Claims Committee meetings discussing the settling of any such lawsuits, Dkt. 48, Ex. B at 4, which Plaintiffs agreed to limit to a ten-year period spanning 1975-1985. *Id.*, Ex. J. Although the City previously agreed to produce these materials, *id.*, it now refuses, claiming that Plaintiffs are not entitled to *Monell* discovery at this time, Dkt. 57.

Any evidence of lawsuits claiming similar misconduct by the BPD is directly relevant to claims regarding the BPD's policy, practice, and custom of making arrests and investigating individuals without probable cause, fabricating evidence, using improper interrogation techniques, and failing to disclose *Brady* material. *See, e.g.*, Boyd Compl. ¶¶ 486, 490. And as discussed *supra* at 15-18, this information is discoverable, as it relates to Plaintiffs' *Monell* theories that the BPD engaged in misconduct pursuant to a pattern, practice, or custom, and failed to train and discipline its employees.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order directing the County and City to produce documents and provide information responsive to Plaintiffs' discovery requests.

Specifically, Plaintiffs ask the Court to enter an order directing the County to produce documents responsive to Requests Nos. 2-11, 13-16, and 18-21 or amend its responses to confirm that no such documents exist, and to provide substantive responses to Interrogatory Nos. 1-9 and 11-12 or to amend its responses to reflect that no responsive information exists. Plaintiffs ask the Court to enter an order directing the City to update its responses to Interrogatory Nos. 6, 7, and 11 and Document Request Nos. 17-19 and 21 to state that no responsive documents or information exist.

Plaintiffs ask the Court to require Defendants to comply with the order and produce documents and update their discovery responses no later than 14 days from entry of such order.[6]

---

6 Plaintiffs have elected not to seek fees and costs in this motion. However, they reserve the right to request appropriate sanctions in response to future dilatory tactics by Defendants.

Dated: New York, New York
February 15, 2023

*s/ Ross E. Firsenbaum*
Ross E. Firsenbaum
Ryanne E. Perio
Gideon A. Hanft
Phoebe Silos
Erin Hughes
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
(212) 230-8800
ross.firsenbaum@wilmerhale.com
ryanne.perio@wilmerhale.com
gideon.hanft@wilmerhale.com
phoebe.silos@wilmerhale.com
erin.hughes@wilmerhale.com

Joel B. Rudin
David E. Rudin
LAW OFFICES OF JOEL B. RUDIN, P.C.
Carnegie Hall Tower
152 West 57th Street, 8th Floor
New York, NY 10019
(212) 752-7600
jbrudin@rudinlaw.com
david@rudinlaw.com

Timothy W. Hoover
Spencer Durland
HOOVER & DURLAND LLP
561 Franklin Street
Buffalo, New York 14202
(716) 800-2604
thoover@hooverdurland.com
sdurland@hooverdurland.com