# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

DARRYL BOYD,

Plaintiffs,

- against -

THE CITY OF BUFFALO; THE COUNTY OF ERIE; MICHAEL G. GUADAGNO; JOHN MONTONDO; LINDA J. FIAL AS EXECUTOR FOR THE ESTATE OF ROBERT GRABOWSKI; AND MARTIN BULLOCK AS EXECUTOR FOR THE ESTATE OF JAMES E. HUNTER,

Defendants.

**Case No. 1:22-cv-519**

JOHN WALKER, JR.

Plaintiffs,

- against -

THE CITY OF BUFFALO; THE COUNTY OF ERIE; MICHAEL G. GUADAGNO; JOHN MONTONDO; LINDA J. FIAL AS EXECUTOR FOR THE ESTATE OF ROBERT GRABOWSKI; AND MARTIN BULLOCK AS EXECUTOR FOR THE ESTATE OF JAMES E. HUNTER,

Defendants.

**Case No. 1:22-cv-520**

**PLAINTIFFS' FIRST SET OF INTERROGATORIES AND REQUESTS FOR THE PRODUCTION OF DOCUMENTS TO THE CITY OF BUFFALO AND THE POLICE DEFENDANTS**

Pursuant to Rules 26, 33, and 34 of the Federal Rules of Civil Procedure ("Federal Rules") and Rule 26 of the Local Rules of the Western District of New York ("Local Rules"), Plaintiffs Darryl Boyd and John Walker, Jr. request that Defendants The City of Buffalo, Michael Guadagno, John Montondo, Linda J. Fial as Executor for the Estate of Robert Grabowski, and Martin Bullock as Executor for the Estate of James E. Hunter answer under oath the following Interrogatories and produce for inspection and copying the documents specified herein within thirty (30) days after service at the offices of Wilmer Cutler Pickering Hale and Dorr, 7 World Trade Center, 250 Greenwich St., New York, NY 10007 and the offices of Joel B. Rudin, P.C., Carnegie Hall Tower, 152 West 57th St., 8th Floor, New York, NY 10019.

**INSTRUCTIONS**

The following definitions and instructions apply to each of the interrogatories and document requests (collectively, the "Requests") set forth below and are deemed to be incorporated therein except to the extent a particular Request may contain contrary definitions and instructions.

1. Separate and complete sworn responses (or, as the case may be, separate objections) are required for each Interrogatory.

2. Each Document Request requires the Defendants to produce all responsive documents that are in their possession, custody, or control, including but not limited to documents that are in the possession, custody, or control of the BPD or an Individual Defendant or his executor.

3. If the Defendants object to any portion of any Request, they must set forth the exact grounds upon which they rely with specificity so as to permit the Court to determine the

legal sufficiency of their objection and produce all documents or provide all information to the fullest extent possible to which the objection does not apply. In the case of any documents, things, or information withheld on the grounds of privilege or work product, the Defendants must provide information for each document or thing pursuant to Local Rule 26(d).

4. Unless otherwise stated, the relevant time period for these Requests is January 1, 1963 to December 31, 1985.

5. These Requests are continuing in nature and require supplemental or additional responses in accordance with Rule 26 of the Federal Rules.

6. None of the definitions, instructions, or Requests set forth herein shall be construed as an admission relating to the existence of any evidence, to the relevance or admissibility of any evidence, or to the truth or accuracy of any statement or characterization in the definition, instruction, or Request.

7. If in answering these Requests the Defendants claim any ambiguity in either the Request or an applicable definition or instruction, they must identify in their response the language they consider ambiguous, explain why they believe such language is ambiguous, and state the interpretation they are using in responding.

8. The singular form of a word shall be interpreted as plural, and the plural form of a word shall be interpreted as singular, whenever appropriate, in order to bring within the scope of these Requests any information or document that might otherwise be considered beyond their scope.

9. In the event that multiple copies of a document exist, produce every copy on which appear any notations or markings of any sort not appearing on any other copy.

10. If the Defendants or their attorneys know of the existence, past or present, of any document described in these Requests, but such document is not presently in the Defendants' possession, custody, or control, or in the possession, custody, or control of their agents, representatives, or attorneys, the Defendants must identify the document and the individual in whose possession, custody, or control the document was last known to reside. If the document no longer exists, the Defendants must state when, how, and why the document ceased to exist.

