UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DARRYL BOYD,

                        Plaintiff,

v.                                                                                            **DECISION AND ORDER**

THE CITY OF BUFFALO, *et al.*,                           22-cv-00519(JLV)(JJM)

                        Defendants.
_____

JOHN WALKER, Jr.,

                        Plaintiff,

                                                         22-cv-00520(JLV)(JJM)

v.

THE CITY OF BUFFALO, *et al.*,

                        Defendants.
_____

        Following separate jury trials, plaintiffs Darryl Boyd and John Walker, Jr. were convicted in 1977 of second degree murder and first degree robbery in connection with the January 2, 1976 murder of William Crawford. After exhausting their appellate rights and several unsuccessful collateral attacks to their convictions, on August 18, 2021, the New York State Supreme Court, County of Erie, granted their New York Criminal Procedure Law ("CPL") §440.10 motion, resulting in the vacatur of their convictions. Thereafter, plaintiffs commenced these 42 U.S.C. §1983 actions for alleged constitutional and New York State law violations arising from their prosecutions.

        Before the court are the motions of the defendant County of Erie to bifurcate and stay discovery concerning plaintiffs' claims pursuant to Monell v. Department of Social Services

of City of New York, 436 U.S. 658 (1978) (Boyd v. The City of Buffalo, *et al.* (22-cv-519) [62]; Walker, Jr. v. The City of Buffalo, *et al.* (22-cv-520) [63]), as well the remaining portions of plaintiffs' motions to compel (Boyd v. The City of Buffalo, *et al.* (22-cv-519) [63]; Walker, Jr. v. The City of Buffalo, *et al.* (22-cv-520) [64]).[1] Having heard oral argument on March 13, 2023 [77], and considered the parties' submissions [62-63, 68, 70-73, 87, 91, 95, 99-101, 103], for the following reasons the County's motions to bifurcate and stay are denied, and plaintiffs' remaining motions to compel are granted.

## BACKGROUND

The parties' familiarity with the factual allegations is presumed. The Amended Complaints each assert two claims against the County: the first, pursuant to 42 U.S.C. §1983, for Monell liability arising from the alleged misconduct of the Erie County District Attorney's Office ("ECDAO") prosecutors ([78], Count VII); and the second, a state law claim arising from its alleged negligent failure to properly hire, train, and supervise the ECDAO prosecutors (id., Count X).

The Monell claim against the County contains extensive allegations concerning the Constitutional violations committed by the ECDAO prosecutors responsible for prosecuting plaintiffs, as well as the alleged deliberate indifference by the ECDAO policymakers. *See* Amended Complaint [78], Count VII. No ECDAO prosecutors, the Erie County District Attorney ("ECDA"), or other County employees are named as defendants in either action.

---

[1] Bracketed references are to CM/ECF docket entries, and page references are to CM/ECF pagination. Unless otherwise noted, all docket entries will be to Boyd v. The City of Buffalo, *et al.* (22-cv-519).

At the outset of these cases, which were filed on July 6, 2022, the County did not oppose the Monell discovery proceeding on the same track as the other discovery in this case. In fact, plaintiffs contend - and the County does not refute - that its proposed Case Management Order [32-1] specifically proposed a lengthier period for fact discovery (of October 23, 2023) "to account for simultaneous, non-bifurcated Monell discovery" (plaintiffs' Memorandum of Law [70] at 24; plaintiffs' September 16, 2022 letter [33]), which was partially adopted. *See* Case Management Order [34], ¶7 (adopting a fact discovery deadline of August 2, 2023). It was not until January 23, 2023, four months after the entry of the Case Management Order, that the County moved to bifurcate the Monell discovery.

As the County notes, plaintiffs' "First Set of Interrogatories and Requests for Production . . . requests voluminous information and documentation going back over [40] years almost all of which relates only to their Monell claims". County's Memorandum of Law [62-1] at 9. The parties have been able to resolve plaintiffs' motion to compel concerning that discovery, except for Request for Production Nos. 9 and 10 ([63-3] at 14-15),[2] which have been narrowed to a dispute concerning the production of the case files from 16 prosecutions that occurred prior and subsequent to plaintiffs' convictions.

