UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DARRYL BOYD,<br><br>        Plaintiff,<br><br>v.<br><br>THE CITY OF BUFFALO, *et al.*,<br><br>        Defendants. | 22-CV-519 (LJV) (JJM) |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN WALKER, JR.,<br><br>        Plaintiff,<br><br>v.<br><br>THE CITY OF BUFFALO, *et al.*,<br><br>       Defendants. | 22-CV-520 (LJV) (JJM) |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO UNSEAL

**LAW OFFICES OF JOEL B. RUDIN, P.C.**
Joel B. Rudin
David E. Rudin
Carnegie Hall Tower
152 West 57th Street, 8th Floor
New York, New York 10019
(212) 752-7600
*jbrudin@rudinlaw.com*

**HOOVER & DURLAND LLP**
Timothy W. Hoover
Spencer L. Durland
561 Franklin Street
Buffalo, New York 14202
(716) 800-2604
*thoover@hooverdurland.com*

**WILMER CUTLER PICKERING HALE AND DORR LLP**
Ross E. Firsenbaum
Ryanne E. Perio
Gideon A. Hanft
Phoebe Silos
Erin Hughes
7 World Trade Center
250 Greenwich Street
New York, New York 10007
(212) 230-8800
*ross.firsenbaum@wilmerhale.com*

*Attorneys for Plaintiffs Darryl Boyd and John Walker, Jr.*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION .......................................................................................................... 1

FACTUAL BACKGROUND ......................................................................................... 1

   A. Boyd and Walker's Federal Section 1983 Lawsuits. .......................... 1

   B. Police Misconduct in *People v. Rollins*............................................. 3

ARGUMENT................................................................................................................... 6

  POINT I. Federal Courts Uniformly Recognize the Federal Interests That Support Unsealing in These Circumstances. ............................ 6

  POINT II. The *Rollins* File is Highly Relevant to Plaintiffs' Civil-Rights Actions. ................................................................................................ 8

  POINT III. Plaintiffs' Interest in Vindicating Their Federal Constitutional Rights Outweighs the Minimal Privacy Interests Implicated by the Requested Partial Unsealing. ................. 9

CONCLUSION ............................................................................................................. 11

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Adams v. Buffalo Pub. Sch.*,
  2014 WL 3882182 (W.D.N.Y. Aug. 7, 2014) .................................................................. 7

*Amnesty Am. v. Town of W. Hartford*,
  361 F.3d 113 (2d Cir. 2004) ........................................................................................... 8

*Crosby v. City of New York*,
  269 F.R.D. 267 (S.D.N.Y. 2010) .................................................................................... 6

*Daniels v. City of New York*,
  2001 WL 228091 (S.D.N.Y. Mar. 8, 2001) .................................................................... 7

*Fountain v. City of New York*,
  2004 WL 941242 (S.D.N.Y. May 3, 2004) .................................................................... 7

*Gross v. Lunduski*,
  304 F.R.D. 136 (W.D.N.Y. 2014) .................................................................................. 8

*K.A. v. City of New York*,
  2022 WL 1063125 (S.D.N.Y. Apr. 8, 2022) ................................................................... 6

*King v. Conde*,
  121 F.R.D. 180 (E.D.N.Y. 1988) ................................................................................... 6

*Lehman v. Kornblau*,
  206 F.R.D. 345 (E.D.N.Y. 2001) ................................................................................... 7

*MacNamara v. City of New York*,
  2006 WL 3298911 (S.D.N.Y. Nov. 13, 2006) ......................................................... 10, 11

*Negron v. City of New York*,
  No. 18-CV-6645 (E.D.N.Y. Nov. 22, 2019) .................................................................. 6

*United States v. One Parcel of Property at 31-33 York Street*,
  930 F.2d 139 (2d Cir. 1991) ........................................................................................... 7

*Williams v. Swack*,
  2016 WL 3536574 (W.D.N.Y. June 29, 2016) .............................................................. 7

*Woodard v. City of New York*,
  2000 WL 516890 (E.D.N.Y. Mar. 10, 2000) ............................................................... 10

