**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| DARRYL BOYD, | ) |
| Plaintiff, | ) **Case No. 1:22-cv-519** |
| - against - | ) |
| THE CITY OF BUFFALO, *et al.*, | ) |
| Defendants. | ) |

|  |  |
|---|---|
| JOHN WALKER, JR. | ) |
| Plaintiff, | ) **Case No. 1:22-cv-520** |
| - against - | ) |
| THE CITY OF BUFFALO, *et al.*, | ) |
| Defendants. | ) |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* TO PRECLUDE REFERENCE TO AN INCIDENT RELATIVE TO THE MATTER OF *PEOPLE V. ASHLEY***

**INTRODUCTION**

Defendant County of Erie (the "County") seeks to preclude Plaintiffs Darryl Boyd and John Walker, Jr. from introducing evidence or eliciting testimony at their respective trials regarding misconduct by ADA Timothy Drury that caused a mistrial in a murder prosecution for which he was never investigated or disciplined. *See Boyd*, ECF No. 228; *Walker* ECF No. 222 ("Mem."). The Court should deny the County's motion. Evidence and testimony about the incident—and the lack of any investigation or discipline subsequent to it—is directly relevant to Plaintiffs' *Monell* theory of a policy of deliberate indifference to misconduct by prosecutors in depriving criminal defendants of their constitutional fair trial rights and the creation of an anything-goes atmosphere where only winning mattered. *See, e.g.*, Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion in *Limine* to Preclude Certain Alleged *Monell* Evidence ("*Monell* Opp."), at 1–2 (filed contemporaneously).[1]

**ARGUMENT**

On November 7, 1978, the *Buffalo News* and the *Buffalo Courier-Express* reported that the Supreme Court, Erie County, declared a mistrial in the murder trial of Anthony Ashley because it emerged during cross-examination of the defendant that ADA Timothy Drury had during a break in the proceedings questioned the defendant while the defendant's attorney, James McLeod, was in chambers with the judge and the assigned prosecutor, ADA Louis Gicale. *See Boyd* Dkt. 236-3. The newspaper articles reported that Drury provided the information he learned from the defendant outside of his lawyer's presence to ADA Gicale, who made improper use of it in his cross examination of the defendant. *See id.* The newspaper articles, together with (1) DA

---

[1] To avoid duplication, Plaintiffs cite to the docket numbers for *Darryl Boyd v. City of Buffalo*, No. 22-cv-519, to refer to the docket entries in both cases.

1

Cosgrove's testimony that he read the Buffalo newspapers every day while he was District Attorney and that as part of his job he was aware of what the Buffalo newspapers were writing about his office, Dkt. 168-16 (Cosgrove Dep.) at 32:10–34:1, and (2) McLeod and Drury's testimony that there was never any investigation or discipline of Drury's misconduct, are powerful evidence supporting Plaintiffs' theory of a policy of deliberate indifference to the fair trial rights of criminal defendants.

James McLeod testified at his deposition that the incident in fact occurred as it was described in the Buffalo press. *See* Dkt. 168-21 (McLeod Dep. Day II) at 368:3–370:7. He testified that following this incident no one at the supervisory or executive level of the ECDA ever asked to speak to him to obtain further details about what had occurred. *See id.* at 372:18–373:6. ADA Drury testified at his deposition that no one at the ECDA ever criticized him, investigated him, or disciplined him for his misconduct at the Ashley trial. *See* Dkt. 168-14 (Drury Dep. Day I) at 89:17–93:22. He acknowledged that the conduct, as reported in the newspaper, was improper and warranted the judge declaring a mistrial. *See* Dkt. 168-14 (Drury Dep. Day I) at 89:17–93:22. DA Edward Cosgrove agreed at his deposition that a prosecutor speaking to a defendant while his attorney and the judge are meeting in a separate room is improper, and that "something should happen to" such a prosecutor. *See* Dkt. 168-16 (Cosgrove Dep.) at 167:16–21, 168:19–169:2. However, Cosgrove testified that he never disciplined Drury. *See id.* at 40:12–14; 169:4–19.

