**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| THE ESTATE OF DARRYL BOYD, | ) | |
| | ) | |
| Plaintiff, | ) | **Case No. 1:22-cv-519** |
| | ) | |
| - against - | ) | |
| | ) | |
| THE COUNTY OF ERIE, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR AN *IN LIMINE* ORDER PRECLUDING ADMISSION OF POLICE FILE DOCUMENTS OTHER THAN ALLEGED *BRADY* EVIDENCE AND THE DOCUMENTS DISCLOSED ON THE RECORD DURING THE CRIMINAL TRIAL OF DARRYL BOYD AND CERTAIN RELATED PRE-TRIAL PROCEEDINGS**

**INTRODUCTION**

Before and throughout the trial in *Walker v. County of Erie* ("*Walker*"), the Defendant County of Erie (the "County") repeatedly sought to admit into evidence what it called the "entire City of Buffalo police file" regarding the murder of William Crawford (the "Crawford Murder"). *See Walker*, Dkts. 274, 345; Mar. 3 Pre-Trial Conference T. 186:3-190:12; *Walker*, Dkt. 324, Tr. T. 1747:21-1748:18; 1788-1804; 2382:3-2390:14. The County was never able to offer a legally valid theory of admission, and its purpose was clear:  to introduce inadmissible hearsay evidence about what the County thinks "really happened" on January 2, 1978—a topic the Court generally excluded from evidence with very limited exceptions. The Court correctly denied the County's requests and accepted into evidence only those P-73s and witness statements that were relevant, not hearsay, and not unduly prejudicial—*i.e.*, the "*Brady* Evidence" and the documents that the parties agreed had been disclosed on the record during Walker's criminal trial and at pre-trial hearings which Walker's counsel attended. Further, the Court accepted such documents into evidence for limited non-hearsay purposes—evidence of disclosure or non-disclosure and favorability and materiality (of the *Brady* Evidence)—and not for their truth. *See, e.g.*, *Walker*, Tr. T. 129:15-131:1; *see also id.* 30:10-16; 90:11-19; 186:5-13.

This motion *in limine* seeks a materially identical ruling in this action for the same reasons. The Court should issue an *in limine* order precluding admission of police-file documents other than the *Brady* Evidence in this case as well as documents disclosed on the record during Darryl Boyd's criminal trial and certain pre-trial proceedings, and should accept into evidence those two categories of documents for the same non-hearsay purposes—evidence of disclosure or non-disclosure and favorability and materiality (of the *Brady* Evidence)—and not for their truth.[1]

---

[1]  Plaintiff reserves the right to seek redactions of any documents fitting into either of these categories.

1

Beyond these two categories of documents, the rest of the police file is not probative of any issue legitimately in dispute, contains inadmissible hearsay (and in many instances multiple levels inadmissible hearsay), and is both highly prejudicial and confusing. The Court should not allow it. *See* Fed. R. Evid. 401, 403, 801.

## ARGUMENT

Throughout the *Walker* trial, the County sought repeatedly to admit the entirety of the police file into evidence. Although its rationale for admission changed repeatedly, its goal remained the same: to put irrelevant and prejudicial police reports, witness statements, and other documents before the jury as a back door to what they claimed was evidence of Walker's guilt.

The County first argued that the entire Buffalo Police department file was admissible merely because Walker sought to admit some of the police documents as *Brady* evidence. *See Walker*, Dkt. 274. The County cited no rule of evidence or other applicable legal principle supporting such an argument, and there is none. At the March 3, 2025 pre-trial conference, in opposition to Walker's motion to admit certain *Brady* evidence, the County argued—misapplying *Brady*—that the full police file should be admitted because it was relevant to explaining how defense counsel would have been constrained by the full "universe of information." Mar. 3 Pre-Trial Conference T. 187:2-15; 188:8-189:6. The Court noted, "I think we're kind of comparing apples to oranges," *id.* 190:14-15, and ordered the parties to meet-and-confer. The County did not identify any valid theory of admissibility, and trial proceeded with the universe of admitted police documents limited to those disclosed at certain pre-trial hearings, those disclosed at Walker's criminal trial, and the alleged *Brady* evidence.

