**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| ESTATE OF DARRYL BOYD, | ) ) ) | |
| Plaintiff, | ) ) | **Case No. 1:22-cv-519** |
| - against - | ) ) | |
| THE COUNTY OF ERIE, | ) ) | |
| Defendant. | ) ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR AN *IN LIMINE* RULING ESTABLISHING THE PERMISSIBLE SCOPE OF EXPERT TESTIMONY GIVEN BY STEVEN ZEIDMAN AND KEVIN GAGAN**

**TABLE OF CONTENTS**

INTRODUCTION ...............................................................................................................1

ARGUMENT......................................................................................................................2

    A.    As the Court ruled in Walker, the parties' experts should be permitted to discuss the principles of the Brady doctrine. ..........................................................2

    B.    As the Court ruled at the Walker trial, the experts should be permitted to discuss the favorability of the allegedly undisclosed evidence. .............................3

    C.    As in Walker, Zeidman should be permitted to discuss how a reasonably competent criminal-defense attorney could have made use of the allegedly withheld evidence, which is relevant to materiality.................................................4

    D.    Gagan admits he is not qualified to opine on defense lawyering, and so may not give expert testimony on this subject.........................................................7

    E.    The experts should be permitted to relay to the jury what the record shows about what documents and other materials were disclosed to the defense in the pretrial hearing and trial records. ......................................................................9

    F.    Gagan should be precluded from offering legal conclusions on the issue of whether a Brady violation occurred. ...................................................................10

    G.    As at the Walker trial, Gagan should be precluded from offering certain evaluations or interpretations of certain evidence concerning the Crawford robbery-homicide. .........................................................................................11

    H.    As at the Walker trial, Gagan should be precluded from making statements that mislead the jury concerning its task..............................................................13

    I.    As at the Walker trial, Gagan should be precluded from referring to inadmissible evidence that, if disclosed to the jury, would unfairly prejudice the Boyd Estate. ................................................................................14

CONCLUSION.................................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*United States v. Alwan*,
    279 F.3d 431 (7th Cir. 2002) ...............................................................................10

*Askins v. Doe No. 1*,
    727 F.3d 248 (2d Cir. 2013).................................................................................14

*United States v. Awadallah*,
    401 F. Supp. 2d 308 (S.D.N.Y. 2005), *aff'd*, 436 F.3d 125 (2d Cir. 2006) .............15

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993)..............................................................................................3

*Dreyer v. Ryder Auto. Carrier Grp., Inc.*,
    2005 WL 1074320 (W.D.N.Y. Feb. 9, 2005), *objections overruled*, 367 F.
    Supp. 2d 413 (W.D.N.Y. 2005) ..............................................................................8

*United States v. Duncan*,
    42 F.3d 97 (2d Cir. 1994)......................................................................................11

*Fiataruolo v. United States*,
    8 F.3d 930 (2d Cir. 1993)......................................................................................11

*Hygh v. Jacobs*,
    961 F.2d 359 (2d Cir. 1992)...................................................................................11

*Jones v. Cannizzaro*,
    514 F. Supp. 3d 853 (E.D. La. 2021)......................................................................6

*Kluppelberg v. Burge*,
    2016 WL 6821138 (N.D. Ill. Sept. 16, 2016) .........................................................7

*United States v. Lebedev*,
    932 F.3d 40 (2d Cir. 2019).....................................................................................10

*Marx & Co. v. Diners' Club Inc.*,
    550 F.2d 505 (2d Cir. 1977)....................................................................................5

*Monell. Owen v. City of Independence*,
    445 U.S. 622 (1980)..............................................................................................3, 14

*In re Namenda Indirect Purchaser Antitrust Litig.*,
    2021 WL 2403727 (S.D.N.Y. June 11, 2021) ..........................................................7

*Nicholas v. Bratton*,
    376 F. Supp. 3d 232 (S.D.N.Y. 2019)................................................................5

*Nimely v. City of New York*,
    414 F.3d 381 (2d Cir. 2005)..............................................................................2

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
    691 F. Supp. 2d 448 (S.D.N.Y. 2010)...............................................................8

*In re Platinum-Beechwood Litig.*,
    469 F. Supp. 3d 105 (S.D.N.Y. 2020) .............................................................10

*Restivo v. Hessemann*,
    846 F.3d 547 (2d Cir. 2017).............................................................................11

*Ret. Fund v. J.P. Morgan Chase & Co.*,
    301 F.R.D. 116 (S.D.N.Y. 2014) ......................................................................5

*In re Rezulin Products Liab. Litig.*
    309 F. Supp. 2d 531 (S.D.N.Y. 2004)...............................................................8

*Rivera v. Guevara*,
    2018 WL 3093339 (N.D. Ill. June 22, 2018) ....................................................9

