UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| ESTATE OF DARRYL BOYD, | ) ) ) | |
| Plaintiff, | ) ) | **Case No. 1:22-cv-519** |
| - against - | ) ) ) | |
| THE COUNTY OF ERIE, | ) ) ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR AN *IN LIMINE* ORDER PRECLUDING DEFENDANT FROM ASSERTING AN IMPROPER DEFENSE TO NONDISCLOSURE OF *BRADY* MATERIAL**

## INTRODUCTION

During John Walker, Jr.'s 2025 civil-rights trial, *Walker v. County of Erie* ("Walker"), Defendant County of Erie (the "County") argued that it could not be liable for the withholding of evidence or information favorable to Walker if his defense attorney, David Jay, actually knew of the favorable material *or could have discovered it*. Walker agreed with the first part but not the second; the County could not escape liability by making a pseudo-ineffective-assistance of counsel argument—that Walker's trial attorney could have or should have found the suppressed *Brady* material on his own but failed to do so. *See Walker,* Dkt. 334. The Court agreed with Walker that, according to controlling Second Circuit precedent, "'[t]he Supreme Court has never required a defendant to exercise due diligence to obtain *Brady* material,'" *Walker,* Tr. T. 2356:2–4 (quoting *Lewis v. Connecticut Commissioner of Correction*, 790 F.3d 109, 121 (2d Cir. 2015)), and the law "imposes no duty upon the defendant who is reasonably unaware of exculpatory information to take affirmative steps to seek out and uncover such information in the possession of the prosecution in order to prevail under *Brady*," *id.* at 2356:25–2357:4 (quoting *Lewis*, 790 F.3d at 121). Plaintiff Estate of Darryl Boyd (the "Boyd Estate") requests that the Court issue the same ruling in this case.

## ARGUMENT

In its opening statement in *Walker*, the County said to the jury:

> When you listen to this evidence about whether something was disclosed or not disclosed, I want you to think about information more than the documents themselves. We will show you that the contents of those documents were known *and knowable* to the defendant's counsel, including, in many instances, with some of the same individuals that you just heard from – or that you just heard about. They had – defense counsel had *direct access to them* and obtained direct statements from many of these individuals in their own right.

*Walker,* Tr. T. 98:8–16 (emphasis added); *see also id.* at 350:19–20 ("[A]ll we need to show is that there – this information was available."); *id.* at 426:15–19 ("[W]e are entitled to elicit that, you

1

know, that [David Jay] – that he'd done – that he wasn't just relying on what was disclosed to him. He did do his own independent investigation about various items. And I think that that is fair game in this case."). These types of arguments improperly dilute a prosecutor's "absolute duty" under *Brady* "to produce all materially favorable evidence in the State's possession," *Villasana v. Wilhoit*, 368 F.3d 976, 979 (8th Cir. 2004); *see also Banks v. Dretke*, 540 U.S. 668, 695 (2004) (noting that counsel need not "scavenge for hints of undisclosed *Brady* material when the prosecution represents that all such material has been disclosed"); *Shih Wei Su v. Filion*, 335 F.3d 119, 128 (2d Cir. 2003) ("[C]onscientious counsel *can* rely on prosecutors to live up to their obligations."); *cf. United States v. Nejad*, 487 F. Supp. 3d 206, 207–20 (S.D.N.Y. 2020) (condemning prosecutors who attempted to bury *Brady* material in a mid-trial production to defense counsel).

The Second Circuit's precedential opinion in *Lewis v. Connecticut Commissioner of Correction* dispels any notion that *Brady* contains a due-diligence threshold.[1] After noting that "[t]he Supreme Court has never required a defendant to exercise due diligence to obtain *Brady* material," the Second Circuit wrote:

> To be sure, we have held in several cases that "[e]vidence is not 'suppressed' [for *Brady* purposes] if the defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence." *DiSimone v. Phillips*, 461 F.3d 181, 197 (2d Cir. 2006); *see also Leka v. Portuondo*, 257 F.3d 89, 100 (2d Cir. 2001). . . . [But] [t]his requirement speaks to facts *already within the defendant's purview*, not those that might be unearthed. It imposes no duty upon a defendant, who

---

[1] During the *Walker* trial, the County cited two Second Circuit cases that it claimed supported the improper defense that David Jay could have or should have known of the suppressed *Brady* material. *See Walker,* Tr. T. 354:25–356:7, 440:9–444:10 (citing *United States v. Payne*, 63 F.3d 1200 (2d Cir. 1995) and *Greene v. City of New York*, 742 App'x 532 (2d Cir. 2018)). As Mr. Walker explained in response, neither case supports the County's position. In *Payne*, the Second Circuit held that the prosecutor failed to disclose *Brady* material—a cooperator's affidavit denying her involvement in narcotics sales—and rejected the government's argument that defense counsel knew about the cooperator's criminal case and had ready access to the public court file. *See Payne*, 63 F.3d at 1208–09. In *Greene*, a non-precedential summary order, defense counsel had knowledge of the relevant facts so an undisclosed report was "duplicative." *Greene*, 742 App'x at 535. *Lewis*—issued 20 years after *Payne* and cited as controlling authority in *Greene*—forecloses the County's defense.

