UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KATHLEEN WEPNER, AS EXECUTOR
OF THE ESTATE OF DARRYL BOYD,

                    Plaintiff,

       v.

THE COUNTY OF ERIE,

                 Defendant.[1]

_____

**DECISION & ORDER**

22-cv-00519-MAV

## INTRODUCTION

Darryl Boyd commenced the instant action on July 6, 2022. ECF No. 1. After Mr. Boyd's death in February 2025, Kathleen Wepner, as Executor of the Estate of Darryl Boyd (the "Boyd Estate" or "Plaintiff"), was ultimately substituted as the Plaintiff in this case. ECF Nos. 289, 302, 304, 305; *see also* ECF Nos. 290, 294, 299. The only claim presently before the Court from the Amended Complaint, which is the operative pleading, is a *Monell* claim against Defendant County of Erie based on the alleged deprivation of Boyd's constitutional rights as a result of policies of the Erie County District Attorney's Office ("ECDA" or the "DA's Office"). ECF No. 78. Plaintiff advances two theories of *Monell* liability for trial—a "*Brady* theory," *see Brady v. Maryland*, 373 U.S. 83 (1963), and a "summation misconduct theory." *See id.*; ECF Nos. 330-1 at 3 n.2; 338-1 at 1.

---

[1] For reasons discussed in Section II, the case caption shall be updated as reflected in this Decision and Order. To the extent either party has documents they intend to put in front of the jury that contain a different case caption for this matter than that set forth above, party must raise the issue out of the presence of the jury to address appropriate redactions.

In advance of the jury trial scheduled to commence on November 3, 2025, the parties submitted a collective 29 motions *in limine*, ECF Nos. 318–27, 328–45, 352, the County's motion to stay trial, ECF No. 311, and the County's motion for partial reconsideration of the Court's decision at summary judgment, ECF No. 317. On October 24, 2025, the Court held a Final Pretrial Conference with the parties during which the Court issued numerous oral rulings and provided high-level principles to guide the parties' potential requests for the admission and/or preclusion of evidence moving forward. Given some of the colloquy during the conference, the Court, via email, ordered the parties to submit briefing on any outstanding issues anticipated to come up during trial by October 31, 2025. The parties submitted briefs and responses on multiple supplemental evidentiary issues, stylized as either additional support for prior argument, new requests, and requests for reconsideration of the Court's rulings during the Final Pretrial Conference. ECF Nos. 401, 402, 410–16.

This Decision and Order memorializes most of the rulings issued and guidance provided during the Final Pretrial Conference, resolves most *in limine* rulings on which the Court previously reserved decision, reserves on a handful of additional issues, and addresses some of the supplemental *in limine* evidentiary submissions due October 31, 2025.

The Court will issue a subsequent written decision to fully address the Court's reserved rulings and the following *in limine* submissions: Plaintiff's motion to establish the permissible scope of Kevin Gagan's expert testimony, ECF No. 331; Plaintiff's motion for a ruling that certain of Gagan's statements are statements of a

party opponent, ECF No. 333; Plaintiff's supplemental submission regarding admissibility of statements of a party opponent by Gagan, ECF No. 412; the County's motion for a preliminary hearing and to preclude certain *Monell* evidence, ECF No. 326; Plaintiff's motion to admit certain *Monell* evidence, ECF No. 352; Plaintiff's supplemental request to ask leading questions of Drury and Henry on direct, ECF No. 415, and the County's motion to reconsider several rulings from the Final Pretrial Conference with additional evidentiary and trial procedure requests, ECF No. 416.

## BACKGROUND

The factual background of this matter is set forth in detail in the Court's Decision and Order dated January 14, 2025, ECF No. 219, familiarity with which is assumed for purposes of the instant Decision and Order. To briefly summarize, Boyd and co-Plaintiff John Walker, Jr., each spent approximately twenty years in prison for the 1976 murder of William Crawford. In August 2021, the Erie County Court vacated the convictions of both men. Walker and Boyd each commenced actions in July 2022 against the City of Buffalo and several individual Buffalo Police Department ("BPD") detectives allegedly involved in the investigation of Crawford's murder (collectively, the "City Defendants"), and the County of Erie (the "County"), alleging multiple violations of their civil rights under federal law, and multiple violations of New York state law. ECF Nos. 1, 78. The only claim that is proceeding to trial is against the County under 42 U.S.C. § 1983 and *Monell v. Dep't of Soc. Srvcs. of City of New York*, 436 U.S. 658 (1978), for the alleged misconduct of ECDA

prosecutors pursuant to County policies.[2] ECF Nos. 206, 210, 219.

## LEGAL STANDARD

As the Supreme Court has noted, "[a]lthough the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Indeed, "[t]he purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996).

When granted, motions *in limine* operate to exclude inadmissible or prejudicial evidence before it is actually offered at trial. *Griffith v. Goodyear Dunlop Tires N. Am. Ltd.*, No. 11-CV-761S, 2018 WL 4658721, at *1 (W.D.N.Y. Sept. 28, 2018). The Court "should exclude evidence on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." *White v. CSX Transportation, Inc.*, No. 19-CV-500SR, 2024 WL 3228158, at *1 (W.D.N.Y. June 28, 2024) (citing *United States v. Ozsusamlar*, 428 F. Supp. 2d 161, 164 (S.D.N.Y. 2006)). Thus, "courts considering a motion *in limine* may reserve judgment until trial, so that the motion is placed in the appropriate factual context." *United States v. Van Putten*, No. 04 CR. 803 (PKL), 2005 WL 612723, at *3 (S.D.N.Y. Mar. 15, 2005). Either way, "the ruling is subject to change when the case unfolds . . . . [E]ven if nothing unexpected happens at trial, the

---

[2] Mr. Walker's trial was conducted separately, in March 2025.

district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling." *Luce*, 469 U.S. at 41–42.

## DISCUSSION

The County's motion to stay trial, ECF No. 311, is **DENIED**. The County argues that trial should be stayed in this case because the Court has not yet ruled on the County's post-trial motions in the case of related plaintiff, Mr. Walker, *Walker v. County of Erie*, No. 22-cv-0520, and if applicable, because the Second Circuit has not resolved any issues in Walker's case on future appeal. *Id.* at 1. The applicable standard for evaluating whether to stay a trial pending appeal of a related case is *Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996), setting forth the following factors for consideration: (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interest of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.

The first factor is the most important, *see LaSala v. Needham & Co.*, 399 F. Supp. 2d 421, 427–28 (S.D.N.Y. 2005), and weighs strongly here in proceeding with trial as scheduled to begin on November 3. Losing key witnesses presents a serious risk in this case, pertaining to whether Boyd's due process rights were violated during his criminal trial in 1977. Four key witnesses have already passed away during the pendency of this case, including Boyd himself in February 2025.[3] With the exception

---

[3] The other witnesses who have passed are Mark Hulnick, Boyd's criminal trial counsel, Edward Cosgrove, the Erie County District Attorney at the time of Boyd's criminal trial, and James Verrastro,

of expert witnesses, all remaining witnesses in this case are elderly and, in some instances, have serious health problems.

Boyd's November 2025 civil trial is also proceeding a year after it was first scheduled to do so. The Honorable Judge Vilardo granted Boyd's motion to expedite trial, first setting trial for October 2024. ECF No. 150. After the case was transferred to the undersigned and with Boyd's and Walker's settlement with the City Defendants pending, Boyd's trial was rescheduled for January 2025 and then to March 10, 2025. ECF Nos. 191, 197, 220. Boyd passed away at the end of February 2025, necessitating postponement to resolve issues of substitution. ECF Nos. 289, 297. Further postponement poses significant prejudice to Plaintiff. Plaintiff is well-aware of the County's challenges to the *Walker* verdict and the likelihood of the County's appeal should the Court not rule in the County's favor on post-trial issues in *Walker*. Plaintiff wants to proceed and has a "right to chart the course of [its] own litigation and to prosecute [its] claims in the manner of his choice." *McDonald v. Piedmont Aviation, Inc.*, 625 F. Supp. 762, 767 (S.D.N.Y. 1986). The first *Kappel* factor does not weigh in favor of a stay.

Although the Court notes the County's argument that resolution of post-trial practice in *Walker* has "the potential to narrow (if not eliminate) issues for the Court" in this case, ECF No. 311-3 at 1, the Court finds there is minimal prejudice to the County by proceeding with trial as scheduled. For most of the last year, the County was on notice that the *Boyd* and *Walker* trials would be proceeding in close succession.

---

an ECDA prosecutor at the time, and co-prosecutor in Walker's criminal trial. *See* ECF 313 at 3.

ECF No. 150 (Judge Vilardo scheduling the *Walker* trial to begin shortly after Boyd's); ECF No. 197 (the undersigned ordering Boyd's three-week trial to begin on January 27, 2025, and Walker's to begin on March 10, 2025); ECF No. 220 (due to the settlement with the City Defendants, rescheduling Boyd's trial to begin March 10 with the *Walker* trial to begin immediately thereafter). After Boyd's passing, the County agreed to a start date for Plaintiff's trial in June 2025. The parties briefing on post-trial motions in the *Walker* case would not have been complete if Plaintiff's June trial date had held, let alone having any post-trial decisions rendered or appeals resolved. Further, the County pushed to have the two trials consolidated—eliminating any now-argued-as-needed benefit of completely resolving one case through the appeals process before trying the other. That a trial involves the County expending "significant resources," ECF No. 311-3 at 11–12, is a risk of any litigation and that any party must weigh against its openness to settlement and information known to it about the Court's docket and rulings. The second *Kappel* factor does not weigh in favor of a stay.

Nor do the remaining factors. Boyd's family and the beneficiaries of his estate have a clear interest in prompt resolution of Plaintiff's case; the Court, the jury in Plaintiff's civil case, and the public in general, have interests in promoting the live testimony of witnesses; litigants in other cases and trials on the Court's docket that were scheduled around the substantial three-week period blocked off for the *Boyd* trial have interests in the trial proceeding as scheduled; and judicial resources are not likely to be conserved when, after a stay of potentially years to resolve any appeal

in Walker's case, the Plaintiff's case may be reduced to testimony largely by deposition, requiring a notably different approach to the evidence. For the foregoing reasons, the County's motion to stay trial is **DENIED**.

* * *

The Court now turns to the parties' motions *in limine,* the County's motion for partial reconsideration of summary judgment, and a portion of the parties' supplemental *in limine* submissions.

"The purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Hart v. RCI Hosp. Holdings, Inc.*, 90 F. Supp. 3d 250, 257 (S.D.N.Y. 2015) (quotation omitted); *see also, e.g., Sumpter v. Snyder*, No. 9:20-CV-00619 (AMN/DJS), 2025 WL 53138, at *1 (N.D.N.Y. Jan. 9, 2025) ("The Motions each seek to admit or preclude evidence to be presented at trial."). Requests for *in limine* rulings should "enable the Court to rule on disputes of the admissibility of discrete items of evidence." *United States Sec. & Exch. Comm'n v. Collector's Coffee Inc.*, No. 19-CV-4355 (VM), 2023 WL 8111865, at *1 (S.D.N.Y. Nov. 22, 2023). "Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." *E.g.*, *Sumpter*, 2025 WL 53138, at *1.

Rulings on all motions *in limine* are without prejudice. *Id.* ("[A] district court's ruling on a motion *in limine* is preliminary and subject to change when the case unfolds." (quotation omitted)). Whether acknowledged specifically in a ruling below

or not, circumstances may evolve during trial, doors may be opened to previously excluded evidence, and evidence may come in differently from what was proffered, which may warrant reassessment of the Court's rulings. *See Luce v. United States*, 469 U.S. 38, 41–42 (1984) (rulings *in limine* are "subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the defendant's proffer. Indeed, even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling.").

I.   **Plaintiff's Motion to Preclude the County from Introducing an Apportionment Defense and "City Policy Evidence" (ECF No. 338) and Related Supplemental Filings Regarding Apportionment (ECF Nos. 405, 409)**

In a motion *in limine*, Plaintiff argued that the County should be precluded from presenting an apportionment defense and from introducing testimony and evidence regarding policies and practices of the City of Buffalo or the BPD, claiming that the County has not, and in some cases cannot, set forth any reasonable basis that another entity or individual could be construed as another *tortfeasor* partially responsible for Plaintiff's damages. ECF No. 338-1 at 1. The County's opposition does not address the substance of Plaintiff's arguments. ECF No. 356.

Instead, the County asserts that it should be permitted to pursue a generalized "apportionment defense" at trial because Plaintiff's pleadings sought relief associated with alleged police-officer misconduct, there is expected evidence in Plaintiff's case-in-chief that tends to disparage or question conduct of the BPD during the investigation of the Crawford murder, and Plaintiff is affirmatively seeking to

introduce certain deposition testimony of Edward Cosgrove, the Erie County District Attorney at the time of Boyd's underlying criminal prosecution, which the County must have an opportunity to rebut. *See id.* at 2–5.

The County's proposed jury instructions implicate the following third parties as candidate targets of its apportionment defense: the City of Buffalo, the BPD, and, collectively as the former "detectives," Michael Guadagno, John Montondo, James Hunter, Robert Grabowski, Robert Arnet, Frank Deubell, Leo Donovan, Francis Manista, Jr., and Paul Delano. The tort that the County alleges was committed, thereby allegedly contributing to Plaintiff's damages and warranting apportionment, is the fabrication of evidence. *See Restivo v. Hessemann*, 846 F.3d 547, 584–86 (2d Cir. 2017) (explaining that federal common law establishes that a tortfeasor's damages owed in a § 1983 action may be reduced by "a settling *tortfeasor's* proportionate fault" (emphasis added)); *see also Dobson v. Camden*, 705 F.2d 759, 769 (5th Cir. 1983), *on reh'g*, 725 F.2d 1003 (5th Cir. 1984) ("The fairness of *a tortfeasor* paying an injured party rests not solely on the fact that the injured party deserves compensation, but also on the fact that *the tortfeasor* deserves to pay." (emphases added)).

The Court walked through the parties' arguments on the County's purported apportionment defense at length during the Final Pretrial Conference. Final Pretrial Conference Transcript ("FPTC Tr.") at 103:24–113:17. The Court highlighted that it was still unclear against whom the apportionment defense was directed, let alone what evidence the County reasonably intends to offer to support its apportionment

defense against each particular target—on which it bears the burden of proof. *Id.* at 107:14–109:5. The Court acknowledges that the County contends that there is no prejudice in potentially pursuing apportionment against, say, three detectives instead of six. FPTC Tr. 108:18–25. Although Plaintiff will be entitled to raise a motion for judgment as a matter of law after the defense rests to argue that certain targets of an apportionment defense should not be presented to the jury, the Court maintains that reasonable notice of the scope of the County's intended defense(s) and a preliminary assessment of whether evidentiary proffers even allow the jury—in a trial that is already scheduled to span three weeks—to hear certain evidence at all, i.e, *in limine* rulings, is readily warranted. *See generally* ECF Nos. 306, 308 (the Court's Amended Pretrial Order).

Therefore, before ruling on Plaintiff's motion to preclude an apportionment defense and City-policy evidence, ECF No. 338, the Court "require[d] the defense to submit a written proffer of who the targets are for this apportionment defense and what evidence you expect to present regarding each individual officer as well as the City of Buffalo, which should include the *Monell* evidence, if you are seeking to pursue apportionment against the City of Buffalo. FPTC Tr. at 113:3–10. The County filed a supplemental submission, ECF No. 405, to which Plaintiff responded, ECF No. 409. The Courts considers those supplemental submissions alongside the parties' initial *in limine* briefing. ECF Nos. 338, 356.

### A. Apportioning Fault to Individual BPD Detectives

A fabrication of evidence claim implicates an individual's due process rights.

*See Zahrey v. Coffey*, 221 F.3d 342, 349 (2d Cir. 2000) (the Due Process Clause promises a "right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity"); 42 U.S.C. § 1983. To establish such a claim, the pursuing party must show by a preponderance of the evidence that "(1) an investigating official (2) fabricated information (3) that is likely to influence a jury's verdict, (4) forwarded that information to prosecutors, and (5) the plaintiff suffered a deprivation of life, liberty, or property as a result." *Ortiz v. Stambach*, 137 F.4th 48, 67 (2d Cir. 2025) (brackets omitted).

The principal justification for the County's apportionment defense appears to be that Plaintiff's prior pleadings in this litigation allege that individual BPD detectives fabricated and/or coerced evidence (and that the City of Buffalo's policies caused such fabrication) and, accordingly, were liable to Plaintiff. *E.g.*, FPTC Tr. at 108:3–10; ECF No. 405 at 9–12; ECF No. 356 at 3. In its supplemental submission, the County identifies specific paragraphs in Plaintiff's Amended Complaint and Plaintiff's Counterstatement of Material Facts at summary judgment in support of each of the now seven individual detectives,[4] and the City of Buffalo, to which it seeks to apportion fault. ECF No. 405 at 9–12. Beyond that, the County lists certain exhibits, and for some targets, the entire deposition transcript of Michael Guadagno, and the entire deposition transcript and expert report of Professor Alan Hirsh despite moving to preclude his expert testimony is its entirety. *Id.*; *see* ECF No. 327.

---

[4] The County did not make any evidentiary proffers with respect to John Montondo or Robert Grabowski in its supplemental brief, ECF No. 405; therefore, the Court considers the County to be abandoning a purported apportionment defense as to those two individuals and **GRANTS** Plaintiff's motion to preclude apportionment in that regard.

At this stage, the Court **DENIES** Plaintiff's motion to preclude an apportionment defense with respect to Guadagno, Deubell, Hunter, Arnet, Donovan, Delano, and Manista. In a subsequent written order, the Court will address in more detail the evidence the County identifies in support of each apportionment target and will address disputes regarding legal issues, such as intervening and superseding causes. In the meantime, the Court makes the following rulings applicable to all of the refined targets of the County's apportionment defense, including, as discussed more below, the City of Buffalo.

First, the County is prohibited from designating deposition testimony in support of an apportionment defense against any refined target beyond that which the County already identified pursuant to the Court's Amended Pretrial Order. ECF Nos. 306, 308, 348 at 4–5. Deposition designations for the *Boyd* trial were due September 22, 2025, and objections thereto were due October 6. ECF No. 308. Given the vagueness of the County's supplemental apportionment submission, and the untimeliness of invoking additional deposition designations where the County bears the burden of proof to establish its apportionment defense, implicating an affirmative need to ensure that sufficient evidence is admitted at trial, the Courts finds that additional deposition designations by the County with respect to apportionment are barred.

Second, only factual statements made in a party's prior pleadings are potential candidates for admissibility at trial. *See Chepilko v. Major*, No. 06CV5491ARRLB, 2012 WL 13135142, at *3–4 (E.D.N.Y. Apr. 5, 2012); *Rosenberg v. Curry Chevrolet*

*Sales & Serv., Inc.*, 152 F.3d 920 (2d Cir. 1998) (unpublished decision) ("Judge Koeltl concluded that the prior pleadings were relevant because they contained factual assertions 'directly contradictory' to those advanced by appellants at trial."); *Carmichael v. Raytheon Co.*, No. CV 09-3089 GAF (EX), 2011 WL 13213629, at *3 (C.D. Cal. Jan. 19, 2011) ("In *Purgess v. Sharrock*, 33 F.3d 134, 143–44 (2nd Cir. 1994), the Second Circuit upheld the admission into evidence at trial of a narrative factual statement written by counsel and included in a pre-trial memorandum of law. But again[,] the Court did not hold that the factual statement was binding on the jury or that the jury could not reach a different conclusion on the facts. It held only that such evidence was admissible."). To the extent the County cites paragraphs in Plaintiff's Amended Complaint and its Counterstatement of Material Facts that constitute or contain legal argument or conclusions, such non-factual statements are inadmissible.

Also, unless the parties stipulate to the admission of Hirsh's expert report in full, the Court is not inclined to entertain requests from the County to introduce Hirsh's entire 28-page report into evidence. <u>If the County wishes to affirmatively offer Hirsh's expert report into evidence to support its apportionment defense (again, the Court notes that the County moved to have Hirsh precluded from testifying at all), and the report or pertinent portions thereof are not already stipulated to or ruled admissible, the County must identify the specific portions of Hirsh's report that it seeks to admit and demonstrate why those portions are admissible by November 5, 2025. Plaintiff will then have until November 10, 2025, to respond.</u>

14

As noted, the Court will issue a subsequent decision addressing the County's apportionment citations to Plaintiff's prior pleadings and, more generally, admissibility and limitations that apply to prior pleadings.