11. The documents produced in response to these Requests shall be organized and designated to correspond to the categories in these requests or, if not, shall be produced as they are maintained in the normal course of business, and in either case: (a) all associated file labels, file headings, and file folders shall be produced together with the responsive documents from each file and each file shall be identified as to its owner or custodian; (b) all documents that cannot be legibly copied shall be produced in their original form; otherwise, you may produce photocopies; (c) all photocopies shall be stapled or clipped as the originals; and, (d) each page shall be given a discrete production number.

12. Produce documents responsive to individual Requests as soon as possible and without waiting to produce documents responsive to other Requests whenever possible.

**DEFINITIONS**

1. These Requests incorporate by reference the Uniform Definitions for All Discovery Requests set forth in Local Civil Rule 26(c).

2. "Action(s)" mean the above captioned action(s).

3. "Complaint(s)" means the complaints, dated July 6, 2022, filed in the Actions.

4. "The City," "Buffalo," "You," and "Your" mean the Defendant City of Buffalo, and any of the attorneys, paralegals, employees, agents, agents, representatives, investigators and

other individuals, present and former, acting on behalf of the City of Buffalo, including but not limited to the City of Buffalo Police Department.

5. "Crawford Defendants" means the four persons charged in Criminal Indictment No. 41413: Darryl Boyd (DOB 8/14/1959), John Walker, Jr. (DOB 7/10/1959), Darryn Gibson (DOB 1/19/1959), and Floyd Martin (DOB 9/8/59).

6. "Crawford Murder" means the January 1976 murder of William F. Crawford (DOB 7/12/1913), S.S.N. ending in 4998, in Buffalo, New York.

7. "Crosby Murder" means the 1976 murder of William Crosby at 2045 Fillmore Ave., Buffalo, NY.

8. "ECDA" means the Erie County District Attorney's Office and all attorneys, employees, agents, representatives, and other individuals, present and former, acting on behalf of the Erie County District Attorney's Office.

9. "Police Officer" means any person currently or formerly employed by the BPD whose job is to enforce laws, investigate crimes, and/or make arrests, including all officers, detectives, and all higher-ranking officers, through the rank of police commissioner, within a police department.

10. "BPD" means the City of Buffalo Police Department and all employees, agents, representatives, and other individuals, present and former, acting on behalf of the City of Buffalo Police Department.

11. "Conviction Integrity Unit" and "Cold Case Unit" mean the units of the BPD by those names.

other individuals, present and former, acting on behalf of the City of Buffalo, including but not limited to the City of Buffalo Police Department.

5. "Crawford Defendants" means the four persons charged in Criminal Indictment No. 41413: Darryl Boyd (DOB 8/14/1959), John Walker, Jr. (DOB 7/10/1959), Darryn Gibson (DOB 1/19/1959), and Floyd Martin (DOB 9/8/59).

6. "Crawford Murder" means the January 1976 murder of William F. Crawford (DOB 7/12/1913), S.S.N. ending in 4998, in Buffalo, New York.

7. "Crosby Murder" means the 1976 murder of William Crosby at 2045 Fillmore Ave., Buffalo, NY.

8. "ECDA" means the Erie County District Attorney's Office and all attorneys, employees, agents, representatives, and other individuals, present and former, acting on behalf of the Erie County District Attorney's Office.

9. "Police Officer" means any person currently or formerly employed by the BPD whose job is to enforce laws, investigate crimes, and/or make arrests, including all officers, detectives, and all higher-ranking officers, through the rank of police commissioner, within a police department.

10. "BPD" means the City of Buffalo Police Department and all employees, agents, representatives, and other individuals, present and former, acting on behalf of the City of Buffalo Police Department.

11. "Conviction Integrity Unit" and "Cold Case Unit" mean the units of the BPD by those names.

12. "Plaintiffs," "Darryl Boyd," "Mr. Boyd," "John Walker," or "Mr. Walker" mean the plaintiffs in the Actions, Darryl Boyd (DOB 8/14/1959) and John Walker, Jr. (DOB 7/10/1959).