According to the County, these records are maintained at an off-site storage facility, which contains "tens, if not hundreds, of thousands of Bankers Boxes of County files spanning several decades", and encompassing "all departments within the County - not just the [ECDAO]". Eaton Affirmation [72-2], ¶10. Having "moved sites multiple times", the records are

---

[2] At the April 13, 2023 conference, the parties reached certain agreements to resolve portions of plaintiffs' motions to compel, which I directed them to memorialize and to identify any remaining portions of the motions that require a decision. *See* April 13, 2023 Text Order [92]. Consistent with that directive, the parties have since each submitted competing proposed Orders. *See* [99] (plaintiffs' version), [101-2] (the County's version). Notwithstanding their differences, the parties agree that the remaining areas of dispute are the 16 case files. *See* [99], ¶6; [101-2], ¶9.

not maintained in a readily searchable fashion. Id., ¶13.  In fact, at the April 13, 2023 conference the County's attorney acknowledged that the records "are not stored in a very organized fashion". Transcript [94] at 26.  It describes the task of locating these files as "gargantuan" (Eaton Affirmation [72-2], ¶13), with potentially "hundreds of man hours . . . . spent in vain", if "[p]laintiffs are not successful on their underlying constitutional claims". Reply Memorandum of Law [72] at 7. Therefore, it contends that "[t]he efficient use of all parties' and the Court's resources clearly favors bifurcation of [the Monell] discovery". Id.

**DISCUSSION**

**A.     The County's Motions to Bifurcate and Stay**

"[U]pon a showing of good cause a district court has considerable discretion to stay discovery pursuant to [Fed. R. Civ. P. ("Rule")] 26(c). Rule 26(d) also allows the Court to control the sequence and timing of discovery, particularly where resolution of a preliminary matter may decide the entire case." Oliver v. City of New York, 540 F.Supp.3d 434, 435 (S.D.N.Y. 2021).  *See also* Baker v. Orleans County, 1997 WL 436703, *1 (W.D.N.Y. 1997) ("district courts are given reasonable latitude and discretion to establish a priority or to fashion an appropriate sequence of the discovery to be performed in each case").

Municipalities cannot be held liable under 42 U.S.C. §1983 for the acts of their employees unless their policies and customs were the "moving force behind the constitutional violation". City of Canton, Ohio v. Harris, 489 U.S. 378, 389 (1989).  Although no individual County employees are named as defendants in these actions,[3] plaintiffs still "must prove the

---

[3]     Although the ECDAO prosecutors are not individually named as defendants in this action, "the plaintiff[s] need not sue the individual tortfeasors at all, but may proceed solely against the municipality". Askins v. Doe No. 1, 727 F.3d 248, 253 (2d Cir. 2013).

denial of a constitutional right by a municipal officer in order to hold [the County] liable under Monell". Aquino v. City of New York, 2017 WL 2223921, *1 (S.D.N.Y. 2017). *See also* Oliver, 540 F.Supp.3d at 436 ("[i]n a lawsuit containing a Monell claim, if the plaintiff cannot show that his or her constitutional rights were violated by any individual defendants, the Monell claim will also fail"); Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006) ("[b]ecause the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under Monell was entirely correct").