**State Cases**

*People v. Tommy Rollins*, Ind. No. 82-1064 (Sup. Ct. Erie Cty.) ........................... 1, 4, 11

**Statutes**

New York Criminal Procedure Law § 160.50 ................................................................. 1, 4

**Rules**

Federal Rule of Evidence 404(b) ........................................................................................ 8

Federal Rule of Evidence 801(d)(2) ................................................................................... 8

**Other Authorities**

*Boy Admits Lookout Role in Killings*,
    Buffalo Courier Express, A-3 (July 31, 1982) ........................................................... 10

*County May Expand Legal Aid for Police*,
    The Buffalo News (Aug. 7, 1974) .............................................................................. 9

*Errors by Police Lead to Dismissal Of Murder Charges*,
    The Buffalo News (May 18, 1985) ............................................................................. 4

Greg Faherty, *Suspects in Killing of Couple Get Hearing*,
    Buffalo Courtier Express, A-3 (Aug. 10, 1982) ........................................................ 10

*Sexual Attack Proven*,
    Buffalo Courier Express, A-3 (Aug. 4, 1982) ........................................................... 10

*Teen Pleads Innocent to Murder*,
    Buffalo Courier Express, A-3 (Sept. 16, 1982) ......................................................... 10

*Winners of Mayor's Merit Awards Honored*,
    The Buffalo News (May 17, 1986) .............................................................................. 5

# INTRODUCTION

Plaintiffs John Walker, Jr. and Darryl Boyd (collectively, "Plaintiffs") respectfully submit this memorandum of law in support of their motion to unseal records in *People v. Tommy Rollins*, Ind. No. 82-1064 (Sup. Ct. Erie Cty.) solely for use by the parties in the instant actions. The records are highly relevant to Plaintiffs' federal civil-rights claims because they concern similar misconduct by some of the same detectives, including Defendants Estate of Leo J. Donovan and John Montondo, and the indifference of Buffalo Police Department ("BPD") officials to such misconduct.

The records in *People v. Rollins* are sealed pursuant to New York Criminal Procedure Law ("CPL") § 160.50 because the case was dismissed in 1985 following a finding by The Honorable Theodore Kasler, J.S.C., that BPD detectives had committed "blatant and egregious misconduct" in coercing a confession from Mr. Rollins, a teenager just like the witnesses whom police coerced to incriminate Plaintiffs. *See infra* pp. 3-4. Because Plaintiffs' interest in disclosure far outweighs the minimal privacy interests retained by Mr. Rollins in his highly publicized case, and because the unsealing will be on a partial, limited, non-public basis only for the purpose of Plaintiffs' federal § 1983 lawsuits pursuant to a confidentiality order, the application should be granted.

# FACTUAL BACKGROUND

### A.  Boyd and Walker's Federal Section 1983 Lawsuits.

In their Amended Complaints, Plaintiffs, who spent a total of 50 years in prison for a crime they did not commit, allege that BPD homicide detectives manufactured a case against them and two friends, all 16-years-old, for the homicide of William Crawford by coercing two teenage witnesses, Tyrone Woodruff and Andre Hough. On January 12, 1976, a day after the 17-year-old Woodruff denied any knowledge of the Crawford homicide, detectives, despite lacking probable cause, took him into custody and brought him back to the homicide office. Boyd Am. Compl. ¶ 208.[1]

---

[1] To avoid duplication, Plaintiffs cite to the paragraph numbers for the Amended Complaint in *Darryl Boyd v. The City of Buffalo, et al.*, No. 22-CV-519, to

Detectives denied Woodruff permission to call his parents or a lawyer and threatened him, falsely, that his friends had accused him of the crime, that the police had other evidence implicating him, and that he would face life imprisonment if he did not provide information against his friends. *Id*. ¶¶ 209-14. On the other hand, detectives told him that if he confessed and implicated his friends, he would receive complete immunity from prosecution (which is in fact what then happened). *Id*. ¶ 215. According to a police report, detectives then allowed Woodruff to overhear an anonymous phone call (which the circumstances show was a ruse or fake call) accusing him of the homicide and naming his alleged accomplices, including Plaintiffs. *Id*. ¶¶ 219-28. Terrified, Woodruff adopted the story fed to him by detectives and implicated himself and his friends in the homicide. *Id*. ¶¶ 229-44. Later, Woodruff expanded on his initial, barebones story when detectives pressured him to conform his account to allegations they had just obtained, also through coercion, from a second witness, Andre Hough, who was just 15 years of age. *Id*. ¶¶ 311-47.