As described in Plaintiffs' opposition to the County's motion *in limine* to preclude certain *Monell* evidence, newspaper articles are admissible for the non-hearsay purpose of notice. *See Monell* Opp. at 3–4. The notable occurrence of a mistrial order triggered by the actions of two ECDA prosecutors in a high-profile murder prosecution also should have provided notice to the District Attorney and his chief executives. The ECDA's failure to respond to such notice of

misconduct by its prosecutors is probative of the existence of an attitude of deliberate indifference or acquiescence that a jury may infer also existed at the time of Plaintiffs' trials. *See id.* at 8 (citing cases).

In addition to the articles, testimony from McLeod, Drury, and Cosgrove about Drury's misconduct at the Ashley trial plainly is admissible. McLeod has personal knowledge of the incident and can testify about what he observed occurring in court, why Drury's speaking with the defendant in court when he was represented by counsel was improper, and the absence of any outreach by executives at the ECDA to investigate it. Testimony by Drury and Cosgrove admitting the absence of discipline following the incident is based on personal knowledge and relevant to Plaintiffs' theory of deliberate indifference generating an anything-goes atmosphere.

The County's Rule 404(b) objection is based on a misunderstanding of Plaintiffs' deliberate indifference *Monell* theory. As described above, Plaintiffs will not use the notice of this incident, together with the failure of the Office to take any action in response to it, as evidence of Drury's bad character or propensity under Rule 404(b). Plaintiffs are not suing Drury and his general character is not an issue in the case. Rather, Plaintiffs will use the evidence to establish their claims under *Monell* against the *County,* including the *County's* deliberate indifference—an element of their *Monell* claims. This is a long-established method of proof of such claims. *See Monell* Opp. at 2–3, 7–8.

The cases the County cites relating to admission or exclusion of evidence have absolutely no bearing on this case. *See United States v. Aminy*, 15 F.3d 258, 260 (2d Cir. 1994) (affirming admission of 404(b) evidence of defendant's heroin possession to prove his knowledge he was carrying heroin in an attaché case at the time of his arrest); *Jackson v. City of White Plains*, 2016 WL 234855, at *2 (S.D.N.Y. Jan. 19, 2016) (precluding use of individual officer-defendant's prior

3

use of force in relation to his character, where municipal defendant had been dismissed and there was no *Monell* issue).

The County also cites *Huddleston v. United States*, where the Supreme Court held that before admitting similar acts evidence, courts must consider whether the evidence is admissible for a proper purpose, is relevant, and whether the "probative value of the similar acts evidence is substantially outweighed by its potential for unfair prejudice." 485 U.S. 681, 691 (1988) (quoting Fed. R. Evid. 403). *Huddleston* has no applicability here, where Plaintiffs will introduce evidence and testimony relating to the *Ashley* case not as evidence of similar acts under Rule 404(b), but as evidence of notice to the ECDA relevant to their *Monell* claims against the County. The County has not shown that evidence directly relevant to Plaintiffs' *Monell* claims—the evidence of Drury's misconduct at the *Ashley* trial and the ECDA's complete inaction following it—is substantially outweighed by unfair prejudice, confusing the issues, or any other danger, as would be required to exclude it under Rule 403, nor could it. The evidence of the notice of misconduct in *Ashley*, together with the ECDA's complete failure to investigate or discipline Drury for the incident, is not "unfairly" prejudicial merely because it is powerful evidence of deliberate indifference.

## CONCLUSION

For these reasons, the Court should deny the County's motion.

Dated: February 24, 2025

Respectfully submitted,

**LAW OFFICES OF JOEL B. RUDIN, P.C.**
By: /s/ Joel B. Rudin
Joel B. Rudin
David E. Rudin
Carnegie Hall Tower
152 West 57th Street, 8th Floor
New York, New York 10019
(212) 752-7600

4

*jbrudin@rudinlaw.com*

**WILMER CUTLER PICKERING HALE AND DORR LLP**
By: /s/ Ryanne E. Perio
Ross E. Firsenbaum
Ryanne E. Perio
Gideon A. Hanft
Phoebe Silos
Erin Hughes
Trena Riley
Melissa Zubizarreta
7 World Trade Center
250 Greenwich Street
New York, New York 10007
(212) 230-8800
*ross.firsenbaum@wilmerhale.com*

**HOOVER & DURLAND LLP**
By:  /s/ Spencer L. Durland
Timothy W. Hoover
Spencer L. Durland
561 Franklin Street
Buffalo, New York 14202
(716) 800-2600
*sdurland@hooverdurland.com*

*Attorneys for Plaintiffs Darryl Boyd and John Walker, Jr.*

5