After Walker presented his case-in-chief at trial and rested, the County again sought to admit the entire police file, arguing that the entire file was relevant to establishing ADA Drury's

state of mind in defense of Walker's *Russo* claim. *Walker*, Tr. T. 1747:21-1748:18; 1788-1804. As Walker explained, the subsequently dismissed *Russo* claim did not provide a basis for admission of such documents. *Id.* 1749:3-23. The Court agreed and denied the County's request. *Id.* 1749:24-1750:3.

Undeterred by the Court's ruling during trial proceedings, the County filed a motion later the same evening, *again* seeking to admit the full police file based on claimed relevance to Walker's *Russo* claim. *Walker*, Dkt. 345. That motion became moot the next day, when the Court granted the County's Rule 50 motion to dismiss the *Russo* claim. *Walker*, Tr. T. 2126:14-19. Then, three days later, with no witnesses left to testify, the County sought to admit the full police file again, for the truth of the matters asserted, as alleged ancient documents, this time on the basis that it was supposedly relevant to the County's apportionment defense. *Walker*, Tr. T. 2382:3-2390:14; *see also Walker*, Dkt. 354-1 at 5. The Court correctly denied the County's motion, stating, "I'm not going to just blanketly allow the entire police department file in," and asked the County to specify which document not in evidence was relevant to the apportionment defense. *Walker*, Tr. T. 2382:11-14. The County identified only four exhibits, but provided no explanation of how the exhibits supported their apportionment defense. *Id.* 2387:17-2388:13.

In short, despite seeking to admit these documents on *five* separate occasions, the County could not articulate any valid basis in *Walker* for admission of the entire police file. The County cannot do so here either.[2]

Here, just as in *Walker*, certain documents in the police file *are* relevant to claims and defenses in this case and admissible for a limited purpose: to demonstrate what was (and was not)

---

[2]  Indeed, while the Court correctly held that the documents were not relevant to a *Russo* claim (which was the source of the County's principal theory of relevance for most of the *Walker* trial), the Boyd Estate is not bringing such a claim.

3

disclosed, and to establish favorability and materiality. As the County ultimately admitted in a pre-trial stipulation, the alleged *Brady* Evidence and documents disclosed on the record in Walker's criminal trial and pre-trial proceedings where Walker's counsel was present were relevant for these purposes. *See Walker*, Tr. T. 129:15-131:1.

Other documents in the police file serve no relevant non-hearsay purpose. As an initial matter, many of the police reports contain multiple levels of hearsay. *See, e.g.*, *Walker*, Trial Exs. DX 500.02, 500.03, 500.23, 500.24, 500.25, 500.26, 500.31, 500.43, 500.46, 500.50, 500.51, 500.52, 500.53, 500.55, 500.57, 500.58, 500.59, 500.60, 500.61, 500.63, 500.67, 500.70, 500.71, 500.72, 500.73, 500.74, 500.78.5. And while the County suggested the ancient-documents exception to the rule against hearsay provided a basis for admission, *see Walker*, Dkt. 354-1 at 5, it must, and to date has not, offered any valid exception or non-hearsay purpose for the internal layers of hearsay contained within any such documents.

One P-73 demonstrates the need for careful examination of the multiple levels of hearsay in these documents. At the *Walker* trial, the County sought to admit DX 500.26, a P-73 dated January 8, 1976. *Walker*, Tr. T. 1789:11-18. This P-73 was not *Brady* evidence, and it was not disclosed at Walker's criminal trial (or relevant pre-trial proceedings), so it had no relevance to the claims at issue. *Id.* 1792:1-8. But the County sought to admit it for its truth, arguing that it was relevant to Drury's state of mind in defense of Walker's *Russo* claim. *Id.* 1792:18-21. Tellingly, the County offered no non-hearsay purpose for admission, nor any exceptions to the rule against hearsay. Instead, the County sought to have the entire document—as well as the entirety of the police file—admitted. *Id.* 1798:10-14. But a look at the document reveals precisely why this approach is problematic. DX 500.26, a P-73 (first layer of hearsay) includes a statement from Darryl Boyd's mother (second layer of hearsay) describing a conversation she had with Darryl

4

Boyd (third layer of hearsay in *Walker*). Separately, the P-73 (first layer) includes a statement from Thelma Green (second layer) describing a conversation she had with Charles Hough (third layer). The County did not identify any exceptions that would allow in the statements of Hough or Boyd, or the statement of Boyd's mother containing the statement of Boyd, or Green's statement containing Hough's statement. That is because no such exceptions exist.