*United States v. Scop*,
    846 F.2d 135 (2d Cir. 1988).............................................................................11

*Scott v. Chipotle Mexican Grill, Inc.*,
    315 F.R.D. 33 (S.D.N.Y. 2016) ........................................................................4

*Strickler v. Greene*,
    527 U.S. 263 (1999)...........................................................................................4

*ValveTech, Inc. v. Aerojet Rocketdyne, Inc.*,
    2023 WL 3558214 (W.D.N.Y. May 19, 2023)............................................10, 11

*United States v. Williams*,
    506 F.3d 151 (2d Cir. 2007)..............................................................................2

*Zsa Zsa Jewels, Inc. v. BMW of N. Am., LLC*,
    419 F. Supp. 3d 490 (E.D.N.Y. 2019) ..............................................................8

*In re Zyprexa Prods. Liab. Litig.*,
    489 F. Supp. 2d 230 (E.D.N.Y. 2007) .......................................................10, 12

**Other Authorities**

Fed. R. Evid. 403 ...............................................................................................3, 15

Fed. R. Evid. 702 ...............................................................................................................2, 5

Fed. R. Evid. 703 ...............................................................................................................8, 15

Fed. R. Evid. 704 ..................................................................................................................11

Fed. R. Evid. 1006 .................................................................................................................10

**<u>INTRODUCTION</u>**

Plaintiff Estate of Darryl Boyd (the "<u>Boyd Estate</u>") will call Professor Steven Zeidman to give expert testimony concerning the same topics he covered at trial in *Walker*. The Boyd Estate expects that, as in *Walker*, Defendant County of Erie (the "<u>County</u>") will call Kevin T. Gagan as a rebuttal expert.

The Boyd Estate respectfully requests that the Court renew several rulings it made in *Walker* concerning the scope of these experts' testimony. Specifically, the Boyd Estate asks the Court to rule:

- That both experts may discuss the principles of the *Brady* doctrine;

- That both experts may opine on whether a given piece of evidence is favorable to the defense;

- That Professor Zeidman may opine on how a reasonably competent criminal-defense attorney could have made use of the allegedly withheld evidence, which is relevant to materiality;

- That both experts may opine on whether the prosecution's summations at Boyd's and Walker's criminal trials complied with standards of summation advocacy applicable at the time;[1] and

- That both experts may relay to the jury what the record shows about what documents and other materials were disclosed to the defense in the pretrial hearing and trial records.

The Boyd Estate further requests that the Court renew its ruling that Gagan is precluded from:

- Opining on the ultimate issue of whether a Brady violation occurred;

- Providing certain evaluations or interpretations of certain evidence concerning the Crawford robbery-homicide;

- Making statements that would mislead the jury about its task; and

- Referring to inadmissible evidence.

---

[1] Zeidman's and Gagan's ability to discuss this general subject has not been a source of controversy in the Walker and Boyd litigation, and so we do not specifically discuss it further in this motion.

1

Finally, the Boyd Estate respectfully renews its request (which we acknowledge the Court rejected in *Walker*) to limit Gagan's testimony concerning defense lawyering strategies, a subject he admits he is unqualified to opine on.

## ARGUMENT

### A.    As the Court ruled in *Walker*, the parties' experts should be permitted to discuss the principles of the *Brady* doctrine.

In *Walker*, both parties agreed that Zeidman and Gagan should be allowed to discuss the *Brady* doctrine in their testimony, as "background" information for the jury. *Walker*, Tr. T. 1176:3–7, 1177:3–6. This Court agreed. *Id.* at 1179:12–19. The Court ruled that, subject to a limiting instruction, the jury could consider the expert's testimony "for what … they believe the law to be at the time and how that's grounded in their opinions." *Id.* at 1179:20–25. The Boyd Estate requests that the Court make the same ruling here.

Federal Rule of Evidence 702 governs the admissibility of expert testimony.[2] To fulfill the gatekeeping function prescribed by Rule 702, a district court must make three inquiries: (1) whether the "witness is 'qualified as an expert' to testify as to a particular matter"; (2) whether "the opinion is based upon reliable data and methodology"; and (3) "whether the expert's testimony (as to a particular matter) will 'assist the trier of fact.'" *Nimely v. City of New York*, 414 F.3d 381, 396–97 (2d Cir. 2005) (citing Fed. R. Evid. 702). The proponent bears the burden of establishing, by a preponderance of evidence, that these requirements are satisfied. *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007). Additionally, since "[e]xpert evidence can be both

---

[2] Rule 702 reads in full: "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."

2

powerful and quite misleading because of the difficulty in evaluating it," courts stringently apply Fed. R. Evid. 403 to "exercise[] more control over experts than over lay witnesses." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993) (cleaned up).