2

> was reasonably unaware of exculpatory information, to take affirmative steps to seek out and uncover such information in the possession of the prosecution in order to prevail under *Brady*.

790 F.3d at 121 (emphasis added). The Second Circuit went on to hold that "the state habeas court's imposition of [] a due diligence requirement plainly violated clearly established federal law under *Brady* and its progeny." *Id.* at 121–22.[2]

At the *Walker* trial, the Court precluded the County from arguing that Walker's defense knew or should have known of certain information from three sources: (1) "from the fact that the four defendants and their counsel were present at certain pre-trial hearings together," (2) "from the Gibson or Boyd trial transcripts," and (3) "[f]rom Mr. Walker himself." *Walker,* Tr. T. 2357:11–19. Regarding the first point, the Court explained that there was "no evidence [] of any collaboration between the four separate defense counsel." *Id.* at 2357:23–25. The Court ruled that "[t]he County is prohibited [] from arguing to the jury that simply because the four defendants appeared together at the pre-trial hearings Mr. Walker's defense knew or should have known of any information beyond that which was explicitly discussed at those hearings." *Id.* at 2358:11–16. As to the second point, the Court ruled that "[t]he County is . . . prohibited from arguing in summation that certain information was in fact disclosed to Mr. Walker by virtue of the fact that Mr. Walker's defense had the trial transcripts of Gibson and Boyd unless the information contained in the allegedly withheld documents was discussed at the Gibson or Boyd trial. In other words, if the County can show that

---

[2] Additional Second Circuit decisions confirm that defense counsel's awareness of *some* information, such as a potential witness's identity, does not mean that a document confirming or expanding on that information was not "suppressed." *See United States v. Mahaffy*, 693 F.3d 113, 131 (2d Cir. 2012) ("For the purposes of our *Brady* analysis, it simply does not matter that Ghysels [defendant] knew that Romero [non-testifying witness], his former partner, had a conversation with Amore [prosecution witness]. Whatever Ghysels knew, he did not know what Romero told the SEC under oath."); *United States v. Orena*, 145 F.3d 551, 557 n.4 (2d Cir. 1998) ("Although appellees suspected that Scarpa was an informant, and argued as much to the jury, this was merely a suspicion, and in any event appellees lacked evidence of the specific information exchanged between Scarpa and the FBI that has now become available.").

3

Mr. Jay was aware of the essential facts of . . . undisclosed *Brady* material then that—then that's different, but if the County is just arguing that the exhibit was marked for identification or received but there was no substantive discussion in the transcript, then that would not be disclosure of *Brady* material." *Id.* at 2360:8–21. Finally, the Court ruled that "just because a defendant may know that certain events occurred or certain people were present, that does not mean that the defendant knows or should know of the substance of what a third-party would themselves testified to *[sic]* about the relevant events," *id.* at 2361:3–8, and "it's not the responsibility of the defense to unearth the substance of those third-party statements," *id.* at 2362:2–4.

    The Court should make the same rulings in the Boyd civil-rights trial. While the County can attempt to argue that Boyd's defense counsel, Mark Hulnick, actually received the *Brady* material at issue, or was explicitly alerted to its existence,[3] the Court should preclude the County from arguing that Hulnick *could have* or *should have* obtained the *Brady* material (or supposed equivalents) through his own independent efforts. If the County wants to make any argument or pursue any line of questioning that implicates the principle of what the defense "could have known" or "should have known" or was "already within the defendant's purview," it must seek permission from the Court in advance outside the jury's presence and make a factual showing justifying such request.

## CONCLUSION

    For the foregoing reasons, the Boyd Estate respectfully requests that the Court preclude the County from arguing that Boyd's defense counsel Mark Hulnick "could have" or "should have" discovered any of the allegedly undisclosed *Brady* material (or a supposed equivalent), or that any of the allegedly undisclosed *Brady* material (or a supposed equivalent) was "knowable" to

---

[3] Of course, defense counsel must be aware of the existence of *the favorable information itself*, not merely the existence of a document that, unbeknownst to counsel, happens to include favorable information.

4

Hulnick, or that Hulnick had "access to" the allegedly undisclosed *Brady* material (or a supposed equivalent).

Dated:  September 22, 2025  Respectfully submitted,

**LAW OFFICES OF JOEL B. RUDIN, P.C.**
By: /s/ Joel B. Rudin
Joel B. Rudin
David E. Rudin
Partha Sharma
Carnegie Hall Tower
152 West 57th Street, 8th Floor
New York, New York 10019
(212) 752-7600
*jbrudin@rudinlaw.com*

**WILMER CUTLER PICKERING HALE AND DORR LLP**
By: /s/ Ross E. Firsenbaum
Ross E. Firsenbaum
Gideon A. Hanft
Phoebe Silos
Erin Hughes
Trena Riley
Melissa Zubizarreta
7 World Trade Center
250 Greenwich Street
New York, New York 10007
(212) 230-8800
*ross.firsenbaum@wilmerhale.com*

**HOOVER & DURLAND LLP**
By:  /s/ Spencer L. Durland
Timothy W. Hoover
Spencer L. Durland
561 Franklin Street
Buffalo, New York 14202
(716) 800-2600
*sdurland@hooverdurland.com*

*Attorneys for Plaintiff Estate of Darryl Boyd*