### B. *Apportioning Fault to the City of Buffalo*

As the County is well-aware, to establish a municipality's fault as a tortfeasor in a § 1983 case, a party must still fully establish that an underlying constitutional violation occurred (here as sought, the fabrication of evidence by individual BPD detective(s)) *and also* that said violation was caused by a municipal policy. *See Monell*, 436 U.S. at 690–91; *Oliver v. City of New York*, 540 F. Supp. 3d 434, 436 (S.D.N.Y. 2021) ("In a lawsuit containing a *Monell* claim, if the plaintiff cannot show that his or her constitutional rights were violated by any individual defendants, the *Monell* claim will also fail."); *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986) (under § 1983, local governments are responsible only for "their own illegal acts"); *Restivo*, 846 F.3d at 584–86. However, the BPD itself is not subject to suit and is not a proper target of the County's sought-after apportionment defense. *See Nix v. City of Rochester*, No. 6:14-CV-06395(MAT), 2017 WL 3387103, at *8 (W.D.N.Y. Aug. 5, 2017) ("Because [a police department] does not exist separate and apart from the municipality and does not have its own legal identity, a police department "cannot sue or be sued." (quotation omitted)). Plaintiff's motion is **GRANTED** to preclude the County from attempting to apportion fault to the BPD.

The County reaffirmed a general intention to target the City of Buffalo in its apportionment defense during the Final Pretrial Conference. FPTC Tr. at 109:20–

111:10. The Court is not persuaded by Plaintiff's argument that a *Monell* theory on an underlying fabrication of evidence allegation is not legally cognizable as an apportionment defense. *Compare* ECF No. 409 at 8–9, *with, e.g.*, *Moran v. Town of Greenwich*, No. 3:19-CV-722 (VAB), 2025 WL 579995, at \*17 (D. Conn. Feb. 21, 2025) (denying motion to dismiss a *Monell* claim based on city policies of fabricating evidence because "[a]lthough there is a significant length of time between these alleged incidents and Mr. Moran's, there are enough similarities between these incidents and the alleged fabrication of evidence here, including that, in his case, several officers fabricated evidence, to make this a close question."), *and Pembaur*, 475 U.S. at 479  (under § 1983, local governments are responsible only for "their own illegal acts").

That said, whether County will be attempting to apportion fault to the City of Buffalo remains, for the most part, vague and hypothetical. Despite purporting to pursue an apportionment defense against the City of Buffalo and despite including proposed jury instructions pertaining to its fabrication-of-evidence tort theory with respect to individual BPD detectives, the County's proposed jury instructions included nothing regarding the City of Buffalo's alleged fault under *Monell* for any individual detective(s)' fabrication of the evidence. Nor did the County's supplemental apportionment filing attempt to rectify that issue. *See* ECF No. 405. *Cf.* FPTC Tr. at 109:20–111:10.

Although the Court acknowledges that final jury instructions are not yet settled, the Court's Amended Pretrial Order, setting advance deadlines for, *inter alia*,

proposed jury instructions and objections thereto, facilitates notice to each party about what the other intends to submit to the jury and gives each party an opportunity to object. ECF Nos. 306, 308. Proposed jury instructions were due on October 6, 2025. ECF No. 308. It is now November 2. <u>If the County intends to proceed on an apportionment defense against the City of Buffalo, it must submit supplemental proposed jury instructions via email to Chambers by November 5, 2025, and Plaintiff will have until November 10, 2025, to submit any objections thereto. The County's failure to timely submit will be treated as a waiver of its alleged apportionment defense against the City of Buffalo.</u>

Accordingly, the Court **RESERVES** on the issue of whether the County may pursue an apportionment defense against the City of Buffalo until after November 5.

### C. City Policy Evidence

Absent a *Monell*-based apportionment defense, evidence of the City of Buffalo's policies and practices is irrelevant and thus inadmissible. *See* Fed. R. Evid. 401, 402. ECF No. 356 at 3 "([T]he County does not dispute that the conduct and actions of the City of Buffalo Defendants are irrelevant to Plaintiff's burden of proof on its sole remaining claim against the County."). The Court, thus, also **RESERVES** on Plaintiff's request to preclude "City Policy Evidence." <u>To the extent the County intends to pursue apportioning fault to the City of Buffalo, the County must identify which portions of the almost 800-page "City or Buffalo Police Department Rules and Procedures" and Hirsh's expert report that it seeks to affirmatively admit into</u>

evidence to support apportionment to the City of Buffalo[5] by November 5, 2025. Plaintiff will then have until November 10, 2025, to respond.

## II.    Plaintiff's Motion to Preclude Reference to City Defendants' Prior Settlement and the City Defendants' Status as Former Parties in This Case (ECF No. 329)

Plaintiff's motion is **GRANTED**. At this stage, neither party shall disclose or imply to the jury that any of the City Defendants were once parties to this litigation or that the City Defendants settled with Boyd (or Walker). To the extent that the County is not or will not be pursuing an apportionment defense against any particular City Defendants, *see supra* Section I, evidence that that defendant used to be a party and settled with Boyd is irrelevant to this trial. Fed. R. Evid. 401, 402. With respect to the County's refined contentions regarding apportionment in its supplemental apportionment submission, which implicates Plaintiff's Amended Complaint and Counterstatement of Material Facts, ECF No. 405, the Court finds that any probative value of the City Defendants' former status as parties and their settlement is substantially outweighed by a danger of unfair prejudice and confusing the issues. Fed R. Evid. 403. *Cf. Rosenberg*, 152 F.3d 920 ("Judge Koeltl concluded that the prior pleadings were relevant because they contained factual assertions "directly contradictory" to those advanced by appellants at trial. Judge Koeltl further concluded that the probative value of the admissions was not substantially outweighed by the danger of unfair prejudice. We review this conclusion for an abuse

---

[5] The County's fourth amended proposed exhibit list does not include a "(redacted)" notation for its proposed "Rules and Procedures of the BPD," exhibit DX 725, or for Hirsch's expert report, exhibit DX 721. *See* ECF No. 399 at 11; *see also* ECF No. 405 at 12 (including both exhibits, unqualified, in list of evidence purportedly supporting apportionment of fault to the City of Buffalo).

of discretion and find no such abuse here." (citations omitted)).

The probative value of a particular target of the County's apportionment defense having been a party to this litigation appears to be minimal at least based on the parties' briefing. Fed. R. Evid. 401. The County loosely cites cases that admit prior pleadings to demonstrate some form of incongruity in a plaintiff's theory of their case, but the County has not set forth with any clarity what type of alleged contrast, contradiction, or inconsistency it is seeking to highlight through admission of Plaintiff's Amended Complaint and Counterstatement of Material Facts. *Cf. Andrews v. Metro N. Commuter R. Co.*, 882 F.2d 705, 707 (2d Cir. 1989); *Rich v. Associated Brands, Inc.*, 559 Fed. App'x 67, 70 (2d Cir. 2014). Moreover, Plaintiff intends to affirmatively offer evidence pertaining to the BPD's coercion of certain witness in its case-in-chief. *See, e.g.,* ECF No. 375 at 4–12 (opposing the County's motion to preclude Hirsch's expert testimony in its entirety); FPTC Tr. at 159:1–6 ("[W]hile the Boyd [E]state could oppose this apportionment defense by denying that detectives fabricated evidence at all, it will instead argue that detectives did coerce Woodruff and Hough into giving fabricated evidence and that the County was complicit.")

Moreover, a plaintiff's pleadings may reasonably contain statements about individuals or entities who are not parties to the litigation, and legal conclusions and arguments from prior pleadings, such as paragraphs constituting a legal cause of action, that may necessarily identify a particular defendant(s) are inadmissible. *See supra* Section I. In other words, introducing to the jury that certain City Defendants were former parties is not a general prerequisite to admitting and having the jury

19

understand factual statements made in Plaintiff's Amended Complaint and/or Counterstatement of Material Facts. Because the Court will address the County's specific citations to those pleadings in a subsequent decision, as they may be admissible in support of an apportionment defense, the Court notes that it may revisit whether a particular City Defendant's former status[6] warrants disclosure to the jury.

For now, the assessed minimal probative value of the City Defendants' former status is substantially outweighed by a danger of unfair prejudice and confusing the issues. Fed. R. Evid. 403. Introducing the former party status of any City Defendant will necessarily require an explanation or limiting instruction about why that party no longer is a party, which will in turn necessarily implicate speculation about settlement or dismissal, posing notable risks of unfair prejudice and confusing of the issues.

Settlement agreements are inadmissible under Federal Rule of Evidence 408 "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408; *see Bausch & Lomb, Inc. v. Vitamin Health, Inc.*, 13-CV-6498, 2016 WL 3742156, at *1 (W.D.N.Y. July 7, 2016) ("Evidence regarding the settlement agreement between B&L and Vitamin Science is presumptively inadmissible and should not be introduced or

---

[6] The Court does not view this issue as "all-or-nothing"—meaning either all City Defendants have to be introduced as former parties or none of them can be. For example, John Montondo was a named City Defendant, but the County is not pursuing potential apportionment to him. ECF No. 78 at ¶ 15; ECF No. 405 at 9–11. James Hunter, to whom the County is seeking to apportion fault, was never himself a party in this litigation—Martin Bullock as the executor of Hunter's estate was. ECF No. 78 at ¶ 16. This only further underscores the Court's rationale that individuals identified in factual statements in pleadings are not limited to only named defendants such that the latter piece of evidence cannot be separated from the former.

mentioned without prior approval of the Court." (citing Fed. R. Evid. 408)). Accordingly, Plaintiff's settlement with the City Defendants is *not* admissible as "to damages [or] the County's apportionment defense," which necessarily involve proving or disproving the amount of a disputed claim, and thus are barred by Rule 408. *Cf.* ECF No. 367 at 3. Moreover, as the Court discussed at length in its January 22, 2025 Decision and Order, regardless of the County's apportionment defense, the County is not entitled to a dollar-for-dollar set-off of the City Defendants' collective prior settlement with Boyd. *See* ECF No. 223 at 15–23. 408. Plaintiff's settlement with the City Defendants is inadmissible for the purposes for which the County seeks its introduction. Fed. R. Evid. 403; 408.

## III.    Plaintiff's Motion to Preclude Defense Witnesses' Personal Opinions of Boyd's Purported Guilt (ECF No. 328)

Plaintiff argues that the County should be prohibited from eliciting testimony about a witness's personal opinion that Boyd was guilty of the Crawford murder because such opinions are irrelevant, "an intrusion on the jury's function," and risks juror confusion and unfair prejudice. ECF No. 328-1 at 1–2. Plaintiff, however, argues that Boyd's preserved testimony about his own subjective belief of his innocence is relevant to damages, as is the anticipated testimony of Plaintiff's expert witness Dr. Sanford Drob about how someone who *believes* that they are innocent would suffer differently from someone who acknowledges their own guilt. *Id.* at 1 n.1–2. The County counters, *inter alia*, that if its witnesses are precluded from offering personal opinions of Boyd's underlying guilt, all witnesses should be similarly precluded, and in the alternative, that if Plaintiff is permitted to introduce even limited testimony

about Boyd's subjective belief of his innocence as relevant to damages, the County must be permitted to attempt to rebut the veracity of that belief. ECF No. 361 at 4–6.

With one exception described below, *no* witness, for Plaintiff or Defense, shall be permitted to offer an opinion on the guilt or innocence of any of the four co-defendants tried for the Crawford murder—Boyd, Walker, Martin, or Gibson.

Whether any of the four Crawford co-defendants were in fact guilty or innocent of the murder is wholly irrelevant to the County's potential liability under *Monell*. Fed. R. Evid. 401, 402. Comments on factual guilt also have a high probability of being confused for issues of "materiality" of withheld *Brady* materials and "substantial prejudice" from improper summation remarks, both of which are critical issues in this case that the jury must be left to decide for itself. *See* Fed. R. Evid. 403.

Materiality of the allegedly withheld *Brady* materials and prejudice from alleged summation misconduct does not implicate factual guilt or innocence, or anyone's opinion (lay or expert) on factual guilt or innocence. *See, e.g., Nnodimele v. Derienzo*, No. 13-CV-3461 (ARR)(RLM), 2016 WL 3561708, at *10 (E.D.N.Y. June 27, 2016). With respect to *Brady*, the Second Circuit and Supreme Court have reiterated, "To establish prejudice, a plaintiff must show materiality[7]:

> A showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal (whether based on the presence of reasonable doubt or acceptance of an explanation for the crime that does not inculpate the defendant). The touchstone of materiality is a reasonable probability of a different result, and the

---

[7] Materiality presents a mixed question of law and fact. *United States v. Hunter*, 32 F.4th 22, 31 (2d Cir. 2022).

adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but *whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.*

*Poventud v. City of New York*, 750 F.3d 121, 133 (2d Cir. 2014) (en banc); *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). "While *Brady* ensures a fair trial, a defendant's right to . . . disclosure under *Brady* is not conditioned on his ability to demonstrate that he would or even probably would prevail at trial if the evidence were disclosed, much less that he is in fact innocent." *Poventud*, 750 F.3d at 133 (quotation omitted). In *Brady v. Maryland*, the Supreme Court held that Maryland violated the defendant's constitutional rights by withholding evidence relevant to his sentencing despite the fact that nothing in the suppressed confession could have reduced the defendant's offense below murder in the first degree or was related to his guilt or innocence. 373 U.S. at 90.

Moreover, the Second Circuit "reaffirm[ed] the proposition that the presumption of innocence and the beyond-a-reasonable-doubt standard apply to all criminal defendants *without regard to their actual guilt or innocence." United States v. Doyle*, 130 F.3d 523, 538 (2d Cir. 1997). In *Doyle*, the Second Circuit reversed and remanded for a new jury trial because the trial court erroneously instructed the jury in a criminal case on the presumption of innocence and the beyond-a-reasonable-doubt standards, in a manner which, in part, "implie[d] that a person who is actually guilty, in the sense of 'what really happened,' as opposed to the sense of having been legally determined to be guilty, is not entitled to the presumption of innocence throughout trial and deliberations." *Id.* Guilt and innocence are even more attenuated

to establishing liability under section 1983.

The County argues that by allowing Plaintiff to introduce evidence that was allegedly withheld and favorable to Boyd's criminal case, Plaintiff is necessarily introducing an improper "counternarrative" of the Crawford murder and necessarily providing "facts" tending to support his innocence. ECF No. 367 at 4–5. Therefore, the County, it contends, must be permitted to introduce still-further extra-criminal-trial evidence to rebut this counternarrative of factual innocence. *Id.* This argument warps the *Brady* doctrine and is directly contrary to the above-cited, controlling case law.

An alleged *Brady* violation necessarily contemplates that there were missing pieces of evidence during the underlying criminal trial, of which the jury in this civil trial must necessarily be aware. Beyond those specific pieces of alleged missing evidence, however, the determination of whether a *Brady* violation occurred is based on what evidence was actually introduced at Boyd's criminal trial. *See Nnodimele,* 2016 WL 3561708, at *13. "Favorability" under *Brady* does not require a plaintiff to establish a threshold strength of withheld exculpatory or impeachment evidence. *See United States v. Coppa*, 267 F.3d 132, 139 (2d Cir. 2001) ("Favorable evidence includes not only evidence that tends to exculpate the accused, but also evidence that is useful to impeach the credibility of a government witness." (citing *Giglio v. United States*, 405 U.S. 150, 154 (1972)); *United States v. Jackson*, 345 F.3d 59, 71 (2d Cir. 2003) ("The government's undisclosed materials concerning Redman were incrementally favorable to the defense in several ways.").

How *impactful* that piece of withheld evidence might have been to the underlying criminal trial is a question of materiality—and it is well-established that materiality is measured solely against the universe of evidence that was in fact introduced at the underlying criminal trial. *See, e.g.*, *Nnodimele,* 2016 WL 3561708, at *13 ("[T]he focus of the *Brady* analysis must remain on the nature and quality of the inculpatory evidence adduced at the criminal trial and the reasonably probable effect of the evidence withheld in the context of the inculpatory evidence adduced."); *Fuentes v. T. Griffin*, 829 F.3d 233, 249 (2d Cir. 2016) ("[A] *materiality* analysis requires a careful, balanced examination of the nature and strength of the evidence presented, as well as an evaluation of the potential impact of the evidence on the witness's credibility." (emphasis added)); *United States v. Hunter*, 32 F.4th 22, 31, 34 (2d Cir. 2022) (noting that the parties stipulated that challenged evidence was "favorable" and, when analyzing the *materiality* of withheld impeachment evidence, stating, "a new trial is generally not required when the testimony of the witness is corroborated by other testimony, or when the suppressed impeachment evidence merely furnishes an additional basis on which to impeach a witness whose credibility has already been shown to be questionable." (quotation omitted)).

This civil jury will not be re-trying Boyd's criminal case. It will be tasked with determining whether Boyd had a fair criminal trial. Whether Boyd was in fact guilty or innocent of the homicide for which he was convicted is wholly irrelevant to that inquiry. Personal opinions of factual guilt or innocence, evidence about "what really happened" on January 2, 1976, and additional extrinsic evidence that the County

25

asserts tends to support confidence in Boyd's conviction have no place in this trial and are inadmissible. Fed. R. Evid. 401, 402, 403.

There is one distinction of note—Boyd's expected testimony of his own subjective belief that he was innocent and the associated testimony of Plaintiff's damages expert, Dr. Sanford Drob. The Court finds that such testimony is of a different kind to that prohibited above, is relevant solely to the issue of damages, and, at this stage, admissible with a limiting instruction. Fed. R. Evid. 401, 403.

"Compensatory damages in Section 1983 cases may include not only out-of-pocket loss and other monetary harms, but also such injuries as 'impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering.'" *Peacock v. City of Rochester*, 2016 WL 4150445, at *2 (W.D.N.Y. Aug. 5, 2016) (brackets omitted) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350 (1974)). Boyd's subjective belief of his own innocence—independent of the factual truth underlying such belief—would at a minimum be relevant to his alleged mental anguish and suffering over the decades since his trial. The same is true for Plaintiff's damages expert, opining on how Boyd's subjective belief in his own innocence impacts his damages.[8]

The Court notes that neither party requested bifurcation of the trial into liability and damages phases despite having every opportunity to do so. This case has been pending for more than three years, the Court's summary judgment order was

---

[8] This one caveat does *not* cover Dr. Drob's own personal opinion about anyone's guilt or innocence, to the extent he has one, or Boyd's personal opinion that anyone else was innocent of the Crawford murder, to the extent he had one. Such evidence is irrelevant and inadmissible consistent with the Court's ruling above.

issued almost a year ago, and the case has involved robust motion practice. The Court rejects the County's argument that the lack of bifurcation, which the County did not request, warrants denial of Plaintiff's instant motion. *See* ECF No. 361 at 4–6. The Court finds that a limiting instruction which, at a minimum, would distinguish between issues of liability and damages, and issues of subjective belief and factual innocence, will cure any danger of unfair prejudice to the County. Fed. R. Evid. 403; *see Nnodimele*, 2016 WL 3561708, at *10 n.7 ("Plaintiff may introduce evidence in the damages phase of the trial that he believes he is innocent of the crimes at issue. It is his belief in his innocence, rather than his actual innocence, that is relevant to the psychological damages he allegedly suffered."). Furthermore, the Court's instructions to the jury will emphasize that this is not a re-trial of the Crawford murder and that whether Boyd was in fact guilty or innocent is irrelevant to the trial. *See Nnodimele*, 2016 WL 3561708, at *12.

The Court cautions the parties to instruct their witnesses, and to moderate their witness examinations, in order to respect the fine line of this ruling. Issues of materiality and substantial prejudice, as relevant to whether prosecutor(s) violated Boyd's constitutional rights, are measured against the evidence that was actually admitted and argument actually made in Boyd's criminal trial—not what anyone, including Boyd, personally recalls(ed) from the day of the murder, the investigation, or prosecution. *See generally Rodriguez*, 607 F. Supp. 3d at 297–98; *Bellamy v. City of New York*, 914 F.3d 727, 762 (2d Cir. 2019). There is a high risk of the case devolving into a trial within a trial should Plaintiff's, or the County's, witnesses start

testifying about "what really happened" on January 2, 1976, or cross the line into opining on anyone's factual guilt or innocence. Fed. R. Evid. 401, 402, 403. Although the Court is not persuaded that the County is entitled to rebut Boyd's subjective belief of his own innocence by attempting to challenge the veracity of that belief, *i.e.*, by attempting to prove that he was in fact guilty of the Crawford murder, *see* ECF No. 361 at 5–6, that is not to say that Plaintiff could not open the door to some form of rebuttal evidence during trial.

As described above, Plaintiff's motion is **GRANTED**.

## IV. Plaintiff's Motion to Preclude Certain Portions of the *Gibson* and *Walker* Criminal Trial Transcripts (ECF No. 335)

The County maintains that the only permissible way to admit any passages from the transcripts of either the *Gibson* criminal trial or the *Walker* criminal trial is to admit the full transcript(s). ECF No. 385 at 1, 11; *see* ECF No. 413 at 1–2. Plaintiff's motion seeks to preclude such an argument and to affirmatively seek to admit limited portions of each transcript. ECF No. 335 at 1. Neither transcript is relevant to this civil trial in its entirety, Fed. R. Evid. 401, 402, and introducing hundreds of pages of transcripts from criminal trials closely related to Boyd's criminal trial—with overlapping witnesses, argument, and exhibits—will undoubtedly confuse the issues in this case, Fed. R. Evid. 403. Further, the Court notes that the parties have stipulated to the "complete record of documents marked for identification or introduction as exhibits" in Gibson's and Walker's criminal trials. ECF No. 403 at 10–18. As for Plaintiff's affirmative request to admit certain passages, that request is **GRANTED IN PART AND DENIED IN PART**.