**INTERROGATORIES**

**INTERROGATORY NO. 1**

With respect to homicide investigations conducted during 1976-77, identify the principal policymaker for the BPD with respect to the following functions:

a. Interrogations of witnesses and suspects, including the use of pressure, promises, deceptions and ruses;

b. The detention of witnesses or suspects, without probable cause, for the purpose of interrogation;

c. Arrests based upon probable cause;

d. Documentation of investigative steps in reports;

e. Note-taking;

f. Gathering and preserving physical and other forensic evidence;

g. The use of polygraph examinations;

h. Developing informants, snitches, and cooperating witnesses;

i. The disclosure to the ECDA of exculpatory or impeachment information favorable to the defense within the meaning of *Brady v. Maryland,* 373 U.S. 63 (1963), and its progeny.

**RESPONSE TO INTERROGATORY NO. 1**

**INTERROGATORY NO. 2**

Describe the responsibilities and functions of the Chief of the Homicide Detectives Unit during 1976-77 with respect to the conduct of homicide investigations.

**RESPONSE TO INTERROGATORY NO. 2**

**INTERROGATORY NO. 3**

Identify the BPD Patrol Guide, manual, directive, bulletin, memorandum, and/or other documents which promulgated or described the policies of the BPD in effect in 1976-77 with respect to the functions listed in Interrogatory 1.

**RESPONSE TO INTERROGATORY NO. 3**

**INTERROGATORY NO. 4**

State whether the City of Buffalo, including the BPD, had any process for investigating or disciplining Police Officers for misconduct allegedly committed during homicide or other felony investigations or prosecutions and, if so, describe the process in detail.

**RESPONSE TO INTERROGATORY NO. 4**

**INTERROGATORY NO. 5**

State whether the BPD investigated or disciplined any Police Officers for misconduct relating to any of the functions listed in Interrogatory 1 and, if so, state the name of the Police Officer, the alleged conduct that was investigated or disciplined, the name of the official or officials who conducted the investigation or imposed the discipline, the date or dates when the investigation or discipline occurred, and describe in detail the discipline imposed.

**RESPONSE TO INTERROGATORY NO. 5**

**INTERROGATORY NO. 6**

State whether Police Officers, between January 1, 1963, and December 31, 1977, received training in any of the functions listed in Interrogatory 1, describe the nature of the training, and identify who provided the training.

**RESPONSE TO INTERROGATORY NO. 6**

**INTERROGATORY NO. 7**

Describe the practice, if any, of the BPD to maintain a file or otherwise keep track of complaints that were made against individual Police Officers for misconduct related to their investigation of homicides or other criminal matters.

**RESPONSE TO INTERROGATORY NO. 7**

**INTERROGATORY NO. 8**

State whether the BPD, including but not limited to the Homicide Bureau, kept statistics concerning the closing of homicide and other investigations with arrests.

**RESPONSE TO INTERROGATORY NO. 8**

**INTERROGATORY NO. 9**

State whether the City of Buffalo or the BPD, from January 1, 1976, to present, had or has any insurance policy that covered or covers claims against the City or individual employees of the City for misconduct related to criminal investigations or arrests and, if so, identify the carrier and the dates of coverage.

**RESPONSE TO INTERROGATORY NO. 9**

**INTERROGATORY NO. 10**

Explain in detail the factual and/or legal basis for each of the Defendants' affirmative defenses.

**RESPONSE TO INTERROGATORY NO. 10**

**INTERROGATORY NO. 11**

Identify by caption and index or docket number every lawsuit brought against the City of Buffalo or any present or former Police Officer from January 1, 1963, to the present which (a) resulted in a monetary recovery for the plaintiff of at least $10,000, and (b) alleged an arrest without probable cause, malicious prosecution, fabrication of evidence, improper interrogation of a suspect or witness, failure to disclose *Brady* material, and/or municipal liability under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).

**RESPONSE TO INTERROGATORY NO. 11**

**DOCUMENT REQUESTS**

**REQUEST FOR PRODUCTION NO. 1**

All documents that provide any of the information requested in the preceding Interrogatories.