"There is competing caselaw regarding whether an action should be bifurcated due to Monell claims. On the one hand, some courts have bifurcated discovery until individual defendant liability has been established." Fleming v. City of New York, 2023 WL 1861223, *2 (S.D.N.Y. 2023). *See, e.g.,* Gavin v. City of New York, 2021 WL 3774113, *5 (S.D.N.Y. 2021) ("since the proof required to establish a Monell claim is substantially different from the proof necessary to establish individual liability, the most prudent course is to address the Monell claims separately and to stay discovery concerning those claims until the liability of the individual defendants is established"); Morales v. Irizarry, 1996 WL 609416, *1 (S.D.N.Y. 1996) ("[t]he overwhelming weight of authority holds that since the City's liability is derivative of the individual defendants' liability, and since the proof required to establish a Monell claim is substantially different from the proof necessary to establish individual liability, the most prudent course is to try the Monell claims separately and to stay discovery concerning those claims until the liability of the individual defendants is established"); Roper v. City of New York, 2017 WL 462270, *2 (S.D.N.Y. 2017) ("courts often stay discovery on Monell claims until enough information is available [on the] individual claims - either at the close of discovery or following

summary judgment - to assess the strength of a claim that a constitutional violation actually took place"); Gugino v. City of Buffalo, 2022 WL 5240162, *2 (W.D.N.Y. 2022).

However, other courts "have held that Monell claims do not necessarily warrant bifurcation", particularly where no efficiencies are gained by doing so. Fleming, 2023 WL 1861223 at *2. *See, e.g.,* Crawley v. City of Syracuse, 2018 WL 3716782, *4 (N.D.N.Y. 2018) ("[b]ifurcation is the exception rather than the rule"); Lopez v. City of New York, 2021 WL 2739058, *2 (S.D.N.Y. 2021); Casaccia v. City of Rochester, 2020 WL 1042149, *4 (W.D.N.Y. 2020).

Ultimately, the decision "[w]hether to bifurcate lies within the Court's discretion", Lynch v. City of New York, 2020 WL 5750492, *2 (S.D.N.Y. 2020), based upon the "particular circumstances and posture of each case". Roper, 2017 WL 462270, *1. "The moving party bears the burden of demonstrating good cause under Fed. R. Civ. P. 26(c)." Id.

In opposing the County's motion to bifurcate, plaintiffs argue that estoppel and waiver bar the County from seeking bifurcation (plaintiffs' Memorandum of Law [70] at 22-27), and that it otherwise fails to demonstrate good cause for its motion. Id. at 27-36.   Although I do not find that the County's failure to earlier move to bifurcate judicially estops it from seeking bifurcation, that delay, coupled with other factors, demonstrates that it has failed to meet its burden of establishing good cause for bifurcation.

Initially, a stay and bifurcation of Monell discovery will only promote efficiency if there is some basis to conclude that plaintiffs will not be able to make the threshold showing necessary to establish Monell liability - *i.e.*, that constitutional violations were committed by the prosecutors who tried them. Otherwise, "[f]ar from advancing judicial economy and convenience, this approach would invite redundancy and waste". Palma v. Montgomery County,

Maryland, 598 F. Supp. 3d 288, 300 (D. Md. 2022). *See also* Cadiz v. Kruger, 2007 WL 4293976, *5 (N.D. Ill. 2007) ("a stay of Monell discovery will achieve cost savings only if one assumes that the parties are never required to go back and conduct Monell discovery at some later date").

Plaintiffs offer a detailed account of the alleged conduct of the ECDAO prosecutors, and characterize the evidence that the prosecutors committed constitutional violations during their trials as "overwhelming". [70] at 29. *See also* Rudin Declaration [71], ¶¶66-110.  Apart from generalized assertions, the County offers no specific arguments as to why plaintiffs will not be able to establish that constitutional violations were committed by its prosecutors. *See* Cadiz, 2007 WL 4293976, *5 ("[t]he City's motion does not speak at all to the merits of the individual Section 1983 claim or explain why we should predict the failure of plaintiff's individual claims, and thus we have no reason to conclude that plaintiff's individual Section 1983 claims will fail").  Without determining whether plaintiffs will ultimately be able to establish at summary judgment that constitutional violations were committed by the ECDAO prosecutors, from what has been presented thus far at this early stage, it seems likely that bifurcation will only defer, but not eliminate, the need for Monell discovery. *See* Lopez v. The City of New York, 2021 WL 2739058, *2 (S.D.N.Y. 2021) ("[a]t this stage . . . the Court cannot decide that the Monell claim is without merit much less that it is so clearly without merit that discovery should not be permitted").