Plaintiffs allege, based upon police reports and hearing and trial testimony, that detectives also brought Hough into BPD headquarters multiple times, even after he had told them that he had no knowledge of the Crawford homicide. *Id*. ¶¶ 194-203. Detectives accused Hough of participating in the murder and threatened him with prosecution for murder—even though they had no case against him—if he did not provide information against the other boys. *Id*. ¶ 204. Under this intense pressure, the 15-year-old Hough falsely implicated the other boys in the murder. *Id*. ¶¶ 205-07. Hough later recanted during a subsequent interview with detectives in which he was accompanied by his mother. *Id*. ¶¶ 297-301. Hough's mother then left the interview based on the detectives' promise they would drive her son home. *Id*. ¶ 302. Instead,

---

refer to the Amended Complaints in both cases. The Amended Complaints are materially identical for purposes of this motion.

detectives threatened Hough again—now alone—causing him to recant his recantation and further embellish his story. *Id.* ¶¶ 303-10, 343-47.

Plaintiffs further allege that detectives deliberately omitted inconsistent statements favorable to Plaintiffs by Woodruff and Hough from police reports and signed witness statements. *Id.* ¶¶ 245, 301, 313. The detectives also omitted from their reports the threats and inducements they used to make the boys lie. *Id.*

In their *Monell* claim against the City of Buffalo, Plaintiffs allege that the BPD had an unlawful policy, custom, or practice of coercing false statements from suspects and witnesses, especially vulnerable teenagers, as well as a policy of deliberate indifference to such unlawfully coercive interrogations when they occurred, and that such policies, customs, or practices were a substantial cause of the violations of Plaintiffs' rights and resulting injuries. *Id.* ¶¶ 472-500. Plaintiffs also allege that an unlawful policy of failing to document information favorable to suspects and defendants, and a policy of deliberate indifference to such a practice, was a substantial cause of the violations of their rights and resulting injuries. *Id.* ¶¶ 347, 494.

**B.    Police Misconduct in** People v. Rollins**.**

In 1982, BPD detectives arrested Tommy Rollins and his cousin, Shelby Davis, for the rape and murder of an elderly couple that lived next door to Davis. A suppression hearing was held in 1983, including on May 31, 1983, before Justice Kasler. Two years later, in 1985, Justice Kasler threw out the evidence of Mr. Rollins's coerced confession due to "blatant and egregious misconduct" by Buffalo homicide detectives, specifically Homicide Chief Leo Donovan and Detective John Montondo. **Ex. 1-E** (Order at 23, *People v. Davis and Rollins*, No. 82-1064 (Sup. Ct. Erie Cty. Apr. 15,

1985)², **Ex. 1-F** (*Judge Throws Out Evidence, Cites Police Misconduct*, The Buffalo News (Apr. 16, 1985)).³

Justice Kasler rebuked the homicide detectives for what he called "deliberate" violations in illegally holding the 15-year-old Mr. Rollins incommunicado from his family for nearly nine hours. Ex. 1-E at 23, 25; Ex. 1-F. He reprimanded Chief Donovan for having "brow-beaten" the intellectually impaired Mr. Rollins into admitting complicity in the killings and implicating his cousin as the killer. Ex. 1-E at 18, 22; Ex. 1-F. The homicide detectives' conduct, Justice Kasler said, was "an orgy of constitutional and statutory illegal police conduct." Ex. 1-E at 25; Ex. 1-F.