The Court should not allow this document (as an example)—or any of the many similarly hearsay-laden police reports—to be swept into evidence wholesale, as the County would have it. Inflammatory evidence with little or no probative value is inadmissible, Fed. R. Evid. 403, as are out-of-court statements offered for the truth of the matter asserted, absent some exception, *see* Fed. R. Evid. 801-804; *United States v. Cardascia*, 951 F.2d 474, 486 (2d Cir. 1991). Hearsay within hearsay is admissible only if each level of hearsay satisfies a hearsay exception. Fed. R. Evid. 805; *see also United States v. Bortnovsky*, 879 F.2d 30, 34 (2d Cir. 1989) (a party must establish that both a report and the third-party statements recounted therein fall within a hearsay exception).

Even if the County could clear the hearsay hurdles for these documents, it cannot show that any are relevant to any claim or defense. These documents are not alleged *Brady* Evidence and were not disclosed to Boyd's counsel on the record. Thus, they have no relevance to whether the *Brady* Evidence was disclosed to Boyd's counsel. They were not presented to Boyd's jury, so they are not relevant to materiality. *See, e.g.*, *Leka v. Portuondo*, 257 F.3d 89, 97 (2d Cir. 2001) ("Our evaluation of materiality considers the weight of the evidence at trial."); *see also* Decision and Order at 19, *Walker*, Dkt. 307 ("Issues of materiality … are measured against the evidence that was actually admitted and argument actually made in Walker's criminal trial . . . ."). Thus, the County's prior argument for admission fails for the same reasons that the Court articulated in *Walker*. *See, e.g.*, *Walker*, Tr. T. 1803:8-20; 2382:7-12.

To the extent that the County maintains that the entire police file is relevant to its apportionment defense, that rationale fails as well. When the County first articulated the basis for its apportionment defense on the last day of the trial in *Walker*, it stated that its claim was that certain Buffalo Police Department officers fabricated evidence. *See Walker*, Tr. T. 2625:2-18; 2628:18-23. The County never explained why or how any document was relevant to that defense. The County must, but cannot, show how each document it is introducing is relevant to proving police misconduct in support of its apportionment defense. And even if it could do so, the County must explain why the relevance is not substantially outweighed by the risk that the jurors will use the evidence for the forbidden purpose of assessing guilt or innocence. *See* Decision and Order at 17, *Walker*, Dkt. 307. Indeed, given the County's trial strategy in *Walker*, it is clear that such impermissible use is the County's real intent.

The Court should reject any such attempt.

## CONCLUSION

For the foregoing reasons, the Boyd Estate respectfully requests that the Court preclude admission of police files other than those constituting alleged *Brady* material or those disclosed at Boyd's criminal trial or related pretrial proceedings.

Dated:        September 22, 2025

Respectfully submitted,

**WILMER CUTLER PICKERING
HALE AND DORR LLP**
By: /s/ Ross Firsenbaum
Ross E. Firsenbaum
Gideon A. Hanft
Phoebe Silos
Erin Hughes
Trena Riley
Melissa Zubizarreta
7 World Trade Center
250 Greenwich Street
New York, New York 10007
(212) 230-8800
*ross.firsenbaum@wilmerhale.com*

**LAW OFFICES OF JOEL B. RUDIN, P.C.**
By: /s/ Joel B. Rudin
Joel B. Rudin
David E. Rudin
Partha Sharma
Carnegie Hall Tower
152 West 57th Street, 8th Floor
New York, New York 10019
(212) 752-7600
*jbrudin@rudinlaw.com*

**HOOVER & DURLAND LLP**
By:  /s/ Spencer L. Durland
Timothy W. Hoover
Spencer L. Durland
561 Franklin Street
Buffalo, New York 14202
(716) 800-2600
*sdurland@hooverdurland.com*

*Attorneys for Plaintiff Estate of Darryl Boyd*

8