Zeidman, a former public defender and longtime law professor who has taught both doctrinal and clinical courses concerning the criminal process, is eminently qualified to testify concerning *Brady* and discusses the doctrine cogently in his expert report. *Boyd*, Dkt. 232-6 (Zeidman Rep.) at 1, 7–8.[3] His opinions on this subject would, at the Boyd Estate trial, like at the Walker trial, assist the jury because, as the Court indicated, a jury considering a *Brady* claim under *Monell* should comprehend the relevant doctrine, and in assessing the opinions of an expert, should know what understanding of *Brady* the expert is employing. *Walker*, Tr. T. 1179:12–19. Allowing such testimony under a limiting instruction aids the jury in its task, while making clear that the Court's charge provides the law the jury must apply. Accordingly, the Boyd Estate requests that the Court renew its ruling allowing Zeidman to testify concerning the *Brady* doctrine. Without endorsing Gagan's qualifications, reliability, or helpfulness to the jury, the Boyd Estate does not object to his offering testimony on the same subject and requests that the Court provide the same limiting instruction it provided at the Walker trial.

    **B.**    **As the Court ruled at the Walker trial, the experts should be permitted to discuss the favorability of the allegedly undisclosed evidence.**

In *Walker*, the Court allowed both experts to testify to "the favorability of certain documents or the lack of favorability." *Walker*, Tr. T. 1643:6–8. The Boyd Estate requests that the Court issue the same ruling in this case.

---

[3] Unless otherwise noted, citations to docket numbers refer to docket numbers for *Estate of Darryl Boyd v. The City of Buffalo, et al.*, Case No. 22-cv-519.

Zeidman's testimony that various documents are favorable is based upon his comprehensive review of the trial record. Evidence is "favorable" under *Brady* if it is exculpatory or impeaching. *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). Determining whether a piece of evidence has either tendency requires an understanding of the facts of the case, as set forth in the extensive trial record. Zeidman is competent to reach such a determination because of his extensive experience in handling criminal cases. His doing so assists the jury: by showing how a given document is inconsistent with the prosecution's theory of guilt or would call into question the credibility of a prosecution witness, Zeidman essentially "synthesizes … data in a manner that streamlines the presentation of that data to the jury, saving the jury time and avoiding unnecessary confusion." *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 45 (S.D.N.Y. 2016) (cleaned up); *see also id.* ("An expert also may offer commentary on documents in evidence if the expert's testimony relates to … drawing inferences that would not be apparent without the benefit of experience or specialized knowledge.") (cleaned up).

The Boyd Estate requests that, as in *Walker*, Zeidman be allowed to opine on the favorability of documents based upon his review of the trial record. Again, without endorsing Gagan's qualifications, reliability, or helpfulness to the jury, the Boyd Estate does not object to him opining on the favorability of the allegedly undisclosed *Brady* material.

C.     **As in *Walker*, Zeidman should be permitted to discuss how a reasonably competent criminal-defense attorney could have made use of the allegedly withheld evidence, which is relevant to materiality.**

In his report, Zeidman opines on how a reasonably competent defense lawyer likely would have used the evidence the Boyd Estate contends was suppressed to impact the result of Boyd's criminal trial. *See* Dkt. 232-6 (Zeidman Report) at 4 (providing summary of his opinions). At the Walker trial, the Court rejected a non-specific objection by the County that Zeidman would usurp

4

the role of the jury, *see Walker*, Tr. T. 1275:21–1276:15, and Zeidman went on to testify to such opinions, *see, e.g.*, *id.* at 1384:3–1385:19, 1392:6–1396:21. The Boyd Estate requests that Zeidman be permitted to give such testimony again. Zeidman's opinions are based upon the application of reliable methods—his evaluation of the record of the underlying cases in light of his expertise concerning how criminal defense attorneys utilize such evidence in developing a theory of defense and presenting it to a jury. His testimony will assist a lay jury in understanding what impact the undisclosed evidence could have had on Boyd's criminal trial, an issue it must consider in determining the materiality element of the Boyd Estate's *Brady* claim. This is an appropriate area of testimony under Rule 702 and case law.

"There is no separate Rule 702 issue stemming from the fact that 'the relevant reliability concerns [here] focus upon personal knowledge or experience.'" *Nicholas v. Bratton*, 376 F. Supp. 3d 232, 290 (S.D.N.Y. 2019) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)) (alteration in *Nicholas*). "Where a proposed expert witness bases his testimony on practical experience rather than scientific analysis, courts recognize that experts of all kinds tie observations to conclusions through the use of what Judge Learned Hand called 'general truths derived from … specialized experience.'" *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 129 (S.D.N.Y. 2014) (cleaned up) (citing *Kumho Tire Co.*, 526 U.S. at 149–50); *see generally Marx & Co. v. Diners' Club Inc.*, 550 F.2d 505, 508–09 (2d Cir. 1977) ("Testimony concerning the ordinary practices of those engaged in the securities business is admissible under the same theory as testimony concerning the ordinary practices of physicians or concerning other trade customs: to enable the jury to evaluate the conduct of the parties against the standards of ordinary practice in the industry."). In evaluating how a reasonably competent defense lawyer would have used various pieces of evidence in the context of this case, Zeidman is doing exactly

5

what he has done for more than 40 years as a defense attorney, supervisor, and academic: thinking through how defense attorneys develop and implement case strategies.