### A. Transcript of Gibson's Criminal Trial

To the extent that the County contends that the *Gibson* trial, which pre-dated Boyd's, provides evidence of what Boyd's trial counsel "knew or should have known" about the essential facts of evidence allegedly withheld from Boyd, *see infra* Section V, only specific passages in the *Gibson* transcript could reasonably further that evidentiary purpose (setting aside that that is an incomplete articulation of "suppression" under *Brady*)—those that expressly disclose certain evidence as exhibits and also lines of witness-questioning that address the essential facts contained in Plaintiff's alleged *Brady* evidence. *See* ECF No. 335-1 at 2. Where there is a stipulation now of what documents were marked for identification and introduced, ECF No. 403 at 10–15, the transcript itself becomes duplicative when offered for the former purpose.

The Court finds that Gibson's trial transcript is relevant for only the limited purposes of showing lines of witness-questioning that address the essential facts contained in Plaintiff's alleged *Brady* evidence and evidence of how Gibson's defense counsel used the evidence he did have. Otherwise, the *Gibson* trial transcript is generally inadmissible and, for reasons discussed below, unfairly prejudicial and confusing for the jury. Fed. R. Evid. 401, 402, 403.

The County flagged the following citations from the *Gibson* transcript as being directly pertinent to whether four documents[9] were withheld from Boyd: 179:17–18,

---

[9] (1) P-73 of BPD detectives Frank Deubell and Michael Guadagno dated January 8, 1976; (2) P-73 of BPD detectives Paul Delano and Michael Guadagno dated February 11, 1976; (3) P-73 of BPD detective Michael Guadagno dated February 11, 1976; and (4) the handwritten, signed statement of Tyrone Woodruff dated February 11, 1976.

180, 181:16–182:3, 184:6–16, 247–248, 267, 512:6–7, 512:22–23, 513:7–8, 758,

771:12–14. ECF No. 385 at 3–5. Because the parties have stipulated to the evidence

that was marked for identification and introduced in the *Gibson* trial, ECF No. 403

at 10–15, the County's citations to 179:17–18, 513:7–8, 771:12–14 are needlessly

cumulative given the parties' stipulation. Fed. R. Evid. 403. Page 180 of the *Gibson*

transcript pertains to the People's Exhibits 17 and 18, outside the referenced exhibits

by the County's motion *in limine*; therefore, the Court considers that citation to have

been made in error. The County's referenced excerpts at 181:16–182:3, 184:6–16,

247:5–248:20,[10] 267:2–22,[11] 512:6–23,[12] and 758:6–15,[13] go beyond merely capturing

that a relevant exhibit was marked for identification or introduced; accordingly, the

Court finds that these excerpts are admissible, beyond the parties' stipulation, for the

limited purpose of showing what evidence was disclosed in Gibson's trial, and not for

the truth of the matters asserted.[14] *See* Fed. R. Evid. 401, 403, 801(c).

The Court acknowledges that the County filed a supplemental submission,

using Plaintiff's proposed redacted version of the *Gibson* transcript, PX 70, as a

starting point to make arguments that certain of Plaintiff's redactions should be

---

[10] The Court added pincites to the County's citation.

[11] The Court added pincites to the County's citation.

[12] The Court expanded the County's pincite.

[13] The Court added pincites to the County's citation.

[14] The Court will issue a limiting instruction to the jury before any Gibson transcript excerpts are introduced specifying the limited purpose for which the jury can considered that evidence.

Should the County wish to introduce additional excerpts of the Gibson (or Walker) trial transcripts, it must identify the specific passages it seeks to admit and demonstrate why such passages are admissible.

lifted. ECF No. 413 at 2–4. Beyond the need to apply the Court's ruling above excluding *Gibson* transcript excerpts that solely note the marking of an exhibit for identification or its introduction to Plaintiff's proposed PX 70 (serving as a baseline), the Court will review the County's specific arguments modifying PX 70, ECF No. 413, and will conference with the parties before finalizing the Court's ruling. That said, the Court remains unpersuaded by the County's arguments that admission of the entire *Gibson* transcript is necessary to support "a suppression analysis." ECF No. 385 at 2–5; ECF No. 413 at 1–2; Fed. R. Evid. 401, 402, 403.

Nor is the Court persuaded by the County's arguments regarding the relevance of the *Gibson* transcript to favorability and materiality, and its arguments are premised on a faulty understanding of the *Brady* doctrine. *Id.* at 5–8. As discussed in Section III, "favorability" does not require a plaintiff to establish a threshold strength of withheld exculpatory or impeachment evidence. *See Hunter*, 32 F.4th at 31, 34 (the parties stipulated that challenged evidence was "favorable" and, the Court analyzed whether the favorable impeachment evidence was material, stating, "a new trial is generally not required when the testimony of the witness is corroborated by other testimony, or when the suppressed impeachment evidence merely furnishes an additional basis on which to impeach a witness whose credibility has already been shown to be questionable." (quotation omitted)). *Compare Jackson*, 345 F.3d at 71 ("The government's undisclosed materials concerning Redman were incrementally favorable to the defense in several ways."), *with Fuentes*, 829 F.3d at 249 ("[A] *materiality* analysis requires a careful, balanced examination of the nature and

strength of the evidence presented, as well as an evaluation of the potential impact of the evidence on the witness's credibility." (emphasis added)).

The County essentially argues that the January 8, 1976 P-73 of BPD detectives Frank Deubell and Michael Guadagno (the "taxicab P-73"), containing information from a cab company tending to show that Walker and Woodruff were in a taxicab at the time of the murder, is not favorable to Boyd because witnesses Alison Zachery and Nathaniel Zachery testified to a different timeline of events, and Gibson was convicted. ECF No. 385 at 6–7. This taxicab P-73 (and any other allegedly withheld evidence) does not need to be a smoking gun or irrefutable in order to be "favorable." *See, e.g.*, *Jackson*, 345 F.3d at 71; *Coppa*, 267 F.3d at 139. The withheld evidence has to tend to be exculpatory and/or useful for impeachment. *Coppa*, 267 F.3d at 139; *see Strickler v. Greene*, 527 U.S. 263, 282–83 (1999). Evidence may be useful for impeachment precisely because that evidence is inconsistent with other evidence adduced. *See Friedman v. Rehal*, 618 F.3d 142, 153 (2d Cir. 2010) (stating "the general understanding of impeachment evidence" is "evidence that "is offered to discredit a witness . . . to reduce the effectiveness of her testimony by bringing forth evidence which explains why the jury should not put faith in his or her testimony." (quotation and brackets omitted)); *see also, e.g.,* Fed. R. Evid. 613(b) (rule of evidence pertaining to impeachment by a witness's prior inconsistent statement). That the Zachery's testimony presented a different timeline of events than the taxicab P-73 does not negate the latter's favorability as the County argues. To the extent that either party intends to admit portions of the *Gibson* trial transcript to show how

Gibson's defense attorney used certain evidence, no party is permitted to argue to this civil jury that such evidence was not "favorable" to Boyd due to the perceived ineffectiveness of that evidence in bolstering Gibson's defense. Such arguments conflate favorability with materiality and are improper.

Furthermore, the County's argument that the entire *Gibson* trial transcript is relevant to materiality because Gibson was convicted, *see* ECF No. 358 at 7–8, wholly misses the mark. As discussed repeatedly, the materiality of any allegedly withheld evidence is measured against the evidence admitted in Boyd's trial, not Gibson's. *See Nnodimele*, 2016 WL 3561708, at *13. Although there were witnesses and evidence common between the two, for example Alison Zachery testifying as a witness, it is irrelevant, unfairly prejudicial, and confusing for the jury in this civil trial for either party to introduce evidence that is extrinsic to Boyd's criminal trial to try to sure-up, or undermine, confidence in Boyd's guilty verdict. *See* Fed. R. Evid. 401, 402, 403.

Even where documents and witnesses overlapped between Gibson's and Boyd's criminal trials, witnesses' examinations played out differently, exhibits were utilized differently and at different stages of the trial—in short, what transpired during the Gibson trial cannot be used to show a propensity for what would have happened in Boyd's criminal trial had certain evidence been disclosed. *See* Fed. R. Evid. 404(b); *Nnodimele*, 2016 WL 3561708, at *13. As discussed in detail below, the same analysis would hold true for the *Martin* acquittal[15]—it would be improper for any witness to

---

[15] The Court is continuing to reserve on whether the fact that Martin was acquitted, and also relatedly that Walker and Gibson were convicted, are admissible until the Court can hold a conference with the parties.

speculate or any party to argue to the jury that the alleged introduction and use of the two crime-scene photographs in the *Martin* trial shows a propensity that those photographs would have been material to Boyd's case because Martin was acquitted. *See infra* Section XII.

### B. Transcript of Walker's Criminal Trial

Plaintiff seeks to admit, not for the truth of matters asserted, "every instance in which a prosecutor makes an on-the-record disclosure of *Rosario*[16] or *Brady* material to Walker's counsel . . . and every instance in which Walker's counsel pursues a line of questioning that is indicative of a prior disclosure of *Brady* material . . . ." ECF No. 335-1 at 6. Although this request is identical to Plaintiff's request for the *Gibson* trial transcript, Walker's criminal trial post-dates Boyd's whereas Gibson's preceded it. As Plaintiff acknowledges, "[u]nlike their testimony at the Gibson trial, which preceded the Boyd trial, Woodruff's and [Andre] Hough's testimony at the subsequent Walker trial is not relevant to the issue of what was or was not disclosed to Mark Hulnick, as he could not have reviewed testimony from a trial that was yet to occur." *Id.* at 6 n.4. The Court agrees with Plaintiff's acknowledgment and extends that reasoning to find that the *Walker* criminal trial transcript is not relevant to what was disclosed, or not, to Boyd. *See* Fed. R. Evid. 401, 402.

Unlike the two crime-scene photographs at issue in the *Martin* trial, which like

---

[16] *People v. Rosario*, 173 N.E.2d 881, *cert. denied*, 368 U.S. 866 (1961) (establishing the "*Rosario* rule" that the prosecution is required to produce any written or recorded statement of any witnesses made before the State's opening statement at trial).

Walker's, post-dated Boyd's criminal trial, the County is not disputing the existence of any other alleged *Brady* evidence such that Plaintiff must attempt to introduce evidence proving the *Brady* evidence at issue existed at all, and in fact has stipulated to all of the exhibits that were introduced or marked for identification in the *Walker* trial. ECF No. 403 at 15–18.

Plaintiff also seeks to admit the summation that former Assistant District Attorney ("ADA") David Henry delivered in Walker's criminal trial as evidence of the County's practice and custom of depriving defendants of a fair trial through improper summation. ECF No. 335-1 at 6–7. That request is **DENIED**. There will be no evidence introduced to this civil jury showing that a factfinder in a judicial proceeding determined that Walker's fair trial rights were in fact violated through Henry's summation. *See infra* Section VI (the disposition of Walker's civil trial in 2025 inadmissible). The *Walker* criminal trial also post-dated Boyd's. Introduction of Henry's summation in the *Walker* case in Boyd's civil trial is inadmissible under Rule 403.

Accordingly, the relevance of the *Walker* criminal trial transcript is limited to how defense counsel used certain alleged *Brady* evidence. Fed. R. Evid. 401, 402*; see also* Fed. R. Evid. 403 (confusing issues of materiality). As with Gibson's trial, however, no party is permitted to then argue that the use of such evidence shows the evidence was not "favorable" to Boyd due to its perceived ineffectiveness in bolstering Walker's defense. Such arguments conflate favorability with materiality and are improper.

## V.    Plaintiff's Motion to Preclude Defendant's Assertion of Improper Defense to Nondisclosure of *Brady* Material (ECF No. 341)

Plaintiff's motion is **GRANTED IN PART AND RESERVED IN PART**. The County claims that it may properly defend against Plaintiff's *Brady* theory of liability, at least with respect to certain allegedly withheld evidence, because "[e]vidence is not considered to be suppressed within the meaning of the *Brady* doctrine if the defendant or his attorney either knew, or should have known, of the essential facts permitting him to take advantage of that evidence." *United States v. Payne*, 63 F.3d 1200, 1208 (2d Cir. 1995); *see* ECF No. 363 at 1. The crux of Plaintiff's motion to preclude "improper defense[s] to nondisclosure," as the Court understands it, is that the County is expected to misrepresent the relevant legal standards for *Brady* "suppression" by shifting, significantly, prosecutors' disclosure obligation under *Brady* to defense counsel. *See* ECF No. 341-1 at 1–4.

For example, the County argues, without record citation, that Boyd's counsel, Mark Hulnick, "knew that Larry Watson was the last person to see Crawford alive and that the barmaid was the second-to-last." ECF No. 363 at 5. Therefore, according to the County, "it was obvious that either of them 'might have useful evidence' which would be discovered upon 'basic investigatory steps.'" *Id.* (quoting *Leka v. Portuondo*, 257 F.3d 89, 100 (2d. Cir. 2001)). The County does not tie this purported knowledge to any piece of allegedly withheld evidence to argue that *that* specific evidence was not "suppressed." *See id.* at 2–8. Knowledge of certain facts in the abstract is not enough to avoid a finding of suppression, the knowledge of "essential facts" permits the defendant to take advantage of a particular piece of allegedly withheld evidence.

*See Payne*, 63 F.3d at 1208.

The County also appears to contend that because Watson and the barmaid "both testified at Boyd's trial," it was "obvious" that they were "persons of interest whose accounts, upon basic questioning, could provide favorable or impeaching evidence[17] to Boyd." ECF No. 363 at 5. Again, at no point does the County identify what alleged *Brady* evidence is "not suppressed" based on the knowledge that certain witnesses were going to testify—the implication being that any and all favorable and material evidence relating to that testifying witness could and should have been discovered by defense counsel and therefore no evidence relating to that witness could have been suppressed. That logic—that by disclosing a witness as one who is testifying at trial and/or because Hulnick knew that Watson and the barmaid were the last people "to see Crawford alive," the prosecution was relieved of its obligation to turn over any *Brady* evidence pertaining to such witnesses—is incorrect. Moreover, the Court finds that the principles of law that the County extrapolates from cases such as *United States v. Barcelo*, 628 Fed. App'x 36 (2d Cir. 2015), distort and unreasonably expand the law on *Brady* suppression.

As the Second Circuit stated in 2015, the law "imposes no duty upon the defendant who is reasonably unaware of exculpatory information to take affirmative steps to seek out and uncover such information in the possession of the prosecution

---

[17]"Favorable" evidence under *Brady* is not separate from "impeaching" evidence such that the disjunction "or" is appropriate. *See Strickler v. Greene*, 527 U.S. 263, 282–83 (1999) ("The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching."); *Friedman v. Rehal*, 618 F.3d 142, 154 (2d Cir. 2010) ("[T]he Supreme Court has consistently treated exculpatory and impeachment evidence in the same way for the purpose of defining the obligation of a prosecutor to provide *Brady* material prior to trial." (citing *United States v. Bagley*, 473 U.S. 667, 676 (1985); *Giglio v. United States*, 405 U.S. 150, 153–54 (1972)).

in order to prevail under *Brady*." *Lewis v. Connecticut Comm'n of Correction*, 790 F.3d 109, 121 (2d Cir. 2015). The issue is not that the defendant is reasonably unaware of the existence of a witness, it is that the defendant is "reasonably unaware of exculpatory [or impeachment] information." *See id*. ("To be sure, we have held in several cases that evidence is not suppressed [for *Brady* purposes] if the defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence. This requirement speaks to facts already within the defendant's purview, not those that might be unearthed."). *Lewis* reaffirms that it is not a defense to *Brady* for the prosecution to claim that defense counsel merely knew of the existence of a particular witness, when the prosecution did not disclose evidence of exculpatory and/or impeaching facts from or about that witness. *Id*. at 114.

Here, that Boyd's trial counsel, Mark Hulnick, may have known that Larry Watson, his wife, and the barmaid were present at the bar where Crawford was shortly before his murder, does not mean that there was an "obvious possibility" that any of those individuals might possess favorable information such that the prosecution was relieved of its obligation to disclose favorable information pertaining to these witnesses to Boyd's counsel. *See id*. at 121 ("The Supreme Court has never required a defendant to exercise due diligence to obtain *Brady* material.").

Whether alleged *Brady* evidence was in fact suppressed is one of the questions the jury in this case will be tasked with answering. The legal principles framing that inquiry are of course not up for juror debate, and Plaintiff's motion is **GRANTED** to

the extent that the County intends to introduce evidence and argument inconsistent with applicable legal standards, accurately and completely articulated. This ruling does not preclude the County from attempting to prove that allegedly withheld evidence was not "suppressed." The Court has laid out a few examples of how issues might arise in such attempts based on the County's arguments in opposition to Plaintiff's instant motion. The Court will **RESERVE** on providing a fulsome set of otherwise guiding legal principles. The Court will also entertain and would encourage both parties to prospectively seek clarity on whether, for example, remarks in a planned opening statement are objectionable. It remains the responsibility of each party to raise contemporaneous objections during trial.

## VI.    The County's Motion to Preclude John Walker, Jr.'s Testimony, and Reference to His 1977 and 2025 Trials (ECF No. 324)

The County's motion is **GRANTED IN PART, DENIED IN PART, and RESERVED IN PART.** To the extent the County seeks to preclude Walker from testifying "about the *Brady* violations and summation misconduct in his criminal trial, as evidence of the unconstitutional policies, customs, and practices that existed at the time of Mr. Boyd's criminal trial," that request is **GRANTED**. *See* ECF No. 324 at 2 (quoting Plaintiff's proffer of Walker's potential testimony in a footnote in a prior submission). Although Walker's March 2025 trial resulted in a verdict in his favor, finding that *Brady* violations and summation misconduct infringed upon Walker's right to a fair criminal trial in 1977, that disposition is not settled given the County's pending post-trial motions and its anticipated appeal to the Second Circuit should the Court rule in Walker's favor on the County's Rule 50(b) and Rule 59

39

motions.

Further, there is a high risk of unfair prejudice should the jury in Plaintiff's civil trial learn that Walker recently prevailed in a similar trial. *See* Fed. R. Evid. 403, 404(b). Without the ability to reference that a jury found in his favor, Walker cannot testify as a lay witness that his constitutional rights were, as a matter of law, violated by the non-disclosure of favorable and material evidence and by ADA David Henry's summation misconduct.[18] *See* Fed. R. Evid. 701. Plaintiff acknowledged in its response to the County's motion that it does not intend "to have Walker or any other witness "recount the outcome of [Walker's] recent civil trial, . . . or otherwise make explicit reference to that trial." ECF No. 376 at 8.

Plaintiff does, however, intend to "cross-examine ADA Timothy Drury, ADA David Henry, and expert witness Kevin T. Gagan with their testimony at the Walker trial, but in doing so . . . will refer to this testimony as having been given in a 'prior proceeding' . . ." *Id.* To the extent that each of these three witnesses testify in the Boyd case and their testimony from the Walker civil trial constitutes a "prior inconsistent statement," Plaintiff's proposed use of the Walker civil trial transcript is generally permissible, subject to specific objections during trial. *See* Fed. R. Evid. 613. The Court will entertain other specific objections as well, and will separately address supplemental submissions by the parties on this or a related topic. Plaintiff's supplemental *in limine* submission regarding Henry's statements during the Walker civil trial being statements of a party opponent is addressed below. *See infra* Section

---

[18] At the Final Pretrial Conference, Plaintiff appears to have conceded this point. *See* FPTC Tr. at 188:18–189:8.

XXI.A. Broadly speaking, explicit reference to Walker's 2025 civil trial and its disposition is precluded, *see* Fed. R. Evid. 401, 402, 403, but reference to Walker's 1977 criminal trial is permissible as significantly limited by the Court's other *in limine* rulings.

Plaintiff also clarified that it anticipates Walker to offer testimony about the following: "relevant background," the BPD investigation of the Crawford murder, Walker's ignorance of the allegedly undisclosed *Brady* material before and during his 1977 criminal trial, conditions of the facilities where he and Boyd were both incarcerated, Walker's and Boyd's "post-conviction advocacy," and Walker's and Boyd's acquisition of allegedly undisclosed *Brady* material. ECF No. 376 at 1. To the extent that the County seeks wholesale preclusion of Walker's testimony, that request is **DENIED**.