**REQUEST FOR PRODUCTION NO. 2**

All documents upon which Defendants intend to or do rely, in their direct case or for impeachment, at any trial for liability or damages, for any purpose at any deposition or hearing relating to this lawsuit, or in any motion to dismiss or for summary judgment.

**REQUEST FOR PRODUCTION NO. 3**

All documents relating to any matter alleged in the Complaints or in Defendants' Answers or Cross-Claims.

**REQUEST FOR PRODUCTION NO. 4**

The complete homicide or case file and all other records of the BPD concerning the investigation of the Crawford Murder; the investigation, arrests, and prosecution of the Crawford Defendants; the detention, interrogation, and/or arrests of any additional suspect or any witness allegedly with knowledge of the Crawford Murder or those who committed it; and any review or reinvestigation of the convictions of the Crawford Defendants, through the present. This request includes, but is not limited to: hearing and/or trial exhibits; *Rosario* and *Brady* material; records of disclosure to the ECDA, including any receipts or acknowledgments in any form; transcripts; charging instruments, including any drafts; notes; memo book entries; e-mails; correspondence; faxes; Dictaphone recordings; press releases; teletypes; text messages; memoranda; intake bureau reports; material witness applications, warrants, orders, and/or hearing transcripts; witness statements; witness relocation or protection records; records of any payments made or offered to any witness or on any witness' behalf for housing, meals, travel, or otherwise; orders to produce; police reports or P-73s, including drafts; wanted posters; oral or video recordings;

911 tapes; notes or summaries of anonymous tips or calls; polygraph examination materials, including pre-test interviews, charts or other test results, and tapes; photographs; drawings; physical evidence of any kind; requests for laboratory examinations; forensic reports; fingerprint examinations, comparisons or reports; evidence sheets, cards, or logs; subpoenas; receipts; returns on subpoenas; and calendar entries and logs.

**REQUEST FOR PRODUCTION NO. 5**

All documents concerning this lawsuit or Plaintiffs obtained by Defendants through subpoena or through use of the Plaintiff's HIPAA, CPL § 160.50, or other release.

**REQUEST FOR PRODUCTION NO. 6**

All records containing statements of any kind of Plaintiffs in Defendants' possession, custody, or control, whether oral, written, or otherwise recorded, and whether verbatim or summarized, in whole or in part.

**REQUEST FOR PRODUCTION NO. 7**

All records containing statements of any witness to the Crawford Murder (including witnesses who did not testify at Plaintiffs' criminal trials) in Defendants' possession, custody, or control, whether oral, written, or otherwise recorded.

**REQUEST FOR PRODUCTION NO. 8**

To the extent not covered by the previous requests, all records of the BPD of threats made against or to any witness, including Tyrone Woodruff and Andre Hough, including any investigation into such threats.

**REQUEST FOR PRODUCTION NO. 9**

To the extent not covered by the previous requests, all records concerning any written communication with, and all benefits requested by, promised to, or received by, Tyrone Woodruff, Andre Hough, Joseph Tatar, and any other witness.

**REQUEST FOR PRODUCTION NO. 10**

All documents concerning any arrests and prosecutions of Tyrone Woodruff, Andre Hough, and Joseph Tatar.

**REQUEST FOR PRODUCTION NO. 11**

All documents concerning any investigation, detention as a material witness, or criminal prosecution of Shirly A. Floyd (aka "Scheryl Floyd") (DOB 2/9/1950), S.S.N. ending in 5597, during the time period January 2, 1976 through August 3, 1977.

**REQUEST FOR PRODUCTION NO. 12**

All documents concerning any investigation or prosecution of Lawrence R. Watson (aka "Larry Watson") (DOB 6/5/1943); Jerome Boyd (DOB 10/5/1939); Andre Hough (DOB 11/17/1960); and Tyrone Woodruff (DOB 6/1958) for any alleged crime, including but not limited to the Crawford Murder.

**REQUEST FOR PRODUCTION NO. 13**

All documents concerning the Crosby Murder, including, but not limited to, complaint, arrest, P-73, or other reports; witness statements, evidence vouchers, fingerprint and ballistics analyses, or requests for comparison; and all other requests for or results of forensic examinations, tests, and comparisons.