Nor will this "additional Monell discovery . . . transform an otherwise small case into a large one". Cadiz, 2007 WL 4293976, *4.  The parties have been able to resolve their disputes concerning much of the Monell discovery requested thus far, and the County's desire to stay and bifurcate Monell discovery arises from a particular item of Monell discovery, rather

than from the burden of such discovery as a whole. The County's opposition to the burden and relevance of obtaining other case files, while understandable, is "best dealt with pursuant to the standards under [Rule] 26(b) rather than through a stay or bifurcation of discovery". Lopez, 2021 WL 2739058, *3. See also Fleming, 2023 WL 1861223, *3 ("[a]ny concern regarding the relevance, proportionality, burden, and delay of Plaintiff's requested Monell discovery will be addressed by the Court through case and discovery management").

Finally, the delay resulting from a stay and bifurcation of the Monell discovery would severely prejudice plaintiffs. See Casaccia, 2020 WL 1042149 at *3 ("[i]n determining whether to bifurcate, a court may consider" a variety of factors, including "whether the party opposing bifurcation will be prejudiced if it is granted"). The advanced ages of key witnesses, including the former ECDA, Edward Cosgrove, who is 88 years old, and the ECDAO prosecutor for the Boyd trial, Timothy Drury, who is 82 years old, as well as the precarious health of the plaintiffs, weigh against further delay. See Plaintiff's Memorandum of Law [70] at 9-10. [4] Likewise, the City of Buffalo defendants have withdrawn their motion to bifurcate, and are equally entitled to a prompt resolution of this action.

By contrast, any prejudice to the County from not bifurcating the remaining Monell discovery is minimal because, as discussed above, bifurcation would be unlikely to eliminate the need for this discovery. Moreover, the burden to locate these records appears to be at least partially self-created. See Brooks v. Macy's, Inc., 2011 WL 1793345, *4 (S.D.N.Y. 2011) ("the burden that results from disorganized record-keeping does not excuse a party from producing relevant documents").

---

[4]  While the County has acknowledged its willingness to allow witnesses to be deposed on Monell issues (transcript [94] at 19), this would not eliminate the potential need for repeated depositions if Monell paper discovery were stayed and relevant documents for questioning were only produced after the fact.

While I recently granted bifurcation in Dixon v. City of Buffalo, et al., 19-cv-01678(WMS)(JJM) (March 8, 2022 Decision and Order [73]), another 42 U.S.C. §1983 action arising from a vacated conviction, these remain individualized determinations (see Roper, 2017 WL 462270, *1), and the circumstances here are sufficiently distinct to not warrant bifurcation. Therefore, the County's motions are denied.

B.   **Plaintiffs' Motions to Compel**

"A district court has wide latitude to determine the scope of discovery". In re Mirena IUS Levonorgestrel-Related Product Liability Litigation (No. II), 982 F.3d 113, 124 (2d Cir. 2020). Although "a party must be afforded a meaningful opportunity to establish the facts necessary to support his claim" (id.), discovery is generally limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Rule 26(b)(1).

"Although not unlimited, relevance, for purposes of discovery, is an extremely broad concept." Austin Air Systems, Ltd. v. Sager Electrical Supply Co., Inc., 2022 WL 464230, *12 (W.D.N.Y. 2022), adopted, 2023 WL 540119 (W.D.N.Y. 2023). Relevance "encompass[es] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case". Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). "However, a party generally must demonstrate a concrete linkage between the discovery sought and the claims or defenses asserted in the case." White v. City of Mount Vernon, 2022

WL 16578086, *2 (S.D.N.Y. 2022). "The party seeking the discovery bears the burden of establishing relevance." Id.