The Court also noted that homicide detectives *acknowledged during hearings* that they had failed to include apparently inconsistent remarks Mr. Rollins gave them about the crime in his signed written statement. Ex. 1-E at 10; Ex. 1-F. Justice Kasler subsequently dismissed the case against Mr. Rollins. *See* **Ex. 1-G** (*Errors by Police Lead to Dismissal Of Murder Charges*, The Buffalo News (May 18, 1985)).

Following Justice Kasler's dismissal of the case against Mr. Rollins, the case was sealed pursuant to CPL § 160.50 because it terminated in favor of the accused. Plaintiffs are unable to obtain the Rollins court file, including the pretrial hearing transcript, from the Erie County Clerk's Office because Mr. Rollins's case is sealed.

In July 2023, Plaintiffs' counsel asked private investigators to attempt to locate and speak to Tommy Rollins to obtain his consent to unseal his case under CPL § 160.50. *See* **Ex. 1-C,** Affidavit of Maria DiPirro dated October 17, 2023 ("DiPirro

---

² The Erie County Clerk's Office produced this redacted copy of Justice Kasler's April 15, 1985, decision to Plaintiffs' counsel on July 27, 2023, because the case against co-defendant Shelby Davis is not sealed. However, the Davis court file does not include the transcript of the *Huntley* hearing involving Rollins's motions.

³ This memorandum of law is accompanied by the Declaration of Timothy W. Hoover, executed on December 11, 2023, with Exhibits 1-9 ("Hoover Decl.") and citations to exhibits are to the attachments to the Hoover Decl. Exhibit 1 is the Order to Show Cause issued by The Honorable Susan Eagan on October 30, 2023, together with the accompanying Affirmation of Timothy W. Hoover, executed on October 24, 2023, with Exhibits A-N.

Aff.") ¶ 1. After numerous attempts to locate Mr. Rollins at his last known address, the investigators learned from a neighbor that Mr. Rollins had moved over a year ago. *See id.* ¶¶ 2-3. Investigators' attempts to locate Mr. Rollins through searches of multiple databases were unsuccessful. *See id.* ¶ 4. The investigators found phone numbers for and called six members of Rollins's family, but only one, Mr. Rollins's sister, answered the phone. *See id.* ¶ 5. She declined to provide Mr. Rollins's contact information and said that she would contact Mr. Rollins. *See id.* ¶¶ 6-7. She then stopped responding to the investigators' efforts to contact her. *See id.* ¶¶ 8-10.

During depositions of John Montondo and another retired detective, John Regan, in Plaintiffs' § 1983 lawsuits, Plaintiffs elicited that the BPD never investigated the misconduct identified by Justice Kasler in Mr. Rollins's case, nor did it discipline the detectives involved. *See* **Ex. 1-H** (Montondo Dep. 31:22-32:12, 226:9-227:22); **Ex. 1-I** (Regan Dep. 213:1-17). To the contrary, Detective Montondo was given an award. Ex. 1-H at 230:7-232:7; **Ex. 1-J** (*Winners of Mayor's Merit Awards Honored*, The Buffalo News (May 17, 1986)).

On September 13 and 19, 2023, Plaintiffs' counsel asked counsel for the County if the County and DA's Office would consent to Plaintiffs' motion to unseal the *Rollins* case file. Counsel for the County did not respond. On October 24, 2023, Plaintiffs' counsel submitted an application and proposed order to show cause in Erie County Court, Special Term to unseal *People v. Rollins* solely for use in Plaintiffs' federal civil-rights actions. On October 30, 2023, County Court Judge Susan Eagan issued an order directing the Erie County District Attorney's Office ("ECDA") to show cause why unsealing should not be granted (Ex. 1). Plaintiffs' counsel provided a courtesy copy of the application to counsel for the County. The ECDA did not respond to the Order to Show Cause, but Lippes Matthias LLP, on behalf of the Non-Party County of Erie, responded on November 2, 2023 (**Ex. 2**). Plaintiffs filed a reply on November 8, 2023 (**Ex. 3**). On November 9, 2023, the Court heard oral argument in a public and open courtroom and, without objection or comment by counsel for the County, called the

*Rollins* matter for argument by name, with other attorneys and members of the public present. *See* Hoover Decl. ¶¶ 21-23. On November 16, Judge Eagan issued a decision denying the application to unseal. Judge Eagan concluded that she did not have the authority to unseal the case under state law. She did not address Plaintiffs' argument, and the many cases holding, that federal discovery laws supersede state sealing laws. *See* **Ex. 4** (Eagan, J. Decision); *see generally* Hoover. Decl. ¶¶ 14-23.