Zeidman's extensive exegesis on this score, *see* Dkt. 232-6 at 17–28, 31–32, 33–34, leads to his opinion that "reasonably competent defense counsel, had they received the allegedly undisclosed evidence discussed above, could and would have been able to use such evidence to substantially undermine the prosecution's case by discrediting the prosecution's key cooperating witnesses and by showing the likelihood that a third party or parties committed the crime," *id.* at 34. This opinion involves the same kind of analysis Zeidman has done for criminal defendants he has represented over the past several decades and in teaching trial skills and strategies. Zeidman's testimony will aid a lay jury in appreciating how a skilled defense attorney would have employed the evidence at issue in this case.

Numerous courts have allowed the type of testimony Zeidman offers and offer support for the testimony that Zeidman gave in the *Walker* case and that the Boyd Estate requests he be permitted to give again. In *Jones v. Cannizzaro*, 514 F. Supp. 3d 853 (E.D. La. 2021), another Section 1983 action raising a *Brady* claim, the court allowed the testimony of an expert for the defense who was an experienced criminal-defense attorney. *Id.* at 866–67. Like Zeidman, this expert was to testify on what "[p]laintiff's trial counsel … would have done if he had received the allegedly suppressed evidence and how it would have affected [p]laintiff's trial." *Id.* at 866. The court rejected the plaintiff's argument that the opinions were unreliable because the expert did not base them "on any professional standard or methodology," finding the expert's "more than forty years of experience as a criminal defense lawyer sufficiently reliable," and stating that it could "readily see how that experience led to his opinions in this matter." *Id.* at 867.

6

In another case raising a *Brady* claim under Section 1983, *Kluppelberg v. Burge*, 2016 WL 6821138 (N.D. Ill. Sept. 16, 2016), the district court considered the admissibility of opinions by a plaintiff's expert who was a former prosecutor and defense attorney. The court allowed the expert to testify to "how a prosecutor would have treated, or how a defense attorney would have used, [certain] exculpatory materials." *Id.* at *3. The court explained that the expert's "expertise as an [Assistant State's Attorney] and defense attorney could well be useful to the jury in explaining how an attorney exercises judgment, how a prosecutor evaluates evidence, and how a defender uses exculpatory evidence at trial." *Id.*

Similarly, in *In re Namenda Indirect Purchaser Antitrust Litig.*, 2021 WL 2403727 (S.D.N.Y. June 11, 2021), the district court deemed admissible an experienced patent attorney's testimony on "what a reasonable and competent patent attorney would have informed the parties about their likelihood of success in" given litigation, where the expert "gathered a huge set of information, which he assessed in light of his own considerable experience in doing precisely what [the party] asked him to do … [which was] exactly what an experienced patent litigator would be expected to do for clients." *Id.* at *8–9. Like the experts in these cases, Zeidman's analysis involves an application of reliable methods, based on his extensive experience in the field, to the evidence in the underlying cases.

However, as explained in the next section, the Boyd Estate renews its objection to Gagan opining on defense-lawyer practices.

### D.    Gagan admits he is not qualified to opine on defense lawyering, and so may not give expert testimony on this subject.

In his report, Gagan offers opinions on defense-lawyer practices. Gagan asserts that "it is speculation on top of unproved supposition" to say that a reasonably competent defense attorney could have effectively used a photograph of footprints in the snow, leading from the home of

7

decedent William Crawford to the home of neighbor Larry Watson, and that "no competent defense attorney" would have attempted to present a third-party defense suggesting that Larry Watson could have been the killer. Dkt. 169-2 (Gagan Rep.) at 17. Gagan also "disagree[s] that a reasonably competent defense attorney could have made much use of the cab company timing evidence." Dkt. 169-2 (Gagan Rep.) at 14, 17, 19 (referring to undisclosed evidence showing the murder occurred after Walker and Woodruff already had left for home in a taxi).