Stepping through Plaintiff's clarified argument regarding Walker's testimony, to the extent of Plaintiff's proffer of "relevant background" in its opposition to the instant motion, ECF No. 376 at 2, that testimony is admissible. Fed. R. Evid. 401, 403. That said, the Court's rulings precluding any testimony about anyone's factual guilt or innocence of the Crawford murder and "what really happened" that day, *see supra* Section III, applies with equal force to Walker's testimony. Walker's testimony about the BPD's investigation of the Crawford murder is admissible for a "basic narrative and tend[ing] to show why the allegedly undisclosed *Brady* material was favorable to Boyd's defense." ECF No. 376 at 2–3; Fed R. Evid. 401, 403. However, to the extent Plaintiff intends to offer evidence of Walker's "account of BPD

interrogation practices" to enhance the likelihood that Woodruff was coerced by the BPD, such testimony is barred by Rule 404(b). Fed. R. Evid. 404(b). Similarly, Walker is not permitted to testify to his own lack of awareness of certain documents in his own criminal trial. Fed. R. Evid. 403, 404(b). Nor is it permissible for Walker to testify that certain documents were "favorable" or "material" to him (or to Boyd). *See* Fed. R. Evid. 403, 701. The Court addresses the scope of anticipated transcript evidence from the Walker criminal trial in Section IV.B. Walker's anticipated testimony about his and Boyd's post-conviction advocacy and their acquisition of allegedly undisclosed *Brady* material is generally admissible except to the extent that such testimony implicates Rule 404(b) and/or delves into the substance of Boyd or Walker's 440 motions—which is irrelevant and unfairly prejudicial to this trial. Fed. R. Evid. 401, 402, 403.

Lastly, the Court **RESERVES** on whether Walker may testify about the facilities where he and Boyd were both incarcerated. *See* ECF No. 376 at 4–5. Plaintiff proffers that Walker will testify about conditions in the Erie County Holding Center, Elmira Correctional Facility, and Attica Correctional Facility—where he and Boyd were both incarcerated. *Id.* at 4. Plaintiff argues that this evidence is relevant to damages and will corroborate portions of Boyd's deposition transcript about the same that it intends to introduce. *Id.* at 4–5. Specifically, Plaintiff proffers that Walker, with his personal knowledge thereof, will testify "about the restrictions imposed on inmates in these facilities; the lack of privacy afforded to inmates in these facilities; and the frequency of physical and sexual violence in these facilities." *Id*. at 4; *see* Fed.

R. Evid. 701. <u>Before ruling on the admissibility and/or scope of Walker's testimony in this regard, the Court will address the admissibility of Boyd's deposition designations and may require Plaintiff to make a more detailed offer of proof, outside the presence of the jury, as to Walker's anticipated testimony about the facilities where he and Boyd were incarcerated, how that relates to Boyd's deposition testimony, and to establish a foundation that Walker's recounted experiences were sufficiently shared by Boyd.</u>

## VII. The County's Motion to Reconsider Summary Judgment Order or, Alternatively, to Exclude Evidence of Third Theory of Underlying Constitutional Violation (ECF No. 317)

The County moves the Court to partially reconsider its Decision and Order denying summary judgment with regard to one of Plaintiff's pleaded theories of *Monell* liability—that the County violated Boyd's constitutional rights by withholding certain evidence during the 1976 preliminary hearing in Boyd's criminal case (the "*Russo* theory"). ECF Nos. 219, 317-1 at 2–7; *see Russo v. City of Bridgeport,* 479 F.3d 196, 205 (2d Cir. 2007). This requested relief is **DENIED AS MOOT**. As Plaintiff's pretrial submissions confirm, Plaintiff will not be pursuing a *Russo* theory at trial. *See* ECF Nos. 381 at 1; 330-1 at 3 n.2; 338-1 at 1.

The County alternatively moves *in limine* to preclude evidence of the alleged withholding of favorable evidence at the preliminary hearing stage of Boyd's criminal trial, which the Court **GRANTS IN PART AND DENIES IN PART**. The County seems to seek the wholesale preclusion of the following pieces of evidence (descriptions as characterized by Plaintiff):

- police reports showing that a key witness for the prosecution in Boyd's trial, Tyrone Woodruff, and Walker were in a taxicab when the murder occurred;

- "the Manista P-73 report" capturing the use of coercive tactics to elicit a confession from Woodruff;

- "the Hunter P-73 report" stating Woodruff was alone during his interrogation contrary to Woodruff's signed statement and hearing testimony;

- "the fact that Woodruff had been threatened with arrest before changing his story";

- "the fact that Woodruff had been promised immunity before hanging his story," and

- police reports pointing to alternative suspects.

ECF No. 317-1 at 4–6; *see* ECF No. 381 at 2. That request is **DENIED**. The evidence listed above is plainly relevant to Plaintiff's *Brady* theory of *Monell* liability. Fed. R. Evid. 401. The County's argument that Federal Rule of Evidence 403 should preclude this evidence because "it conflates the alleged coercion of a material statement of Woodruff by the Buffalo Police Department with the County's prosecution of" Boyd lacks merit.[19] ECF No. 317-1 at 7. The probative value of the above-listed evidence is significant and gets to the core of Plaintiff's *Brady* theory of liability. It is necessary to Plaintiff's burden of proof that it be permitted to put forth evidence from which a jury might reasonably infer was favorable, withheld, and material to Boyd's underlying criminal trial. The source of that evidence or the reasons why it is allegedly favorable does not negate that entitlement.

---

[19] Even if meritorious, the County's cursory argument under Rule 403 does not cover the full list of evidence it seeks to preclude.

That said, the Court agrees with the County to the extent it argues that Plaintiff should be limited in attempting to introduce or characterize the alleged withholding of the above evidence *at the preliminary hearing stage of Boyd's criminal case* as separate or additional "*Brady* violations" in support of Plaintiff's *Brady* theory of *Monell* liability, and the Court **GRANTS** the County's motion in that respect. The Court finds that the protections provided by *Brady v. Maryland* do not apply at a preliminary hearing, and thus suggestions or outright statements during this trial that a *Brady* violation occurred *at the preliminary hearing stage* would be unduly prejudicial. Fed. R. Evid. 403. The Second Circuit has not spoken on this issue, but it has reiterated that there is no constitutional right to a preliminary hearing, *see Sciortino v. Zampano*, 385 F.2d 132 (1967), which has been used as part of the rationale by other courts to hold that *Brady* does not apply at that early stage of criminal proceedings. The Court finds the reasoning of the Central District of California persuasive:

> [P]etitioner's claim of prosecutorial misconduct under *Brady v. Maryland*, 373 U.S. 83 (1963), is similarly meritless. With no elaboration, petitioner asserts that the prosecution withheld some unidentified police camcorder evidence and a "witness criminal record" before his preliminary hearing. But no federal law requires the disclosure of *Brady* materials before a preliminary hearing. *See Jaffe v. Brown*, 473 F. App'x 557, 559 (9th Cir. 2012); *Lopes v. Campbell*, 408 F. App'x 13, 16 (9th Cir. 2010). . . . Moreover, "there is no fundamental [constitutional] right to a preliminary hearing." *Howard v. Cupp*, 747 F.2d 510, 510 (9th Cir. 1984) (per curiam) (citing *Austin v. United States*, 408 F.2d 808 (9th Cir. 1969)). It only follows, then, that any alleged *Brady* violation solely in connection with a preliminary hearing cannot give rise to an actionable federal law claim. *See generally Gerstein v. Pugh*, 420 U.S. 103, 119 (1975).

*Shaw v. Andes*, No. 5:22-CV-00669-FLA (SK), 2024 WL 5274598, at *5 (C.D. Cal. Oct.

7, 2024) (record citation omitted). The Court will entertain requests for a limiting instruction with respect to the above listed evidence and Plaintiff's additional "*Brady* evidence" if so raised.

## VIII.  The County's Motion to Preclude References to the Matter of *People v. Ashley* (ECF No. 322)

In *People v. Ashley*, the Erie County Court declared a mistrial in 1978 due to ADA Drury's actions during a murder trial unrelated to the Crawford matter. While James McLeod, who was defense counsel on the *Ashley* case, was in chambers with the judge and the lead prosecutor, ADA Drury spoke to the defendant, alone, and passed along information he learned from the defendant to the lead prosecutor, who then attempted to use that information in his cross examination of the defendant.

Acknowledging the type of misconduct at issue in *Ashley* is factually distinct from the misconduct alleged in Boyd's 1977 criminal trial, Plaintiff argued that *People v. Ashley* is nonetheless relevant as (1) impeachment evidence to counter the County's designations of Cosgrove's deposition testimony "vouch[ing] for his own running of the" ECDA's Office; (2) evidence of a lack of "any disciplinary system" at the ECDA's Office, supporting Plaintiff's failure-to-discipline theory of *Monell* liability; and (3) evidence of a "fair-trial violation", supporting "Cosgrove's indifference to *Brady* violations or summation misconduct." ECF No. 378 at 2–3; *see Buari v. City of New York*, 530 F. Supp. 3d 356, 399 (S.D.N.Y. 2021) ("Under the failure to supervise or discipline theory, a plaintiff must show that the municipality failed to adequately supervise or discipline its employees (thereby implicitly encouraging or ratifying their unlawful conduct) . . . [and] that such a failure of

46

supervision or discipline was tantamount to deliberate indifference."(alteration in original) (quotation omitted)).

The County's motion is **DENIED** to the extent that *People v. Ashley* may be used to impeach certain deposition testimony of Cosgrove. The Court finds that *People v. Ashley* is otherwise inadmissible, and therefore, the County's motion is otherwise **GRANTED**.

During the Final Pretrial Conference, Plaintiff arguably conceded that *People v. Ashley* cannot be used as *Monell* evidence. FPTC Tr. at 162:21–163:5; 177:2–5; 178:20–179:5. However, for clarity, the Court is unpersuaded by Plaintiff's attempts in its brief to establish the admissibility of *People v. Ashley* as affirmative *Monell* evidence. *See id.* at 179:1–5; ECF No. 378 at 3. The conduct at issue in *Ashley* is not sufficiently similar to either of the two types of constitutional violations alleged in this case—and being a "fair-trial violation" paints with too broad a brush. Fed. R. Evid. 403. Although this incident involves misconduct of the lead prosecutor in Boyd's criminal trial, Drury, it takes place after that trial, lowering its probative value to show a causal municipal policy or provide notice to the policymaker, and as mentioned is of a different kind. *Id.* Plaintiff's arguments also sound in an impermissible propensity purpose. *Compare* ECF No. 378 at 3 ("Cosgrove's utter indifference to that fair-trial violation tends to show that he was indifferent to all fair-trial violations, including [those] at issue here."), *with* Fed. R. Evid. 404(b)(1) ("Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in

accordance with the character.").

The Court agrees with Plaintiff that it may attempt to show the ECDA's general policies, or lack thereof, regarding discipline of its prosecutors as a means by which to prove the County's *Monell* liability on a theory of deliberate indifference. *See* ECF No. 378 at 3 ("The complete absence of any disciplinary system is relevant to the Boyd Estate's *Monell* case."). Plaintiff has proffered evidence from which a reasonable jury could infer a showing of the ECDA's Office's complete lack of attention or commitment to disciplining or training assistant district attorneys—such as witness testimony of failures to recall any instances of attorney discipline or a formal disciplinary system, and admissions of party opponents during discovery. However, attempting to establish the lack of "any disciplinary system" at the ECDA's Office through what is essentially "other act" evidence like *People v. Ashley* is impermissible here. Fed. R. Evid. 403, 404(b); *see also Vann v. City of New York,* 72 F.3d, 1040, 1041, 1050–51 (2d Cr. 1995) (reversing grant of summary judgment to defendant in failure-to-supervise case where plaintiff did "present[] evidence of the Department's general methods of dealing with problem policemen," but the evidence presented did *not* involve introducing instances of other types of police misconduct that plaintiff then argued proved a general failure to supervise); *Gentile v. County of Suffolk*, 926 F.2d 142, 146, 153 (2d Cir. 1991) (holding there was sufficient evidence to sustain a *Monell* failure-to-discipline claim which included an audit report of the county police department, finding it had "systematically failed over a period of years adequately to investigate and to discipline cases of employee misconduct that had been brought to

their attention," but did *not* include other specific acts of the department's failure to discipline different types of misconduct).

As will be discussed in more detail in a subsequent Decision and Order on disputes over "certain *Monell* evidence," if Plaintiff seeks to introduce a pattern of specific acts of the ECDA's Office's failures to discipline prosecutors, those other specific acts need to be of the same type as the constitutional violations alleged in this case. *See Batista v. Rodriquez*, 702 F.2d 393, 398 (2d Cir. 1983) ("[A] causal connection between the City's policy of inaction and *the arrests and assault* might permissibly be implied" from "conduct" "such as inadequate training and supervision *of prior instances of unusual brutality* indicating deliberate indifference or gross negligence on the part of the municipal officials in charge." (emphases added)); *Walker v. City of New York,* 974 F.2d 293, 300 (2d Cir. 1992) (reversing grant of municipality's motion to a dismiss plaintiff's *Monell* claim for failure supervise and failure to train to allow plaintiff to pursue further discovery "to determine whether there was a practice of condoning perjury (evidenced perhaps by a failure to discipline *for perjury*) or a pattern of police misconduct sufficient to require the police department to train and supervise police officers *to assure they tell the truth*") (emphases added)); *Iacovangelo v. Corr. Med. Care, Inc.*, 624 F. App'x 10, 14 (2d Cir. 2015) (examining cases for evidence of a "custom of not providing adequate medical supervision for inmates going through drug or alcohol withdrawal").

As the Court stated during the Final Pretrial Conference, *People v. Ashley* is admissible for the limited purpose of impeaching certain of Cosgrove's deposition

testimony provided Drury was not identified as the offending prosecutor. FPTC Tr. at 182:3–17; 183:12–18. <u>In particular, the Court finds that Cosgrove's deposition testimony at 40:18–41:4 and 101:16–102:6 would open the door to impeachment with the *People v. Ashley* incident</u>.[20] Among other statements made therein, Cosgrove testified during his deposition that "[t]here was an unwritten policy, you do your damnedest to do the right thing. And if you don't and I find out about it, I'll take appropriate action." ECF No. 168-16 at 102:3–6.

To detail the Court's reasoning regarding admitting *People v. Ashley* for impeachment only, because Cosgrove has passed away, he is not technically a "witness" for purposes of traditional impeachment under Rules 608 and/or 613 of the Federal Rules of Evidence. *See United States v. Jackson*, 345 F.3d 59, 69 (2d Cir. 2003) (noting the applicability of Federal Rule of Evidence 806 for impeachment of individuals who are not testifying live during trial); *United States v. Uvino*, 590 F. Supp. 2d 372, 374 (E.D.N.Y. 2008), *as amended* (Dec. 19, 2008) ("By permitting any impeachment evidence that would be admissible *had the declarant testified*, Rule 806 renders Rule 608's impeachment rules applicable to a declarant's out-of-court statements." (emphasis added) (quotation omitted)); *see also United States v. Clanton*, 763 F. Supp. 3d 261, 266 (E.D.N.Y. 2025) ("In addition to determining whether, *on cross-examination*, a particular prior act is probative of truthfulness and therefore

---

[20] Plaintiff also argues that, beyond *People v. Ashley*, "[a]ny counterexample demonstrating that Cosgrove did not, in fact, 'take appropriate action' when an ECDAO prosecutor did not 'do [his] very best to protect the defendant' or comply with 'the laws of the state of New York and [the] federal rules,' tends to impeach Cosgrove's testimony and is therefore valid cross-examination." ECF No. 378 at 2. <u>Plaintiff must make specific requests, out of the presence of the jury, if it seeks to admit any "incident" that the Court has precluded as *Monell* evidence, as will be set forth in detail in the Court's forthcoming Decision and Order, for impeachment of Cosgrove</u>. *See* FPTC Tr. at 163.

permissible under Rule 608(b), the court still must be guided by [Federal Rules of Evidence] 611 and 403 in deciding whether to exercise its discretion to allow cross-examination pursuant to Rule 608(b)." (emphasis added)); Fed. R. Evid. 608(b)(2) (court may permit cross-examination of a "witness" regarding specific conduct probative of another witness's character for truthfulness only if "the witness being cross-examined has testified" about the other witness's character).

Instead, Rule 806 "permits the impeachment of hearsay declarants who do not testify." *Jackson*, 345 F.3d at 69 (citing Fed. R. Evid. 806) ("Since Redman's death prevented him from testifying, the defendants would be able to use this information only to impeach his credibility with regard to hearsay declarations admitted into evidence.").

Rule 806 provides, in relevant part:

> When a hearsay statement—or a statement described in Rule 801(d)(2)(C), (D), or (E)—has been admitted in evidence, the declarant's credibility may be attacked, and then supported, by any evidence that would be admissible for those purposes if the declarant had testified as a witness. The court may admit evidence of the declarant's inconsistent statement or conduct, regardless of when it occurred or whether the declarant had an opportunity to explain or deny it.

Fed. R. Evid. 806. "While Rule 608(b) ordinarily does not permit the introduction of extrinsic evidence of specific instances of conduct for such purposes, the Court of Appeals for the Second Circuit has suggested that extrinsic evidence of specific instances may be admissible through Rule 806, since that rule applies only 'when the declarant has not testified and there has by definition been no cross-examination, and resort to extrinsic evidence may be the only means of presenting such evidence

to the jury.'" *Uvino*, 590 F. Supp. 2d at 374 (quoting *United States v. Friedman*, 854 F.2d 535, 570 n.8 (2d Cir. 1988)).

Turning to the prerequisites of Rule 806, Rule 801(d)(2) does not apply to *the County's* attempts to admit Cosgrove's testimony. *See* Fed. R. Evid. 801(d)(2) (a "statement of a party opponent" must be offered *against* that party to be classified as such); Fed. R. Evid. 806 ("When a hearsay statement—or a statement described in Rule 801(d)(2)(C), (D), or (E)—has been admitted in evidence . . . "). When offered by the County, Cosgrove's deposition testimony *is* hearsay, Fed. R. Evid. 801(c), that is nonetheless admissible as "former testimony" of an "unavailable" declarant, Fed. R. Evid. 804(b)(1); *see* 804(a) (defining "unavailable"). Therefore, Rule 806 can apply to impeach Cosgrove's former testimony.

That said, *People v. Ashley* is *not* admissible to impeach Cosgrove's (or Drury's) general character for truthfulness, *see* Rule 608; 806; it is admissible to impeach the truthfulness of particular statements of Cosgrove's—at this stage, at 40:18–41:4 and 101:16–102:6 of his deposition.[21] The *People v. Ashley* incident is an example of egregious misconduct by a prosecutor—talking to a defendant during trial without his attorney present and then attempting to use that information in trial—making it particularly probative of impeaching Cosgrove's generalized and sweeping statements about his commitment to disciplining misconduct in his office. That said, the fact that Drury was the offending prosecutor and was also the lead prosecutor in

---

[21] These cited excerpts testimony may not be the only testimony during trial that opens the door to *People v. Ashley*. The Court will address additional instances if and when they come. The Court will require that any discussion about whether certain testimony will or just did open the door to *People v. Ashley* be conducted out of the jury's presence.

Boyd's criminal trial poses concerns under Rule 404(b) and more generally under Rule 403 if the jury were to learn about Drury's involvement in *People v. Ashley*. Therefore, based on how the Court is anticipating the evidence to unfold during trial, and consistent with the Court's ruling during the Final Pretrial Conference, introduction of the *People v. Ashley* incident must refrain from identifying Drury as the offending prosecutor. FPTC Tr. at 182:3–183:18; *see* Fed. R. Evid. 403, 404(b).

Although the County initially sought to preclude admission of two published Buffalo news stories about the case, ECF No. 322-1 at 1, Plaintiff's supplemental submission filed on October 31 indicates that Plaintiff proposes to introduce the *People v. Ashley* incident for impeachment by reading relevant portions of Cosgrove's deposition testimony to the jury, ECF No. 414 at 2. The Court approves that method of introducing the *People v. Ashley* incident. Id. ("Plaintiff believes it would be more practical to read from the deposition transcript at trial, replacing 'Mr. Drury' with a neutral description like 'the Erie County Assistant District Attorney' or 'the Erie County prosecutor,' rather than cut Drury's name [repeatedly] from the video [of Cosgrove's deposition]. Plaintiff has attached the relevant, unaltered portion of Cosgrove's testimony, as Exhibit 1. At trial, Plaintiff would read from Exhibit 1, replacing Drury's name with a neutral description.").

A component of establishing the impeachment value of *People v. Ashley* is showing that the offending prosecutor was not disciplined, and Cosgrove's deposition itself does not fully demonstrate as such. *See* ECF No. 168-16 at 168:19–169:22. Accordingly, Plaintiff has proposed that either (1) the parties "agree to stipulate that

the Erie County prosecutor who spoke to the defendant in *Ashley* was never spoken to, investigated, or disciplined for the conduct reported in the newspaper article about the *Ashley* case resulting in a mistrial;" or (2) if the County will not agree to stipulate to Drury's own characterization of the ECDA's Office's response, or lack thereof, to his misconduct in *Ashley* "so as to shield Drury's role in the case, yet still insist[] on introducing Cosgrove's [testimony that opens the door to impeachment at least as identified by the Court here], Plaintiff should be allowed to question Drury (and McLeod) at trial about the newspaper article and the lack of discipline for Drury's misconduct in the *Ashley* case." ECF No. 414 at 3. The County is directed to file a response to Plaintiff's proposal on or before November 3, 2025.