**REQUEST FOR PRODUCTION NO. 14**

All e-mails, text messages, correspondence, or other communications, in any form, after the convictions of the Crawford Defendants, sent or received by the Police Commissioner, including but not limited to Byron Lockwood, and any member of the Cold Case Squad,

including but not limited to Lissa Redmond, Mary Evans, and John Paradowski, concerning the Crawford Murder.

**REQUEST FOR PRODUCTION NO. 15**

Any document showing the organizational structure of the BPD on or about January 1, 1977.

**REQUEST FOR PRODUCTION NO. 16**

Regarding the BPD's budget for the fiscal years 1971-1980:

a. The final budget authorized by the Buffalo Common Council and/or the Mayor's Office.

b. Budget requests by the BPD, including but not limited to funds requested for training, supervision, and discipline of police officers and detectives.

**REQUEST FOR PRODUCTION NO. 17**

All training materials, Patrol Guides, BPD manuals, bulletins, directives, memoranda, and other documents concerning standards, requirements, policies, and procedures for the BPD generally, and for the Homicide Detectives Bureau or unit in particular, in the following areas of police practice:

a. Hiring, promotion to the rank of detective, and/or transfer to the Homicide Bureau;

b. The responsibilities of an assigned case detective in charge of an individual felony or homicide investigation;

c. The conduct of homicide investigations;

d. The duties and responsibilities of the Chief of the Homicide Detectives Bureau or unit;

e. The preparation of written reports, including the substance of information to be recorded;

f. The taking and preservation of notes;

g. The collection, handling, safekeeping, and vouchering of physical evidence, including fingerprints, blood, property of a victim, weapons, contraband, photographs, and other evidence of or relating to the crime;

h. Identification procedures;

i. The responsibilities of the first officer at the scene;

j. The review and preservation of 911 recordings;

k. Interrogation procedures and techniques, including the giving of *Miranda* warnings and the use of promises, threats, or trickery;

l. Interrogation procedures and techniques for the questioning of minors;

m. Detentions for the purpose of investigation or interrogation;

n. Audio or visual recordings of interrogations or witness interviews;

o. The requirements for a proper arrest, including probable cause and a warrant;

p. Polygraph testing of witnesses, suspects, and defendants;

q. The responsibilities of the Crime Scene Unit;

r. The responsibilities of a police photographer;

s. The handling and recording of anonymous calls and tips;

t. The recruitment, interrogation, and handling of police cooperating witnesses, informants or snitches;

e. The preparation of written reports, including the substance of information to be recorded;

f. The taking and preservation of notes;

g. The collection, handling, safekeeping, and vouchering of physical evidence, including fingerprints, blood, property of a victim, weapons, contraband, photographs, and other evidence of or relating to the crime;

h. Identification procedures;

i. The responsibilities of the first officer at the scene;

j. The review and preservation of 911 recordings;

k. Interrogation procedures and techniques, including the giving of *Miranda* warnings and the use of promises, threats, or trickery;

l. Interrogation procedures and techniques for the questioning of minors;

m. Detentions for the purpose of investigation or interrogation;

n. Audio or visual recordings of interrogations or witness interviews;

o. The requirements for a proper arrest, including probable cause and a warrant;

p. Polygraph testing of witnesses, suspects, and defendants;

q. The responsibilities of the Crime Scene Unit;

r. The responsibilities of a police photographer;

s. The handling and recording of anonymous calls and tips;

t. The recruitment, interrogation, and handling of police cooperating witnesses, informants or snitches;

u. The disclosure to the ECDA of information or documents, known as *Brady* material, that are exculpatory to the accused, impeaching of any potential prosecution witness, or otherwise favorable to the defense, including the recording of such information and the timing of such disclosure;

v. The role of the ECDA in homicide investigations; and

w. Procedures for closing cases.

**REQUEST FOR PRODUCTION NO. 18**

All BPD training materials, Patrol Guides, manuals, bulletins, directives, memoranda, and other documents containing rules or procedures for investigating and Police Officers who commit misconduct related to criminal investigations and prosecutions.