"Proportionality focuses on the marginal utility of the discovery sought." Vaigasi v. Solow Management Corp., 2016 WL 616386, *14 (S.D.N.Y. 2016). "Proportionality and relevance are 'conjoined' concepts; the greater the relevance of the information in issue, the less likely its discovery will be found to be disproportionate." In re LIBOR-Based Financial Instruments Antitrust Litigation, No. 11 MDL 2262 (NRB), 2023 WL 2871090, *5 (S.D.N.Y. 2023).

1.  **The 16 Case Files**

The parties have reached agreement on nearly all of plaintiffs' motion to compel, except for plaintiffs' request for the "hearing and trial transcripts, motion papers, and court orders" for the prosecutions underlying the following 16 cases (*see* [99], ¶6; [101-2], ¶9):

i. People v. Anderson, 25 A.D.2d 602 (4th Dept. 1966)
ii. People v. Moore, 26 A.D.2d 902 (4th Dept. 1966)
iii. People v. Slaughter, 28 A.D.2d 1082 (4th Dept. 1967)
iv. People v. Damon, 24 N.Y.2d 256 (1969)
v. People v. Donaldson, 49 A.D.2d 1004 (4th Dept. 1975)
vi. People v. Weston, 51 A.D.2d 881 (4th Dept. 1976)
vii. People v. Balsano, 51 A.D.2d 130 (4th Dept. 1976)
viii. People v. Kampshoff, 53 A.D.2d 325, 332 (4th Dept. 1976)
ix. People v. Mordino, 58 A.D.2d 197 (4th Dept. 1977)
x. People v. Johnson, 62 A.D.2d 555 (4th Dept. 1978)
xi. People v. Keller, 67 A.D.2d 153 (4th Dept. 1979)
xii. People v. Mitchell, 99 Misc.2d 332 (Sup. Ct., Erie Co. 1979)
xiii. People v. Clark, 89 A.D.2d 820 (4th Dept. 1982)[5]
xiv. People v. Ivey, 83 A.D.2d 788 (4th Dept. 1981)
xv. Matter of Potenza v. Kane, 79 A.D.2d 467 (4th Dept. 1981)
xvi. People v. Vance, 89 A.D.2d 347 (4th Dept. 1982).

---

[5] Although plaintiffs initially sought the case file in People v. Cadby, 75 A.D.2d 713 (4th Dept. 1980), they were able to independently obtain those materials, prompting them to substitute Clark for Cadby. *See* plaintiffs' April 21, 2023 letter brief [95] at 1 n. 2.

While the County maintains its objections to the production of these case files based on burden and relevance, it states that it is prepared to "conduct a search of its records for . . . case files . . . i-iv". April 21, 2023 letter brief [100] at 3.

**2.     Relevance**

The County objects to the relevance of cases files v-ix, because they were "decided less than three months before this incident and cannot support [p]laintiffs' Monell claims" (April 21, 2023 letter brief [100] at 3), and to the relevance of case files x-xvi, because these cases "occurred "after the [p]laintiffs' convictions and are therefore irrelevant to their Monell claims". Id.

"Municipalities . . . are liable under § 1983 only if the challenged conduct was pursuant to a municipal policy or custom . . . or caused by a failure to train". Guillette v. Burlington Police Department, 2022 WL 2208122, *1 (2d Cir. 2022) (Summary Order). *See also* Haslinger v. Westchester County, 2023 WL 219198, *1 (2d Cir. 2023) (Summary Order) ("Monell extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, leads to a constitutional violation"); Frost v. New York City Police Department, 980 F.3d 231, 257 (2d Cir. 2020) ("Monell does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation"); Allen v. Stringer, 2021 WL 4472667, *2 (2d Cir. 2021) (Summary Order) (same).

Where Monell liability is premised on a failure to train theory, it is well settled that "contemporaneous or subsequent conduct cannot establish a pattern of violations that would provide notice to the city and the opportunity to conform to constitutional dictates". Connick v.