## ARGUMENT

### POINT I.   FEDERAL COURTS UNIFORMLY RECOGNIZE THE FEDERAL INTERESTS THAT SUPPORT UNSEALING IN THESE CIRCUMSTANCES.

CPL § 160.50 provides that when a criminal action terminates in favor of the accused, the record of the action is then sealed. However, in cases presenting federal questions, "discoverability, privileges, and confidentiality are governed by federal law, not state law." *Crosby v. City of New York*, 269 F.R.D. 267, 274 (S.D.N.Y. 2010). District courts have authority to unseal state criminal records when they are relevant to a federal lawsuit. *See K.A. v. City of New York*, 2022 WL 1063125, at *2 (S.D.N.Y. Apr. 8, 2022) (collecting cases discussing a district court's authority to unseal state criminal records under Section 160.50 in the context of discovery); *Crosby*, 269 F.R.D. at 275 ("Federal courts commonly order production of documents sealed pursuant to Sections 160.50 or 160.55."); Unsealing Order, ECF Doc. 29, *Negron v. City of New York*, No. 18-CV-6645 (E.D.N.Y. Nov. 22, 2019) (unsealing records in dismissed case against third-party suspect) (attached as **Ex. 5**).

CPL § 160.50 protects important privacy interests, and "a strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy." *King v. Conde*, 121 F.R.D. 180, 187 (E.D.N.Y. 1988). However, state privilege rules should not be permitted to "frustrate the important federal interests in broad discovery and truth-seeking and the interest in vindicating important federal substantive policy such as that embodied in section 1983." *Id*. This Court must therefore

"balance the deference to be accorded state created privileges with the need for the information sought to be protected by the privilege." *Daniels v. City of New York*, 2001 WL 228091, at *1 (S.D.N.Y. Mar. 8, 2001). The privilege created by CPL § 160.50 "must be construed narrowly, and 'must yield when outweighed by a federal interest in presenting relevant information to a trier of fact.'" *Id.* (quoting *United States v. One Parcel of Property at 31-33 York Street*, 930 F.2d 139, 141 (2d Cir. 1991)); *see also Adams v. Buffalo Pub. Sch.*, 2014 WL 3882182, at *6 (W.D.N.Y. Aug. 7, 2014) (state law does not bar discovery in federal civil-rights action).

Courts have delineated two paths for plaintiffs to unseal state criminal records in the context of discovery in a federal civil suit: applying to the state court first, in the interest of comity, or seeking discovery from the district attorney through a discovery request or subpoena. *See Lehman v. Kornblau*, 206 F.R.D. 345, 347 (E.D.N.Y. 2001); *see also Fountain v. City of New York*, 2004 WL 941242, at *6 (S.D.N.Y. May 3, 2004) (denying unsealing motion with leave to renew upon completion of required procedures where none of the plaintiffs had shown they had yet made an application in state court or subpoenaed the district attorney); *cf. Williams v. Swack*, 2016 WL 3536574, at *6 & n.8 (W.D.N.Y. June 29, 2016) (McCarthy, J.) (plaintiff may renew motion to unseal grand-jury transcript in federal court after making application in state court). Here, the *Rollins* court file is in the possession of the Erie County Clerk's Office, which has informed Plaintiffs' counsel it is statutorily barred from producing the file under CPL § 160.50. The County has represented that the ECDA's case files from the 1980s have largely been destroyed. (Boyd Action, ECF Doc. 110 (listing missing case files)). In the interest of comity and to follow the appropriate procedure, Plaintiffs moved to unseal the *Rollins* case file in state court before applying for unsealing in federal court. *See supra* at p. 6; Hoover Decl. Exs. 1-4. Now that the state court has denied the application under state law, the motion is properly made before this Court to decide under federal law.