While we appreciate that the Court ruled otherwise at the Walker trial, the Boyd Estate respectfully submits that these "expert" opinions about defense lawyering should not be allowed by Gagan at trial because Gagan admitted during his deposition that he is not an expert in criminal-defense-lawyering standards, tactics, or practices. Dkt. 169-1 (Gagan Dep.) at 82:7–9. As such, he is not qualified to opine on how undisclosed evidence in a murder case, if timely disclosed, likely would have affected counsel's theory of defense, investigation, examination of witnesses, and other actions before and during trial. An expert witness is not allowed to opine on topics that he admits lie outside his expertise. *See Zsa Zsa Jewels, Inc. v. BMW of N. Am., LLC*, 419 F. Supp. 3d 490, 513 (E.D.N.Y. 2019) (limiting testimony due to expert's disclaiming of expertise); *In re Rezulin Products Liab. Litig.* 309 F. Supp. 2d 531, 548–49 (S.D.N.Y. 2004) (same); *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 691 F. Supp. 2d 448, 480 (S.D.N.Y. 2010) (limiting testimony on grounds of disclaiming of expertise and relevance); *see also Dreyer v. Ryder Auto. Carrier Grp., Inc.*, 2005 WL 1074320, at *27 (W.D.N.Y. Feb. 9, 2005) (Foschio, M.J.), *objections overruled*, 367 F. Supp. 2d 413 (W.D.N.Y. 2005) (Arcara, J.) (expert could not rely on hearsay sources under Fed. R. Evid. 703 for matters on which he conceded his lack of expertise).

Gagan's disclaimer of expertise is warranted, as he has spent the vast majority of his career in law enforcement. He has only ever represented about a dozen criminal defendants, *see* Dkt. 169-2 (Gagan Rep.) at 25–28; Dkt. 169-1 (Gagan Dep.) at 75:21–23, and *not a single one* was accused of a felony, *id.* at 77:8–13. He has never taught a course that involved criminal-defense lawyering. *Id.* at 82:4–6. And while Gagan asserted at his deposition that he has studied defense-lawyer practices, he admitted that he is not familiar with the American Bar Association Standards for the Defense Function. *Id.* at 82:18–24, 83:21–25. Though Gagan certainly possesses significant prosecutorial experience, defense attorneys and prosecutors have such different roles, responsibilities, and skillsets that expertise in one is not expertise in the other. *See Rivera v. Guevara*, 2018 WL 3093339, at *6–7 (N.D. Ill. June 22, 2018) (holding a former judge and prosecutor unqualified to opine on whether plaintiff's criminal defense attorney had acted with "reasonable diligence" in part because, while the expert had a "great deal of experience," he had "no experience relevant to criminal defense strategy" and had "never analyzed a case as a criminal defense attorney must …"). Gagan is simply not qualified to educate the jury on defense lawyering, especially on how an experienced defense attorney might have utilized the evidence at issue in this case.

> **E.     The experts should be permitted to relay to the jury what the record shows about what documents and other materials were disclosed to the defense in the pretrial hearing and trial records.**

At the Walker trial, this Court permitted Zeidman to testify that, in the transcripts of the underlying criminal proceedings, there was a documentary record of certain evidence being disclosed and no corresponding documentary record of disclosure for certain other evidence. *Walker*, Tr. T. 1188:17–1189:3. Walker's counsel argued that "whether you want to call it a summary witness or an expert witness or a fact witness," in giving such testimony Zeidman is "not

providing an opinion that anything was or wasn't disclosed to Mr. Walker." *Id.* at 1183:4–6. The Court agreed, observing of Zeidman's proposed testimony: "That's not giving even an inference. That's just stating a fact." *Id.* at 1188:23–24. The Boyd Estate requests that Zeidman (and if the County so chooses, Gagan) be allowed to give such testimony at this trial as well. *See In re Platinum-Beechwood Litig.*, 469 F. Supp. 3d 105, 118 (S.D.N.Y. 2020) (Rakoff, J.) ("an expert may lay a factual foundation for his or her opinion"); Fed R. Evid. 1006(a) ("The court may admit as evidence a summary, chart, or calculation offered to prove the content of voluminous admissible writings, recordings, or photographs that cannot be conveniently examined in court, whether or not they have been introduced into evidence."); *United States v. Lebedev*, 932 F.3d 40, 50 (2d Cir. 2019) (affirming admission of "summary witness" testimony); *United States v. Alwan*, 279 F.3d 431, 439–40 (7th Cir. 2002) (affirming, under Fed. R. Evid. 1006, admission of witness's testimony "concerning his review of [grand jury] transcripts in relation to whether the defendant ever stated he feared for his safety").

### F. Gagan should be precluded from offering legal conclusions on the issue of whether a *Brady* violation occurred.

At the Walker trial, this Court precluded Gagan "from opining [on] the ultimate issue on whether there was a Brady violation or not." *Walker*, Tr. T. 1643:12–13. The Boyd Estate respectfully requests that the same limitation apply to Gagan's testimony at the upcoming trial.