## IX.    The County's Motion to Preclude Certain Deposition Testimony of Edward Cosgrove (ECF No. 319)

The County seeks to preclude the admission of former District Attorney Edward Cosgrove's deposition testimony in which Cosgrove states that he was "not only the [D]istrict [A]ttorney but also the head of all the police departments," and that prosecutors in the ECDA's Office supervised members of the BPD in how they interrogated witnesses. ECF No. 319-1 at 1–2 (citing 157:7–9, 157:23–158:18). The County contends that those excerpts of Cosgrove's testimony are "not factually relevant" to Plaintiff's claims against the County, and whatever relevance they do have is substantially outweighed by unfair prejudice. *Id.*

The County's motion is **DENIED**. The challenged testimony of Cosgrove is plainly relevant to the County's apportionment defense. Fed. R. Evid. 401. As the Court will discuss further in a subsequent decision, the County's apportionment

defense will necessarily involve the jury assessing interactions between the BPD and the ECDA's Office and how Drury, in particular, interfaced and worked with certain BPD detectives. The challenged testimony is also not unfairly prejudicial. *See* Fed. R. Evid 403. Cosgrove was, undisputedly, the policymaker in the DA's Office at the time of Boyd's criminal trial. Cosgrove was represented by counsel during his deposition, and there is no documented attempt to object, or rehabilitate, or clarify the challenged statements. This testimony is not "misleading," Cosgrove said what he said. The Court rejects the County's attempt to justify preclusion by interpreting the purportedly true meaning of Cosgrove's statements, ECF No. 319-1 at 2–3—those judgments will be left to the jury.

To the extent that the County wishes to impeach Cosgrove's testimony with other evidence, *see id.* at 3, consistent with the Court's request of both parties during the Final Pretrial Conference, the County should submit those specific requests as soon as reasonable, but ideally no later than a day or two before the County intends to use the subject evidence. *See* FPTC Tr. 5:25–6:16.

Lastly, regarding the County's very brief alternative arguments, ECF No. 319-1 at 2, the Court does not find that the County's arguments in this motion alter the Court's rulings regarding the inadmissibility of Boyd's settlement with the City Defendants and the inadmissibility of legal argument or conclusions in prior pleadings. *See supra* Sections I.C, II.

X.    **Plaintiff's Motion to Preclude Police File Documents Other Than Alleged** *Brady* **Evidence and the Documents Disclosed on the Record in Boyd's Criminal Trial and Certain Related Pretrial Proceedings (ECF No. 330)**

Plaintiff's motion is **GRANTED IN PART AND RESERVED IN PART**. Beyond the documents in the BPD file that Plaintiff specifies, the Court agrees with Plaintiff that documents in the BPD file are generally irrelevant, pose a danger of confusing the issues with respect to materiality, and run afoul of the Court's ruling precluding evidence of "what really happened" in the Crawford murder in an effort to support the factual guilt or innocence of any of the co-defendants. Fed. R. Evid. 401, 402, 403. The Court has not yet had the opportunity to review in detail each of the documents the County listed in its supplemental apportionment submission. ECF No. 405 at 9–12. To the extent any of those documents are from the BPD file and are outside the confines of Plaintiff's instant *in limine* request, the Court **RESERVES** on whether any of those specific documents are admissible.

XI.    **Plaintiff's Motion to Preclude References to Drury's Judicial Career (ECF No. 344)**

Plaintiff's motion is **GRANTED**. Drury was the lead ECDA prosecutor in Boyd's 1977 criminal trial, is the alleged individual to have violated Boyd's constitutional rights, and is a key fact witness in this civil case. That after serving as an ADA he went on to become a judge has minimal probative value to his testimony, and any probative value therefrom—for example going towards Drury's general credibility—is substantially outweighed by a danger of unfair prejudice. Fed. R. Evid. 403. Drury is not being called as an expert witness, i.e., *because* of his qualifications

and experience. *Cf. In re HIV Antitrust Litigation*, No. 19-CV-02573-EMC, 2023 WL 5670808 at *12 (N.D. Cal. Mar. 19, 2023); *In re Namenda Indirect Purchaser Antitrust Litig.*, No. 115CV6549CMRWL, 2022 WL 3362429, at *1 (S.D.N.Y. Aug. 15, 2022). When a sitting or former judge is instead testifying as a fact witness, as Drury is here, it has been recognized that the jury's knowledge of the witness's judicial experience poses a risk of unfair prejudice. *See, e.g.*, *United States v. Sine*, 493 F.3d 1021, 1033 (9th Cir. 2007); *United States v. Frankenthal*, 582 F.2d 1102, 1108 (7th Cir. 1978). Should the jury learn that Drury went on to become a judge, the likelihood that the jury uses that information to unfairly inform its assessments of, for example the accuracy of Drury's understanding of *Brady* requirements as an ADA with the ECDA, renders evidence of Drury's judicial career inadmissible pursuant to Rule 403. As Plaintiff anticipated in its briefing, this ruling will likewise apply to the judicial careers of any other fact witness during trial.

No one is to refer to Drury (or any other retired or sitting judge) as "Judge," or "Your Honor," or make any other reference that may reasonably imply the witness served or is serving as a judge at any point during trial. Further, counsel for each party must advise each of their witnesses that they are precluded from referencing Drury's (or any other retired or sitting judge's) judicial career during their testimony. There are certainly ways for counsel to elicit information about their witnesses' backgrounds on direct that recognize their courtroom and/or legal experience within the bounds of this ruling, and the Court will address specific objections as the evidence comes in during trial.

**XII. Plaintiff's Motion to Preclude Testimony of Franco Kroese (ECF No. 342)**

Plaintiff's motion *in limine* to preclude the testimony of Franco Kroese, a juror in Boyd's co-defendant Floyd Martin's criminal trial, is **GRANTED IN PART AND DENIED IN PART.** The motion is **DENIED** to the extent that Kroese may testify, and may only testify to, his recollection of the evidence and arguments that were presented during the Martin trial. All other testimony by Kroese is barred, therefore, Plaintiff's motion is **GRANTED** in all other respects.

During the Final Pretrial Conference, the Court reserved on the related issue of whether the fact that Martin was acquitted is admissible. FPTC Tr. at 136:6–8. The Court granted leave to Plaintiff to file a supplemental brief on this discrete topic, and the County responded. ECF Nos. 398, 400. The Court will address the admissibility of Martin's acquittal—and Gibson's and Walker's convictions—during a conference with the parties and will continue to **RESERVE** on that issue in the meantime.

Turning directly to this motion *in limine*, it primarily focused on precluding Kroese's testimony, which if consistent with his deposition, will largely involve Kroese explaining why he, and other jurors, thought Martin was guilty despite his acquittal. ECF No. 342-1 at 2–5 (citing, for example, Kroese's deposition testimony stating, he had a "feeling that Martin was guilty"). Plaintiff asserts that this testimony must be excluded under Fed. R. Evid. 606(b) and under Fed. R. Evid. 403. *Id*. Additionally, Plaintiff argues that Kroese had virtually no memory of factual details from the Martin trial when he was deposed, and thus there is no probative

value to his testimony. *Id.* at 1. The County responds that Rule 606(b) does not apply here and that Kroese is a key witness to rebut McLeod's anticipated testimony that McLeod's possession of the two allegedly disclosed crime-scene photographs, which the other three co-defendants did not have, secured his client Martin's acquittal. ECF No. 355 at 1–5.

The Court's prior ruling barring any witness from opining on the factual guilt or innocence of any of the four Crawford co-defendants—Martin included—applies here, and Plaintiff's motion to preclude Kroese's testimony on those grounds is likewise **GRANTED**. *See supra* Section III; Fed. R. Evid. 402, 403. This includes any testimony about Kroese's own beliefs of Martin's guilt as well as his potential testimony about what other jurors said or may have so believed. *See also* Fed. R. Evid. 802 (unexcepted hearsay is inadmissible).

Furthermore, the Court finds that Fed. R. Evid. 606(b)(1) applies to preclude most of Kroese's anticipated testimony. Rule 606(b)(1) provides:

> During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

Fed. R. Evid. 606(b)(1). The Court is unpersuaded by the County's argument that it "is not seeking to challenge Martin's acquittal." ECF No. 355 at 2. Kroese's testimony is anticipated to include a recounting of the Martin jury deliberations, commentary on what he and other jurors thought about the evidence in Martin's trial (their "mental impressions"), and commentary on behalf of himself or other jurors on the

strength of the prosecution's case in trying Martin. Such testimony is plainly inquiring into the validity of the Martin verdict—that Martin should not have been acquitted, or at least that it was a close call. That is impermissible under Rule 606(b). *See also United States v. Martinez*, 110 F.4th 160, 173 (2d Cir. 2024) ("Jury deliberations are, by design, a black box. Except in the rarest circumstances, a reviewing court has neither the authority nor the ability to peer inside the jury's deliberations.").

The Court is also unpersuaded by the County's argument that Rule 606(b)(1) should not bar Kroese's testimony because Kroese must be able to rebut any testimony of Martin's defense counsel, McLeod, explaining why he thinks Martin was acquitted.[22] ECF No. 355 at 3–5. As noted, McLeod is *not* permitted to testify about why he thinks Martin was acquitted. Nor is any other witness—including Drury, who was the lead prosecutor in Martin's trial, or any expert. Such testimony would be pure speculation because as Rule 606(b) reinforces, it is well-established that jury deliberations are confidential, and it is improper to attempt to peel back the curtain to explain why a jury reached a certain verdict. *See, e.g.*, *United States v. Gigante*, 53 F. Supp. 2d 194, 276 (E.D.N.Y. 1999); *Martinez*, 110 F.4th at 173 (jury deliberations are a black box); *United States v. Awadallah*, 401 F. Supp. 2d 308, 317 (S.D.N.Y. 2005), *aff'd*, 436 F.3d 125 (2d Cir. 2006).

As both parties seem to acknowledge, what is relevant from the *Martin* trial to this case about whether *Boyd's* due process rights were violated in his separate

---

[22] This argument is moot if the fact that Martin was acquitted is inadmissible. The Court is currently reserving on that discrete issue, pending a conference with the parties.

criminal trial is (1) what evidence was introduced—as relevant to whether that evidence existed and was withheld from Boyd; and (2) how that allegedly withheld evidence may have been favorable to Boyd's trial. Fed. R. Evid. 401. Plaintiff proffered that McLeod is expected to testify about his receipt of certain crime-scene photographs, his strategy in using the photographs in his defense of Martin, and, if the Court ultimately rules it admissible, the fact that Martin was ultimately acquitted. Such testimony (with the exception of Martin's acquittal, which the Court will rule upon later) would not run afoul of this ruling, and the Court acknowledges that other witnesses may offer similar testimony.[23] Cross-examination is available and sufficient for either party to challenge any testimony about how a lawyer in the underlying trials did or did not use certain evidence. No witness in this case knows, except Kroese, why the *Martin* verdict was reached as it was—and as discussed, Kroese is prohibited from offering any of that knowledge, explicitly or impliedly, in this trial. *See* Fed. R. Evid. 606(b)(1).

Kroese's proffered testimony is admissible only to the extent of his recollection of evidence introduced and not introduced during Martin's trial. This testimony is relevant primarily to the extent that Plaintiff's case-in-chief presents evidence of *Brady* materials that were made available to Martin but not to Boyd. As noted above, the probative value of testimony from Kroese, as well as McLeod and Drury, recalling

---

[23] However, no witness, including McLeod, is permitted to offer their opinion on a legal conclusion. *Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir. 1992). For example, McLeod cannot explicitly testify that the photographs, or any other allegedly withheld evidence, were or were not "material." This ruling does not preclude McLeod from testifying about how he used the photographs to advance Martin's defense.

what factually transpired during the Martin trial is enhanced given that there is no transcript of that trial. Plaintiff's arguments in support of excluding such factual testimony by Kroese all go towards the weight of his testimony, not its admissibility. *See Nimely v. City of New York*, 414 F.3d 381, 398 (2d Cir. 2005) ("It is a well-recognized principle of our trial system that determining the weight and credibility of [a witness's] testimony . . . belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men . . . ." (quoting *Aetna Life Ins. Co. v. Ward*, 140 U.S. 76, 88, (1891)).

**XIII. The County's Motion to Preclude Evidence of Already Litigated Issues and to Admit Evidence of 440 Motion[24] Practice (ECF No. 318), Related Motion of Plaintiff to Preclude Evidence of Post-Conviction Motions and Appeals (ECF No. 337), and Related Arguments I and II from County's Motion to Preclude "Inaccurate and/or Inadmissible Reference to the Decision Vacating Plaintiffs' Convictions and Subsequent Actions Following Same" (ECF No. 325)**

The County argues that Plaintiff should not be permitted to introduce evidence or argument that Woodruff was coerced by the BPD or that Drury's summation was improper because Boyd unsuccessfully made such arguments to appeal and collaterally attack his criminal conviction. ECF No. 318-1 at 3–5. The County contends that those state court rulings have preclusive effect under the doctrine of collateral estoppel. *Id.* The County is incorrect.

There are a number of cases that directly rebut the County's argument, including Chief Judge Wolford's decision in *Ortiz v. Wagstaff*, 523 F. Supp. 3d 347 (W.D.N.Y. 2021). *Accord Thagard v. Lauber*, 317 F. Supp. 3d 669 (W.D.N.Y. 2018);

---

[24] This is shorthand for a N.Y. C.P.L. § 440 motion, which allows a criminal defendant to seek post-conviction relief.

*Dukes v. City of Albany*, 289 F. Supp. 3d 387 (N.D.N.Y. 2018). The Court agrees with these decisions that *once a criminal conviction has been vacated*, as Boyd's was here, decisions addressing post-conviction motions have no preclusive effect. Neither case that the County cites in support of its collateral estoppel argument involved a vacatur of an underlying state-court criminal conviction. *See Allen v. McCurry*, 449 U.S. 90 (1980) (after respondent's motion to suppress evidence was denied, he was convicted, and his conviction was affirmed on appeal, he was estopped from bringing a § 1983 claim against the officers who had seized the evidence he previously sought to suppress); *Winters v. Lavine*, 574 F.2d 46 (2d Cir. 1978) (adverse judgment entered against applicant by New York state court in proceeding challenging denial of Medicaid benefits for services rendered by Christian Science nurse collaterally estopped applicant from relitigating issue of constitutionality of New York Medicaid statute in subsequent federal civil rights action). The County's alternative argument that all evidence of Woodruff's alleged coercion is wholly irrelevant because the City Defendants are not parties to the case and Woodruff previously "placed the blame for his allegedly false testimony solely on the police" is unpersuasive. The Court finds Woodruff's challenged testimony relevant to issues of apportionment and to favorability and materiality. Fed. R. Evid. 401.

The Court also finds that the substance of Judge Burns' decision vacating Boyd's conviction is inadmissible pursuant to Federal Rules of Evidence 402, 403. The jury learning of the reasons *why* Judge Burns vacated Boyd's conviction has minimal if any probative value and poses a high risk of unfair prejudice and juror confusion.

Fed. R. Evid. 403; *see L-3 Commc'ns Corp. v. OSI Sys., Inc.*, No. 02 CIV. 9144 (PAC), 2006 WL 988143, at *12 (S.D.N.Y. Apr. 13, 2006) (collecting cases) ("[C]ourts exclude judicial opinions offered as evidence on a variety of grounds, including under Rule 403."); *Guidi v. Inter-Continental Hotels Corp.,* No. 95 Civ. 9006, 2003 WL 1907904, at *1 (S.D.N.Y. Apr. 16, 2003) ("Rule 403 is also properly utilized to prevent the jury from reaching its decision based on a prior finding-in essence, ratifying the earlier decision-instead of basing its verdict on the evidence presented in the instant case." (citation omitted)). What is relevant to this civil case is the procedural fact that Boyd's criminal conviction was vacated in August 2021—being probative of at least Plaintiff's damages. Fed. R. Evid. 401. To the extent the County is concerned about Plaintiff mischaracterizing the vacatur decision, *see* ECF No. 325-1 at 2–3, that concern is mooted by the Court's ruling that the substance of the decision is off-limits. Similarly irrelevant and off-limits is evidence regarding the reasons why the ECDA's Office chose not to re-try Boyd. *See* Fed. R. Evid. 402. Again, what is relevant is the procedural fact that Boyd was not retried for the Crawford murder. Fed. R. Evid. 401. Accordingly, the Court intends to include the following in its preliminary jury instructions:

> Here, Mr. Boyd's 1977 criminal conviction for a murder in Buffalo was vacated in August 2021, which left open the possibility of Mr. Boyd being re-tried. Mr. Boyd was not retried, the indictment or criminal charges against him were dismissed, and Mr. Boyd's criminal case was closed. You should not speculate as to the reasons the conviction was vacated, that Mr. Boyd was not retried, or that the indictment was dismissed.

The parties will have the opportunity to review and object to the above language and the Court's full intended preliminary instructions.

The Court now turns to evidence of Boyd's 440 motion practice and post-conviction appeal. *See* ECF Nos. 318, 337. Plaintiff specifically seeks to preclude introduction of any and all post-conviction judicial decisions. ECF No. 337-1 at 1–3. That request is **GRANTED**. The relevancy of a state-court judge's rejection of Boyd's arguments seeking to vacate his conviction to any fact of consequence in this trial is tenuous at best and poses a high risk of unfair prejudice. Fed. R. Evid. 403; *see L-3 Commc'ns Corp.*, 2006 WL 988143, at *12; *Guidi*, 2003 WL 1907904, at *1.

Plaintiff's request to preclude affidavits from John Walker, Jr. and George Newton, *id.* at 3–4, is **DENIED AS MOOT** because the County is not seeking to introduce that evidence, ECF No. 366 at 4 n.2. The County does seek to admit seven affidavits submitted by Boyd, five by Boyd's counsel, and seven by witnesses, all in support of 440 motions. ECF No. 318-1 at 6, 8, 11–12. It does not attach the affidavits as exhibits or identify any particular statements therein that it argues are relevant. *But see Collector's Coffee Inc.*, 2023 WL 8111865, at *1 ("The purpose of *in limine* motions is to enable the Court to rule on disputes of the admissibility of discrete items of evidence."). The County also again incorrectly conflates a party admission with general admissibility. ECF No. 318-1 at 12. That a statement is not hearsay does not mean that it is *per se* admissible. *See, e.g.*, Fed. R. Evid. 402 ("[i]rrelevant evidence is not admissible"), 403; *see also Barnes v. Long Island R.R.*, 205 F.3d 1321 (2d Cir. 2000) (unpublished opinion) ("Here, all of the prior-litigation-based evidence elicited from Barnes was relevant and probative of both the extent and potential causes of Barnes's present [knee] injury.").

### A. *Boyd's Affidavits*

The Court agrees with the County that Boyd's statements, when offered against Plaintiff, are statements of a party opponent under Rule 801(d)(2)(A) and thus are not hearsay.[25] However, at this stage, the County has not demonstrated that any specific statement of Boyd's from these affidavits is relevant, and thus it's request to introduce these seven affidavits is **DENIED**. *See* Fed. R. Evid. 401, 402. The County argues in conclusory and broad fashion that "Boyd's own statements" are relevant to (1) his then-existing state of mind; (2) the evidence he believed was valuable to him in seeking vacatur; (3) the seemingly inconsistent positions adopted in pursuing vacatur; (4) the evidence *not* referenced or highlighted in his various prior applications; and (5) illustrate his prior attempts to vacate his conviction. ECF No. 318-1 at 7.

If any of these seven affidavits or portions thereof are to be admitted, the County must identify the specific statements it seeks to admit and why those specific statements are relevant. In doing so, the County is advised that Boyd's 'state of mind' at the time he drafted an affidavit is not a valid basis of relevance. "Illustrations" of Boyd's attempts to vacate his conviction and statements about evidence he believed was valuable to him in seeking vacatur are essentially a watered-down version of the County's attempt to give these prior rulings preclusive effect as discussed, and denied, above. Moreover, there is a danger of unfair prejudice if the jury learns that

---

[25] Without specific language identified for admission, the Court makes no rulings on potential issues of double hearsay, etc.

Boyd made arguments similar to his current claims and a state court judge rejected them— risking the jury deferring to or at least being unfairly influenced by the state court judge's ruling. Fed. R. Evid. 403. To the extent that the County seeks to pursue a theory of relevance on the grounds that a particular statement(s) of Boyd's is inconsistent with another, the County must identify what the inconsistency is, why that inconsistency is relevant, and establish that the evidence is admissible under Rules 613(b) and 403.[26] Similarly, if the County wishes to admit particular statements of Boyd because they tend to show an absence of references to certain evidence, it needs to do so with sufficient specificity such that the Court can make an informed ruling. *See Collector's Coffee Inc.*, 2023 WL 8111865, at *1.