**REQUEST FOR PRODUCTION NO. 19**

All documents containing BPD policy, procedure, and/or directives with regard to the investigation and arrests of juveniles generally, and in the area of the Glenny Projects, during 1976-77 for gang-related or other criminal activities.

**REQUEST FOR PRODUCTION NO. 20**

All documents concerning the BPD's homicide closure rates, including any internal memoranda or materials discussing the need to make arrests and obtain convictions in homicide or other violent crime cases.

**REQUEST FOR PRODUCTION NO. 21**

The personnel records of Leo J. Donovan, John Montondo, Robert Grabowski, Michael G. Guadagno, Frank C. Deubell, James E. Hunter, Francis M. Manista, Jr., Robert F. Arnet, Paul R. Delano, Gerald O. Dove, John Regan, John Ludtka, Vincent Pantano, Mel Lobbett, James P.

Riley, Stanley Suszek, Bernard Szpila, Frank Gibbons, Al Hauser, Marion Przybala, Detective Robson (first name unknown), and Edwin Gorski, including but not limited:

a. Application for employment with the BPD;

b. Promotions or changes of assignment, including but not limited to applications for promotion and promotion-related examinations or interviews;

c. Training received, including but not limited to any materials, memoranda, credentials, syllabi, course descriptions, records of attendance at any in-house or outside training courses, and training-related evaluations and testing results;

d. Performance evaluations;

e. Requests for recognition or commendations and receipts thereof;

f. Misconduct complaints, charges, allegations, and/or findings, whether substantiated or not; and

g. Salary, payment, compensation, and expense records and reports.

Plaintiffs reserve the right to supplement and amend the foregoing Requests.

/s/ Ross E. Firsenbaum

Ross E. Firsenbaum
Ryanne E. Perio
Gideon A. Hanft
Phoebe Silos
Erin Hughes
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800
ross.firsenbaum@wilmerhale.com
gideon.hanft@wilmerhale.com
ryanne.perio@wilmerhale.com
phoebe.silos@wilmerhale.com
erin.hughes@wilmerhale.com

Joel B. Rudin
David E. Rudin
LAW OFFICES OF JOEL B. RUDIN, P.C.
Carnegie Hall Tower
152 West 57th Street, 8th Floor
New York, New York 10019
(212) 752-7600
jbrudin@rudinlaw.com
david@rudinlaw.com

Timothy W. Hoover
Spencer L. Durland
HOOVER & DURLAND LLP
561 Franklin St.
Buffalo, New York 14202
(716) 800-2600
thoover@hooverdurland.com
sdurland@hooverdurland.com

*Attorneys for Plaintiffs Darryl Boyd and John Walker, Jr.*

Dated: New York, New York
September 29, 2022

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DARRYL BOYD,<br><br>Plaintiff,<br><br>- against -<br><br>THE CITY OF BUFFALO; THE COUNTY OF ERIE; MICHAEL G. GUADAGNO; JOHN MONTONDO; LINDA J. FIAL AS EXECUTOR FOR THE ESTATE OF ROBERT GRABOWSKI; AND MARTIN BULLOCK AS EXECUTOR FOR THE ESTATE OF JAMES E. HUNTER,<br><br>Defendants. | **Case No. 1:22-cv-520** |

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this 29th day of September, 2022, I caused Plaintiff Darryl Boyd and John Walker, Jr.'s First Set of Document Requests to be served on the following parties in the manner specified for each party below:

| <u>NAME AND ADDRESS OF PARTY</u> | <u>METHOD OF SERVICE</u> |
|---|---|
| Adam Walter Perry, Esq.<br>Hodgson Russ, LLP<br>140 Pearl St. Suite 100<br>Buffalo, NY, 14202<br><br>*Counsel for Defendants City of Buffalo, John Montondo, Linda J. Fial, Martin Bullock, and Michael G. Guadagno* | Mail |
| Jennifer C. Persico, Esq.<br>Lippes Mathias LLP<br>50 Fountain Plaza Suite 1700<br>Buffalo, NY 14202<br><br>*Counsel for Defendant County of Erie* | Mail |

Dated: September 29, 2022
New York, New York

/s/ Ross E. Firsenbaum

Ross E. Firsenbaum