Thompson, 563 U.S. 51, 63 n. 7 (2011). *See also* Greene v. City of New York, 742 F. App'x 532, 536–37 (2d Cir. 2018) (Summary Order). In fact, plaintiffs acknowledge that if their "Monell claim was limited to a failure to train . . . court decisions handed down after [p]laintiffs' criminal trials in 1977 would be irrelevant". April 21, 2023 letter brief [95] at 4.

However, as discussed above, failure to train is not the sole method of establishing Monell liability. Such liability can also be premised on the existence of an unconstitutional policy (s*ee, e.g.,* Frost, 980 F.3d at 257), which "may be pronounced or tacit and reflected in either action or inaction". Cash v. County of Erie, 654 F.3d 324, 334 (2d Cir. 2011). For instance, Monell liability may be based on the theory that "an officer with final policymaking authority ordered, ratified, or was aware of a subordinate's unconstitutional actions, and consciously chose to ignore them, effectively ratifying the actions", or that "unconstitutional practices were so widespread, persistent, and manifest as to imply constructive acquiescence on the part of the City". Hu v. City of New York, 927 F.3d 81, 104-05 (2d Cir. 2019).

As plaintiffs note, their broadly framed Amended Complaints rely on policy or custom and failure to train theories. *See* April 21, 2023 letter brief [95] at 3-4. *See, e.g.,* Amended Complaint [78], ¶¶532-58. Unlike the failure to train theory of Monell liability, "[s]ubsequent or contemporaneous conduct can be circumstantial evidence of the existence of preceding municipal policy or custom". Chepilko v. City of New York, 2012 WL 398700, *15 (E.D.N.Y. 2012); Collins v. City of New York, 923 F. Supp. 2d 462, 477 (E.D.N.Y. 2013) (although the Second Circuit has not addressed the issue, the court agreed with "several circuits" that "have expressly held that a policymaker's response to constitutional violations can support an inference that the violation conformed to a preexisting policy"); Kogut v. County of Nassau,

2012 WL 3704710, *3 (E.D.N.Y. 2012) ("unlike with Plaintiffs' constructive acquiesce theory - evidence of subsequent violations is irrelevant to a failure-to-train analysis").[6]

See also Bordanaro v. McLeod, 871 F.2d 1151, 1167 (1st Cir. 1989) ("[p]ost-event evidence can shed some light on what policies existed in the city on the date of an alleged deprivation of constitutional right"); Salvato v. Miley, 790 F.3d 1286, 1297 (11th Cir. 2015) (same); Henry v. County of Shasta, 132 F.3d 512, 519 (9th Cir. 1997), opinion amended on denial of reh'g, 137 F.3d 1372 (9th Cir. 1998) ("post-event evidence is not only admissible for purposes of proving the existence of a municipal defendant's policy or custom, but is highly probative with respect to that inquiry"); Grandstaff v. City of Borger, Texas, 767 F.2d 161, 171 (5th Cir. 1985) ("[t]he disposition of the policymaker may be inferred from his conduct after the [alleged constitutional violation]"); Groark v. Timek, 989 F. Supp. 2d 378, 397-98 (D.N.J. 2013) ("subsequent constitutional violations cannot be used to show its knowledge of an unconstitutional custom or policy at the time of plaintiff's . . . incident. Subsequent incidents, however, may be relevant to show a continuous pattern that supports a finding of an accepted custom or policy. They are also relevant to issues of 'pattern, intent, and absence of mistake'").