## POINT II. THE ROLLINS FILE IS HIGHLY RELEVANT TO PLAINTIFFS' CIVIL-RIGHTS ACTIONS.

The records at issue are likely to contain evidence highly relevant to, and supportive of, Plaintiffs' federal civil-rights claims. Plaintiffs allege that the BPD, including two of the same detectives involved in interrogating Mr. Rollins, Homicide Bureau Chief Donovan and Detective Montondo, violated their rights by, among other things, coercing false statements from teenagers Woodruff and Hough to manufacture a case against Plaintiffs. Plaintiffs further allege that an unlawful policy, custom, or practice of coercive interrogations of minors, as well as a policy of deliberate indifference to such conduct, was a substantial cause of these violations.

Evidence in the *Rollins* court file—especially the hearing testimony of Detective Montondo, possibly Chief Donovan, and other detectives regarding what they admittedly did to illegally coerce statements from Rollins and conceal their misbehavior—will likely support the use of such similar act evidence against them pursuant to F.R.E. 404(b). *See Gross v. Lunduski*, 304 F.R.D. 136, 145 (W.D.N.Y. 2014) (similar-act evidence admissible). As a defendant in the federal lawsuit, Detective Montondo's testimony would be directly admissible as a party-admission. *See* F.R.E. 801(d)(2). So would Chief Donovan's, as Plaintiffs are suing his estate.

In addition, the hearing testimony and other material in the court file will be relevant to, and likely will support, Plaintiffs' *Monell* or municipal-liability claims. The sworn hearing testimony of Detective Montondo and other officers may be the best evidence of their misconduct and may provide far more detail than the state court's written decision. This detail will make the failure of the BPD to discipline these detectives for their misconduct even more compelling evidence of an attitude of deliberate indifference. The involvement of Chief Donovan, chief of homicide and a policymaker for the BPD in homicide investigations, is especially probative of municipal policy. *See Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 127 (2d Cir. 2004)

(holding that "a single action on a policymaker's part is sufficient to create a municipal policy").

While the *Rollins* case post-dates Plaintiffs' prosecution by a few years, this Court has already held that post-incident misconduct is relevant and discoverable. In granting Plaintiffs' motion to compel production of case materials from after Plaintiffs' prosecution, this Court noted that a factfinder may infer from such subsequent acts of misconduct, and the failure of policymakers to discipline the offenders, a policy of deliberate indifference that existed at the time of the violation of the Plaintiffs' rights. *See* **Ex. 1-K** (Boyd Action, ECF Doc. 104 (Decision and Order), at 12-13) (collecting cases).

Finally, the transcript and briefs also likely contained in the *Rollins* court file will contain arguments by defense counsel and ADA Albert Ranni, the prosecutor at the pretrial phase of the Rollins-Davis prosecution. Mr. Ranni was the chief of the Felony Trials Bureau at the time of Plaintiffs' trials in 1977 and his misconduct in numerous cases, for which he was promoted rather than disciplined, is a focus of Plaintiffs' *Monell* claims against the County. *See* Ex. 1-A (*Boyd* Am. Compl.) at ¶¶ 571-97. Indeed, Mr. Ranni was an "advisor" to the Homicide Bureau, according to a contemporaneous article, **Ex. 1-L** (*County May Expand Legal Aid for Police*, The Buffalo News (Aug. 7, 1974)), and thus Mr. Ranni's conduct in this case is also relevant to Plaintiffs' *Monell* claims against the City and the County.

**POINT III.  PLAINTIFFS' INTEREST IN VINDICATING THEIR FEDERAL CONSTITUTIONAL RIGHTS OUTWEIGHS THE MINIMAL PRIVACY INTERESTS IMPLICATED BY THE REQUESTED PARTIAL UNSEALING.**

Plaintiffs have been unsuccessful in attempting to locate Mr. Rollins to obtain a waiver pursuant to CPL § 160.50(1)(d), *see supra* p. 5, and there are no alternative means to obtain the contents of the requested case files, including the pretrial hearing transcript and briefing, which will help vindicate Plaintiffs' federal constitutional rights.