Under Rule 702's helpfulness-to-the-trier-of-fact requirement, experts are prohibited from expressing legal conclusions, because "when an expert undertakes to tell the jury what result to reach, this does not *aid* the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's." *ValveTech, Inc. v. Aerojet Rocketdyne, Inc.*, 2023 WL 3558214, at \*3 (W.D.N.Y. May 19, 2023) (Geraci, J.) (citing *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994)) (cleaned up). The helpfulness inquiry is "subsumed within the broader 'relevance' analysis

10

governed by Rule 401." *In re Zyprexa Prods. Liab. Litig.*, 489 F. Supp. 2d 230, 283 (E.D.N.Y. 2007) (Weinstein, J.). While "[a]n opinion is not objectionable just because it embraces an ultimate issue," Fed. R. Evid. 704, "the Second Circuit 'is in accord with other circuits in requiring exclusion of expert testimony that expresses a legal conclusion,'" *ValveTech,* 2023 WL 3558214, at *3 (citing *Hygh v. Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992)). Of course, the prohibition against legal conclusions does not bar opinions just because they have "direct implications for applying legal standards." *Restivo v. Hessemann*, 846 F.3d 547, 580 (2d Cir. 2017). Indeed, expert testimony may reach "ultimate factual conclusions that are dispositive of particular issues if believed," *United States v. Scop*, 846 F.2d 135, 142 (2d Cir. 1988), and the Second Circuit has instructed that "[e]xperts may testify on . . . mixed questions of fact and law," *Fiataruolo v. United States*, 8 F.3d 930, 941 (2d Cir. 1993). However, opinions that "merely t[ell] the jury what result to reach" are impermissible. *Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir. 1992) (cleaned up). In an excessive-force case, for instance, an expert cannot testify that a police officer's "conduct was not 'justified under the circumstances,' not 'warranted under the circumstances,' and 'totally improper.'" *Id.*

Testimony that no *Brady* violations occurred would be a blatantly prohibited legal conclusion, because such a statement would, as to one of the Boyd Estate's two claims, "attempt[] to substitute the expert's judgment for the jury's," *Duncan*, 42 F.3d at 101. The Court should rule, as it did at the Walker trial, that Gagan cannot give such opinions.

> **G.    As at the Walker trial, Gagan should be precluded from offering certain evaluations or interpretations of certain evidence concerning the Crawford robbery-homicide.**

At the Walker trial, the Court precluded Gagan from offering various opinions evaluating or interpreting certain evidence concerning the Crawford robbery-homicide, namely the following statements:

11

- Nothing in Larry Watson's "statement or his testimony seemed unreasonable, inconsistent, or out of character in recounting the events of the evening," Dkt. 169-2 (Gagan Rep.) at 9;

- It is "quite doubtful" that footprints in the snow leading from Crawford's house to Watson's house ever existed, *id.* at 13;

- Had they existed "[t]hose prints could have been made at any time by anyone earlier in the day or in the last few days and then froze, unfroze, and re-froze in various stages," *id.* at 14;

- If Larry Watson had committed the crime and knew his keys were likely at the crime scene, it made no sense for him to call the bar asking for them, *id.* at 15;

- If Watson were guilty "the better practice would have been to stay at the bar for a longer period thereby helping establish an alibi," *id.* at 16.

As this Court concluded at the Walker trial, "all of th[e]se statements are improper," "misleading to the jury," and "really go to the prohibited topic of what really happened on January 2nd, 1976," *i.e.*, the date of the Crawford robbery-homicide. *Walker*, Tr. T. 1644:14–16. Rule 702's assistance-to-the-trier-of-fact requirement entails that "[e]xpert testimony should not merely reiterate arguments based on inferences that can be drawn by laypersons; those can properly be advanced by the parties in their summations." *Zyprexa Prods.*, 489 F. Supp. 2d at 283. Accordingly, as this Court stated in precluding Gagan's above-referenced statements, "it is improper for an expert to comment on the credibility of witnesses or speculate about their motives or more generally how an underlying factual incident may have unfolded." *Walker*, Tr. T. 1644:17–20. Furthermore, Gagan's opinions mislead the jury into believing that it may find for the defense on *Brady*'s materiality element based on hypothetical "rebuttal evidence," when in reality "the materiality of suppressed favorable evidence is measured against the trial the criminal defendant *actually* had." *Id.* at 1644:24–1645:4 (emphasis added). Finally, these opinions lack relevance, and are unduly prejudicial, because they concern the events surrounding Crawford's death, which, as the Court ruled in Walker's case, are not at issue in the Boyd Estate's *Brady* and summation-misconduct claims.