### B. Boyd's Counsel's Affidavits

The Court agrees with the County that statements in 440-motion affidavits of

---

[26] As a fellow district court outlined comprehensively:

> Impeachment by extrinsic evidence of a prior inconsistent statement is governed by Federal Rules of Evidence 613(b) and 403. A proffer of extrinsic evidence of a prior inconsistent statement therefore requires consideration of several factors.
>
> First, the Court must determine whether the proffered statement in fact is inconsistent with the testimony sought to be impeached. The test is whether "there is '[a]ny variance between the statement and the testimony that has a reasonable bearing on credibility.'"
>
> Second, the party seeking to offer extrinsic evidence of a prior inconsistent statement must have laid a proper foundation for doing so by affording (a) the witness an opportunity to explain or deny the prior inconsistent statement and (b) the opposite party an opportunity to question the witness about it.
>
> Third, the extrinsic evidence of the prior inconsistent statement must be competent and otherwise admissible.
>
> Fourth, the impeachment by prior inconsistent statement must relate to a material rather than a collateral matter.
>
> Finally, even if all of these requirements have been satisfied, the trial court nevertheless may exclude the extrinsic evidence under Rule 403 on an appropriate finding.

*United States v. Ghailani*, 761 F. Supp. 2d 114, 117–18 (S.D.N.Y. 2011) (alteration in original) (footnotes of citations omitted).

Boyd's counsel, when offered against Plaintiff, are statements of a party opponent under Rule 801(d)(2)(A) and (D) and thus are not hearsay.[27] The County argues that the fact that McLeod did not "put forward any theory concerning the allegedly missing photographs," which Plaintiff is anticipated to argue constituted *Brady* material, is probative to impeach McLeod's testimony about the existence of those photographs. ECF No. 318-1 at 9–10. As a general matter, the Court agrees as to the impeachment value of that evidence but nonetheless notes that (1) McLeod drafted only one of the five affidavits the County seeks to admit; and (2) the County can effectively impeach McLeod with that affidavit[28] on cross-examination without affirmatively introducing the affidavit into evidence. The impeachment value comes from what is *missing* from the document. *Cf.* Fed. R. Evid. 613(b) (setting forth that "extrinsic evidence of a *prior inconsistent statement*" may be admitted under certain circumstances—but here it appears there is *an absence of a prior statement*). It does not necessarily follow that the jury is entitled to see what *is in* the document.

Further, under Federal Rule of Evidence 608(b), except for a criminal conviction under Rule 609, "*extrinsic evidence is not admissible* to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." Fed. R. Evid. 608(b) (emphasis added). There are no other exceptions to this rule, *see id.*, including no exception for extrinsic evidence used for this purpose that is a statement of a party opponent, *see United States v. Saada*, 212

---

[27] Without specific language identified for admission, the Court makes no rulings on potential issues of double hearsay, etc.

[28] COE001919-1924 (and accompanying photographs at COE001938-1941).

F.3d 210, 221 (3d Cir. 2000) ("Rule 806 does not modify Rule 608(b)'s ban on extrinsic evidence of prior bad acts in the context of hearsay declarants, even when those declarants are unavailable to testify."); *United States v. Andrade*, No. 20-CR-00249-RS-1, 2025 WL 670456, at *4 (N.D. Cal. Mar. 3, 2025) (collecting cases); *see also Whiting v. Old Brookville Bd. of Police Comm'rs*, 4 F. App'x 11, 13–14 (2d Cir. 2001) ("As a result, plaintiff's counsel's attempts to elicit information about the disciplinary violations through cross-examination should have been analyzed under Rule 608(b) barring, for purposes of impeachment, extrinsic evidence of past instances of misconduct but permitting, in the district court's discretion, cross-examination concerning that misconduct.").

Beyond impeaching McLeod's anticipated testimony about the existence of the two crime-scene photographs for the Martin trial, the Court finds that the County's other relevancy arguments for the five affidavits of counsel unpersuasive. It's generalized arguments that the affidavits of Boyd's counsel are relevant because they "speak to arguments advanced and *not advanced* by Boyd and/or his counsel in pursuit of vacatur" and are "probative of the evidence that Boyd's counsel found relevant for claiming his innocence" are again repackaged versions of the County's contention that the post-conviction rulings in Boyd's criminal case have preclusive effect. *See* Fed. R. Evid. 402, 403. The Court further notes that any statements contained in attorney affidavits involving legal argument or legal conclusions are inadmissible. *See Martinez v. Port Auth. of N.Y. & N.J.*, No. 01 CIV. 721 (PKC), 2005 WL 2143333, at *1 (S.D.N.Y. Sept. 2, 2005), *aff'd sub nom.* 445 F.3d 158 (2d Cir.

2006). The County's request to admit the five affidavits of Boyd's counsel is **DENIED**.

### C. Witness Affidavits

The County seeks to admit seven statements of six witnesses that Boyd included in his 440-motion practice. To start, the County argues that "these statements provide factual context to Boyd's prior post-conviction motions" but does not explain why such "factual context" is relevant to this trial. ECF No. 318-1 at 11. That these witness statements concern, generally speaking, Boyd's "various theories as to why his conviction should have been overturned" likewise does not establish any relevance to this trial. *Id.* at 12. Plaintiff has consented to the admission of statements made by Woodruff, with redactions, *see* ECF No. 337-1 at 4 n.4, therefore the County's motion to admit the 1985 and 2010 sworn statements of Woodruff[29] is **GRANTED** at this stage to the extent of Plaintiff's consent. The County's request to admit witness statements incorporated into Boyd's 440-motion practice is otherwise **DENIED**. If the County wishes to seek admission of any portion of Woodruff's statements to which the Plaintiff has not consented, it must demonstrate the admissibility of the specific language it is seeking to add. Similarly, the County must identify the specific language it is seeking to admit from the other six documents and why that specific language is admissible. The County is advised that its proffered grounds of relevancy to date are unpersuasive.

\* \* \*

For the reasons discussed, the County's arguments I and II from its motion at

---

[29] COE001925-COE001937 and COE002481-COE002509.

ECF No. 325 are **GRANTED**. The County's motion to preclude already litigated issues and admit post-conviction affidavits, ECF No. 318, is **DENIED** except to the extent of Plaintiff's agreement on the admission of portions of Woodruff's 1985 and 2010 statements. Plaintiff's motion to preclude evidence of post-conviction motions and appeals, ECF No. 337, is **GRANTED IN PART AND DENIED AS MOOT IN PART**. If the County would like to have post-conviction affidavits admitted into evidence, it must by November 5, 2025, identify all of the statements in each affidavit that it intends to introduce and establish the specific admissibility thereof consistent with this ruling. Plaintiff will then have until November 7, 2025, to respond.

## XIV. Plaintiff's Motion to Admit Former ECDA John Flynn's "Weak-Case Statement" (ECF No. 332) and Related Arguments III and IV from County's Motion to Preclude "Inaccurate and/or Inadmissible Reference to the Decision Vacating Plaintiffs' Convictions and Subsequent Actions Following Same" (ECF No. 325)

Plaintiff seeks to admit, and the County seeks to exclude, what has been referred to as the "Weak-Case Statement" made by former ECDA John Flynn during an August 2021 press conference to respond to Judge Burns' decision vacating the convictions of Boyd and Walker. The Weak-Case Statement, as Plaintiff seeks to offer it, is as follows:

> Even when I believe quite frankly, in my heart of hearts, that this was a weak case, frankly. This wasn't the strongest case 45 years ago. I'll concede that, alright. I'll concede it wasn't the greatest case. [REDACTED.] He had one of the five there flip who got off scot-free, and didn't get prosecuted at all, and testified against the other four. Listen here, not the greatest evidence in the world. There's no DNA evidence. It wasn't the greatest case.

ECF No. 372 at 5 n.3. The County opposes the admission of this statement entirely,

and, in the alternative, seeks to introduce the following additional language from

Flynn's press conference as italicized below pursuant to Federal Rule of Evidence 106:

> *So, with that said, I'm not really sure how the court came to the decision*
> *that they came to.*
> . . . .
> *I'm going to try to read between the lines and try to give you guys and the*
> *public a little bit better understanding of what I think he's saying here*
> *and that obviously has an effect on the decision that I'm going to make*
> *here.*
> . . . .
> Even when I believe quite frankly, in my heart of hearts, that this was
> a weak case, frankly. This wasn't the strongest case 45 years ago. I'll
> concede that, alright. I'll concede it wasn't the greatest case. *I'll concede*
> *he had a couple of jailhouse snitches.* He had one of the five there flip
> who got off scot-free, and didn't get prosecuted at all, and testified
> against the other four. Listen here, not the greatest evidence in the
> world. There's no DNA evidence. It wasn't the greatest case. *Don't get*
> *me wrong. And I don't think it's the greatest case in the world. But you*
> *know what? The case was put on. 12 jurors decided it was guilty. I'm not*
> *going to upset 12 jurors 40 years ago unless you give me something good.*
> *And they didn't give me any[thing] near good. They didn't give me*
> *anything at all. That's why I opposed the motion. And I stand by that.*
> . . . .
> *And the matter is over. It is impractical for me to have a new trial, ok?*
> *That can't happen, alright? Half my witnesses are dead. You read in here,*
> *we can't find half the files. Ok? Judge Burns tried, we tried to find the*
> *files from 45 years ago. We can't find half the files. Half the witnesses,*
> *like I said, half are dead. One of the witnesses is now not going to*
> *cooperate anymore, ok. He's not going to cooperate. I got—There's no way*
> *I can try this case again. It's logistically and feasibly impossible even if I*
> *wanted to, to try this case again.*

ECF No. 325-1 at 6–7.

For the reasons explained below, the Court authorizes the admission of the

Weak-Case Statement as follows:

> Even when I believe quite frankly, in my heart of hearts, that this was
> a weak case, frankly. This wasn't the strongest case 45 years ago. I'll
> concede that, alright. I'll concede it wasn't the greatest case.
> [REDACTED.] He had one of the five there flip who got off scot-free, and

didn't get prosecuted at all, and testified against the other four. Listen here, not the greatest evidence in the world. There's no DNA evidence. It wasn't the greatest case. Don't get me wrong. And I don't think it's the greatest case in the world. But you know what? The case was put on. 12 jurors decided it was guilty.

Plaintiff argues that the Weak-Case Statement is relevant to the issue of materiality and is not hearsay because it is a statement of a party opponent as DA Flynn was "authorized to speak on the subject," Fed. R. Evid. 801(d)(2)(C), or was agent or employee acting with the scope of their employment relationship while that relationship exists, Fed R. Evid. 801(d)(2)(D). ECF Nos. 332-1 at 2; 372 at 5–6. The County generally opposes the admission of any statements from the press conference, claiming that whatever DA Flynn had to say about the *Boyd* and *Walker* cases is irrelevant because the cases are fifty years old, and this is a civil trial, not a criminal one. ECF Nos. 325-1 at 4–7; 332 at 2. The County also argues the statements are inadmissible hearsay, constitute improper opinion testimony because DA Flynn had no personal knowledge of the underlying facts, and that admitting his "inflammatory" statements would "confus[e] the issues and/or the jury" and would be unfairly prejudicial. ECF Nos. 325-1 at 4; 332 at 2.

There is no question that statements spoken by DA Flynn himself during the August 2021 press conference, *as* Erie County District Attorney, and as being offered against the County, are statements of a party opponent under both Fed. R. Evid. 801(d)(2)(C) and 801(d)(2)(D). As such, DA Flynn's "lack of personal knowledge" does not bear on the admissibility of his statements. *See Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534, 537–38 (2d Cir. 1992); *Pekelis v. Transcon & W. Air, Inc.*, 187

F.2d 122, 129 (2d Cir. 1951); Advisory Comm.'s Note to Fed. R. Evid. 801(d)(2) (admission are not subject to "the restrictive influences of the opinion rule and the rule requiring firsthand knowledge"). Flynn's remarks are relevant to the issue of materiality and do not step over the line to being legal conclusions or an opinion on Boyd or Walker's factual guilt or innocence, and his excised remarks are not unfairly prejudicial. *See Cameron v. City of New York*, 598 F.3d 50, 62 (2d Cir.2010) ("Witnesses may not present testimony in the form of legal conclusions." (quotation omitted)); *Hygh*, 961 F.2d at 364 (noting "[t]his rule applies to both expert and lay witnesses").[30] Contrary to the County's position, Flynn's statement is not "inflammatory"—it is simply unfavorable to the County's defense at trial. *See United States v. Figueroa*, 618 F.2d 934 (2d Cir. 1980) ("All evidence introduced against a defendant, if material to an issue in the case, tends to prove [liability], but is not necessarily prejudicial in any sense that matters to the rules of evidence.").

Therefore, the County's motion to preclude the Weak-Case Statement, ECF No. 325 argument III, is **DENIED,** and Plaintiff's motion to admit the Weak-Case Statement, ECF No. 332, is **GRANTED** with the slight supplementation noted above. As discussed during the Final Pretrial Conference, the Court agrees with Plaintiff's proposal to redact the remark, "I'll concede he had a couple of jailhouse snitches," because unlike the *Walker* criminal trial, the prosecution called no "jailhouse

---

[30]The Court also finds that DA Flynn's statement, "He had one of the five there flip who got off scot-free, and didn't get prosecuted at all, and testified against the other four," falls short of opining on Woodruff's credibility. *See Cameron*, 598 F.3d at 61–62 ("As a matter of law, the credibility of witnesses is exclusively for the determination by the jury, and witnesses may not opine as to the credibility of the testimony of other witnesses at the trial.")

snitches" in Boyd's criminal case, and Flynn was delivering a press conference after both Walker and Boyd's convictions were vacated. FPTC Tr. at 57:4–24.

The Court disagrees with the County that Flynn's remark that "[t]here's no DNA evidence" (the "no DNA remark") should also be redacted because DNA evidence was not available in 1977. *See id.* at 58:1–7. Unlike the "jailhouse snitches" remark, which the parties do not dispute is factually incorrect in Boyd's case, it is not technically incorrect to state that there was no DNA evidence supporting Boyd's conviction—there could not have been. To address any unfair prejudice to the County caused by the jury's potential interpretation of Flynn's no DNA remark to mean that there was, in fact, an absence of Boyd's DNA, instead of the mere fact that there was an inability to collect and test DNA evidence in 1977, <u>the parties can submit a stipulation into evidence clarifying the no DNA remark, or</u> the Court will issue a limiting instruction to the jury each time the no DNA remark is played, read, or referenced for the jury.

The County's alternative request to supplement the Weak-Case Statement, ECF No. 325 argument IV, is **GRANTED IN PART AND DENIED IN PART**. Most of the County's sought-after supplements to the statement address matters that the Court has ruled are inadmissible, including discussion of the substance of Judge Burns' decision, content of the 440 motions, and discussion of why the ECDA's Office did not seek to re-try Boyd (or Walker). *See supra* Sections XIII, XIV. Even if that was not the case, the Court does not find that any further "context" is needed beyond what the Court as noted above. *See* Fed. R. Evid. 106; *United States v. Williams*, 930

F.3d 44, 58 (2d Cir. 2019) ("The purpose of [Rule 106] is to correct, contemporaneously, the misleading impression created by taking matters out of content, and the rule require[es] generally that adversaries be allowed to prevent omissions that render matters in evidence misleading." (quotation omitted)).

The Court notes that although the "Weak Case Statement" shorthand has been helpful in facilitating discussion amongst the parties and Court, such shorthand is inappropriate for use in front of the jury.

## XV. The County's Motion to Preclude Reference to Cancer and Other Unrelated Physical Injuries (ECF No. 321)

The County seeks to limit reference to Boyd's death to the fact that he died from causes unrelated to the allegations in this lawsuit, to preclude reference to his cancer diagnosis and treatment, and to preclude evidence that Boyd sustained any physical injuries as a result of his incarceration. ECF No. 321-1 at 1. The County also, in the alternative to seeking the complete preclusion of Dr. Drob's testimony, seeks to preclude Dr. Drob from testifying about any impact of Boyd's cancer diagnosis to damages because Dr. Drob administered the "Symptom Checklist 90-Revised (SCL-90-R)" and the "Trauma Symptom Inventory, 2nd Edition (TSI-2)" before Boyd was diagnosed with cancer. *Id.* at 3 n.3.

Plaintiff partially opposes the County's motion. Plaintiff's pretrial statement of damages reads:

> The Estate of Darryl Boyd is not seeking special damages. Mr. Boyd's Estate seeks recovery for all damages and injuries caused by Mr. Boyd's wrongful conviction and loss of liberty during post-trial incarceration and parole supervision, including but not limited to damages resulting from: his loss of liberty, privacy, and personal autonomy; physical

76

> illnesses and injuries; mental and emotional suffering; and loss of the
> services, society, companionship, and consortium of family members.
> Mr. Boyd's Estate also will seek recovery of its legal fees and costs
> pursuant to the fee-shifting provisions of 42 U.S.C. § 1988 and other
> applicable law, and any interest and any other relief allowed by law.

ECF No. 349 at 2. Plaintiff's *in limine* briefing clarifies that it does not contend that

Boyd's pancreatic cancer, ultimately resulting in his death, was caused by his

incarceration, but instead that his terminal cancer diagnosis "caused him enormous

psychological stress, compounding 'his feeling that the life he had hoped for was taken

from him by his years of wrongful imprisonment.'" *Id.* at 2, 4 (quoting report of Dr.

Drob at 34). Similarly, Plaintiff clarifies that the following health issues that Boyd

"began experiencing" while on parole were not caused by his incarceration but did

"exacerbate[] Boyd's depression over having the best years of his adult life stolen from

him" ECF No. 380 at 1 n.1. Plaintiff does proffer that there will be "evidence of

physical injuries Boyd sustained due to the conditions of his confinement" and

evidence "regarding the prison conditions he experienced while incarcerated." ECF

No. 380 at 1 n.2.

　　The County's motion is **GRANTED IN PART AND DENIED IN PART**. The

Court finds that Boyd's terminal cancer diagnosis two years after the vacatur of his

conviction and after more than three decades of incarceration and parole is relevant

to Plaintiff's damages—particularly Boyd's pain and suffering. The same is true for

the back pain, high blood pressure, hypertension, and kidney disease that Boyd began

experiencing while on parole. Plaintiff has clearly asserted that there will be no

attempt to assert that these health issues were caused by his incarceration. This

remediates the County's concern that there is no medical expert to substantiate a causal connection between Boyd's incarceration and his cancer or his other health issues. The Court will reinforce this lack of causal connection in its preliminary jury instructions as follows:

> As I mentioned during *voir dire*, this case involves allegations by Mr. Boyd that his constitutional right to a fair trial under the Fifth and Fourteenth Amendments were violated in 1977 due to the misconduct of Erie County Assistant District Attorneys, which in turn was caused by policies and practices of the Erie County District Attorney's Office.
> Mr. Boyd passed away in February 2025 from cancer. His cancer diagnosis was unrelated to his conviction and incarceration. Kathleen Weppner is the executor of Mr. Boyd's estate, and in that capacity she has been, what is referred to as, "substituted" as the plaintiff in this case to continue to pursue Mr. Boyd's claim on his behalf. That is why you may hear me or the attorneys refer to the Plaintiff as the "Boyd Estate." The Boyd Estate is alleging that the County of Erie, the Defendant in this case, is liable for the prosecutors' misconduct and is seeking compensation from the County for these alleged violations.

The parties will have the opportunity to review and object to the above language and the Court's full intended preliminary instructions. However, the Court notes that in order to avoid unfair prejudice and confusing the issues, testimony regarding Boyd's physical ailments that are not alleged to be caused by his incarceration should be limited. Fed. R. Evid. 403.

The Court finds that both Dr. Drob and Walker may testify about how Boyd's cancer and other health issues contributed to his damages. With respect to Walker, he may testify on that subject to the extent of his personal knowledge and without treading into the scope of specialized knowledge reserved for expert witnesses.[31] *See*

---

[31] See *infra* Section VI for a full analysis of the permissible scope of Walker's testimony in connection with the County's motion *in limine* to preclude it, reference to his 1977 criminal trial, and reference to his 2025 civil trial. *See* ECF No. 324.

Fed. R. Evid. 701. Because Dr. Drob met with Boyd after Boyd received his cancer diagnosis and included those interactions and his assessment thereof in his expert report, *see* ECF No. 327-2 at 9–10, the County had an opportunity to question Dr. Drob about the full contents of his report during his deposition, and given Dr. Drob's qualifications, the Court finds that Dr. Drob has a sufficient basis from which to opine on Boyd's cancer exacerbating his damages. *See* Fed. R. Evid. 702. However, to the extent that any of Boyd's other health conditions or physical injuries are not discussed in Dr. Drob's report, Dr. Drob would be precluded from opining on them during trial.[32] *See Camarata v. Experian Info. Sols., Inc.*, No. 16-CIV-0132 (AT)(HBP), 2018 WL 1738335, at *1 (S.D.N.Y. Mar. 5, 2018) (collecting cases). ("The expert's report operates to limit the scope of the testimony that can be elicited from the expert[ ] [and] opinions that are not disclosed in the expert's report cannot be offered.").