Apart from disputing the temporal relevance of the requested case files, the County also challenges their factual relevance. Relying on the allegations of prosecutorial misconduct in the Amended Complaint, and pointing to the fact that "[p]laintiffs can only hold

---

[6] Many of the cases that the County relies upon (see, e.g., April 21, 2023 letter brief [100] at 3) are distinguishable insofar as the plaintiffs were pursuing a failure to train theory of Monell liability. See O'Neal v. City of New York, 196 F. Supp. 3d 421, 435 (S.D.N.Y. 2016), aff'd, 679 F. App'x 16 (2d Cir. 2017) (since the decisions "were decided after the events affecting O'Neal . . . [he] cannot rely on them to plead that the City had notice of the alleged failure to train prosecutors to avoid Brady violations"); Rodriguez v. City of New York, 607 F. Supp. 3d 285, 299 (E.D.N.Y. 2022) (quoting from Mosca v. City of New York, 2018 WL 6835524, *6 (E.D.N.Y. 2018), report and recommendation adopted in relevant part, 2019 WL 938936 (E.D.N.Y. 2019), which also addressed Monell liability based on a failure to train theory).

the County liable for the *same* underlying constitutional violation that caused their alleged injury", the County contends that in order to be relevant, any other cases must specifically "relate to withholding of Brady material or improper summation remarks" (May 1, 2023 letter brief [103] at 2 (emphasis in the original)), rather than more broadly to any form of prosecutorial misconduct that impacted a criminal defendant's constitutional right to a fair trial, as plaintiffs' contend. *See* April 21, 2023 letter brief [95] at 8 ("[w]hat the 16 cases have in common with our case . . . is a complete indifference by the [ECDAO] to all forms of prosecutorial misconduct . . . which a jury may find created a lax atmosphere that led to the violations that occurred in [p]laintiffs' cases"). It is unnecessary for me to resolve this argument, since, from the summaries provided by plaintiffs (April 21, 2023 letter brief [95] at 8-15), it appears that many, if not all, of the case files sought involve findings (or potential allegations)[7] of either summation or Brady misconduct by the prosecutor.

Connick, supra, suggests that more similarity than just the same type of prosecutorial misconduct may be required to establish Monell liability. There, the Brady violation was the prosecutor's failure "to disclose the crime lab report to [the plaintiff's] counsel". 563 U.S. at 59. While the plaintiff pointed to the fact that state courts had overturned four other convictions from that prosecutor's office for Brady violations, the Supreme Court found that these violations did not put the prosecutor's office on notice that its training was

---

[7]   For instance, the County points that in Anderson, 25 A.D.2d at 603, it was unclear whether the trial court or prosecutor was responsible for the failure to disclose; in Kampshoff, 53 A.D.2d at 332, the Appellate Division, despite affirming the defendant's conviction, noted that the trial court (as opposed to the prosecutor) "improperly refused defendant's request for the production" of certain discovery; and in Mordino, 58 A.D.2d at 199, the sole question on appeal was whether media coverage tainted the defendant's right to a fair trial. The County's April 13, 2023 letter [91-1] at 2.  While the relevance of these cases presents a closer question, for the reasons set forth by plaintiffs ([95] at 8, 10-11; [87] at 2-3 n. 2), I agree that they are at least potentially relevant so as to warrant disclosure. *See* Brooks v. Macy's, Inc., 2011 WL 1793345, *2 (S.D.N.Y. 2011) ("[o]rdinarily, discovery concerning all relevant or potentially relevant issues is permitted").

"inadequate with respect to the sort of Brady violation at issue here", because "[n]one of those cases involved failure to disclose blood evidence, a crime lab report, or physical or scientific evidence of any kind". Id. at 62-63.

Thus, some courts have recognized that pursuant to Connick the comparable incidents must "closely resemble", Strode v. County of San Diego, 2019 WL 527468, *3 (S.D. Cal. 2019), or be "highly similar" to the underlying misconduct. Gianonne v. City of Naperville, 2017 WL 2569603, *2 (N.D. Ill. 2017). *See also* Williams v. City of Birmingham, 323 F. Supp. 3d 1324, 1334 (N.D. Ala. 2018) ("Connick illustrates the principle" that "courts demand a high degree of factual similarity between prior incidents and the episode involving the plaintiff for the former to be relevant to § 1983 liability for an alleged failure to train or supervise").