Plaintiffs' need for the sealed materials to support their § 1983 claims far outweighs the limited privacy interests Mr. Rollins might have because the unsealing request is a partial one: the documents would not be made available to the public and would be subject to the terms of the existing protective order in the federal actions. The case against Mr. Rollins and Mr. Davis for a high-profile murder, and the court's emphatic dismissal of the case against Mr. Rollins due to misconduct, already were publicized in newspaper articles from the time of the events. *See, e.g.*, Exs. 1-F, 1-G. Those newspaper articles remain available to the public at present via the Internet, and some of them are freely accessible. In fact, the particulars of Mr. Rollins's case remain open to free public consumption because BPD detectives and the District Attorney trumpeted the charges against him and spoke to the press about his (coerced) confession, leading to extensive initial and follow-up media coverage. **Ex. 6** (*Sexual Attack Proven*, Buffalo Courier Express, A-3 (Aug. 4, 1982)); **Ex. 7** (*Teen Pleads Innocent to Murder*, Buffalo Courier Express, A-3 (Sept. 16, 1982)); **Ex. 8** (Greg Faherty, *Suspects in Killing of Couple Get Hearing*, Buffalo Courtier Express, A-3 (Aug. 10, 1982)); **Ex. 9** (*Boy Admits Lookout Role in Killings*, Buffalo Courier Express, A-3 (July 31, 1982)).

That Mr. Rollins's name and the details of his case are already known to the public limits any harm to Mr. Rollins from unsealing the file. *See Woodard v. City of New York*, 2000 WL 516890, at *5 (E.D.N.Y. Mar. 10, 2000) (ordering production of sealed records where names of arrestees and underlying events were known to all parties and a matter of public record); *see also MacNamara v. City of New York*, 2006 WL 3298911, at *4, n.8 (S.D.N.Y. Nov. 13, 2006) (fact that names of non-party arrestees were published in the newspaper was relevant to balance of privacy interests against federal interest in broad discovery of relevant information). Moreover, this Court may order the production of the *Rollins* court file under the confidentiality order already in place in these federal actions, **Ex. 1-M** (Boyd Action, ECF Doc. 107 (Protective Order))

and limit disclosure of the records to the parties. *See MacNamara*, 2006 WL 3298911, at *4 (protective order minimized burden on privacy interests).

## **CONCLUSION**

The federal interests at the heart of Plaintiffs' actions far outweigh any modest privacy interest possessed by Rollins and Defendants' desire to shield their misconduct in another case. For the foregoing reasons, Plaintiffs request that the Court enter an order unsealing the records in *People v. Tommy Rollins*, Ind. No. 82-1064 (Sup. Ct. Erie Cty.), on a partial, limited, non-public basis only for use by the parties in Plaintiffs' federal § 1983 lawsuits pursuant to the existing protective order, and directing the Erie County Clerk's Office to provide a complete copy of the file in the *Rollins* case to counsel for Plaintiffs.

Dated:     Buffalo, New York
              December 11, 2023

Respectfully submitted,

**LAW OFFICES OF JOEL B. RUDIN, P.C.**
Joel B. Rudin
David E. Rudin
Carnegie Hall Tower
152 West 57th Street, 8th Floor
New York, New York 10019
(212) 752-7600
*jbrudin@rudinlaw.com*

**WILMER CUTLER PICKERING HALE AND DORR LLP**
Ross E. Firsenbaum
Ryanne E. Perio
Gideon A. Hanft
Phoebe Silos
Erin Hughes
7 World Trade Center
250 Greenwich Street
New York, New York 10007
(212) 230-8800
*ross.firsenbaum@wilmerhale.com*

**HOOVER & DURLAND LLP**

By: s/Timothy W. Hoover
      Timothy W. Hoover
      Spencer L. Durland
561 Franklin Street
Buffalo, New York 14202
(716) 800-2604
*thoover@hooverdurland.com*

*Attorneys for Plaintiffs Darryl Boyd and John Walker, Jr.*