12

The Boyd Estate requests that, consistent with the Court's ruling at the Walker trial, Gagan be precluded from testifying to the above-referenced statements in his report, and any similar interpretations or evaluations of evidence concerning the Crawford murder.[4]

### H.    As at the Walker trial, Gagan should be precluded from making statements that mislead the jury concerning its task.

At the Walker trial, the Court barred Gagan from testifying to the statements in his report that "there is simply no way to reasonably judge the actions, defenses, strategies of the parties and the worth of evidence used (and evidence not used) over the passage of half a century," and that "the prosecution in the Boyd and Walker trials complied with their legal and ethical obligations in these cases as best they could during the period in which they labored." *Walker*, Tr. T. 1645:5–14; Dkt. 169-2 (Gagan Rep.) at 4, 23–24. As the Court explained, these statements "run the risk of distracting the jury from the law it must apply" and imply "that the law is unimportant here either because too much time has passed or the prosecutors did their best," and "there is also no foundation for Mr. Gagan to opine on the intent or sufficiency of the efforts of ADAs Drury, Henry[,] or any individual prosecutor." *Walker*, Tr. T. 1645:14–25. As at the Walker trial, Gagan should be precluded from making statements that tell the jury that establishing a *Brady* violation in 1977 is epistemically impossible, suggest that the passage of time absolves it of its duty to weigh the evidence and apply the law to the facts, or urge it to let a municipality off the hook by baselessly asserting that line prosecutors did their best.

---

[4] These include the following statements contained in Gagan's report, which the Court did not specifically address in its ruling at the Walker trial: that it was "highly doubtful" that the missing photograph of footprints in the snow ever existed, and that "[t]he keys found next to Mr. Crawford's body belonged to Mr. Crawford." Dkt. 169-2 (Gagan Rep.) at 13, 15. (The Court did, however, preclude Gagan's statement that it was quite doubtful the footprints themselves existed. *Walker*, Tr. T. 1643:24–1644:3.)

The Boyd Estate further requests that the Court preclude Gagan from making another statement in the same vein: that he "find[s] it unsettling to use the sensibilities, rules, standards, and protocols of 2024 to judge the ethics, actions, and responsibilities of the police and the prosecutors in 1977." Dkt. 169-2 (Gagan Rep.) at 4. This statement suggests that the County may assert a qualified-immunity-like protection, though none exists under *Monell*. *Owen v. City of Independence*, 445 U.S. 622, 638 (1980); *see also Askins v. Doe No. 1*, 727 F.3d 248, 253–55 (2d Cir. 2013) (grant of qualified immunity for individual actors does not preclude liability for municipality under *Monell*).

I.    **As at the Walker trial, Gagan should be precluded from referring to inadmissible evidence that, if disclosed to the jury, would unfairly prejudice the Boyd Estate.**

At the Walker trial, the Court barred Gagan from referring to the following inadmissible evidence referenced in his report, *Walker*, Tr. T. 1646:1–11, and the Boyd Estate requests that the Court make the same ruling for the upcoming trial:

**The trial judge's statement, at Boyd's sentencing, "that he had no doubt in the jury's verdict," and the Appellate Division's failure to criticize the summations delivered in the Boyd and Walker trials.** Dkt. 169-2 (Gagan Rep.) at 4, 8, 12, 13, 23 (quoted paraphrase Gagan's). These items would ordinarily be inadmissible at trial, because they are not relevant and unduly prejudicial in any event. Whether the trial judge agreed with the verdict (in ignorance of the *Brady* material identified in this lawsuit) is immaterial to the issue at the present trial of whether Boyd received a fair trial; factual guilt is not the issue in connection with Plaintiff's *Brady* and summation claims. And the evidence underlying Plaintiff's present *Brady* and summation misconduct claims was not before either court. While experts may disclose the basis for their opinions if the underlying data are of the type "reasonably rel[ied] on" by "experts in the particular

14

field," they do so subject to a balancing test: the otherwise inadmissible evidence's "probative value in helping the jury evaluate the [expert] opinion" must "*substantially outweigh*[] their prejudicial effect." Fed. R. Evid. 703 (emphasis added). Here, the probative value is nil and the unfair prejudice is severe.

The opinions of the trial judge and Appellate Division have no probative value, since the procedural postures and substantive issues were entirely different. At the same time, judicial statements may appear authoritative to a lay jury, leading them to substitute these decisionmakers' (uninformed) opinions for their own. Federal Rule of Evidence 403, which imposes a *more lenient* balancing test than Rule 703's, "requires that evidence be excluded, even if relevant, if the jury will place undue weight on that evidence, to the neglect of their duty to evaluate the trial evidence for themselves." *United States v. Awadallah*, 401 F. Supp. 2d 308, 318–19 (S.D.N.Y. 2005), *aff'd,* 436 F.3d 125 (2d Cir. 2006); *see also id.* at 319 n.46 (collecting cases where findings of authoritative sources were excluded on Rule 403 grounds).