In its opposition to the County's motion, Plaintiff also argues that its designation of Boyd's deposition testimony at 411:19–413:6—in which Boyd is explaining that he was "grimacing" earlier in his deposition due to the "shooting pain [that] goes up [his] stomach" as a result of his pancreatic cancer—should be admissible to avoid unfair speculation as to the reason that Boyd was "grimacing" during his video-taped deposition and "unfairly judge his credibility." ECF No. 380 at 4. The Court disagrees. While the Court acknowledges that some sort of explanation to the jury is warranted about Boyd's health during his deposition, the cited excerpt

---

[32] See Section XIX.A for a full analysis of the permissible scope of Dr. Drob's expert testimony in connection the County's motion *in limine* to preclude it entirely. ECF No. 327.

is unfairly prejudicial to the County and cannot reasonably be parsed. The <u>type</u> of cancer that Plaintiff had is not relevant, and the jury may confuse the particular questions and answers cited discussing the "pain" that Plaintiff was experiencing due to his pancreatic cancer, which is unrelated to the County's alleged liability, with Boyd's emotional "pain and suffering" that would be so related. Therefore, the Court finds this specific designation inadmissible under Rule 403.[33] Fed. R. Evid. 403. The Court will, however, issue the following limiting instruction before Boyd's deposition is played for the first time for the jury:

> Plaintiff is about to play excerpts of Mr. Boyd's testimony during his deposition taken on January 10 and January 19, 2024. As I instructed you before trial, it is your responsibility as jurors to assess the credibility of individuals testifying in this case. As you have heard, Mr. Boyd passed away from cancer earlier this year—unrelated to his conviction and incarceration. When assessing the credibility of Mr. Boyd's deposition testimony, you may consider that at the time he was deposed, he had been diagnosed with cancer and was experiencing symptoms associated with that diagnosis.

The Court finds that there is little, if any, prejudice to the County for Plaintiff to introduce testimony about the fact of Plaintiff's cancer diagnosis in November 2023 and that his diagnosis contributed to his damages as qualified and limited above. Despite neither party including any proposed juror *voir dire* related to potential jurors' experience with cancer (or any other medical condition)—*voir dire* is a prime opportunity to mitigate potential unfair prejudice to the County stemming from introduction of limited, relevant testimony about Boyd's cancer. *Cf.* ECF No. 321 at

---

[33] The Court is not necessarily precluding all evidence about "pain" that Boyd experienced due to his cancer but is addressing the "discrete" issue presented in briefing on this motion *in limine*. *See Collector's Coffee Inc.*, 2023 WL 8111865, at *1.

2–3 (County's motion *in limine* arguing the prejudice that would stem from "emotionally charged information" about a cancer diagnosis). The Court informed the parties via email on October 30, 2025, that it would not be permitting attorney *voir dire* and afforded the parties an opportunity to supplement their proposed *voir dire* on or before October 31, 2025, noting that neither party sought to *voir dire* potential jurors about their experience with cancer. The County did not submit any supplemental proposed *voir dire*.

Lastly, during the Final Pretrial Conference, the Court reserved a ruling on the County's request to preclude evidence of Boyd's "other physical injuries" that he does contend resulted from his incarceration. *See* FPTC Tr. at 176:14–16; ECF No. 380 at 1 n.2 (Plaintiff stating it intends to introduce evidence "regarding the prison conditions he experienced while incarcerated" and "evidence of physical injuries Boyd sustained due to the conditions of his confinement"). To the extent that Plaintiff is seeking to introduce evidence from Plaintiff's prison records or Boyd's deposition testimony, showing that for example, he was assaulted in prison on a certain date and sustained certain immediate injuries therefrom, it is generally permitted to do so.[34] However, the County is correct that if Plaintiff is attempting to introduce evidence that physical injuries sustained in prison or the conditions of confinement caused a particular physical health issue, such evidence must be supported by a competent expert medical opinion. *See Barnes v. Anderson*, 202 F.3d 150, 159 (2d Cir. 1999) ("Expert medical opinion evidence is usually required to show the cause of an

---

[34] The Court will rule separately on specific deposition designations.

injury or disease because the medical effect on the human system of the infliction of injuries is generally not within the sphere of the common knowledge of the lay person."). Dr. Drob's psychological expertise does not extend to physical health diagnoses.[35] Therefore, to the extent that Plaintiff intends to argue that physical injuries sustained during Boyd's incarceration or the conditions of his confinement generally caused a physical health ailment beyond the immediate result of a particular alteration, it is precluded from doing so.

## XVI. Plaintiff's Motion to Preclude McLeod's Prior "Bad Acts" (ECF No. 336)

Plaintiff's motion is **GRANTED**. The County's pretrial disclosures identified that it intends to introduce "allegations of neglect of client matters by [Boyd or Walker] during prior legal representation of [them]" and "[c]onduct underlying grievances filed against [McLeod] to [the] Grievance Committee of [the] Eighth Judicial District" among other unspecified conduct to impeach McLeod's credibility under Rule 608. ECF No. 348 at 10.

Pursuant to Rule 608(b) of the Federal Rules of Evidence, "specific instances of a witness's conduct" may be raised on cross-examination "to attack or support the witness's character for truthfulness," only "if they are probative of the character for truthfulness or untruthfulness of the witness." Fed R. Evid. 608. As discussed during

---

[35] The Court understands that mental health diagnoses may involve physical symptoms, to which Dr. Drob may testify within the confines of his expertise and expert report in this case. That is distinct from a primary diagnosis of a physical ailment caused by Boyd's incarceration—for example, hypothetically, that physical trauma from repeated beatings caused chronic pain or degeneration of certain joints.

the Final Pretrial Conference, the "bad acts" implicated by the County's disclosure (all predating 1992) are too remote in time to fairly question McLeod's credibility as a witness in this 2025 case. FPTC Tr. at 94:10–14; *see United States v. Leonardi*, 623 F.2d 746, 757 (2d Cir. 1980) (concluding district court "correctly applied Rule 608(b)" in precluding witness's drug use that had "not result[ed] in conviction and which did not, by [its] nature, tend to impugn the witness's credibility"); *United States v. Ahmed*, No. 14-cr-277 (DLI), 2016 WL 3647686, at *3 (E.D.N.Y. July 1, 2016) ("Defendant's argument that evidence of prior malpractice actions otherwise could be helpful to the jury in assessing the competency or expertise of Dr. Ross is unpersuasive. One of the lawsuits was settled twenty years ago and, as such, is too remote in time to have any significance."); *United States v. Wilke*, No. 09–CR–6099, 2010 WL 1573918, at *1 (W.D.N.Y. Apr. 15, 2010) (denying even the discovery of potential impeachment material because, *inter alia*, it was 24 years old).

To the extent that the County is attempting to introduce prior bad acts to cast doubt on McLeod's post-conviction representation of Boyd and Walker or his trial representation of Martin more than 30 years ago, that is beyond the function of impeachment evidence under Rule 608, and "ineffective assistance of counsel" is not a valid defense to a *Brady* claim.

## XVII. Plaintiff's Motion to Preclude Prior "Bad Acts" of Boyd, Walker, Gibson, Martin, and Woodruff (ECF No. 339)

The County does not directly disclose its intention to introduce any prior bad acts of Gibson, Martin, or Woodruff, beyond that Boyd "[a]ttempted robbery with Darryn Gibson, John Walker, and Floyd Martin." ECF No. 348 at 11. Neither Gibson

nor Martin are witnesses in this civil trial, therefore, any attempt to impeach their credibility for truthfulness is moot. *See* Fed R. Evid. 608, 613, 806. Woodruff is a witness and the County has disclosed no prior bad acts of his in its pretrial submission responding to the Court's pretrial order. Therefore, the Court's **GRANTS** Plaintiff's motion to preclude any and all prior "bad acts" of Gibson, Martin, and Woodruff.

With respect to Boyd, the County disclosed an intent to introduce the following prior bad acts: (1) a conviction as a juvenile for robbery of a dry cleaners in December 1974 which resulted in the shooting of a minor; (2) "[p]rior use and possession of weapons for purposes of robbery;" (3) "[s]everal instances of attempted robbery, car theft, and shoplifting;" (4) "[a]ttempted robbery with Darryn Gibson, John Walker, and Floyd Martin;" (5) "[v]arious violations of terms of his parole;" (6) that Boyd [s]upplied [a] firearm to [an] individual who fired [a] weapon into [a] house that ten people were occupying;" and (7) "[r]obbery of [a] store with [a] firearm with Andre Hough." ECF No. 348 at 10–11. Although the County's pretrial submission states that its evidence of prior bad acts includes but is "not limited to" the above, the Court declines to consider other bad-act evidence for admission beyond that explicitly disclosed by the County unless a particular door to a particular bad act is opened during trial. *Cf. Diallo v. Ruan Transportation Corp.*, No. 18-CV-1834 (KNF), 2021 WL 3222733, at *4 (S.D.N.Y. July 29, 2021). Plaintiff's motion is **GRANTED** in these respects.

The only established "conviction" of Boyd's other than his 1977 conviction for the murder of Crawford is his juvenile adjudication for robbery of a dry cleaners in

December 1974, which resulted in the shooting of a minor. Under Federal Rule of Evidence 609(d), juvenile adjudications are not admissible in civil cases. Fed. R. Evid. 609(d)(1). There is no exception under Rule 609(d) to admit juvenile criminal adjudications for the limited purpose of rebutting civil damages. *See id*. Accordingly, evidence of the 1974 robbery is inadmissible. If formal juvenile adjudications are completely barred in civil cases under Rule 609(d), of course the County's vague allegations of juvenile misconduct are completely barred in this civil case as well.

The only potentially admissible prior "bad acts" of Boyd's are the "[v]arious violations of terms of his parole." ECF No. 348 at 11. However, as discussed at the Final Pretrial Conference, if Plaintiff is not seeking damages associated with particular parole violations, evidence of that parole violation is not relevant to this case. *See* FPTC Tr. at 118:15–124:21. Accordingly, Plaintiff's motion is **DENIED** with respect to the circumstances of any of Boyd's parole violations that Plaintiff is affirmatively seeking damages for Plaintiff's re-incarceration but is otherwise **GRANTED** with respect to Boyd's prior bad acts identified in the County's pretrial submission.

The County's identified prior bad acts of Walker are either clearly barred by Ruel 609(d)(1) or are insufficiently specific to justify admission. *See* ECF No. 348 at 10. Unlike Boyd's prior bad acts having the potential to be relevant to Plaintiff's damages, Walker's prior "bad acts" are only relevant to his character for truthfulness as a witness in this 2025 civil trial. Fed. R. Evid. 608. Though vague, everything the County seems to allege involves conduct predating Walker's 1977 conviction. *See* ECF

No. 348 at 10. Such evidence is far too remote in time to fairly bear on Walker's credibility as a witness in this 2025 trial. At this stage, the County has not demonstrated that any alleged bad act of Walker's is admissible. Accordingly, Plaintiff's motion is **GRANTED IN PART AND DENIED IN PART**.

## XVIII.      Plaintiff's Motion to Preclude Testimony Regarding False-Alibi Instructions in Criminal Trials (ECF No. 345)

Plaintiff's motion is **GRANTED**. To the extent the County seeks to describe to the jury in this civil case that there is a "false-alibi" jury instruction that may be given during criminal trials when there is a question about the defendant intentionally falsifying an alibi and how that is indicative of the defendant's "consciousness of guilt," such evidence is irrelevant to this case. *See* Fed. R. Evid. 401, 402; *People v. Sheirod*, 124 A.D. 2d 14, 18 (4th Dep't 1987) ("We agree that the court erred by instructing the jury to consider false alibi as consciousness of guilt in the absence of any independent proof of fabrication); *People v. Abdul-Malik*, 61 A.D.2d 657, 661 (1st Dep't 1978) ("It is well-established that before a jury may be charged that a defendant's assertion of a false explanation may imply a 'consciousness of guilt,' the People must seek to prove the falsity of the statement by evidence independent of that offered directly to prove the defendant's guilt.").

The County concedes that the taxicab evidence implicated by Plaintiff's *Brady* theory does not implicate an alibi of Boyd's, *see* ECF No. 364 at 2—it is Walker and Woodruff that this evidence tends to show were in a taxi at the time of Crawford's murder. As relevant to Plaintiff's *Brady* theory, the potential favorability of this evidence *with respect to Boyd* is not that it was an exculpatory alibi, but that it

impeaches Woodruff's confessions about what he claimed to have seen at the Crawford murder because he was in a taxi and could not have been present during the murder. *See Coppa*, 267 F.3d at 139 ("Favorable evidence includes not only evidence that tends to exculpate the accused, but also evidence that is useful to impeach the credibility of a government witness."). Moreover, a false-alibi instruction was not given to the jury in Boyd's 1977 criminal trial. There is no reason to inform the jury in Boyd's 2025 civil trial about the existence of a "false-alibi jury instruction." That such an instruction exists when warranted by the circumstances is irrelevant to this civil trial and is thus inadmissible. Fed. R. Evid. 401, 402.

## XIX. The County's Motion to Preclude Expert Testimony by Each of Plaintiff's Experts (ECF No. 327) and Related Plaintiff's Motion to Establish Scope of Professor Zeidman's Testimony (ECF No. 331)[36]

The County argues that each of Plaintiff's three expert witnesses—Dr. Sanford Drob, Professor Steven Zeidman, and Professor Alan Hirsch—should be precluded from testifying altogether or, alternatively as argued in other motions *in limine*, be limited in their testimony. ECF No. 327-1 at 2; ECF No. 382. The County's request to preclude Plaintiff's three experts from testifying altogether is **DENIED**, as is the County's request for a *Daubert* hearing.

Federal Rule of Evidence 702 governs the admissibility of expert testimony. To fulfill the "gatekeeping" function implicated by Rule 702, a district court must determine whether (1) the "witness is 'qualified as an expert' to testify as to a particular matter"; (2) "the opinion is based upon reliable data and methodology"; and

---

[36] Thee Court will address the scope of Gagan's testimony—the second component of Plaintiff's motion at ECF No. 331—and therefore **RESERVES** on that issue.

(3) "the expert's testimony (as to a particular matter) will 'assist the trier of fact.'" *Nimely v. City of New York*, 414 F.3d 381, 396–97 (2d Cir. 2005) (quoting Fed. R. Evid. 702).

### A. Dr. Drob

Plaintiff proffers that Dr. Sanford Drob will, among other things, "explain why an innocent inmate suffers more and differently than a justly convicted inmate, and identify the psychological injuries that were exclusively or primarily caused by Boyd's wrongful conviction." ECF No. 375 at 12. The County argues that Dr. Drob should be precluded from testifying because (1) "his report lacks indicia of reliability" with respect to his testimony that Boyd suffered "more" or differently "than a guilty prisoner" because Boyd believed in his own innocence; (2) the remainder to Dr. Drob's testimony is within a layperson's understanding; and (3) alternatively, Dr. Drob's conclusions are "based entirely on hearsay and speculation." ECF No. 327 at 14–15. The County does not challenge Dr. Drob's qualifications as an expert.

The Court finds that Dr. Drob's testimony goes beyond the understanding of a layperson and will be helpful to the jury in assessing Plaintiff's damages, if applicable. *See* Fed. R. Evid. 702; *United States v. Wexler*, 522 F.3d 194, 204 (2d Cir. 2008) (expert testimony is helpful when it "sheds light on activities not within the common knowledge of the average juror."). As the County acknowledges elsewhere, medical expert testimony is generally required to show causation of medical injuries or diseases. *See Barnes*, 202 F.3d at 159 ("Expert medical opinion evidence is usually required to show the cause of an injury or disease because the medical effect on the

human system of the infliction of injuries is generally not within the sphere of the common knowledge of the lay person."); *Rosario v. City of New York*, No. 18 Civ. 4023 (LGS), 2021 WL 1930293, at \*7 (S.D.N.Y. May 13, 2021) (authorizing expert to "opine on posturing, hypervigilance, social isolation and irritability," which was "well within his purview to discuss the symptoms he considered as they relate to Plaintiff's mental health").

Moreover, the Court disagrees with the County that Dr. Drob's opinion lacks indicia of reliability. Dr. Drob does not need to produce a specific, peer-reviewed or quantitative study supporting every aspect of his expert report in order for his opinion to be reliable. *See, e.g.*, *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1043 (2d Cir. 1995) (professional experience sufficient basis for causation opinion even without "single piece of medical literature" to support it); *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002) (empirical studies not required); *United States v. Williams*, 506 F.3d 151, 161 (2d Cir. 2007) (expert's education and experience sufficient foundation for opinion). Here, Dr. Drob has vast experience over four decades performing psychological forensic evaluations of inmates and has sufficient experience and qualifications to reasonably opine on the different and/or greater harm experienced by inmates who believe they are innocent as compared to those who accept and internalize their guilt. Such testimony is limited by the Court's other evidentiary rulings, specifically *supra* Section III, discussing the distinction between Boyd's subjective belief in his innocence and whether he was guilty or innocent of the Crawford murder as a factual matter.

Additionally, the data on which an expert relies need not be admissible in and of itself to properly form the basis of the expert's opinion. *See United States v. Feliciano,* 223 F.3d 102, 121 (2d Cir. 2000) (the Second Circuit has "repeatedly held that expert testimony admissible under Rule[ ] 702 ... can, under certain conditions, be based on hearsay and evidence not admitted at trial," such as when "experts in the field reasonably rely on hearsay in forming their opinions and drawing their inferences." (quotation omitted)); *United States v. Pollok*, 139 F.4th 126, 143 n.9 (2d Cir. 2025) ("It is inarguable that psychologists regularly and reasonably rely on hearsay in their work, and we therefore conclude that Dr. Hughes was entitled to rely on hearsay here."). The Court finds the County's other arguments with respect to precluding Dr. Drob's testimony to be without merit and not warranting additional analysis.

The County's motion to preclude Dr. Drob's testimony in its entirety is **DENIED**. The Court's other rulings operate on Dr. Drob's testimony, and his testimony is limited accordingly. The County's arguments generally go towards the weight of Dr. Drob's testimony, not its admissibility, and the County is free to explore perceived deficiencies of Dr. Drob's expert testimony on cross-examination, within the confines of the Court's evidentiary rulings.[37]

### B. Professor Zeidman

The County argues that Professor Zeidman should be precluded from testifying

---

[37] For example, the County would be precluded from attempting cross-examination on Dr. Drob's perceived lack of incorporation of Boyd's pre-1977 criminal history in his expert report where the Court has ruled that such "other bad acts" are inadmissible. *See* Section XVII.

altogether because his testimony "falls squarely within the prohibition that 'an expert's testimony on issues of law is inadmissible,'" the jury in this case needs no special training or expertise to decide whether . . . prosecutors committed *Brady* or summation misconduct," and Zeidman's testimony is being offered "'solely for the purpose of constructing a factual narrative based upon record evidence.'" ECF No. 327-1 at 19–20 (quoting *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991), then *Highland Cap. Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 469 (S.D.N.Y. 2005)); *see Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 509–10 (2d Cir. 1977) ("It is not for the witness to instruct the jury as to applicable principles of law, but for the judge."). The County does not challenge Zeidman's qualifications as an expert.

In a related motion, Plaintiff seeks to establish the permissible scope of Zeidman's expert testimony, arguing that Zeidman should be permitted to testify about "the principles of the *Brady* doctrine," "whether a given piece of evidence is favorable to the defense," "how a reasonably competent criminal-defense attorney could have made use of the allegedly withheld evidence, which is relevant to materiality," "whether the prosecution's summation at Boyd's and Walker's criminal trial complied with standards of summation advocacy applicable at that time," and "what the record shows about what documents and other materials were disclosed to the defense in the pretrial hearing and trial records." ECF No. 331-1 at 1.

Considering these cross-motions in tandem, the Court finds that Zeidman's anticipated testimony does not warrant wholesale exclusion, and his testimony, properly limited, does not amount to legal conclusions usurping the province of the

jury or to a mere factual recitation of the record. As briefly set forth during the Final Pretrial Conference, FPTC Tr. at 43:13–46:2, Zeidman's testimony is admissible and limited as follows.