However, as plaintiffs note, Connick did not "did not rule at all on the requisites of a failure-to-discipline claim or on the scope of discovery in such cases", which is subject to a more relaxed standard of similarity. Plaintiffs' April 21, 2023 letter brief [95] at 7-8. "In the failure to discipline or supervise context, courts have required notice of similar types of constitutional violations, such as excessive force or withholding exculpatory material. But, those courts have not required the precise behaviors-such as the failure to disclose exculpatory scientific evidence-as required in the failure to train context." Poventud v. City of New York, 2015 WL 1062186, *16 (S.D.N.Y. 2015).

Therefore, I conclude that plaintiffs have offered enough at this stage to demonstrate that the 16 case files fall within the broad scope of relevant discovery. Whether and to what extent plaintiffs will be able to utilize the information from the 16 case files to establish Monell liability is a separate question.

### 3. Burden

"Once the movant establishes relevance, the burden shifts to the resisting party, who is tasked with showing how each request is not relevant, or how each request is overly broad, burdensome, or oppressive, despite the broad and liberal construction afforded by the federal discovery rules." Yong Biao Ji v. Aily Foot Relax Station Inc., 2021 WL 1930362, *2 (S.D.N.Y. 2021).

It is burdensome to produce documents "in any civil case that involves events from decades ago or facts that extend over a long period of time". Jackson v. City of Cleveland, 2022 WL 17089769, *2 (N.D. Ohio 2022). Any added difficultly in locating these records appears largely attributable to the County's own failure to maintain its records in an organized fashion, and "the burden that results from disorganized record-keeping does not excuse a party from producing relevant documents". Brooks, 2011 WL 1793345, *4. See also Kozlowski v. Sears, Roebuck & Co., 73 F.R.D. 73, 76 (D. Mass. 1976) ("[t]o allow a defendant whose business generates massive records to frustrate discovery by creating an inadequate filing system, and then claiming undue burden, would defeat the purposes of the discovery rules").

"[L]itigants have an obligation . . . to make *reasonable* efforts to locate responsive documents." Maxwell v. New York University, 2009 WL 1576295, *13 (S.D.N.Y. 2009) (emphasis in original), aff'd, 407 F. App'x 524 (2d Cir. 2010). The County's previous ability to locate plaintiffs' cases files in connection with their most recent CPL §440.10 motion in 2021 (*see* plaintiffs' April 21, 2023 letter [95] at 5) suggests that the 16 cases files are not irretrievable. However, regardless of whether the County will ultimately be able to locate all or some of these case files, the importance of these 16 targeted files to plaintiffs' ability to establish the County's liability outweighs the burden associated with making reasonable efforts to locate them. See Klein v. Madison, 2018 WL 3535301, *2 (E.D. Pa. 2018) ("the

proportionality of [the plaintiff's] requests must be measured against the exacting burden of proof a plaintiff faces to establish municipal liability under Monell"). Therefore, the County shall undertake reasonable efforts to locate and produce the 16 cases files identified above.

If the County is unable to produce any of the 16 files, it shall file a detailed statement of its efforts to locate the missing files by June 29, 2023. The County may respond to that submission by July 7, 2023, and a telephonic conference to address the submissions is scheduled for July 12, 2023 at 11:00 a.m. To access the teleconference, the parties shall dial 888-808-6929 and enter access code 1533000# sufficiently in advance of the proceeding.

## CONCLUSION

For these reasons, the County's motions (Boyd v. The City of Buffalo, et al. (22-cv-519) [62]); Walker, Jr. v. The City of Buffalo, et al. (22-cv-520) [63]) to bifurcate and stay discovery concerning plaintiffs' claim pursuant to Monell are denied, and plaintiff's remaining motions to compel (Boyd v. The City of Buffalo, et al. (22-cv-519) [63]; Walker, Jr. v. The City of Buffalo, et al. (22-cv-520) [64]) are granted.

**SO ORDERED**.

Dated:   May 19, 2023

                                                /s/Jeremiah J. McCarthy
                                                JEREMIAH J. MCCARTHY
                                                United States Magistrate Judge