**Gagan's reference to "anonymous tips implicating the defendants."** Dkt. 169-2 (Gagan Rep.) at 17. This reference is mistaken and without any basis: there is no evidence that there were multiple anonymous tips implicating more than one defendant. While Detective Deubell did author a P-73 report claiming that he received a phone call on January 7, 1976, from an anonymous female caller, stating that Darryn Gibson was responsible for the Crawford murder, this call makes no reference to Boyd, Walker, Woodruff, or Martin. Dkt. 168-2 at COE002152–2154. There is also one P-73 report, which Gagan discusses elsewhere (Dkt. 169-2 (Gagan Rep.) at 18), claiming that while Tyrone Woodruff was being questioned by the BPD on January 12, 1976, the police received a phone call from an anonymous female naming John Walker, "Darryl Gibson" (a seeming portmanteau of Darryl Boyd and Darryn Gibson), Floyd Martin, and "Toni" as the perpetrators,

15

and that Woodruff overheard this call. Dkt. 168-2 at COE002202. Whether this call actually occurred is disputed; at his deposition in this case and in his testimony at the Walker trial, Woodruff denied overhearing any such anonymous call. *See* Dkt. 165-15 (Woodruff Dep.) at 100:14–102:3; *Walker*, Tr. T. 491:5–492:1. There is no evidence of other anonymous tips concerning Boyd, Walker, or their codefendants.

The alleged tip implicating just Gibson is hearsay-within-hearsay, and it has no bearing upon Gagan's opinions in this case. His nonspecific reference to "anonymous tips" (the only place in his report that he seemingly refers to this tip) is meant to provide a "[c]ontrast" to a tip implicating Jerome Boyd and Andre Howe. He claims that the former were "corroborated by the evidence," while "[n]othing corroborated" the latter.[5] Yet the relative corroboration of tips has nothing to do with the favorability or materiality of the tip implicating Jerome Boyd and Andre Howe. That tip is, on its face, favorable, and its materiality has to be assessed, together with the other evidence implicating Jerome Boyd, against the trial record, of which no anonymous tip implicating Darryl Boyd (or his codefendants) was a part.

As for the alleged tip referenced in the Manista P-73, the jury will learn of it because the Boyd Estate contends the P-73 was withheld *Brady* material, but the hearsay-within-hearsay contained in the P-73 is not admissible to prove Boyd's guilt, which is not at issue in this case. Gagan should be allowed to discuss this P-73 only as it might be relevant to any of the limited opinions the Court permits him to offer with respect to the Boyd Estate's *Brady* claim. He should

---

[5] This is false. There was evidence placing Jerome Boyd at the Golden Nugget, the bar where Crawford had been drinking before he was killed, around the time of the crime: a bartender confirmed that he served a drink to Jerome Boyd the night of the killing, and a bar patron, Frances Kalb, said that Jerome Boyd had been talking with Julia Watson, Larry Watson's wife, at the Golden Nugget. Dkt. 168-2 at COE002140, COE002148. Both ADA Drury and Detective Guadagno considered Jerome Boyd a suspect. Dkt. 168-15 (Drury Dep. Day II) at 402:15–403:3, 409:18–410:7; Dkt. 165-32 (Guadagno Dep.) at 152:13–156:19.

not be permitted to assume the truth of the tip having been made, an issue which has no relevance to that opinion testimony.

## CONCLUSION

For the foregoing reasons, the Boyd Estate respectfully requests that the Court grant its motion *in limine* to establish the permissible scope of expert testimony from Steven Zeidman and Kevin Gagan as set forth above.

Dated:          September 22, 2025          Respectfully submitted,

**LAW OFFICES OF JOEL B. RUDIN, P.C.**
By: /s/ Joel B. Rudin
Joel B. Rudin
David E. Rudin
Partha Sharma
Carnegie Hall Tower
152 West 57th Street, 8th Floor
New York, New York 10019
(212) 752-7600
*jbrudin@rudinlaw.com*

**WILMER CUTLER PICKERING
HALE AND DORR LLP**
By: /s/ Ross E. Firsenbaum
Ross E. Firsenbaum
Gideon A. Hanft
Phoebe Silos
Erin Hughes
Trena Riley
Melissa Zubizarreta
7 World Trade Center
250 Greenwich Street
New York, New York 10007
(212) 230-8800
*ross.firsenbaum@wilmerhale.com*

**HOOVER & DURLAND LLP**
By:  /s/ Spencer L. Durland
Timothy W. Hoover
Spencer L. Durland
561 Franklin Street
Buffalo, New York 14202

(716) 800-2600
*sdurland@hooverdurland.com*

*Attorneys for Plaintiff Estate of Darryl Boyd*

18