First, Zeidman may testify to *his understanding* of the *Brady* doctrine as it informed standards for disclosure of favorable evidence to the defense in and around 1977 and of summation standards in and around 1977. *See Restivo v. Hessemann*, 846 F.3d 547, 580 (2d Cir. 2017) ("When an expert offers an opinion relevant to applying a legal standard such as probable cause or *Brady*, the expert's role is limited to describing sound professional standards and identifying departures from them." (cleaned up)). Such explanation is necessary background to contextualize Zeidman's expert opinion, and the Court will issue a limiting instruction before such testimony is elicited, reminding the jury that the Court is the sole source of the law that the jury must apply during deliberations and that, to the extent Zeidman's legal understanding conflicts with the Court's instructions, the jury must follow the Court's instructions. It is within the province of an expert such as Zeidman to testify to his opinion on "departures" from professional standards during the relevant time period. *See id.*;. Zeidman will be permitted to provide his opinion, based on his review of the record in the Boyd criminal case, whether Zeidman saw evidence that certain evidence was disclosed to Boyd. *See In re Platinum-Beechwood Litig.*, 469 F. Supp. 3d 105, 118 (S.D.N.Y. 2020) ("[A]n expert may lay a factual foundation for his or her opinion"); *Unites States v. Alwan*, 279 F.3d 431, 439–40 (7th Cir. 2002) (affirming, under Federal Rule of Evidence 1006, admission of witness's testimony "concerning

his review of [grand jury] transcripts in relation to whether the defendant ever stated he feared for his safety"); Fed. R. Evid. 1006(a).

Zeidman will also be permitted to testify to whether certain evidence was "favorable"[38] or not based on his understanding of the law and how a reasonably competent defense attorney could have used certain allegedly withheld evidence. *See Jones v. Cannizzaro*, 514 F. Supp. 3d 853, 866–67 (E.D. La. 2021) (admitting testimony of experience criminal defense attorney as an expert to opine of what "[p]laintiff's trial counsel . . . would have done if he had received the allegedly suppressed evidence"); *Kluppelberg v. Burge*, No. 13 C 3963, 2016 WL 6821138 , at *3 (N.D. Ill. Sept. 16, 2016) (admitting expert testimony by experienced former prosecutor and defense attorney to opine of "how a prosecutor would have treated, or how a defense attorney would have used [certain] exculpatory materials"); *see also Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 129 (S.D.N.Y. 2014) ("Where a proposed expert witness bases his testimony on practical experience rather than scientific analysis, courts recognize that experts of all kinds tie observations to conclusions through the use of what Judge Learned Hand called general truths derived from . . . specialized experience." (cleaned up) (quotation omitted)).

However, Zeidman must refrain from using the terms "*Brady* evidence," "*Brady* violation," and the like during his testimony to avoid juror confusion and usurping the jury's responsibility to determine whether a *Brady* violation occurred.

---

[38] This includes whether certain evidence was "exculpatory" or "impeachment" evidence.

*See* Fed. R. Evid. 403; *In re Terrorist Attacks on Sept. 11, 2001*, No. 03-MD-01570 (GBD)(SN), 2025 WL 2383768, at *4 (S.D.N.Y. Aug. 18, 2025) ("So, when an expert offers her opinion, she must take care not to usurp the role of the trier of fact by dictating the result or otherwise straying from the expert-witness lane. In concrete terms, this means that experts must not offer legal conclusions; make credibility determinations; or discuss motivations, intentions, and other states of mind." (quotations and citations omitted)). Zeidman is also precluded from offering a direct opinion about the materiality of any alleged *Brady* evidence and, more broadly, whether Boyd's rights to a fair trial were violated. Resolving those issues is reserved for the jury. *See id.; United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994) ("When an expert undertaken to tell the jury what result to reach, this does not *aid* the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's.").

Expert testimony of the type anticipated by Zeidman is regularly admitted in cases such as Plaintiffs. *See, e.g.*, *Jones*, 514 F. Supp. 3d at 866–67; *Kluppelberg,* 2016 WL 6821138, at *3. The Court disagrees with the County that expert testimony is not needed to explain applicable standards as the expert understands them and whether the expert concluded that someone departed from those standards. *Compare* ECF No. 382 at 2–3, *with Restivo*, 846 F.3d at 580.

Contrary to the County's argument, ECF No. 382 at 7, Plaintiff does not need to prove that prosecutors intentionally suppressed favorable evidence—that requirement applies to § 1983 *Brady* claims against police officers, not prosecutors.

*Compare Valentin v. City of Rochester*, No. 11-CV-6238 CJS, 2018 WL 10579844, at *2 (W.D.N.Y. Nov. 30, 2018) ("Plaintiff's second ground for relief is that the Court mis-applied the law concerning § 1983 actions seeking damages 'against police officers' for *Brady* violations. In that regard, Plaintiff asserts that an 'inadvertent' *Brady* violation can support a claim for damages under Section 1983, contrary to what the [trial] Court held. However, Plaintiff has not shown that the Court's ruling in that regard [holding intentional withholding was required] was erroneous.") *and Fappiano v. City of New York*, 640 F. App'x 115, 119 (2d Cir. 2016) (affirming district court's grant of summary judgment to defendant police officers where, *inter alia*, "Fappiano has not adduced sufficient evidence from which to infer that [Officer] Dunbar intentionally withheld this evidence."), *with Strickler*, 527 U.S. at 288 ("[U]nder *Brady* an inadvertent nondisclosure has the same impact on the fairness of the proceedings as deliberate concealment. 'If the suppression of evidence results in constitutional error, it is because of the character of the evidence, not the character of the prosecutor.'" (quoting *United States v. Agurs*, 427 U.S. 97, 99, 110 (1976)), *and Brady v. Maryland*, 373 U.S. 83, 87 (1963) ("We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."), *and Hunter*, 32 F.4th at 30–31 ("There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or

inadvertently; and prejudice must have ensued. In other words, true *Brady* material must be (1) favorable, (2) suppressed, and (3) prejudicial." (footnote omitted)). Therefore, the Court rejects the County's arguments that Zeidman's testimony need be precluded or limited because his report improperly "assume[s] that the intentionally element has been met." *See* ECF No. 382 at 7.

The Court also rejects the County's argument that Zeidman's testimony is "'simply not sufficiently tied to the facts of the case,'" and that he will improperly "assume that material evidence was withheld." *Id.* (quoting *Pharmanetics, Inc. v. Aventis Pharms., Inc.*, 182 Fed. App'x 267, 271 (4th Cir. 2016)). As the Court ruled above, Zeidman is permitted to offer testimony on whether he saw proof in the record of Boyd's criminal prosecution that certain evidence was disclosed,[39] and he is permitted to apply his knowledge, experience, and expertise to opine of whether prosecutors actions in Boyd's criminal case departed from acceptable standards of the time, as Zeidman understands them.

The Court, however, agrees with the County that Zeidman cannot offer his opinion on the "intent" of any person. *See* ECF No. 382 at 9; *Taylor v Evans*, No. 94 Civ. 8425 (CSH), 1997 WL 154010, at *2 (S.D.N.Y. Apr. 1, 1997) (holding that statements in expert's report, including, "Quite frankly, the ECS caseworker removed the Plaintiff's two children because she did not like her attitude and was unwilling to admit any wrongdoing," "Mr. Evans was annoyed that Plaintiff did not admit to

---

[39] The Court will issue a limiting instruction clarifying that Zeidman's testimony regarding whether he saw a record that certain evidence was disclosed is necessarily based upon the universe of files he was provided to review in compiling his expert report.

causing the injuries," and "Mr. Evans did not want to hear Plaintiffs' story," were inadmissible because such "musings as to defendants' motivations would not be admissible if given by any witness—lay or expert"); *In re Terrorist Attacks on Sept. 11, 2001*, 2025 WL 2383768, at *4. *Cf. In re Rezulin Prods, Liab. Litig.*, 309 F. Supp. 2d 531, 547 (S.D.N.Y. 2004) ("The question of intent is a classic jury question and not one for the experts."). Accordingly, while it is permissible for Zeidman to opine on whether Drury departed from acceptable standards at the time—as Zeidman understands them—it is impermissible for Zeidman to opine on what Drury "sought to" or 'intended" to do.

The County's motion to preclude Zeidman's expert testimony is its entirety is **DENIED**. Plaintiff's corresponding motion to establish the permissible scope of Zeidman's testimony is **GRANTED** to the extent authorized in this Decision and Order. To the extent Plaintiff's motion seeks admission of Zeidman's testimony beyond what the Court has approved, Plaintiff's motion is **DENIED**. *See, e.g.*, ECF No. 331-1 at 1 (seeking the "same" rulings the Court issued in the *Walker* civil trial), 4–7 (discussing "materiality"). The Court discusses the County's supplemental *in limine* filing in detail below, *see infra* Section XXI.B, but the Court does not find that County's supplemental brief warrants altering its rulings here.

### C. Professor Hirsch

The Court **RESERVES** ruling on the County's motion with respect to Professor Hirsh.

\* \* \*

In sum and having reserved on Professor Hirsch, the Court finds that Zeidman's and Dr. Drob's testimony, as limited by the Court's rulings, will help the jury in this case "understand the evidence or determine a fact in issue" and that Zeidman and Dr. Drob meet the requirements of Rule 702. Fed. R. Evid 702. The lines drawn by these rulings for expert witnesses are at times, especially fine. The parties shall take care to ensure that their witnesses, and their examinations, comport with the Court's decisions.

## XX.    Unopposed Motions *in Limine*

The following motions *in limine* were unopposed and are therefore **GRANTED**:[40]

- the County's motion to preclude references to the Central Park Five (**ECF No. 320**).

- the County's motion to preclude testimony of Elliot Shields and Samuel Davis (**ECF No. 323**);

- Plaintiff's motion to preclude introduction of deposition testimony of "City witnesses whose unavailability has not been established"[41] (**ECF No. 334**);

- Plaintiff's motion to preclude testimony of cold case detectives' reinvestigation of the Crawford murder (**ECF No. 340**); and

- Plaintiff's motion to preclude references to the impact of any judgment on taxpayers (**ECF No. 343**).

## XXI.    Supplemental *in Limine* Submissions

As noted, given the colloquy during the Final Pretrial Conference, the Court

---

[40] All reservation of rights made by the parties in their responses are noted, and, further, the Court's evidentiary rulings are without prejudice to how the trial unfolds. *See Luce*, 469 U.S. at 41–42.

[41] Capitalization omitted.

directed the parties to file supplemental *in limine* briefs to try to narrow and clarify issues for trial. The Court addresses a few of those submissions below and will issue a follow-on decision ruling on the remaining as set forth above.

### A. Plaintiff's Submission Seeking Ruling that Henry's Trial Testimony in Walker v. County of Erie is Not Hearsay (ECF No. 401)

Plaintiff designated portions of ADA David Henry's testimony as a County witness from the related *Walker v. County of Erie* trial in March 2025 for admission in this trial. ECF No. 346 at 4–5. One of the County's objections to these designations is that Henry's prior trial testimony is hearsay and cannot be "a party admission when such [testimony] was delivered in a separate case." ECF No 384 at 9. On October 29, Plaintiff sought a discrete ruling that Henry's trial testimony in the *Walker* civil trial is not hearsay in the Boyd trial because Henry's prior trial testimony constitutes statements of a party opponent. ECF No. 401. The Court only addresses that specific evidentiary question here and will issue later rulings as to the admissibility of Plaintiff's designations for Henry's prior testimony.

It is undisputed that Henry is the County's designated Rule 30(b)(6) witness in the *Boyd* and *Walker* cases, which proceeded through discovery and summary judgment in tandem. Fed. R. Civ. P. 30(b)(6). There appears to be no dispute that Henry is a representative of the County itself, and thus that statements of Henry's, at least *in the course of the Boyd litigation*, are statements of a party opponent when offered against the County. *See* Fed. R. Evid. 801(d)(2)(A) (a statement "made by the party in an individual or representative capacity" is not hearsay when offered against

that party)[42]; *Goguen v. Textron Inc.*, 476 F. Supp. 2d 5, 15 (D. Mass. 2007) (finding that defendant's "30(b)(6) designee['s statement] that the machine "was designed in 1968," among other statements, was a party admission).

The County, however, argues that Rule 801(d)(2) generally does not extend to statements made by a party's representative in other cases. The County is incorrect. *See, e.g.*, *United States v. King*, 134 F.3d 1173, 1176 (2d Cir. 1998) (corporation's sole shareholder's trial testimony in prior, separate proceeding was admissible against the corporation in the pending case under Rule 801(d)(2)(D)); *Meriwether v. Coughlin*, 879 F.2d 1037, 1049 (2d. Cir. 1989) (affirming admission of defendant's testimony from prior, separate proceeding under Rule 801(d)(2)(A)); *see also supra* Section XIV (discussing Former DA Flynn's "Weak Case Statement" in a press conference predating the Boyd litigation as a statement of a party opponent). Rule 801(d)(2)(A) does not limit when or under what circumstances the party or the party's representative made the statements at issue to constitute non-hearsay. *Compare* Fed. R. Evid. 801(d)(2)(A) ("was made by a party in an individual or representative capacity"), *with* 801(d)(2)(D) ("was made by the party's agent or employee *on a matter within the scope of that relationship and while it existed*" (emphasis added)). Henry's testimony given in Walker's civil trial in 2025 as a County representative is not hearsay pursuant to Rule 801(d)(2)(A) and (C) if offered against the County in the instant trial. Plaintiff's supplemental *in limine* request is **GRANTED**.

### B. The County's Submission Regarding Professor Zeidman's Testimony (ECF No. 402)

---

[42] The Court also finds that Henry's testimony falls under Rule 801(d)(2)(C).

The County filed a supplemental brief to reiterate its position that Zeidman be precluded from testifying at all and to highlight certain portions of his testimony during the Walker civil trial that the County maintains ran afoul of the Court's rulings in that case and should be prevented in this trial. ECF No. 402. Plaintiff filed a response. ECF No. 411. The County identifies 12 excerpts from the Walker civil trial transcript that it maintains were inadmissible. ECF No. 402 at 2–4. This is of course not the forum to challenge evidence admitted in Walker's civil trial, but the Court understands the County to be seeking prospective rulings to foreclose similar testimony in this case. The Court's prior rulings sufficiently serve that purpose.

For example, Zeidman is not permitted to: offer an opinion about "materiality" (or other potential phrasings, such as whether certain evidence "would have affected the outcome of the [criminal] trial"); offer his assessment of the credibility of any evidence or witness; opine on whether a constitutional violation occurred; or testify about what did or did not actually happen on the day of Crawford's murder. *See supra* Section III.

However, Zeidman may testify to: whether he believes prosecutors departed from the standards of relevant period, as Zeidman understands those standards, by not turning over certain documents and/or by making certain remarks during summation; his qualitative assessment of the severity of any aforementioned departure; the "favorability" of certain evidence, including whether it was "exculpatory" or "impeachment" evidence; whether the record he reviewed reflects that certain documents were or were not disclosed; and that and how a reasonably

competent defense lawyer would use certain evidence. *Id.*

To the extent the County's complained-of testimony from the *Walker* trial runs afoul of the Court's present rulings, the County's supplemental *in limine* request is **GRANTED**. However, to the extent the County seeks further rulings to explicitly preclude some or all of the specific, complained-of statements made in the *Walker* trial from being offered in this trial, the County's supplemental *in limine* request is **DENIED**. Both parties shall be mindful of the Court's rulings when examining Zeidman (and otherwise). Should the County believe that Zeidman's testimony during trial contravenes the Court's rulings in this case, the Court will hear and rule on the County's specific objections as they are raised.[43]

## C. The County's Submission Regarding the Gibson Transcript (ECF No. 413)

As discussed briefly in Section II.A, the Court will issue a subsequent ruling regarding the County's proposed lifting of certain redactions in Plaintiff's PX 70 after further review of the County's supplemental submission and a conference with the parties.

*  *  *

The Court will address remaining supplemental *in limine* filings separately. *See* ECF Nos. 410, 412, 415, 416.

---

[43] The Court notes that the County objected to only 4 of the 12 allegedly offending excerpts of Zeidman's testimony during the *Walker* civil trial. *See* ECF No. 402-3.

## ORDER[44]

For the foregoing reasons,

IT IS HEREBY ORDERED that the County's motion to stay trial, ECF No. 311, is DENIED; and it is further

ORDERED that the County's motion for reconsideration of summary judgment order and alternatively for *in limine* relief, ECF No. 317, is GRANTED IN PART AND DENIED IN PART; and it is further

ORDERED that the County's motion to preclude re-litigation and to admit post-conviction applications, ECF No. 318, is GRANTED IN PART AND DENIED IN PART; and it is further

ORDERED that the County's motion to preclude certain deposition testimony of Edward Cosgrove, ECF No. 319, is DENIED; and it is further

ORDERED that the County's motion to preclude references to the "Central Park Five," ECF No. 320, is GRANTED; and it is further

ORDERED that the County's motion to limit reference to cancer and physical injuries, ECF No. 321, is GRANTED IN PART AND DENIED IN PART; and it is further

ORDERED that the County's motion to preclude references to *People v. Ashley*, ECF No. 322, is GRANTED IN PART AND DENIED IN PART; and it is further

ORDERED that the County's motion to preclude testimony of Davis and

---

[44] The Court's shorthand descriptions of the parties' motions in this section are simply for readability and concision, and are not meant to limit, expand, or otherwise alter the scope of the Court's rulings and reasoning provided in this Decision and Order.

Shields, ECF No. 323, is GRANTED; and it is further

ORDERED that the County's motion to preclude the testimony of John Walker, Jr., ECF No. 324, is GRANTED IN PART, DENIED IN PART, AND RESERVED IN PART; and it is further

ORDERED that the County's motion to preclude "Flynn and Burns Issues," ECF No. 325, is GRANTED IN PART AND DENIED IN PART; and it is further

ORDERED that the County's motion to preclude Plaintiff's experts, ECF No. 327, is DENIED IN PART AND RESERVED IN PART; and it is further

ORDERED that Plaintiff's motion to preclude personal opinions of Darryl Boyd's guilt, ECF No. 328, is GRANTED; and it is further

ORDERED that Plaintiff's motion to preclude reference to Plaintiff's settlement with the City Defendants and the City Defendants' former status as parties to this litigation, ECF No. 329, is GRANTED; and it is further

ORDERED that Plaintiff's motion to preclude police file documents other than alleged *Brady* evidence and the documents disclosed on the record in Boyd's criminal trial and certain related pretrial proceedings, ECF No. 330, is GRANTED IN PART AND RESERVED IN PART; and it is further

ORDERED that Plaintiff's motion to establish the scope of Zeidman and Gagan's testimony, ECF No. 331, is GRANTED IN PART, DENIED IN PART, AND RESERVED IN PART; and it is further

ORDERED that Plaintiff's motion to admit statement of party opponent by District Attorney Flynn, ECF No. 332, is GRANTED IN PART AND DENIED IN

PART; and it is further

ORDERED that Plaintiff's motion to preclude deposition testimony of City witnesses whose unavailability has not been established, ECF No. 334, is GRANTED; and it is further

ORDERED that Plaintiff's motion to preclude certain portions of the *Gibson* and *Walker* trial transcripts, ECF No. 335, is GRANTED IN PART AND DENIED IN PART; and it is further

ORDERED that Plaintiff's motion to preclude claimed prior "bad acts" of James McLeod, ECF No. 336, is GRANTED; and it is further

ORDERED that Plaintiff's motion to preclude decisions on post-conviction motions and appeals and documents in support thereof, ECF No. 337, is GRANTED IN PART AND DENIED AS MOOT IN PART; and it is further

ORDERED that Plaintiff's motion to preclude the County's apportionment defense and introduction of City-policy evidence, ECF No. 338, is GRANTED IN PART, DENIED IN PART, AND RESERVED IN PART; and it is further

ORDERED that Plaintiff's motion to preclude claimed prior "bad acts" of Boyd, Walker, Gibson, Martin, and Woodruff, ECF No. 339, is GRANTED IN PART AND DENIED IN PART; and it is further

ORDERED that Plaintiff's motion to preclude testimony from cold-case detectives regarding their reinvestigation of the Crawford murder, ECF No. 340, is GRANTED; and it is further

ORDERED that Plaintiff's motion to preclude the County from asserting an

improper defense to nondisclosure of *Brady* material, ECF No. 341, is GRANTED IN PART AND RESERVED IN PART; and it is further

ORDERED that Plaintiff's motion to preclude Franco Kroese's testimony, ECF No. 342, is GRANTED IN PART AND DENIED IN PART; and it is further

ORDERED that Plaintiff's motion to preclude references to the impact of any judgment on taxpayers, ECF No. 343, is GRANTED; and it is further

ORDERED that Plaintiff's motion to preclude reference to Drury's judicial career, ECF No. 344, is GRANTED; and it is further

ORDERED that Plaintiff's motion to preclude testimony regarding false-alibi instructions in criminal trials, ECF No. 345, is GRANTED; and it is further

ORDERED that Plaintiff's supplemental request for ruling that Henry's testimony during the 2025 Walker trial is not hearsay as statements of a party opponent, ECF No. 401, is GRANTED; and it is further

ORDERED that the County's supplemental submission in support of its request to preclude Zeidman's expert testimony, ECF No. 402, is DENIED.

SO ORDERED.

Dated:      November 2, 2025
            Rochester, New York


            ___/s/ *Meredith A. Vacca*___
            HON. MEREDITH A. VACCA
            United States District Judge