UNITED STATES       DISTRICT COURT

 WESTERN DISTRICT OF NEW YORK

_____

KATHLEEN WEPPNER, AS EXECUTOR OF THE

ESTATE OF DARRYL BOYD,

                        Plaintiff,

            -vs-

THE COUNTY OF ERIE,

                        Defendant.
_____

Index No.
22-CV-0519-MAV

Rochester, New York
October 24, 2025
10:19 a.m.

**PRETRIAL CONFERENCE**

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE MEREDITH A. VACCA
UNITED STATES DISTRICT JUDGE

2

<u>A p p e a r a n c e s</u>

For Plaintiffs        WILMER CUTLER PICKERING HALE AND DORR, LLP
                      By:  ROSS FIRSENBAUM, ESQ.
                           GIDEON HANFT, ESQ.
                           ERIN HUGHES, ESQ.
                           MELISSA ZUBIZARRETA, ESQ.
                           PHOEBE SILOS, ESQ.
                           TRENA RILEY, ESQ.
                      7 World Trade Center
                      250 Greenwich Street
                      New York, NY 10007

                      LAW OFFICES OF JOEL B. RUDIN, PC
                      By:  JOEL B. RUDIN, ESQ.
                           DAVID E. RUDIN, ESQ.
                           PARTHA SHARMA, ESQ.
                      152 West 57th Street
                      New York, New York 10019

                      HOOVER & DURLAND, LLP
                      By:  SPENCER DURLAND, ESQ.
                      561 Franklin Street
                      Buffalo, NY 14202

For Defendant:        LIPPES MATHIAS
                      By:  JENNIFER PERSICO, ESQ.
                           JAMES BLENK, ESQ.
                           KIRSTIE MEANS, ESQ.
                           THOMAS SOUTHARD, ESQ.
                           HARRISON HARTSOUGH, ESQ.
                           ANTHONY MASSE, ESQ.
                      50 Fountain Plaza - Suite 1700
                      Buffalo, New York 14202

COURT REPORTER:       JOONY L. ODENBACH, RPR, CRR
                      joonyodenbach@gmail.com

Boyd v. County of Erie   22-CV-519                    3

P R O C E E D I N G S

*    *    *

(Open court.)

THE COURT:  Good morning, everyone.  Thanks for your patience.  We can get started.

This is the matter of the Estate of Darryl Boyd versus the County of Erie, 22-CV-00519.  We are scheduled today for a pretrial conference.

We're going to address the motions in limine that were filed by the parties.

It's nice to see everyone.  I see a lot of familiar faces, but there's also some new faces.  So just this once today if everyone can just state their appearance on the record, and we won't have to do that again.  But we'll start with plaintiff.

MR. JOEL RUDIN:  For plaintiff Joel Rudin.  Good morning, Your Honor.

THE COURT:  Good morning.

MR. DURLAND:  Spencer Durland for the plaintiff, Your Honor.

MR. FIRSENBAUM:  Good morning, Your Honor.  Ross Firsenbaum for the plaintiff.  And with me, one of the new faces, is Tony Boyd, Darryl Boyd's son and a representative of the estate.

Boyd v. County of Erie   22-CV-519                    4

THE COURT:  Good morning.

MR. BOYD:  Good morning.

MS. HUGHES:  Erin Hughes for the plaintiff, Your Honor.

MR. HANFT:  Good morning, Your Honor.  Gideon Hanft for the plaintiff.

THE COURT:  Good morning.

MR. DAVID RUDIN:  Good morning, Your Honor.  David Rudin for plaintiff.

MS. SILOS:  Good morning, Your Honor.  Phoebe Silos for the plaintiff.

MS. RILEY:  Trena Riley for the plaintiff.

MS. ZUBIZARRETA:  Melissa Zubizarreta for the plaintiff.  Good morning.

MR. SHARMA:  Partha Sharma with the plaintiff.

MS. THURSTON:  Good morning.  Amariah Thurston.  I'm a paralegal for the plaintiff.

THE COURT:  Thank you.

MR. BLENK:  Good morning, Your Honor.  James P. Blenk of Lippes Mathias for the defendant County.

MS. MEANS:  Good morning, Your Honor.  Kirstie Means of Lippes Mathias, also on behalf of the County.

MS. PERSICO:  Good morning, Your Honor.  Jen Persico of Lippes Mathias for the County.

MR. SOUTHARD:  Good morning, Your Honor.  Tom Southard from Lippes Mathias on behalf of the County.

Boyd v. County of Erie   22-CV-519   5

MR. HARTSOUGH:  Good morning, Your Honor.  Harrison Hartsough on behalf of the County of Lippes Mathias.  Thank you.

MR. MASSE:  Good morning, Your Honor.  Anthony Masse on behalf of defendant County.

THE COURT:  Okay.  Good morning, everyone.

So we're going to go through the motions in limine.  I just want you to know I am going to issue a written decision memorializing all of my rulings.  I am going to give you some of those today, and some of them I am going to reserve on.

I have reviewed everyone's papers.  And so I say that because I don't want you to think that if I ask you to, you know, summarize your argument or whatever, you don't have to go into every argument.  If you feel like you can rest on the record, that's fine, too.  And so there might be certain issues that I want you to expound upon, and others that I don't think there's any need for that.  And I'll try to let you know, and I may have some specific questions.  But, just so you know, I will be issuing a written decision.  My expectation is sometime next week.

Another thing, I need to be done today by four o'clock.  I don't think that should be a problem at all, but I just wanted to let everyone know that I have to be out of here by four o'clock.

Before we get to the motions in limine, I did want to

Boyd v. County of Erie   22-CV-519                 6

just make one request to everyone.  I see that all of you have worked very hard to get these motions in and respond to them and you've filed other things.  I want to try to avoid what happened with Mr. Walker's trial in that every day, every night we were working on motions.  For me and for my staff and for all of you I think it would benefit us to have these rulings ahead of time.

I'm very reasonable, and I understand that the nature of trials, there's going to be issues that come up, but my request is if you can get those motions in maybe two days in advance or even a day in advance so that we have time to work on it during the day instead of filing it like at ten o'clock at night and then I need to make the decision for the next morning.

So that is my request.  I may repeat that, but I'm asking everyone to do their best to adhere to that.

Okay.  So let's start with -- we're going to just go through in order plaintiff's motions and then defendant's motions in limine.  Some of them overlap.  But I want to do this kind of in an orderly fashion.

So we're going to start with plaintiff's motions in limine, the plaintiff's motion to preclude defense witnesses from expressing personal opinions about Mr. Boyd's purported guilt.

Who would like to handle that?

Boyd v. County of Erie   22-CV-519                    7

MR. DURLAND:  I will argue that one, Judge.

THE COURT:  Okay.

MR. DURLAND:  I think that this is maybe one of those issues that doesn't need a huge amount of elaboration.  This is something that, you know, I know the Court thought hard about before the Walker trial.  And I think that Your Honor drew the only sensible line, which is that factual guilt is not relevant and, you know, threatens to derail the entire trial and make it this satellite proceeding.  On the other hand, belief in guilt or innocence is relevant to damages.

So, you know, I think that Your Honor ought to simply do the same thing that we did the first time, which is there's no, you know, litigating what really happened on January 2nd.  Mr. Boyd can give limited testimony about his own belief in his innocence, and Dr. Drob can give limited testimony with a limiting instruction about the experience of an inmate who believes in his innocence suffering more and differently from an inmate who believes in his own guilt.

The one thing I would add to the papers is, you know, I think the County's argument is very much that, you know, the atmospherics of the trial become tilted in one direction, that it's all towards innocence and that's the impression the jury has and that's not fair to us, we ought to be able to introduce extrinsic evidence of guilt, and I think it's worth pointing out that, I mean, I see it the exact opposite.

They get to spend huge amounts of time on the underlying criminal trial and the fact that he was convicted of a serious crime.  So this argument that this is so unfair and, you know, the underlying kind of essence of the trial becomes tilted against us, I think that's a meritless argument, and the Court ought to reject it and make the same ruling Your Honor made in Walker.

THE COURT:  Thank you.

Mr. Blenk?

MR. BLENK:  Thank you, Your Honor.

I don't think that it is at all the case that the plaintiff has taken factual guilt off the table.  The witnesses, including Mr. Woodruff, Mr. Hirsch and then deposition designations of Mr. Boyd and potentially evidence that will be put on that the plaintiff intends to put on through Mr. Walker, does include evidence that could only be relevant to supporting an inference of innocence.

Throughout the designations of Mr. Boyd there are aspects of his testimony that impeach the underlying trial evidence.  These include Mr. Boyd's claim that he didn't make the statement that he's purported to have made to the police.  There's other discussion of what Mr. Boyd was actually doing on January 2nd as opposed to how that came in through the trial.

So the plaintiff is clearly trying to have it both

Boyd v. County of Erie   22-CV-519                    9

ways.  They are trying to put on evidence that supports an inference from Mr. Boyd's side of the story about what happened on January 2nd and how he was treated by the police when these were things that were not addressed at the underlying trial and don't go to any issue in this case other than supporting an inference of guilt.

In the event that the plaintiff is allowed to put on this evidence of factual guilt, evidence that only supports an inference of factual innocence, we think that the County should be allowed to submit additional inculpatory evidence.  But our preference, Your Honor, would be just not to deal with guilt or innocence at all, that the experts wouldn't be opining on guilt or innocence, and that factual -- and that we would be tied to the underlying trial record for the purposes of establishing a Brady violation and for assessing summation.  The problem is this is not how the plaintiff has set up their case.

THE COURT:  Well, it seems like, at least generally, we're all on the same page then because factual guilt is not an issue here for this trial.  So the question of what really happened on January 2nd, 1976, that is not a question for the jury to decide.  And so evidence, testimony of factual -- what really happened that day, that's not permitted.  Okay?

And so it seems like, Mr. Blenk, that's what you're asking for.  I don't necessarily think that plaintiff is

Boyd v. County of Erie   22-CV-519           10

asking for -- to be able to prove factual guilt.

MR. DURLAND:  No, Judge.

THE COURT:  And so I think we're all very clear on that.  And that is definitely one of the overarching principles that will kind of guide many other rulings.  So I think that was a good place to start.

As far as opinion of guilt or innocence, no witness -- with one exception, no witness can give their opinion of guilt or innocence, and that is guilt or innocence of Mr. Boyd or any of his codefendants.  So no one can give that opinion.  It's not relevant, and prejudicial.

The one exception, of course, is I do accept plaintiff's argument that Mr. Boyd in his deposition testimony can give his subjective belief that he believes he's innocent, and that is, of course, independent of the factual truth.  I do find that's relevant with respect to damages, Mr. Boyd's mental anguish or pain and suffering.  I will give an instruction to the jury when that testimony is presented.

And, of course, Dr. Drob may testify not about his own subjective opinion, but about how Mr. Boyd's subjective opinion that he is innocent -- how that might have affected him as it relates to damages.

Any questions before we move on to the next motion?

MR. BLENK:  We would just note our exception to the

Boyd v. County of Erie  22-CV-519                    11

entry of any discussion of innocence whether through opinion or factual evidence and would rest on our papers.

THE COURT:  Okay.  So noted.

I just want to say one more thing before we move on. So the issues -- the issue of materiality has to be measured against the evidence that was presented at Mr. Boyd's criminal trial.  So the evidence that was actually admitted, the arguments that were made, the alleged evidence that wasn't admitted or that wasn't disclosed.  But it's not measured -- so it's measured against his trial and not against what people think happened or people's recollection of what actually happened that day.  I just want to reiterate that, that very important principle.

Okay.  So let's move on to plaintiff's motion to preclude defendant from referencing the settlement with the City or the City's former status as a party to this litigation.

Did you have any -- did you have an objection to that?

MS. PERSICO:  Well, Your Honor, we have an objection to that in the context of sort of the broader scope of additional motions.  So maybe we could revisit that afterward just to give you a little perspective.  I think -- I didn't mean to cut you off.

MS. ZUBIZARRETA:  That's okay.

MS. PERSICO:  So I guess we'll respond.

Boyd v. County of Erie   22-CV-519                    12

THE COURT:  Okay.  Well, that's fine.  I'd like to address it now, and if we need to address it again later that's fine.

You can go ahead.

MS. ZUBIZARRETA:  Okay.  Thank you, Your Honor.

Plaintiff has moved to preclude the County from referencing plaintiff's settlement with the City defendants or the City defendants' status as a former party to this action.

MS. PERSICO:  I'm sorry.  I can't hear you.

THE COURT:  Is the microphone on?

MS. ZUBIZARRETA:  I don't think it is.

THE COURT:  Okay.

THE CLERK:  Maybe the button in the front.

MS. ZUBIZARRETA:  Okay.  Is this --

THE COURT:  Yes.

MS. ZUBIZARRETA:  Sorry about that.

THE COURT:  No problem.

MS. ZUBIZARRETA:  The Court precluded reference to the City settlement and the City's status as a former defendant in Walker, and the County offers no explanation for why the Court should depart from its ruling.  The Boyd estate risks the same harm as Walker did with respect to this issue, and there's no reason to depart from the Court's decision.

As a reminder, during the pretrial conference in Walker

Boyd v. County of Erie   22-CV-519                    13

the Court told the parties that it did not want the jury to speculate as to the reasons behind the City's absence.

The Court also specifically instructed the parties that the settlement is presumptively inadmissible and the County would need to provide notice outside the presence of the jury.

Additionally, the Court raised this issue of the City's role in the context of its preliminary instructions, and all parties and the Court agreed that no instruction to the jury should be provided.

Preclusion is particularly pertinent because despite all these instructions and admonishments the County still invoked the City's former status in its opening.  Any implication of the City's former status as a defendant or the City's settlement with Mr. Boyd is unduly prejudicial to the Boyd estate.  It will cause the jury to speculate the case was dismissed because it was a weak case or that the Boyd estate does not need to be compensated because it was already compensated by the City.

The County doesn't respond to this argument.  They just state that it's misplaced and generally improper, and that is not a legal argument.

The County also doesn't explain how the City settlement or prior status as a defendant is relevant.  It just states -- makes a conclusory assertion that it's relevant to

Boyd v. County of Erie   22-CV-519                14

apportionment and, quote, in overall defense of plaintiff's claims, without any explanation.  Again, that is not a legal argument.

Finally, under Federal Rule of Evidence 408, settlement agreements are plainly inadmissible to show or dispute liability or damages.  Therefore, plaintiff asks that this Court preclude the County from referencing the City's status as a former defendant and the Boyd estate's settlement with the City.

THE COURT:  Thank you.

Ms. Persico?

MS. PERSICO:  I think Ms. Means will handle this one actually.

THE COURT:  Ms. Means.

MS. MEANS:  Thank you, Your Honor.

Our opposition is somewhat of a partial opposition.  We do not object to making an offer of proof in the event we want to introduce reference to the settlement or the settlement agreement itself.

We do strongly object to precluding outright reference to the fact that the City of Buffalo was once a defendant.  The pleadings in this case remain party admissions, and we need to preserve the right to rely on those as may be deemed necessary during the trial.

Plaintiff doesn't cite any authority to preclude the

Boyd v. County of Erie   22-CV-519          15

fact that a party was once a defendant.  The only cases that they cite are similar to what we're proposing relative to the settlement, that it require an offer of proof before referencing the issue that a party settled.

But as for barring outright the fact that the City of Buffalo was once a defendant, there's no authority supporting that.  And I think plaintiff has repeatedly now conflated the ruling that precluded reference -- precluded the parties from referencing the fact that the City of Buffalo settled with the fact that they were once a party.

And if there is risk of confusion of just referencing the fact that the City was once a defendant, I think we could confer and come up with a way to resolve any confusion that plaintiff claims might stem from that, but they were -- it's an objective fact and a reality that they were once a party. As a party they produced witnesses who gave testimony in this case that is going to come in at the trial, and I think ignoring and undoing the fact that they have pleaded claims somewhat inconsistently against the Buffalo Police Department at the outset of this case, we need to be able to rely on those facts and realities during the trial.

THE COURT:  Okay.  And are you -- are you saying that because you think it's relevant to your apportionment defense?

MS. MEANS:  I think it's relevant to plaintiff's case

Boyd v. County of Erie   22-CV-519                16

in chief, and I think that they are bound by the allegations that they made in the case at the outset, and it's potentially relevant to our apportionment defense.

THE COURT:  Okay.  Thank you.

I don't see how the fact that the City was previously a party to this litigation is relevant.  So I'm going to grant the plaintiff's motion to preclude the defendant from referencing the settlement with the City or the City's former status as a litigant in this matter.

Of course, if at any point in time defendant believes that plaintiff has opened the door to allowing something, then just let me know outside the presence of the jury and we'll address it, but at this point whether defendant is going to pursue an apportionment defense or not, I don't see how the fact that the City was previously a party is relevant.  Obviously the City will be referenced many times during the trial, but the fact that they were a party to the litigation is not relevant.

MR. BLENK:  Your Honor, if I --

MS. PERSICO:  I'm sorry.

THE COURT:  Go ahead, Mr. Blenk.

MR. BLENK:  In the -- if the plaintiff has taken the position that the City of Buffalo fabricated evidence and our apportionment defense is based on a fabrication of evidence, I don't understand how that can't come in as a party

Boyd v. County of Erie   22-CV-519                17

admission.

MS. PERSICO:  And, Your Honor, if I might just add in there, I don't -- you know, the Second Circuit has held that the jury is entitled to know what the plaintiff's claims were at the outset, amendment or not amendment of the complaint. If there's -- if there's a defendant who is an empty chair that is -- that's what suing two municipalities and ends up with one -- it happens all the time in civil litigation.  And I think the Second Circuit has made clear, whether amended or not -- you know, amendment does not wipe the slate clean on contradictory statements in earlier pleadings.

Further, in Andrews v. Metro-North Commuter the district court's refusal to permit the jurors to be informed of the amendment and to examine the original complaint so that they can contrast it with the amended complaint was a substantial abuse of discretion.

And so, you know, plaintiffs have not amended the complaint.  They are party admissions.  The allegations, to the extent that they are contradictory, plaintiff can explain that in their summations or whenever they deem appropriate.

But the fact of the matter -- the reality of the world is that the defendant -- the defendants were the City, the County and a number of Buffalo police officers, and I don't -- the plaintiff didn't cite authority that would allow the -- that would require that that not be admissible

Boyd v. County of Erie   22-CV-519                18

as a party admission.

THE COURT:  I don't see how my ruling is limiting the defense.  And we'll get to the apportionment later.  But if you do pursue an apportionment, it's not limiting you.

As far as specific statements that were made by plaintiff, I can rule on those individually, but I'm not allowing either party to make any reference to the City as prior -- being a prior party to this litigation.

Okay.  Let's move on to the next motion.

MS. PERSICO:  Your Honor, may I just ask for a point of clarification?

THE COURT:  Yes.

MS. PERSICO:  Even setting aside the apportionment defense, are you saying that to the extent that there are party admissions contained in the plaintiff's complaint that allege certain wrongdoing by the City, if we were to want to reference those or admit those as party admissions, would we be unable to do so?

THE COURT:  No, I'm not saying that.  I'm saying that you could make that request.  Okay?

MS. PERSICO:  Yes.

THE COURT:  My ruling now doesn't preclude -- I'm not saying that statements that plaintiff has made cannot -- regarding the City cannot be -- are not admissible.  I'm not saying that.  I'm just saying that the City as a former party

Boyd v. County of Erie  22-CV-519                 19

to this litigation is precluded.  But statements made by plaintiff regarding the City, that's something separate, and you can still make those arguments that those are admissible. Does that answer your question?

MS. PERSICO:  Kind of.  I guess we understand the Court's ruling, and we would take exception to the inability to discuss the fact that there was a prior defendant.

I think the jury will be confused if we -- if we are permitted to make an application to admit the party admissions contained in the complaint in a vacuum, I think that that will be very confusing to the jury and will only prejudice us because it will -- I think the jury will then conflate the County with the City if we are not allowed to distinguish the fact that the County -- that the City used to -- that they were a defendant in this case.  And I think --

THE COURT:  Well, I don't want to argue about that at this point because you haven't made any specific requests for any specific statements.  And so if you do later make those arguments, then we can address that issue.  Okay?

Okay.  So let's move on to the next motion, plaintiff's motion precluding admission of police file documents other than the alleged Brady evidence and the documents disclosed on the record during Mr. Boyd's criminal trial and certain related pretrial proceedings.

Boyd v. County of Erie   22-CV-519                20

Go ahead.

MR. HANFT:  Thank you, Your Honor.

We seek the same rulings as the Court made in Walker, and the County has not offered a reason to depart from them. I think this fits in exactly with Your Honor's ruling on guilt or innocence, the overarching ruling there.

We seek to admit the Brady evidence and what was disclosed on the record in plaintiff's criminal trial for the limited purpose of showing nondisclosure, favorability and materiality.  The other police documents are irrelevant to those issues.

The County's opposition does not dispute that the Brady evidence should be admitted as it was in Walker for the limited purpose of showing nondisclosure and materiality. The County's only response is that other unidentified police files should come in as ancient documents.  The County made the same argument in Walker, and the Court correctly rejected it.

As explained in our motion, many of these documents have multiple layers of hearsay.  Even if the ancient documents record exception applied to the file itself, it would not cure the double and triple hearsay across many of these documents.  And it's not clear what the relevance of these documents are.  If they were not disclosed and are not alleged Brady evidence, they are only relevant to issues of

Boyd v. County of Erie   22-CV-519               21

factual guilt and innocence, and there's no reason to admit them.

We understand that the Court's in limine rulings are generally without prejudice. So perhaps preclusion was the wrong word, but we seek a ruling barring the County from referring to any of the BPD investigative files that were not admitted in Walker during voir dire and openings or any time in front of the jury unless and until there is a ruling from the Court admitting such a document.

THE COURT: Mr. Blenk?

MR. BLENK: Thank you, Your Honor.

In this case, Your Honor, we have not -- we have not stipulated to the admission of Brady evidence on the basis that we think that the matter is premature until the Monell issues are resolved in the sense that it's prejudicial that theories of nondisclosure of potentially exculpatory information is being put in front of the jury in the event that it doesn't fit into a plausible -- a plausible Monell theory, the same arguments that we were making, and I think that we were ultimately vindicated on on the Russo claim, that items shouldn't be put in front of the jury that aren't lining up with a Monell theory. So that's -- that's our position on the Brady evidence. And their position -- I'm not sure that their motion was actually to admit the Brady evidence, but that's our position on the Brady evidence.

Boyd v. County of Erie  22-CV-519          22

As to the balance of the police file, I think that we certainly don't have any intention of blurting out the contents of any police record before it's admitted into evidence in this case.  We think that there's a possibility that evidence in those police files could, for example, be admitted for the truth of the matter asserted to possibly support an apportionment defense.  We don't think that there's any grounds for preclusion, and we will be prepared to make a full showing of admissibility at the time.

THE COURT:  Mr. Blenk, are there certain police reports that you are seeking for admission at this point in time that plaintiff does not agree to or are you just simply asking to reserve your right to make that offer later?

MR. BLENK:  We're reserving our right to make the offer later.  And I don't think that -- and plaintiff's papers are very well done, but just to -- that they are going to anticipate every argument that we would make for hearsay exceptions or -- they can't encapsulate every possible argument.

I don't have a specific document that I intend to move in at this time at a pretrial conference, but I could certainly see the possibility of something coming up in the sense that the underlying facts of a fabrication will require the underlying truth of the matter asserted as opposed to simply the idea that we can all work off of a trial record.

Boyd v. County of Erie  22-CV-519                    23

I anticipate that the vast majority of what we will be discussing is what I think we all agree upon is the relevant materials, which is the trial and the evidence admitted at that trial to discuss it as -- from -- without necessarily going into the truth of the matter asserted.

THE COURT:  Okay.  Well, then I'm going to deny plaintiff's motion for kind of a blanket preclusion of police reports.

I will just say this:  Mr. Blenk and co-counsel, if you are seeking to admit certain police reports, then please do that in advance.  Okay?  I mean, if I recall correctly, I remember addressing this in Mr. Walker's trial.

And as soon as you can -- and I understand that you are waiting to hear the Court's ruling on Monell evidence and the apportionment defense, but if you could confer with plaintiff's attorneys and stipulate to whatever documents you can and then let the Court know ahead of time what specific police documents you are seeking to admit, I would appreciate that.

MR. BLENK:  Understood, Your Honor.  Thank you.

THE COURT:  Okay.  Let's move on to plaintiff's motion requesting a ruling establishing the permissible scope of Mr. Gagan and Mr. Zeidman's expert testimony.

Mr. Firsenbaum, you are handling this one?

MR. FIRSENBAUM:  Yes, in part, Your Honor.  I think the

Boyd v. County of Erie  22-CV-519          24

way we had sort of divided this is I was going to address the scope of Professor Zeidman's testimony, which also opposes their Daubert motion as to Professor Zeidman, and then Mr. Rudin I think was going to address any issues related to Mr. Gagan's testimony, but I think my argument will address this motion.  So let me go for it.

THE COURT:  Okay.  Go ahead.

MR. FIRSENBAUM:  Your Honor, the Court -- we respectfully submit that the Court should issue the same rulings that the Court issued in the Walker case.  The Court in Walker identified that Professor Zeidman and Mr. Gagan could both testify as to the background of the stages of the criminal case, including limited background and context about Brady and its progeny, to provide relevant context for the opinions being offered:  Whether the alleged Brady evidence is favorable, how a reasonably competent defense lawyer could have used the evidence, whether summations complied with applicable standards of conduct for summation advocacy, and identifying what documents and materials were disclosed on the record in the underlying proceedings.

The County doesn't dispute that Professor Zeidman is qualified to offer these opinions.  The County doesn't challenge Professor Zeidman's methodology and data relied upon.  The County makes three arguments, none of which we believe are valid.

Boyd v. County of Erie   22-CV-519                    25

First, that Professor Zeidman is offering an inadmissible opinion on materiality.  He isn't offering an opinion on materiality.  I don't think -- the County quotes the word "material" in their brief, but he used the word "material" only in describing Brady material, not in saying that evidence was material.

Now, under the case law I think an expert can testify on the ultimate issue of materiality, but he doesn't do that.  He talks about why the evidence is favorable and how a reasonably competent lawyer would have used the evidence.  And, indeed, in Walker the County argued that Mr. Gagan should be allowed to go further and actually provide an opinion on materiality.  So they're really doing an about-face here.  But the opinion that Professor Zeidman gave in Walker and that we propose he give here is what a reasonably competent lawyer would have done with the evidence.

Second, the County argues that it's an improper legal opinion about summation misconduct.  That's also not true.  He is offering -- he is not offering an opinion as to whether there is a constitutional violation or due process violation.  He's not offering an opinion as to causation.  He's simply offering an opinion about whether the summations given comported with the relevant -- the applicable standards at the time for a proper summation.

Boyd v. County of Erie  22-CV-519                26

And, third, the County says that the jury doesn't need specialized training or expertise to determine Brady violations or summation misconduct, and we just don't think that's right, and the County doesn't really argue why.

And, you know, criminal defense lawyering is highly specialized.  As Your Honor heard, Professor Zeidman explained concepts about the theory of the case and how theories -- how the timing of disclosure impacts the theory of the case and how particular pieces of evidence could be used to create reasonable doubt, the difference between different types of favorable evidence.  None of that is within the scope of a lay juror.

We cite several cases in our briefing where courts have allowed this type of testimony.  The Jones case.  Two of the three cases are Section 1983 cases raising Brady claims that allow expert testimony as to how a plaintiff's criminal defense lawyer would have used allegedly withheld evidence.  That's the Jones case and the Kluppelberg case, and actually the Moldowan v. City of Warren case as well.

So, Your Honor, I'm happy to answer any questions that you have.  I really think this is the same issue.

As to Mr. Gagan, Your Honor set the ground rules that Mr. Gagan would be able to testify about the same subjects and I think rejected arguments that we made as to why Mr. Gagan's qualifications did not allow him to testify to

Boyd v. County of Erie  22-CV-519                27

some of these subjects.  We appreciate Your Honor's ruling.

I think we have included the other arguments to limit Mr. Gagan's testimony for preservation purposes.  I'm not going to take any time to expand on those now.  We understand Your Honor is probably not going to change the ruling there, and we're fine with the rules of the road from the prior case.

And I don't think Mr. Rudin has anything to add, but I'll just -- on Mr. Gagan now; is that right?

MR. JOEL RUDIN:  Well --

MR. FIRSENBAUM:  There is a separate motion as to Professor Gagan's testimony that Mr. Rudin will handle.

THE COURT:  Well, before we -- we don't even know if Mr. Gagan is going to testify, right?  So it seems that he may not testify.  So with just that, if there's anything else you want to talk about, that's fine, Mr. Rudin, but I don't want to get too deep into Mr. Gagan's testimony because it seems like he may not testify.

So go ahead.

MR. JOEL RUDIN:  Just pointing out that in the County's opposition to our motion they say that in the event that the County calls Gagan his testimony should not be limited, and then they make a very extensive argument about why his testimony should be extremely broad.

We only ask that Your Honor adhere to the same rulings

Boyd v. County of Erie  22-CV-519        28

that you made for the previous trial.  I'm not going to elaborate on them because I don't think Your Honor wants me to, but that's our basic request.

THE COURT:  Okay.  Thank you, Mr. Rudin.

Ms. Persico?

MS. PERSICO:  Thank you, Your Honor.

I would like to start out I think with a point that we may all be overlooking, and that is that this is not the Walker trial.  And so to the extent that -- I understand that the Court -- because, as defendants have said from the beginning, the issues are very similar.

The plaintiff has indicated that the issues are not similar, yet there is a consistent reliance on this Court's rulings in Walker.  And we understand why that might be, but I wanted to note for the record that we do not -- we are not adopting the position that the Walker -- that this is simply a clone of the Walker trial.  So I just wanted to sort of say that from the outset.

THE COURT:  And that's fine, Ms. Persico.  And I think we all recognize that they are separate cases.

I will say this:  We don't have to pretend that the Walker trial didn't happen.  And so if counsel wants to refer to how I ruled in the Walker trial -- and that goes for anyone -- then that's fine.  It doesn't mean I'm necessarily going to rule the same way.  But I'm fine with people

Boyd v. County of Erie   22-CV-519                29

referring to Mr. Walker's trial with the understanding that this is a separate trial.  And so I'll make rulings on the evidence in this case.

So go ahead.

MS. PERSICO:  Thank you.

So I think -- so plaintiff has made a motion with regard to the scope of Zeidman and Gagan.  Obviously, as Your Honor rightly pointed out, we do not anticipate Mr. Gagan will testify.  So we'll sort of not deal with that.

But we also made an application to preclude expert testimony, and it would seem to me that those two kind of dovetail.  And with the Court's permission maybe I could talk about our motion to preclude experts in conjunction with our response to the plaintiff's application relative to the scope of Zeidman.  Is that agreeable?

THE COURT:  Sure.  Go ahead.

MS. PERSICO:  Okay.  I could do it the other way if you --

THE COURT:  No.  Go ahead.

MS. PERSICO:  I think they are essentially the same issue.

So I'll start with Professor Zeidman.  I don't think that the jury does need expert testimony to understand what the words favorability, materiality, et cetera, what those mean.  I think that those issues -- to the extent that this

Boyd v. County of Erie   22-CV-519                 30

will be similar to the Walker trial, Mr. McLeod testified to how a reasonably competent defense attorney would utilize various pieces of evidence.  I think he went into sort of fairly significant detail about that.

And I do want to point out, you know, as this Court is aware, expert testimony is governed by Rule 702.  I'm not going to tell the Court the rules.  I'm sure you know those.  But one caution that the Supreme Court has made is that despite the discretion that the proffer has with admitting expert testimony, there's still an obligation to be a gatekeeper because there is a risk of the jury looking at somebody who is on the stand as an expert and who is essentially, as I'm sure we've all recognized, telling the jury what conclusion to come to.

And I know that in plaintiff's papers they do indicate that, for example, Dr. Zeidman's testimony would not even come close to intruding on the jury's role in determining the Brady claim and that his testimony does not tell the jury whether there was a Brady violation.  And since we're all okay with referring to the Walker trial, I will point out to the Court from the testimony from Mr. Zeidman in the Walker trial that he does precisely those two things.  I am referring to page -- this will be page 1346 of the record.

And I do have copies here of the transcript that I can share with the Court and counsel, if that would make things

Boyd v. County of Erie  22-CV-519                31

easier.

THE COURT:  Sure.  You can pass it up.

MS. PERSICO:  Okay.  There are a couple.  So I will get these.

MR. FIRSENBAUM:  I have a copy of the transcript.  So as long as you just say the page and line that's fine.

MS. PERSICO:  So then that one will be for the Court.  So those are coming your way, Your Honor.

And for plaintiff's counsel, I am going to be referring to trial transcript page 1345 for this particular minute through 1348.

And, Your Honor, I think it's important that -- and I understand that we have a lot to do today, but I think it's important that we go through these particular instances because I do think that they will establish that Professor Zeidman is, in fact, telling the jury the conclusions to come to.

And so, you know, I would direct both the Court -- do you have your copies?

THE COURT:  I don't have 1345.

MS. PERSICO:  I apologize for that.

THE COURT:  These are all in the 1400s.  That's fine.  If you have it, you can pass it up.  If not, you can read the relevant portion.

MS. PERSICO:  So page 1345, line 25.

Boyd v. County of Erie   22-CV-519                    32

The question is asked:  Professor Zeidman, that practice articulated by the County's expert with regard to Brady in 1977, in your view does that comport with the rule of Brady?

Now we move down to page 1346.

Answer:  It's not.  Not only does it not comport, I guess in many ways, no, it doesn't comport with the rule of Brady.  It's appalling.  They are making judgments about this is an inner-city kid.  I don't believe you.  I don't trust you.  I'm not turning that over.  If you are a white kid and you aren't from the inner city, you know what, maybe then I would believe you.

And, again, the expert goes on to say it's appalling.

And then at the bottom of that page 1346, in discussing further Mr. Gagan's testimony, Professor Zeidman -- this is the question.

Professor Zeidman, is that an appropriate consideration under Brady and appropriate practice under Brady?

Answer:  Under no theory imaginable.  It's outrageous.

I'm skipping some of it, just for everybody's notification, so that we don't use up more time.

MR. FIRSENBAUM:  Sorry.  Where was the question is that an appropriate --

MS. PERSICO:  I apologize.  At 13 -- I'm sorry.  Hang on one second.  It is at 1346, line 25.  It's a question by

Boyd v. County of Erie   22-CV-519                    33

you I think.

MR. FIRSENBAUM:  I see.  Okay.

MS. PERSICO:  Okay.

MR. FIRSENBAUM:  Thank you.

MS. PERSICO:  And then on 1347 Professor Zeidman goes on to say, no, no that's not what the law requires. Certainly isn't what ethical behavior requires either.

And then further down the page -- I'm going to skip over the question so we can get to the point here.

I'm almost speechless honestly.  I've never -- I've been practicing for 40 years.  I've seen good things, bad things.  I haven't seen anything like this.

And then moving to page 1348, line 15 is a question: Does it matter that Mr. Hough lived in the Glenny apartments instead of a wealthy Buffalo suburb?

Answer:  No.  I mean, this is exactly the sort of material that should be turned over.  You have a witness...

And then he comments at the end, you don't bury this.

I think -- and I'm going to go through -- I know that probably no one wants to go through this in as much detail, but I do think it's very important because, as these further examples will demonstrate, Professor Zeidman is, in fact -- he's doing all of the things pretty much in total that expert witnesses are prohibited from doing.

And I think we've cited both the Nimely v. City of New

Boyd v. County of Erie  22-CV-519                34

York case and the Hygh case, which list in some detail what experts may and may not do.  And what we will demonstrate is that Professor Zeidman is very qualified.  We don't -- we don't take exception with his qualifications.  However, it is very clear his intent is to instruct the jury on inappropriate issues.

THE COURT:  So, Ms. Persico, I'm going to stop you there.  Okay?

The example that you just showed us, the way I read that is that Professor Zeidman is really talking about favorability.

I think, Mr. Firsenbaum, if you have him as a witness for this trial, it's very important to use that terminology.  And so usually, you know, when -- let's say a prosecutor talks about favorable material.  They just refer to it as Brady, right?  They say this is Brady, this is Brady.  I want to avoid that kind of use of language for this trial because I think it can be confusing to the jury.

And so I think what Professor Zeidman testified to was within the ruling I had previously made.  It's within the ruling I'm going to make for this trial.  But it needs to be couched in the terms of favorability.  I am going to allow the experts.

And if you do decide to call Mr. Gagan, then both experts can testify about whether a certain piece of evidence

Boyd v. County of Erie   22-CV-519                    35

was favorable or not favorable.  The experts are precluded from testifying to the ultimate opinion about whether there was a Brady violation.

And so this example -- I don't find that he's testifying that this was a Brady violation, but there needs to be that distinction between favorable.  And so if you could make sure that you ask your questions in that way, I think that will make it clear for the record and it will make it clear for the jurors.

MS. PERSICO:  And, Your Honor --

THE COURT:  Go ahead.

MS. PERSICO:  -- I just would like to -- with the Court's permission, I think there are a couple of other examples that I would like to put on the record, especially given if you were going to take exception to the ruling to allow him to -- and I think it's -- you know, we would just like to take an opportunity to --

THE COURT:  Well, what examples to prove what point?

MS. PERSICO:  Well, this is kind of groundhog day.  We had these conversations about the expert's testimony before Walker, and those assurances were essentially what the Court -- those guardrails were put on by the Court in terms of his testimony in Walker, and they were not abided by.  And I want to put on the record that I anticipate that those things will happen.

Boyd v. County of Erie  22-CV-519                    36

And I would also like an opportunity to address some of the other commentary from Mr. Zeidman and to indicate that that testimony is -- you know, the Court has broad discretion to admit or exclude expert testimony, and that discretion will not be disturbed unless a couple of reasons, right, where a witness -- an expert witness, their testimony impermissibly mirrors the fact testimony of a fact -- of a witness, which we believe was entirely the case in Walker with regard to Mr. McLeod.  Mr. McLeod is on plaintiff's witness list currently.  And the opinions also that tell the jury what conclusion to reach in terms of summation.

And I would like to point out another section on the Brady material.  There are opinions that evaluate other witnesses' credibility in the Walker case, which we would anticipate why would there be any difference.  And I think that I would just like to point those things out for the Court so that -- you know, I understand your ruling, but I want to make sure that --

THE COURT:  That's fine.  You can go to the next example.

MS. PERSICO:  Thank you.

So, to Your Honor's point, on page -- we'll skip that since we're already past that.

So in terms of -- you know, we do -- he does tell the jury whether or not there was a Brady violation I think.  And

Boyd v. County of Erie   22-CV-519                37

there's lots of transcript testimony to support that.

He does also -- just give me one second.  I think that he does opine on whether -- you know, the fact that plaintiff says that he will not opine on whether the evidence was or was not disclosed or whether it was material is also not borne out by the transcript.

He -- first of all, it starts with the assumption that all of the evidence was not disclosed, and then goes through with counsel each of the things, did you see that, was this disclosed, was this not disclosed.  So plaintiff is asserting in support of his testimony, and sort of the expanded nature of it, that he will not be opining on whether the evidence was or was not disclosed or whether it was material.

THE COURT:  Well, I mean, those are separate issues.

So I did allow Professor Zeidman to testify about whether based on his review of the record a police report was disclosed or not.  And so I think what I found was that was a fact that I allowed Professor Zeidman to testify to.  And so that was not an opinion.  That was just based on his review of the record whether he had determined whether it appeared that it had been turned over or not.  And so either expert can testify to that fact.  It's not an opinion.

MS. PERSICO:  Okay.  And then -- but to draw -- to say that it was not disclosed and that it was material I think crosses over the line.  I think maybe a more -- maybe a more

Boyd v. County of Erie  22-CV-519                38

succinct demonstration of improper opinion testimony that I think probably -- I don't -- there's been no demonstration that -- why it is that jurors would need to have expert testimony about Brady, about disclosure, favorability, materiality.

But setting that aside, I think that Dr. Zeidman or Professor Zeidman goes well above that.

For example, with regard to the summation misconduct -- this is on page 1487 -- the question by Mr. Firsenbaum: Professor Zeidman, what opinions did you reach with respect to Mr. Drury's summation in Boyd's criminal trial?

Now, this was also in Walker, which we previously objected to that, but that's -- that will be more relevant in this case.

His answer is:  Mr. Drury's summation violated numerous norms, went well beyond the acceptable rhetoric.

It talks about a whole bunch of things that were addressed and says, not a single one is appropriate, and he goes on to quote directly from the summation.  He referred to this kid as a blithering idiot, a nitwit.  I don't even know what some of the words mean, a snook (ph).  Said he's a product of his environment.  He called the place where he lives, the projects, a junkyard.  And I think I could go on. Those are just off the top of my head.

It then goes on to say, and this is I think the

Boyd v. County of Erie  22-CV-519          39

troubling part, I would defy anybody to explain how that was in the four corners of the evidence.  What was the purpose of saying that?  He vouched for the credibility of his witnesses.

That is something that is impermissible, right, for him to be making a conclusion that the Court should be instructing the jury on.

He goes on to say -- he kept saying things like I believe I only put on one witness because I thought that was enough.  He again said no motive to lie when he knows perfectly well about immunity.

And I'm going on to page 1488 now.  And deals that were cut.  Shifted the burden of proof as well.

And then he goes to say, but what stands out is just completely indefensible is the kind -- I think this is a transcription -- is the kind of way to do it.  Let's put it this way, you asked me if it comported with the standard. His summation should be exhibit of something that no prosecutor should ever do.

And then going down to the bottom of page 1488 at line 19:  Do you recall all of these comments in the summation?

Mr. Gagan, County expert:  Were the terms that Mr. Drury used to refer to Mr. Woodruff consistent with the practices of prosecutors in Erie County at the time to make such remarks?

Boyd v. County of Erie   22-CV-519                40

Mr. Gagan:  I believe so.

So that was some background, right?  That's not the testimony.

And the question is:  Professor Zeidman, what is your opinion about the practice of prosecutors in Erie County with respect to summations?

It's too kind to say it violates.

There is an objection, which was overruled.

To say it violates every norm known about what is acceptable and what is permissible is putting it kindly.  In a word, it's just indefensible.  It speaks for itself.  Who would say that at a trial?

THE COURT:  Ms. Persico, I think it would be helpful if you -- instead of just reading these all now, can you just give us in writing the pages of the transcript that you find questionable?  Just let us know and I will go through those. Just not right now.

MS. PERSICO:  Okay.

THE COURT:  That would be helpful to me.  And I'm definitely open to looking at all of those instances that you think maybe Professor Zeidman went beyond what the Court ruled, but I just don't want to go through every instance right now.  So if you could just provide all of those citations.

MS. PERSICO:  Well, if you are already ruling that he's

Boyd v. County of Erie   22-CV-519                41

going to be allowed to come in, we will note our exception, and also our exception for not being able to put everything on the record right now before you make a decision.

THE COURT:  Well, what I wanted to do was give some kind of overarching principles of the scope of the expert testimony.  And then as far as specific questions that were asked and answers that were given during Mr. Walker's trial, I'm certainly happy to look at those and consider those and rule upon those.  Okay?

MS. PERSICO:  And I would --

THE COURT:  In my written decision --

MS. PERSICO:  Thank you.

THE COURT:  -- that I will issue next week.  Okay?

So what I'm going to do is I'm going to just give to all of you kind of some of the overarching principles that I think apply to Mr. Gagan, Mr. Zeidman's testimony, and then I can be more specific with certain questions and answers that may have taken place in Mr. Walker's trial if you give me those references.  Okay?

MS. PERSICO:  Certainly.  And we would also -- I would assume that the -- we don't need to address the waiver argument then because --

THE COURT:  For Mr. Gagan.

MS. PERSICO:  -- plaintiff made an argument that we waived any objection to -- you know, our objection to having

Boyd v. County of Erie   22-CV-519                    42

the experts testify, which is we're not quite there yet.  But there was an argument made by plaintiffs that because we did not object to the use of experts in Walker that we somehow waived our ability to object to that now.  I just wanted to clarify that.

THE COURT:  Okay.  You don't have to respond to that argument.

MS. PERSICO:  Okay.

MR. FIRSENBAUM:  Your Honor --

THE COURT:  Go ahead.

MR. FIRSENBAUM:  Apologies, Your Honor.  I just want to note that the argument that they haven't had a chance -- this was their motion to exclude.  If there were particular passages that they found violated, the time to do it was in the motion, at which point we could then respond.  So if they're going to now have the opportunity to present additional argument as to why particular passages in their view are wrong, I would just ask that we be given some opportunity to explain why they were right before -- for why they were appropriate.

I don't want to take up Your Honor's time now in going through the couple that Ms. Persico mentioned here, but, I mean, I do think they were proper.

You know, again, if they had raised this in their motion, we would have responded.  I would just like an

Boyd v. County of Erie   22-CV-519                    43

opportunity to respond.  And we don't need much time.

THE COURT:  And that's fine.  And I'm definitely going to give you a chance to respond to whatever you submit in writing.  I don't see these necessarily as new arguments because what Ms. Persico is arguing is that Professor Zeidman testified about things that went beyond the Court's ruling.

I'm going to make very similar rulings, if not the same ruling here, as I did in Mr. Walker's case.  And so if I do find that maybe there is a specific example from Mr. Walker's trial that I believe Mr. Zeidman went beyond kind of the scope of my ruling, then I don't see that as a new argument.  It's just a specific example of what I've already ruled upon.

So that's fine.  I'll give you time to respond to it.  At this point I'm just going to give you some kind of overarching principles regarding the scope of the experts' testimony.

I do find that the expert can testify how a reasonably competent defense attorney could have used the allegedly withheld evidence.  I guess this kind of goes along the same lines as allowing evidence of how alleged Brady evidence was used in one of Mr. Boyd's codefendants' trials.  So it's the same kind of thing.  I think that that's fair game, that you can testify about how it could be used.

I'm going to allow experts to testify about whether a certain piece of evidence was favorable or not favorable.  I

Boyd v. County of Erie   22-CV-519                44

do find that that would be helpful to the jury.

The experts cannot testify, however, to the ultimate opinion about whether there was a Brady violation and should not testify about materiality or give an opinion about materiality.  And so, as I said before, I'm going to ask everyone to make sure that they use kind of that terminology of favorable or not favorable.

I am going to allow the experts to testify on a limited basis on what Brady means, what favorable means.  And I will give a limiting instruction to the jury, as I did in Mr. Walker's trial, that the Court will give the definition of those legal terms and they must follow the instructions that I give them, the definitions that I give them.  But I do think it would be helpful to understand their testimony and to also understand when the expert gives their opinions how they themselves define Brady.

I'm also going to let the experts testify to facts whether based on their review of the record, whether evidence -- certain evidence was turned over or not turned over.  Again, I don't think that's an opinion.  It's a fact.  And so I will allow that.

MS. PERSICO:  Your Honor, if I could just note --

THE COURT:  Go ahead.

MS. PERSICO:  -- I think that to allow the expert to testify whether or not something was turned over is different

Boyd v. County of Erie   22-CV-519                    45

than allowing an expert to testify as to what was marked at a trial. This is -- you know, this has been kind of a recurring theme. So I won't beat a dead horse as much as I can avoid it, but there -- as we've established in this last go-around, just because it wasn't marked at the trial doesn't necessarily mean that it wasn't turned over. And so I think that that is an improper province -- invading the province of the jury.

THE COURT: And that's fair. So I think the question has to be worded in a certain way. So based on review of the record and the transcript, at any point in the transcript if you see -- or any point in the record did you see that this P-73 was turned over or not. And so I think that's fair. So please make sure that you word the question in that way. Does that make sense?

MR. FIRSENBAUM: It does, Your Honor. I believe that was the scope of Professor Zeidman's testimony. It wasn't to the issue of whether it was disclosed at all. It was to the issue of whether it was marked as an exhibit at either of the trials or pretrial hearings. I think it was actually Mr. Gagan that went further than that, but --

THE COURT: Okay. So you understand -- okay. That's all I'm going to say.

Like I said, I'm going to give as much information as I can regarding the scope of the expert testimony in my

Boyd v. County of Erie   22-CV-519                    46

decision, but those are kind of the overarching principles for the expert testimony.

MR. BLENK:  May we ask for a point of clarification, Your Honor?

THE COURT:  Sure.

MR. BLENK:  Your Honor discussed the codefendants and how pieces of evidence would have been used at a codefendant's trial.  My recollection of Mr. Zeidman's testimony is that at the Walker trial he did not go into how a piece of evidence would have been used at the Boyd trial.  And we wouldn't anticipate that he would do that, that he would be talking about the Walker trial in the Boyd trial.

Your Honor made reference to codefendants and how it would work with codefendants.

THE COURT:  Yeah.

MR. BLENK:  I wasn't -- I don't think we anticipated that there would be a discussion of the -- that Mr. Zeidman would be talking about how the entire record would have worked in a --

THE COURT:  No.  I was -- that was an aside.  That might apply to other witnesses, like Mr. McLeod.  I think that could apply to Mr. McLeod.  For example, the photographs, the fact that he had these photographs and how he used them during the trial, I was referring to that.  So not necessarily Professor Zeidman.

Boyd v. County of Erie  22-CV-519          47

MR. BLENK:  Understood.

MR. FIRSENBAUM:  Your Honor, just one further clarification.

THE COURT:  Sure.

MR. FIRSENBAUM:  In the guidelines that Your Honor provided Your Honor didn't mention anything about the summation opinion.

THE COURT:  Okay.  Yes.  I am going to allow the experts to testify as to their opinion as to whether a certain part of the summation -- I think what you said -- comported with the applicable standard at the time.

MR. FIRSENBAUM:  Okay.

THE COURT:  And I'll be a little bit more concise with that in my decision, but I will allow some limited opinion testimony regarding the summations as well.

MR. FIRSENBAUM:  Thank you, Your Honor.

THE COURT:  Okay.  So let's move on to plaintiff's motion to admit a party admission made by DA Flynn.

MS. RILEY:  Good morning, Your Honor.  This actually overlaps with the County's motion as well to exclude Flynn and --

MS. PERSICO:  I can't hear.

THE COURT:  Can you just try to talk a little bit louder into the microphone?

MS. RILEY:  Can you hear me?

Boyd v. County of Erie  22-CV-519                48

MS. PERSICO:  Yes.

MS. RILEY:  Sorry.  I was just noting for the judge that this motion overlaps with the County's motion on Judge Burns' decision in the 440 motion and their motion to exclude DA Flynn's statements.

So I can address both of those at the same time, if you'd like.

THE COURT:  That's fine.

MS. RILEY:  Okay.  I think it will actually be easier if I start with the Burns, which was brought up in their motion, because I think we can dispose of that quickly.  We do not oppose Roman numerals one through three of the County's motion concerning Judge Burns' 440 decision.

As we did in Walker, we have no intention of discussing the 440 decision.  We have no -- we have no intention of characterizing it as an exoneration or characterizing it at all.  We don't intend to bring up the 440 motion or decision. We have no intention of discussing any discussion of James McLeod in Judge Burns' decision.

And we also do not oppose Roman numeral three of their motion, which is in regard to Judge Flynn -- or, sorry, DA Flynn's discussion of the 440 decision or motion, including his decision not to try the case.

So I'll discuss DA Flynn's statement in more depth, but as to Roman numeral three, we do not seek to discuss that.

Boyd v. County of Erie  22-CV-519                    49

THE COURT:  Okay.

MS. RILEY:  We just seek the same preliminary instruction that Your Honor provided in the Walker case, that Mr. Boyd's conviction was vacated, his indictment dismissed and his criminal case closed.  Your Honor drew a careful line in giving this instruction in Walker precluding all references to the 440 decision, and we request the same instruction here.  We believe this strikes a fair balance for both parties.

As to the Flynn admission, which goes to both motions in limine, I think this really is the crux of the issue.  This concerns the, quote, weak case statement.  We seek the same ruling that this Court made in Walker with one small caveat that I will get to in a moment.

We would like to admit the Flynn statement in the same manner that Your Honor did in Walker.  The County offers no basis to change -- for the Court to change its ruling here, and that is because there is none.  The statement by Mr. Flynn is clearly relevant to a material issue in this trial; that is, to Brady and the materiality claim there.

Jurors will need to weigh the strength of the case presented at trial against the misconduct alleged and the withheld evidence.  We should be able to support our contention that the Brady violations were material with statements from the ECDA's office conceding that the case was

Boyd v. County of Erie   22-CV-519                    50

weak.

Next, contrary to the County's assertion, it is not hearsay.  This is clearly a party admission.  The County cannot dispute that Flynn's statement was a County admission or doesn't attempt to.  It conceded as much in the March 3rd pretrial hearing in Walker.  Your Honor expressly asked the counsel for the County are you conceding that this is a party admission, to which counsel responded, you know, I don't know that there's any other way to look at it, right?  It's clearly a County admission.  Therefore, it is not inadmissible hearsay or improper opinion testimony.

There's also no prejudice to the County; that is, their last argument.  They say that it is unduly prejudicial or would risk confusing the jury.  All of those arguments are wrong.  This is a party admission on an issue central to the case.  Just because it hurts the County does not mean it's prejudicial.  It's prejudicial in the same way that any evidence is prejudicial.

Next, turning to their motion bullet point five or Roman numeral five in their motion to allow additional excerpts to come in under Rule 106, they state that this is to, quote, contextualize the statement.  And this, too, Your Honor already ruled upon at the Walker trial and excluded those additional excerpts, and we ask that you do so again here.  What the County is seeking to admit, these additional

Boyd v. County of Erie  22-CV-519                51

excerpts, goes directly against what they are seeking in parts one through three of their motion.

First, the County proposes on -- the County's proposed language on page six of their motion refers to the 440 motion and decision.  As I just discussed, we have no intention of getting into the 440 motion or decision.  I think both sides are on the same page there.

The statements the County proposes adding involve its reasons for opposing the motion.  We don't want to get into the 440 decision, but what they are proposing adding does exactly that.  Indeed, as I said, the County's request to admit those statements is inconsistent with the first part of their brief, which seeks to exclude reference to the 440 decision.

And, next, the last paragraph that the County proposes adding goes to Flynn's decision not to retry the case.  This is further removed from the relevant question of favorability and materiality in 1977.  Although Flynn's reasons for not trying the case, even though Boyd could have been retried, will invite speculation as to why his conviction was overturned, this Court has agreed that that should not occur.  Your Honor instructed in Walker that the jury should avoid speculating as to why he was not retried, and we ask for the same thing here.

I will note, of course, that Your Honor did allow two

Boyd v. County of Erie   22-CV-519                52

additional sentences in the Flynn weak case statement in the Walker trial.  That would be, quote, don't get me wrong, and, I don't think it's the greatest case in the world.  Your Honor found that to be a continuation of the weak case statement and, like the rest of the weak case statement, relevant to the issue of materiality.  We do not oppose that ruling here and we would invite that.

Other than those two sentences that Your Honor admitted, the remaining bold italicized portions as explained are irrelevant and not necessary under 106.  They are not necessary to explain the weak case statement, which stands on its own.  It's not necessary to avoid misleading the jury.  The proposed additions will merely confuse the jury by getting into the circumstances surrounding the 440 motion and decision.

As Your Honor already held, this is a discrete statement and the only portion of Mr. Flynn's statement that is about the strength of the case as it existed in 1977.  None of the additions that the County proposes are relevant to that.

Now, I mentioned, Your Honor, that I seek one caveat to Your Honor's ruling in Walker, and that is to excise one section of the weak case statement which goes to the jailhouse snitches.  The County takes exception to our request to exclude that, but the reason is because there were

Boyd v. County of Erie   22-CV-519                53

no jailhouse snitches in Mr. Boyd's trial.

While this might have been relevant to the weak case statement, it might have provided some context in the Walker trial, it does not do so here.  The comment is referring to witnesses at the trials of Walker and Gibson, and not Boyd.  If we included the jailhouse snitch comment, the jury would think that there were jailhouse snitches, when there weren't, and that would cause prejudice to Mr. Boyd.

And then one last thing, Your Honor.  The County makes a request that the Court limit, quote, repeated references to this weak case statement.  We interpret this to mean that the County is asking that we be limited in the number of times the weak case statement is played for the jury.  This argument should be rejected.  The statement is relevant and admissible, and it should be allowed to be used with any witness who can properly testify about it.

At the Walker trial, for clarification, it was only played three times:  Once for a fact witness, Mr. Walker; once for an expert witness, Mr. Zeidman; and once in closing.  This is par for the course for any highly relevant and probing evidence, and we have no intention of showing it any more than that.

Unless Your Honor has any more questions, we ask the Court grant plaintiff's motion to admit the redacted weak case statement and deny the County's motion to exclude it or

Boyd v. County of Erie  22-CV-519                54

supplement it and deny the County's motion -- sorry -- we have no issue with the County's motion as to parts one through three of the Burns decision.

THE COURT:  Thank you.  I don't have any other questions.

Ms. Means?

MS. MEANS:  Thank you, Your Honor.

Our position is that Mr. Flynn's statement should be precluded as unduly prejudicial and because it risks confusing the issues.  I do think that the two issues relative to Judge Burns' decision and the statement itself need to be considered somewhat collectively.  Particularly, given the request that plaintiff is asking for in how the jury is charged.

Plaintiff is asking the Court to instruct the jury that Mr. Boyd was not retried, but to admit the statement of Mr. Flynn completely out of context.  And his statement directly bears on the reason that he gave that press conference, and that's the reason that we're asking pursuant to Rule 106 to admit supplemental pieces of that press conference for additional context.

Producing it out of context, especially given that it does contain inflammatory language in the sense that it was a weak case, not the greatest case, adds to the prejudice inherent in that, and, further, it confuses the jury both

Boyd v. County of Erie   22-CV-519                 55

because, as was just discussed, it includes reference to jailhouse snitches, which plaintiff has, again, acknowledged were not at issue in Mr. Boyd's underlying criminal trial, and because it references DNA evidence which was objectively unavailable at the time of Mr. Boyd's 1977 underlying criminal trial.

We've taken the position that Mr. Flynn's opinions and his statements on this thus implicitly conflate trying to try Mr. Boyd's criminal case versus today's standards against those that would have been available in 1977; and, therefore, risks confusing the issues, particularly as to materiality, as something like DNA was patently not available.

Plaintiff's proposal to simply excise the jailhouse snitch comment and the implication that Mr. Flynn -- I think the argument just now was that he was referring to another case.  There's nothing in the record to support what Mr. Flynn meant by that, and we can't simply excise it.  It was the basis for his opinion, and I think that also risks confusing the issues as to what he was talking about when he was referring to that as a weak case.

He specifically referred to there was a jailhouse snitch.  It directly bears on his opinion, and it's relevant to any argument that plaintiff makes as to how Mr. Flynn's statement bears on the strength of the case, and to simply excise it is not only misleading in the sense that it's

Boyd v. County of Erie  22-CV-519                    56

removing a portion of Mr. Flynn's statement that was relevant and important context and used to base his opinion or admission as to the strength of the case, it is also going to confuse the issues for the jury.

As to the proposed instruction to the jury about what happened in the 440 Judge Burns' decision, particularly, if subjective innocence is in this case, I think it's important that the idea -- or I'm sorry -- the reality, not the idea, that it did not constitute an exoneration should be included in any instruction to the jury.  That is -- the fact that he was not retried and the charges were dismissed is no more relevant than the fact that they were not exonerated.  And all of those issues were in Judge Burns' decision.

And so if those items are coming in, and especially if the idea of subjective innocence is coming in, I think it's only fair that the fact that it was not an exoneration also be added to any instruction to jury.

THE COURT:  Okay.  Thank you, Ms. Means.

Did you want to add something?

MS. RILEY:  I can just respond, Your Honor.

I think you drew a clear line in Walker that was fair to both sides.  We are not going to call it an exoneration.  We are not going to refer to it at all.  We simply request the exact same instruction that Your Honor gave in Walker, in which you told the jury do not speculate as to the reasons

Boyd v. County of Erie   22-CV-519                 57

the conviction was vacated.  We think it is unduly prejudicial if we say that he was not exonerated.  But, again, we merely ask exactly what you provided in Walker.

THE COURT:  Okay.  Thank you.

Regarding the weak case statement, my ruling in Mr. Walker's case I think did include the jailhouse snitches statement.

MS. RILEY:  Correct.

THE COURT:  And so I am inclined right now to exclude that.

MS. RILEY:  Okay.

THE COURT:  The rest of it will remain.  Let me just read it into the record just so it's clear.

Even when I -- and this is the language that I'm going to find admissible.  Even when I believe, quite frankly, in my heart of hearts that this was a weak case, frankly, this wasn't the strongest case 45 years ago.  I'll concede that.  All right?  I'll concede it wasn't the greatest case.

I'm going to get rid of this.

Listen, here, not the greatest evidence in the world.  There's no DNA evidence.  It wasn't the greatest case.  Don't get me wrong.  And I don't think it's the greatest case in the world.  But you know what?  The case was put on.  12 jurors decided it was guilty.

Those last few sentences I did not include in

Boyd v. County of Erie  22-CV-519                58

Mr. Walker's trial.  I am going to include it here.  I think it was a part of the language that the County has asked for. The statement there's no DNA evidence, I'm going to just consider that.

And I know, Ms. Means, you're asking for that to be excluded.  I'll give you my decision in the written decision. But that's generally what I'm going to allow.

As far as the instruction that I'm going to give the jury, it's going to be very similar to the instruction I gave to the jury in Mr. Walker's case.

Darryl Boyd's 1977 criminal conviction for murder was vacated in August of 2021, which left open the possibility of Mr. Boyd being retried.  Mr. Boyd was not retried.  The indictment or criminal charges against him were dismissed and Mr. Boyd's criminal case was closed.  You should not speculate as to the reasons the conviction was vacated, that Mr. Boyd was not retried or that the indictment was dismissed.

MS. RILEY:  Thank you, Your Honor.

THE COURT:  And what I plan to do is probably Monday morning, the day of the trial, we'll address the instructions, the preliminary instructions at least, and you can also take an exception to that then.  But I'll try to give everyone a copy of that before.

Okay.  Thank you.

Boyd v. County of Erie  22-CV-519                59

MS. RILEY:  Thank you, Your Honor.

THE COURT:  Let's move on to plaintiff's motion finding that certain statements made by Gagan are admissible as party admissions.

MR. JOEL RUDIN:  Your Honor, if I may.

THE COURT:  Sure.  And I guess my initial question for you, Mr. Rudin, is are you still seeking to admit certain deposition -- or designations of Mr. Gagan if the defense is not going to call him?

MR. JOEL RUDIN:  Oh, absolutely.  I think that Your Honor's -- well, first of all, they have not withdrawn him.  They have set four conditions for the Court, and if the Court doesn't comply with its four conditions, then they reserve their right to call him.  Those conditions are that the Court permits the testimony of Zeidman, Drob or Hirsch or permits us to introduce excerpts from Gagan.  And then they say that if any of those things happen that they reserve the right to call him.

And then they argue I think in two separate sets of -- two separate briefs that if they do call him that his testimony should be the broadest possible testimony about every issue in the case.  So rather than indicate that they no longer adhere to the opinions that he has previously expressed, they continue to adopt them and they continue to be his authorized opinions.

Boyd v. County of Erie  22-CV-519                60

In Your Honor's decision in the Walker case Your Honor relied heavily on the Glendale Federal Bank case, which was a case where the Court found that an expert's deposition testimony would be admissible because the party had indicated an intention to call him at trial, and that indicated that the party agreed with his positions and his positions were authorized by the party and that, therefore, his deposition testimony could be admitted.

After the Court made that ruling, rather than decide not to call Gagan or withdraw him, the County called him, and he gave the broadest possible testimony about every issue in the case, including the very same issues that we seek to admit his testimony about at this trial.  So rather than indicate that they were withdrawing or disavowing his opinion, they embraced it.  They are still married to this day.

Now, we in our briefs both in this -- in regard to the Boyd trial and in regard to the Walker trial we cited a number of cases where courts held that where a party has called an expert at a prior trial to testify for the party that that expert's testimony may be used at a subsequent trial because it's authorized by the party.  That just reinforces the point that I just made, that where they not only indicated an intention to call him but actually did call him in a case involving identical issues, in a case in which

Boyd v. County of Erie  22-CV-519    61

they are the party, that we can now use his testimony against them in a subsequent case involving the same issues and the same party.

United States v. Alabama Power Company is exactly that situation where the party -- same party called him at a prior trial and involved similar issues.  That is a decision by a District Court in Alabama, but it relied on a Ninth Circuit case In re Hanford Nuclear Reservation Litigation, 534 F.3d 986 at 1016 in which the Ninth Circuit held that, quote, an expert witness's trial testimony at an earlier bellwether trial on the same subject was an admission of a party opponent under Rule 801(d)(2)(C), and that's exactly this case.

I mean, it's -- this is not bellwether litigation in the sense that it's like a case against Johnson and Johnson for cancer caused by talcum powder and that there are going to be many other cases, but it's exactly the same rationale where they have called this expert and authorized his testimony at a prior trial.  They've indicated they agree with it.  It becomes their admission, and we can use it at a subsequent trial involving the same parties and the same issues.

As the Ninth Circuit in that case citing Glendale stated, quote, plaintiff cannot now exclude trial testimony that she herself proffered.  Same result in ONTI, Inc. v.

Boyd v. County of Erie  22-CV-519                    62

Integra Bank.  That's a decision out of Delaware that the party could move into evidence deposition and trial excerpts of experts who previously testified for the opposing party at a trial involving similar issues.

Abstrax, Inc. v. Dell, a decision by a District Court in Texas.  Exactly the same holding, except in that case the opposing party was now relying on a different expert, and the Court held that the party that wanted to use the admissions could use them even though the expert was no longer testifying at the second trial.

It's too late for the County now to withdraw or disavow Gagan's testimony where they authorized it, relied on it and still indicate that they have every right to call him and they have not withdrawn him.

Finally, Your Honor, I would point out that in Your Honor's opinion in the Walker case Your Honor indicated that while you were ruling on the authorized admission issue that where the party indicated an intention to call the witness, you were not ruling out that there could be other grounds for admitting such testimony.  And there are cases that uphold those other grounds.

Collins v. Wayne Corporation is a Fifth Circuit case where the Court relied on the fact, quote, Wayne hired Green to investigate the bus accident and to report his conclusions.  In giving his deposition he was performing the

function that Wayne had employed him to perform. His deposition, therefore, was an admission of Wayne. That was so even though they had not indicated an intention to call him at trial.

In this case -- this is not a situation where the County has hired an expert to give an opinion and they have decided they disagree with the opinion and they are not going to use the expert and the opposing party wants to use his admissions anyway. This is a case in which they got a detailed 40- or 50-page report from their expert, they served it on us, they indicated an intention to use him at trial, they held him out as their expert for trial. We then -- and they produced him for a deposition, as they had to do because we understood they were calling him at trial, and then they did call him at trial.

This is -- we're entitled to use his admissions under the Fifth Circuit case merely from the fact that they served their report on us as if they agreed with it and then produced him for a deposition as if they continued to agree with his opinions.

And, finally, there's the Second Circuit case in Capobianco v. City of New York, 422 F.3d 47 at page 55, where the Second Circuit indicated under Rule 801(d)(2)(B), manifested adoption of a statement, that where the party relied on the statements in question by serving its report,

Boyd v. County of Erie   22-CV-519                64

that that would be a basis to admit the report.

I suggest that it's also a basis to admit the testimony where they also produced him for the deposition and then produced him at trial, called him at trial, and even now reserve their right to call him because they still are married to him.

Thank you, Your Honor.

THE COURT:  Thank you.  And, Mr. Rudin, if the defense kind of maintains their position that they are not intending to call Mr. Gagan, would you be seeking to admit just prior trial testimony from Mr. Gagan or trial testimony and deposition designations?

MR. JOEL RUDIN:  The deposition designations that Your Honor admitted at the last trial, and then there was one excerpt from his trial testimony where he gave an unqualified endorsement of the summations of Drury and Henry as being consistent with the policies and practices of Erie County DA's office in 1977.  I think that's an important admission, and we would like to introduce that as well.

THE COURT:  Okay.  And I'm going to take a closer look at those cases that you just referenced, but I ask that because it seemed like those cases talked about prior trial transcripts.  And so if you were limited to that, then I'm assuming you would be seeking to introduce Mr. Gagan's prior trial testimony.

Boyd v. County of Erie   22-CV-519                    65

MR. JOEL RUDIN:  Trial and deposition.

THE COURT:  Well, and I understand you are seeking maybe both, but if I look at the cases -- and it seems like -- and I'm not saying that I'm going to rule on this this way, but if you are just limited to prior trial testimony, then you would be seeking his trial testimony?

MR. JOEL RUDIN:  Well, I think that what the Glendale Federal Bank case reasoned -- and Your Honor appeared to adopt its reasoning -- that where a party has indicated an intention to call a witness at trial it's indicating that the witness was always authorized to speak for the party.  In other words, you can view its deposition now in hindsight as being authorized by the party because the party was indicating that it agrees with his position, and that's why the deposition comes in.

So I don't see why it comes in any less at this trial now that they have actually presented him to testify at the trial and he testified to exactly the same subject matter that he testified to at the deposition.  They have indicated by calling him at trial that the positions he took at the deposition were always their positions, are their positions, they agree with those positions; and, therefore, he was authorized to speak for them.

I mean, that's exactly the reasoning of Glendale.  And I think it applies even more strongly now that they've gone

Boyd v. County of Erie  22-CV-519                    66

one step further and actually called him at trial to testify about all the issues in the case and reserve their right to call him at this trial to testify in the broadest possible terms, which is what they have argued they should be permitted to do if Your Honor doesn't exclude Zeidman and the other two witnesses and doesn't exclude his admissions.

MR. FIRSENBAUM:  Your Honor, I think -- that's certainly our position.  I think Your Honor was asking a slightly different question.  I just want to answer it.

If Your Honor were to reject that -- and we don't think Your Honor should and limit us to prior trial testimony.  We would like the opportunity to designate additional trial testimony because it was -- that we were planning to use through deposition testimony, but if Your Honor isn't allowing the deposition testimony, we'd like the opportunity to look for additional trial testimony.  Our position is that we shouldn't have to go through that exercise, but I think that's what Your Honor was asking.

THE COURT:  Yes.  Thank you.  That answers my question.

Ms. Persico, go ahead.

MS. PERSICO:  Thank you, Your Honor.

I just wanted to point out -- maybe I misheard Mr. Rudin, but we did not condition the preclusion of Zeidman.  That's got nothing to do with Mr. Gagan's testimony.  And we simply reserved our right to -- if we are

Boyd v. County of Erie  22-CV-519          67

in this situation where there is going to be admissions from him allowed, we didn't want to put ourselves in that position.  If the admissions are not allowed, we are not going to call him.  I just wanted to point that out.

Mr. Hartsough is going to do the argument, but I just wanted to address that because we were all here and Harrison wasn't.  So I'm going to let him do the legal argument.

THE COURT:  Okay.  Thank you.

MR. HARTSOUGH:  Good morning, Your Honor.

THE COURT:  Good morning.

MR. HARTSOUGH:  So I think we need to put some of what Mr. Rudin is saying into context.  We have three buckets of potential statements.  And with that it's important to remember that plaintiff is the party and the proponent trying to admit the statements.  So it's going to be up to plaintiff to demonstrate an exception that applies.  So I don't want us to get mixed up with what we're sort of dealing with here.

I think what we have -- the bulk of what is on the table right now are deposition designations that they would like to admit as Mr. Gagan's statements against the County. With respect to calling Mr. Gagan, I want to be careful.  I don't know if -- I haven't had a chance to confer with co-counsel.  I don't know if that's going to change on the County's part.  I really don't want to get out over my skis on that.

Boyd v. County of Erie   22-CV-519                68

But I think the broad points are we have three buckets. Well, there could be three buckets of statements. But right now on the table are a very small portion of the trial testimony, and the larger bulk of the proposed statements to be admitted are from his deposition. I think the way to analyze this under Glendale and the case law is to look at his deposition as though it is prior testimony in this case and not necessarily from Walker or what have you. I think that's the appropriate way to look at it.

Plaintiff has repeatedly conceded that these are separate cases. Today the Court has said that these are separate cases. So that's the County's position at this juncture. And the simple way for the Court to analyze this is, look, as of right now I can't -- I don't want to get over my skis again, but as of right now we don't intend on calling him.

Glendale deals with the witness designation stage. And so I think because we claim to designate him we're at the point where it's not authorized under 801(d)(2)(C). I recognize that that's not the only argument plaintiff makes. There's also the adoption argument and the agency argument. I don't think I hear Mr. Rudin arguing for agency today.

With respect to adoption, there really has to be something tying the County to the particular statement that Mr. Gagan made. In the papers what plaintiff is trying to

Boyd v. County of Erie  22-CV-519                69

say is that we submitted his deposition transcript in a voluminous filing appendix pursuant to the Court's local rule with regard to what's required for summary judgment.  The Court's local rule essentially says you need to give the Court what you've cited.

To the extent that he's referenced in the County's summary judgment papers, it's really just to say, hey, he was deposed as a part of the procedural history of this case.  I don't think that's going to give rise -- I don't think that's enough to say that we've meaningfully tied ourselves to his particular deposition statements.

The same reasoning would likely apply with respect to the trial statement.  And so the important thing to keep in mind with regard to deposition and trial is he's being asked questions by opposing counsel.  And I think the policy argument here is that we really can't be expected to parse every particular statement he's making to say, you know, we agree with this one, we don't agree with this one.  That's why it's plaintiff's burden under Rule 801 to come forward and show that the particular statement they'd like to offer is, in fact, admissible against the County.

So in that respect I think at this juncture the motion should be denied because plaintiff hasn't shown enough for any of the three exceptions under Rule 801.

THE COURT:  Have you found any cases that would be in

Boyd v. County of Erie  22-CV-519          70

support of your position, that even though Mr. Gagan testified at Mr. Walker's trial, given your intention not to call this witness, then plaintiff would be precluded from presenting either deposition designations or prior trial testimony?

MR. HARTSOUGH:  Off the top of my head, Your Honor -- and if the Court affords us the opportunity to brief the issue, we would likely take that opportunity.  Standing here I think I have to go back to Glendale on that point.  Just prior testimony from the case.

MR. JOEL RUDIN:  Your Honor, they had the opportunity to brief it.  That's what this is all about.

THE COURT:  Yeah.  I'll go back and look at your briefs --

MR. HARTSOUGH:  Of course, Your Honor.

THE COURT:  -- and go back and look at the cases you cited.  But I'm going to reserve on this.

MR. JOEL RUDIN:  Your Honor, can I just -- very briefly?

THE COURT:  Sure.

MR. JOEL RUDIN:  First of all, in their Rule 56.1 statement, which is Docket 166-1 at paragraph 114, they explicitly rely on his report and deposition on the issues of whether or not there were Brady violations and summation misconduct, and then go on to discuss his opinions at

Boyd v. County of Erie  22-CV-519                71

paragraphs 115 to 123.  So they did not just submit the deposition.  They refer the Court to it and relied on it.

Secondly, one of the cases that I cited, the ONTI, Inc. v. Integra Bank case, explicitly holds that when the party at a prior trial has called the expert as its witness, then the opposing party can then offer that testimony and the deposition that preceded it because they all were authorized.

And, finally, in response to Ms. Persico's comment, they've sort of said conflicting things about this issue.  At Boyd document 327-1 at page 21 the County stated, the County notes that if these experts, referring to Zeidman, Hirsch and Drob, are precluded it will likewise withdraw its expert witness, referring to Mr. Gagan.  They didn't withdraw him, and they didn't say they wouldn't call him.

And in another motion they -- and they are still referring to him as their expert.  So they still are married to him, as I've been saying.

And, finally, if the reasoning of all these courts is that once a party has indicated that a witness is expressing its point of view it's authorized him to speak for them and they agree with his point of view or her point of view and then they call that witness to testify, that's it.  You know, that's why all these cases are saying that even in a subsequent trial involving a different plaintiff or a different defendant, different party, you can now use that

Boyd v. County of Erie  22-CV-519                72

testimony because they have already manifested that the witness was authorized to speak for it and that they agreed with those opinions by offering them at a trial.  So the deposition is sort of analogous to a trial, but where they actually call him at trial as well, it just -- they are digging in even deeper.

I don't understand how they can now disavow the very testimony that they have repeatedly indicated expresses their point of view simply because for strategic reasons they think they're better off without the jury hearing from Gagan, that now all of a sudden nothing they've done in the past to offer Gagan's opinions and to indicate they agree with them any longer matters.  That can't possibly be the law.

THE COURT:  Okay.  And, Mr. Rudin, I understand your position.  Did you provide me -- just confirming -- the deposition designations that you would be seeking to admit for Mr. Gagan as well as any specific excerpts from the trial?

MR. JOEL RUDIN:  We did.  It's in our statement of trial issues, or wherever the designations appear for all the witnesses, it's there.

THE COURT:  Okay.  Thank you.

MS. PERSICO:  Your Honor, I just wanted to, just for the record, point out a couple of things.  And I missed your question that you asked Mr. Hartsough.

Boyd v. County of Erie   22-CV-519                73

THE COURT:  About the cases?

MS. PERSICO:  Yes.

THE COURT:  I just wanted to see if there were any specific cases that he thought supported your position that even when Mr. Gagan has already testified at Mr. Walker's trial if you are now giving your intention not to call him then plaintiff would be precluded in presenting the evidence they are seeking to admit.

MS. PERSICO:  And I think we do have -- I thought that may be what you had asked, and I did have a couple of notes about that.

So, first, I think plaintiff cites to the Capobianco -- I should be pronouncing that properly, but I don't think I am -- for the proposition that if you use -- you know, that summary judgment materials or depositions that are used in summary judgment are then automatically admissible at trial. That is not what that case says.  I'll let the Court look at it.  But that is categorically not what that case holds.  And I can find the language.  It's in our papers.

And I did also want to address the plaintiff's reliance on HTC Corp v. -- here's another tongue twister -- Telefonaktiebolaget.  I will spell that for you later on. But that case directly addresses an expert who had given testimony and prepared for at a different time for a different case.

Boyd v. County of Erie   22-CV-519                74

And I'm quoting here:  Although Kennedy's testimony may touch on the same general topic as another expert's, Kennedy's valuation was necessarily given for a different purpose and dealt with a distinct situation.  It had nothing to do with the present dispute.

Now, I am anticipating where the Court is going with, well, this is the same dispute, and I would counter that by saying if it was the same dispute, we should have consolidated the trials.  We're having plaintiff one and two, two separate trials.  We have two separate trials.

To then try and enforce whatever happened in a different trial, which was, by the way, at the plaintiff's request, and bind us to testimony in that trial in this trial after having steadfastly said that they are not the same, they can't be the same, they can't use the same evidence, there's different witnesses, et cetera, I think it is rather disingenuous.

And unless the Court has any questions we may -- Mr. Hartsough I think could probably give you some more case law in response to your question.

And, Ms. Odenbach, I will get that spelling for you.

MR. JOEL RUDIN:  Your Honor, that was a joint deposition for both cases.

THE COURT:  Okay.  Thank you.  I am just going to reserve on this.  I'm going to go back and look at all those

Boyd v. County of Erie   22-CV-519                    75

cases that were cited by both parties.

We can move on to plaintiff's motion to preclude defendant from introducing deposition testimony from City witnesses whose unavailability has not been established.  The County doesn't oppose the motion to preclude deposition designations of Paradowski and Reagan.  Therefore, plaintiff's motion is granted with respect to those two people.

Regarding Guadagno, do you have an objection to those designations?

MS. SILOS:  No, Your Honor.  Plaintiff agrees that the County has shown that Officer Guadagno is unavailable; and, therefore, does not need to call him live.

THE COURT:  Okay.

MS. SILOS:  We have objected to some of the specific portions of Officer Guadagno's deposition transcript that are designated, and we maintain our objections to those designations, but those are for reasons other than his unavailability.

THE COURT:  Okay.  That's fine.  Then I'm not going to go through the designations right now.

But as far as the preclusion, granting the plaintiff's motion to preclude with respect to Paradowski and Reagan -- and it seems that there's an agreement that Guadagno is not available under the law.  And so I will accept those

Boyd v. County of Erie   22-CV-519      76

deposition designations from Officer Guadagno.

So let's move on.  We'll do a couple more, and then we'll take maybe a half an hour recess for lunch.

Plaintiff's motion to exclude certain portions of the Gibson and Walker trial transcripts.

MR. DURLAND:  Your Honor, this is an issue that was raised and argued repeatedly in the prior case, and we're asking for the same relief that Your Honor granted before.

With respect to Mr. Gibson's transcript, disclosure in Gibson is relevant for Monell purposes, and that was the purpose that Your Honor admitted it before, and everything else in Gibson ought to be redacted as it was before.

And the County's arguments, I don't think they've changed much.  I don't think they have improved much.  They say that while Mr. Hulnick had the entire Gibson transcript, so that's all probative of facts that he knew or should have known, there's some overlap here with the question about what's a proper defense in a case like this.

I mean, first off, the Gibson transcript is 900 pages.  So there may be ten pages that relate to documents that we allege are Brady material that weren't disclosed to Mr. Boyd that were turned over to Mr. Gibson.  So there's no reason to admit the other 890 pages.  And in our proposal those pages that deal with those four documents, those are all unredacted.

Boyd v. County of Erie   22-CV-519                     77

And we obviously dispute the legal premise as well that if there are clues scattered throughout Mr. Gibson's transcript, that means that Mr. Hulnick should have followed up on them and interviewed witnesses and uncovered the Brady material himself.  I'll leave that for now because I know that's the subject of a separate motion.

The County argues that how the Gibson trial played out is relevant to favorability and materiality.  We entirely disagree.  I think, as Your Honor has already explained this morning, materiality is about what was withheld from Mr. Boyd's counsel and what evidence was introduced at Mr. Boyd's trial.  So this attempt to analogize to Gibson and to say that, well, because Mr. Gibson put on an alibi defense, an entirely separate alibi defense and that didn't work, that somehow means that all alibi defenses are destined to fail, that's not a proper argument.

The County also says that because Mr. Bittner, Gibson's counsel, didn't use the Brady material that was disclosed to him in the middle of trial, that means Mr. Hulnick's failure to use any of the material we allege as Brady, that's -- that doesn't mean that he didn't have it.  In other words, it stands for the generic proposition that a defense lawyer could get favorable material and not use it.

I mean, I think that's -- the probative value of that type of evidence is extraordinarily low.  Mr. Bittner and

Boyd v. County of Erie   22-CV-519            78

Mr. Hulnick are two different people.  These documents were disclosed mid-trial in violation of Brady.  He was not -- Mr. Bittner was not given an opportunity to properly use this material.  It was dumped on him seconds before he was about to start his cross of Mr. Woodruff, the most important witness in the case.

And there's obviously no need to put in the entire Gibson transcript to say that Mr. Bittner didn't use these documents.  We know he didn't use these documents, or, to the extent he did, that's all unredacted in our transcript.  The prejudice is extraordinarily high for the reasons we put in our papers.  I know the Court is familiar with them.

With respect to Mr. Walker, this is just the converse of the Walker case where certain portions of Mr. Boyd's trial transcript came in because they are relevant to nondisclosure and they are relevant to summation misconduct.  We are asking the Court for the same thing.  I don't see any reason why that wouldn't come in.

And just one comment about -- the only real specific objection that the County raises is that they say we've redacted -- we put in the sixteen-year-old black kid's plan comment, but we've redacted the portion of Mr. Jay's summation that Mr. Henry was responding to when he made that comment.  In their papers they say that Mr. Henry was responding to a racial remark that Mr. Jay made.

Boyd v. County of Erie   22-CV-519                    79

We have an objection to the legal premise that there's like a tit for tat rule.  We briefed this in the last case, Judge.  So I won't repeat that.

But the thing I really want to point out is in Mr. Blenk's closing he said the exact opposite.  He said that what Mr. Henry was commenting on -- and this is 2659 of the trial transcript -- he said that what Mr. Henry was commenting on was that the planning occurred in a non-formal setting using non-standard English, including I'm going to get some money and Andre is not going because he's a squealer.  The cultural reference, says Mr. Blenk, is in response to Mr. Jay's comments that suggest that some more formal or official planning was necessary.

I'm sure Your Honor remembers that Mr. Jay was arguing that, hey, John Walker, maybe he was there, maybe he was in the hallway, but he doesn't know they're going to rob somebody.  What he hears is I'm going to get some money.  Maybe he doesn't know who says it.  He's making the case that even if Mr. Walker was there, he wouldn't have known that a robbery was afoot.  He didn't participate sufficiently to be criminally culpable.  So this idea that they are going to try to inject some portion of Mr. Jay's summation having to do with race, we think it's directly contrary to what they've already argued is the real point that Mr. Henry was responding to.

Boyd v. County of Erie   22-CV-519                    80

We think Your Honor ought to make the exact same ruling as you did in Walker, it's just the converse, and that's what we're asking.

THE COURT:  Thank you.

Mr. Southard?

MR. SOUTHARD:  Good morning, Your Honor.

It's the County's position that the entire Gibson transcript be admitted because it's reflective specifically of what Mr. Hulnick knew or should have known at the time of the Boyd trial.

I know this is a point of contention between the two parties, but the case law shows that if a party is aware of essential facts that allow him to take advantage of exculpatory evidence, that that awareness of those essential facts means that evidence cannot be considered suppressed for the purposes of a Brady claim.  The entire Gibson transcript, including those passages which the plaintiff has redacted, are reflective of the knowledge that Mr. Hulnick had; and, therefore, it's relevant to any suppression analysis.

Plaintiff particularly in their papers points to -- tries to cut the legs out from under our materiality analysis, but it's about more than that.  It's about a suppression analysis, it's about a favorability analysis, and it's about a materiality analysis.  It's not just premised solely on a materiality analysis.

Boyd v. County of Erie   22-CV-519          81

THE COURT:  Okay.  Then why do you need to admit the whole transcript then?

MR. SOUTHARD:  Because it functions -- essentially, Your Honor, it's disclosure of not only the documents that were present at the Gibson trial, but also all of the information, all of the testimony, all of the witnesses that were present and testified at the Gibson trial; and, therefore, they would be reflective of and inform Mr. Hulnick's analysis concerning the underlying criminal trial as to Mr. Boyd.

As to the issues of favorability and materiality, the plaintiff has carefully redacted certain portions of the transcript that show that certain P-73s that were marked at the Gibson transcript -- particularly, the January 8th, 1976 P-73 concerning what they advanced in Walker as being a taxicab alibi -- they have redacted portions of the transcript particularly that show that that document in itself is not favorable.

If you recall from the Walker trial, Your Honor, that P-73 indicated that two cabs were dispatched from Fillmore Cab Company at about 11:28 and 11:44 in particular.  But the portions of the Gibson trial transcript which they've redacted cast that particular passage as not being favorable insomuch as, first, the Zacharys place Tony Woodruff not -- and John Walker not in a cab at 11:28 and 11:44 but rather in

Boyd v. County of Erie   22-CV-519                    82

their apartment.

Furthermore, the fact that -- the fact that Boyd here -- excuse me -- Mr. Boyd was positioned in the same posture as Mr. Gibson is relevant insofar as, just like in the Gibson trial, Gibson -- Mr. Boyd would not have received an alibi from the taxicab P-73, but he would have benefitted from Woodruff being in the taxicab insofar as there's an alibi for Woodruff and, therefore, he's not at the scene of the crime.  But as it happens, that portion of the transcript has been redacted, and the County submits that the entire transcript should be unredacted and admitted as whole, both as reflective of favorability analysis and materiality analysis, the materiality analysis being, particularly, as to what Mr. Hulnick understood the logical consequences and the logical -- the logical -- the logical consequences of those specific documents as being and particularly how they played out.

Again, you can see this through the P-73 with the taxicab records insofar as it's shown through the Zacharys' testimony that even though Mr. Bittner attempts to use the taxicab -- or excuse me -- use that P-73, it's used by Mr. Drury in such a way that he essentially -- without entering it, without admitting it, but essentially rebuts the testimony of Nathaniel Zachary and pretty much blows up the whole alibi.

Boyd v. County of Erie   22-CV-519                  83

So I think the materiality analysis is relevant insofar as it shows the way that the documents played out in a trial for the exact same crime as which Mr. Boyd was tried, and also in a defendant's posture which is identical to Boyd, particularly, with the taxicab alibis.

As to the Walker transcript that they've -- essentially they've framed this as a motion in limine, but really they are trying to admit certain portions of the Walker transcript that they deem admissible.  The County's position ultimately is that -- and this is pursuant to another motion in limine we currently have pending -- but the entirety of the Walker criminal transcript should be out.  It has no relevance to whether or not the Brady evidence was disclosed to Mr. Boyd. It has no relevance as to the Monell claim concerning summation because it postdates the Boyd trial by several months.  Accordingly, the Walker transcript should be precluded as a whole.

However, in the event that the Court does not agree with us and allows plaintiff to put in the Walker transcript, the entire transcript should be admitted in order to show discrepancies between the two trials for the purposes of defending our Monell claim.  But, as it happens, it's our position that the entire transcript should be precluded, but in the event it is not that the entire transcript should come in.

Boyd v. County of Erie   22-CV-519                84

THE COURT:  Mr. Durland, can you just first respond to the taxicab evidence in Mr. Boyd's trial?

MR. DURLAND:  Certainly.  So the taxicab P-73, what Mr. Southard is talking about is there are really two portions to this document.  There's a portion where the detectives report their investigation of the taxicab.  Not a word of that is disclosed on the record at the Gibson trial.

Then there's a portion where the detectives relate a prior conversation with Shirley Floyd, and that's the portion that is discussed at the Gibson trial.  And what Mr. Southard is saying is that Mr. Gibson put on a different alibi defense that put him somewhere else, and this document was disclosed to Mr. Bittner, this Shirley Floyd interview.  That's how it was portrayed in the transcript.  I'm giving this to you.

And then at later points in the Gibson trial Mr. Drury cross-examines a defense witness, Nathaniel Zachary, about -- and Allison Zachary as well I believe about the content of this report and these other police interviews.

So there are so many reasons why this has absolutely no bearing on favorability or materiality.  I mean, they are trying to use Mr. Bittner's I guess failure to use this document as like a backdoor opinion that this document wasn't worthwhile.  He had already decided on his defense.  And Mr. Drury, he turns it over, but then he uses portions of it that are irrelevant to this case.

Boyd v. County of Erie   22-CV-519          85

And I guess what the County is saying is we want to put on the testimony of Allison Zachary through the prior trial transcript, which is rank hearsay, and we are going to try to use that to show that this P-73 actually wasn't favorable because Tyrone Woodruff actually wasn't in the cab.  He was somewhere else.

I mean, that's the most obvious hearsay violation you could have, not to mention the fact that these are objective analyses.  It doesn't matter what Gary Bittner thought of this document in the seconds he had to review it before he stood up to cross-examine Tyrone Woodruff.  This is an objective analysis.

Does the document on its face -- is it favorable to the defendant?  The answer is obviously yes, and we're going to put that question to the jury.  But trying to inject Mr. Bittner's hurried analysis is simply impermissible.

The same is true of materiality.  The materiality analysis focuses on Mr. Boyd's trial, not the way that this played out in Mr. Gibson's trial.

And I think the point that Mr. Southard is pushing the most is, well, that this is all relevant to a suppression analysis because all of these facts are all facts that Mr. Bittner had.  I mean, I'm sure there are a lot of facts that Mr. Bittner had.  I'll bet he knows his kids' birthdays and he probably has read a number of books and that

Boyd v. County of Erie   22-CV-519                86

information is in his head, but it's not relevant to whether the document was disclosed.

I challenge Mr. Southard or anyone for the defense to say how is it that Samuel Page's testimony gives Mr. Hulnick any information about undisclosed Brady material.  We entirely dispute their characterization of the law.  I'm looking forward to walking through the Second Circuit cases they cite because they uniformly favor us.

But this notion that -- even if we accept for a moment the idea that disclosure at a prior trial, sure, at the very least it allows them to argue that Mr. Hulnick had the allegedly undisclosed Brady material, but the entire transcript coming in -- I mean, the vast majority of this has absolutely nothing to do with disclosure or anything of the sort.

THE COURT:  Okay.  I --

MR. SOUTHARD:  Your Honor, if I may respond very briefly.

THE COURT:  Sure.

MR. SOUTHARD:  The favorability analysis of that particular P-73 isn't couched solely on Mr. Zachary's testimony.  It's also based upon Gibson's testimony himself.  At that point Mr. Bittner had had that document in his possession, and the issue with that is not so much the portion of that P-73 that relates to the Shirley Floyd -- the

Boyd v. County of Erie   22-CV-519                87

Shirley Floyd interview, but it relates specifically to the fact that Woodruff -- that Gibson would have benefitted by the taxicab alibi for Woodruff in the same way that Mr. Boyd would have insofar as if Woodruff is in the taxi at 11:28 or 11:44 then he can't be at the scene of the Crawford murder. So the fact that that doesn't play out is relevant to the favorability analysis of that particular document.

In addition, I just point out very briefly that the transcript also is rebuttal to Mr. Zeidman's speculation about what a reasonably competent defense counsel would have done.  We see exactly in the Gibson trial how reasonably competent defense counsel uses these documents in a specific way or for the most part fails to use these documents and, therefore, it's very critical to a materiality and favorability analysis.

THE COURT:  Okay.  I'm not going to allow the entire Gibson trial transcript to be admitted at this trial.

Mr. Southard, did you provide the Court any specific excerpts from the Gibson trial transcript maybe beyond what you've already stipulated to that you would seek to be admitted?

MR. SOUTHARD:  No, Your Honor, not beyond our general position that the entire Gibson trial transcript should be submitted.

I will note that in Walker we did extensively document

exactly what portions of the trial testimony should be admitted. Obviously, Your Honor ruled on this particular issue by giving a ruling on the appendix that we had included in our final briefing on that issue. But, no, Your Honor. As to this particular summation, no.

THE COURT: Okay. And I recall the same thing. And so my request then is for you to go ahead and do that for this trial.

And so with the understanding that I'm not going to admit the entire Gibson trial transcript, if you could provide us with certain excerpts that you think should be admissible that go beyond what you've already stipulated to. Okay?

MR. SOUTHARD: Yes, Your Honor.

THE COURT: It would be helpful if you could give me a copy of what's been stipulated to, and then --

MR. SOUTHARD: Your Honor, it's my understanding that plaintiff has essentially stipulated to admission of the portions of the Gibson trial transcript that were also admitted in Walker. Obviously, we don't object to those portions of the transcript being admitted, but would supply additional portions that we think should be admitted for this trial.

THE COURT: Okay. That's fine. I just -- I'm not going to go through the Gibson trial transcript and figure

Boyd v. County of Erie  22-CV-519                89

out what would be helpful to you, what wouldn't be.  So if you could please go ahead and do that.  And I think you already did it for the Walker trial.  So if you could just submit that though for this trial, I will go through and rule upon those individual excerpts.

So just to kind of give you an overarching principle of what I will allow for the Gibson trial transcript, it's really what I did in Mr. Walker's trial, and I think it's already been agreed to by plaintiff.  So every instance where the prosecutor discloses or turns over evidence, whether they are say it's Rosario or Brady during Mr. Gibson's trial, that will be admissible.

Also, every line of questioning where Mr. Gibson's attorney might pursue a line of questioning utilizing that evidence, that's also admissible.

I don't agree with your argument, Mr. Southard, that we need to have the whole transcript so they know what was and wasn't disclosed during that trial.  If you want me to give an instruction maybe that -- or maybe you can stipulate that this was -- that the items that you heard about were the only items that were disclosed during the trial, then that's fine. I think that's -- I could read that to the jury after.  But I don't see why they need to have an entire trial transcript to make that conclusion.

So if you want to confer and come up with some sort of

Boyd v. County of Erie  22-CV-519                90

stipulation about that, then that's fine.

MS. PERSICO:  Your Honor, I just wanted to clarify one thing.

THE COURT:  Sure.

MS. PERSICO:  I think we are -- it is our position that everything should come in in a normal course of evidence.  We are not intending to simply, you know, drop the Gibson trial transcript on the jury.  Our position is that we should not be precluded from -- and sort of this wholesale pretrial circumstance -- that we should be precluded from seeking admission of sections that perhaps the plaintiff doesn't agree with.  And from what I understand from your ruling, if we get those to you, you will take a look at those.

I think our objection is, you know, more sort of on the flip side.  We don't necessarily believe that every word of the transcript should come in either, but the notion that we should be specifically precluded at this point before there's really any proof is I think the issue, and I think maybe we can solve that by further submissions.

THE COURT:  Okay.  Well, that's not how I took Mr. Southard's argument.  It seemed to me that he wanted the entire Gibson trial transcript admitted, but that's fine.

MR. SOUTHARD:  Well, Your Honor --

THE COURT:  I'm not going to --

MR. SOUTHARD:  Well, Your Honor, we're not seeking

Boyd v. County of Erie   22-CV-519                91

wholesale admission of the Gibson trial transcript at this juncture. We just don't think that we should be precluded from admitting -- or excuse me -- precluded from it down the way.

THE COURT: I mean, I'm not at this moment precluding anything because I don't have anything in front of me to rule on anything specific. So I gave you kind of the overarching principle that I'm going to follow when it comes to admitting or excluding certain portions of Mr. Gibson's trial transcript. But I guess I'll just leave it at that. And if you want to make an argument to admit certain excerpts, then that's fine, too.

MR. SOUTHARD: Thank you.

THE COURT: We're going to take a recess and come back at one o'clock.

(Recess taken.)

THE COURT: We're back from our recess. All parties are present. We're going to continue with plaintiff's motion to exclude evidence of alleged prior bad acts of attorney James McLeod.

MS. HUGHES: Thank you, Your Honor.

Your Honor, as in Walker, plaintiff moves to preclude the County from impeaching Mr. McLeod's character for truthfulness with evidence of prior bad acts. Plaintiff seeks the same ruling the Court issued on this matter in

Boyd v. County of Erie   22-CV-519                    92

Mr. Walker's trial, which precluded the County from mentioning the prior bad acts evidence at issue here.

The County offers no reason, and there is none for the Court to depart from its prior ruling excluding the prior bad acts evidence at issue here:  Mr. McLeod's decades-old struggles with prior substance abuse, the conduct underlying grievances filed against him to the Grievance Committee of the Eighth Judicial District, and the vague allegations of neglect of client matters by plaintiffs.  Such impeachment is not admissible under Rule 608.

First, substance abuse is inadmissible for impeachment as it does not involve falsity.

Second, any misconduct stemming from that abuse, substance abuse, that resulted in a censure is too remote in time to have any bearing on Mr. McLeod's present truthfulness.

And, third, any alleged neglect of client matters by plaintiff amounts to, as Your Honor previously found, an ineffective assistance of counsel claim, which is not a defense to Monell.

Finally, this evidence should be excluded under Rule 403 because, as Your Honor ruled in Walker, the limited probative value of this evidence is substantially outweighed by its prejudicial effect.

I'm happy to continue, but I want to be cognisant of

Boyd v. County of Erie   22-CV-519                           93

the fact that Your Honor has already ruled on this issue.

THE COURT:  Thank you, Ms. Hughes.

Ms. Persico?

MS. PERSICO:  Thank you, Your Honor.

For the most part, we will just rest on our papers on that, as we understand the Court's prior ruling.  However, we would point out that this is a non-party witness and any prejudice that might accrue to him based upon his appearing voluntarily as a witness, I don't think that that would rise to the level of any prejudice to any party.  And so other than that we will rest on our papers.

THE COURT:  Okay.  And I know there was a mention of a potentially -- a potential criminal conviction, but there was no evidence of that.  You haven't found anything, any disposition papers about a prior criminal conviction; is that right?

MS. PERSICO:  No.  I don't think there was, Your Honor.

THE COURT:  Okay.

MS. PERSICO:  We are more talking about just generally the idea of not being able to -- we don't have a criminal conviction that we want to impeach him with, but I do think that there are some credibility issues that the jury would be entitled to hear about.  I think maybe more so in this case than in the prior case.

His relevancy here is more significant than it was in

Boyd v. County of Erie   22-CV-519          94

the Walker case.  And I think that his credibility has always been a major issue in this case.  And, you know, while we don't intend to try to impeach him with any criminal convictions, I do think that the fact that he was publicly censured, I think the fact that there were other issues with regard to his representation of Mr. Boyd, in particular, are things that we should be at least allowed to question him about during his testimony.

THE COURT:  Okay.  Thank you.

I am going to grant plaintiff's motion to exclude alleged prior bad acts of Mr. McLeod.  I do find that those prior bad acts, quote/unquote, are remote in time, not probative or relevant to impeachment, as Ms. Hughes stated, impeachment or truthfulness today or currently.  And so I am going to grant the plaintiff's motion.

We can move on then to plaintiff's motion to preclude decisions regarding Mr. Boyd's postconviction motions and appeals and affidavits in support of those motions and appeals.

MR. DAVID RUDIN:  Good afternoon, Your Honor.

THE COURT:  Good afternoon.

MR. DAVID RUDIN:  So we filed a motion and the County filed a motion, as many of these cross-motions are on overlapping issues.  And here there are two basic issues I will address, collateral estoppel and the affidavit submitted

Boyd v. County of Erie   22-CV-519          95

by Mr. Boyd in his 440 motions.

So this Court already ruled in the Walker trial that collateral estoppel does not apply.  In its pretrial order the Court held, quote, once a conviction has been vacated decisions addressing postconviction motions have no preclusive effect, citing a number of cases.

The Court's ruling applies equally to Mr. Boyd as to Mr. Walker.  Both of their convictions were vacated in 2021. The County hasn't even acknowledged the Court's decision on this exact issue in the Walker trial in any of their papers, let alone addressed why it's incorrect or doesn't apply here.

As we explain further in our papers -- and I won't go into this in any depth at this point unless it would be helpful to Your Honor, but collateral estoppel doesn't apply because the same issues in question were not actually unnecessarily decided.  Mr. Boyd did not have a full and fair opportunity to litigate and the County has unclean hands. But because the vacatur of the convictions is dispositive of collateral estoppel, unless Your Honor has any questions, I will move on to the next issue.

THE COURT:  I don't have any questions regarding that issue.

MR. DAVID RUDIN:  The next issue is that the County seeks to admit in evidence entire documents submitted by Mr. Boyd or his attorneys in postconviction motions.  That,

Boyd v. County of Erie   22-CV-519          96

again, completely ignores this Court's rulings on the same issues in the Walker trial.

In Walker this Court recognized that statements made by the plaintiff, plaintiff's attorney or witness statements could be admissible, but only under certain conditions. Those conditions were that the County could not submit in evidence documents that signal to the jury that claims have been raised and rejected because this would be unduly prejudicial.

Your Honor ruled that the County could not introduce documents suggesting or alleging ineffective assistance of counsel because that defense is improper in this case.

Your Honor also ruled that the County must redact documents with evidence about prior bad acts by the plaintiff or his codefendants or other evidence that has no relevance to the claims or legitimate defenses in this case.

Your Honor indicated that the County must specifically identify in advance the portions it wants to introduce so that the Court could assess the relevance, if any, and the purpose and any undue prejudice, and, finally, that any excerpts from 440 materials must contain factual statements and not merely consist of legal argument.

Applying these principles from the beginning of the Walker trial, Your Honor ruled on page 166 to 167 of the transcript:  I will reiterate my previous rulings that any

Boyd v. County of Erie  22-CV-519        97

content or arguments or results of the prior 440 motions are precluded.  I did say that when it comes to Mr. McLeod's testimony the defense can cross-examine him or the fact that he may have failed to make certain arguments, but that does not allow evidence of what arguments were in the 440.

You can certainly cross-examine him on his failure to, for example, argue with respect to the missing photographs. So, just to remind everyone, 440 arguments or anything about them are not allowed during this trial.

The County's papers, again, don't even acknowledge this Court's ruling or make any showing why it's not applicable here in equal measure.  For that reason the County's motions to admit 440 affidavits, and, as I addressed earlier, for collateral estoppel should be denied.

THE COURT:  Thank you.

MR. SOUTHARD:  Your Honor, the County is not going to contest the plaintiff's position as to the collateral estoppel and re-litigation issues.  We would note, however, that the wholesale preclusion of documents that were submitted in support of the 440 motion is at this point premature.

Plaintiff has not pointed out particular portions of those documents that they deem are not admissible at this time, nor has the -- nor has the County in our essentially companion motion in limine sought wholesale admission of

Boyd v. County of Erie   22-CV-519                98

those things.  That motion was merely submitted to notice our intent and reserve our right to do so at a later date.  But at this point a ruling on the admissibility of those documents would be premature.

I would also note though that these -- those documents submitted in support of the 440 motions are adopted admissions by the fact that they were submitted to the Court by Mr. Boyd.  They have been adopted by him.  These affidavits that were submitted are sworn affidavits, and, as a result, they shouldn't be precluded outright.

The County has no problem with, in the event we anticipate putting them in, a preview and Your Honor's ruling on admissibility as to those particular submissions that we would seek admittance for.

THE COURT:  I mean, there were specific affidavits that you were seeking to admit, right?

MR. SOUTHARD:  Your Honor, we did not put in that motion the purpose of admitting those.  We noticed -- we were noticing our intent and reserving our right to do so at a later date.  But as to wholesale admission, that is not what we are seeking in our companion motion to plaintiff's motion in limine on this issue.

THE COURT:  Okay.  Well, I mean, I'm not going to wholesale preclude them, but then what -- what are we doing then?  I don't know.

Boyd v. County of Erie   22-CV-519                99

MR. SOUTHARD:  That's all we would -- that's all we would seek at this point, Your Honor, denial of plaintiff's motion as to wholesale preclusion of those documents submitted in support of 440.

THE COURT:  Okay.  Well, I'm not going to wholesale preclude them.  But I need you to provide me -- I mean, you've already provided me specific affidavits attached to 440 motions that I thought you were seeking to admit, okay, and now you are saying you are not at this point.  Then are you seeking certain excerpts from those affidavits?

MS. PERSICO:  Your Honor, if I may just respond to that.

I think the difficulty here is we don't know what we don't know.  We don't know what -- in making these motions we wanted to make sure that we were not hiding the ball, that we do intend when and where appropriate to introduce evidence.

Now, can we say with specificity right now without having the Court's rulings on many of these other motions?  No, we cannot.  But we did not want -- what we were doing is opposing preclusion of in a wholesale way postconviction materials because we don't know -- for example, since Professor Zeidman is going to be allowed to testify, there may -- and this is -- by no means am I stating this by reason of fact, just by way of example.  He may say -- who knows what, but we would like to be able to say -- you know, he may

Boyd v. County of Erie   22-CV-519                    100

make a wholesale statement about summation misconduct and then there may be a 440.  And this is absolutely not applicable here.  It's just an example.  But perhaps there's a 440 motion that was made wherein there was a decision that that specific summation misconduct was not problematic.

So I'm not saying by way of party admissions so that we can be precluded from that as well, but I just wanted to clarify that we think it's inappropriate to be precluding evidence before we have the Court's rulings on today's motions in limine in addition to those other outstanding motions.

MR. DAVID RUDIN:  Your Honor, if I might add one thing.

THE COURT:  Sure.

MR. DAVID RUDIN:  I mean, my understanding of motions in limine was to air out all evidentiary issues in advance so that the parties could plan their case understanding the scope of what's admissible or not for voir dire, for witness examinations, for openings.  I mean, Your Honor was abundantly clear in the last trial that the County has to identify specific portions of 440 materials because 440 motions would not be admissible wholesale.

The County submitted a lengthy motion on this very topic without identifying what should be admissible.  We responded, and we're here today to address this.  I mean, respectfully, the County had its opportunity to specifically

Boyd v. County of Erie   22-CV-519                    101

identify what it wanted to bring in.

Mr. McLeod testified on the same general scope of topics at the last trial.  Mr. Boyd will have deposition designations.  The County was present at his depositions and knows what we've designated.  There's very little surprise.  And I just would hope that to avert, you know, and with Your Honor's discretion, a situation where the County is dumping like extensive excerpts, you know, part way through trial that we could have addressed ahead of time here.

MS. PERSICO:  And Your Honor --

THE COURT:  Thank you.

MS. PERSICO:  If I may respond to that.

I think -- with all due respect, I think counsel has that backwards.  In fact, in document 388 submitted in opposition to one of our applications plaintiff's counsel does actually cite to a case that says the purposes of motions in limine are to preclude evidence, not to -- you are not forced to lay out all your evidence in connection with a motion in limine.  I can certainly find the cite.

But we're not intending to -- you know, we would like to know as much as we can before we get started as well, but, as the Court well knows, there are a lot of outstanding issues, and we can't possibly predict everything that we would need to preclude.  And I also don't think that there's a requirement that either party admit all their evidence in

Boyd v. County of Erie   22-CV-519                102

that motion in limine context.

THE COURT:  Okay.  So is there a particular issue that I haven't ruled upon that is preventing you from kind of offering certain excerpts from the 440s?

MS. PERSICO:  Several, yes, Your Honor.  We have an outstanding Rule 50 application from the Walker trial.  We have an outstanding Rule 59 application from the Walker trial.  We have an outstanding stay motion, and we have the related motions that we have not gotten through today.

So without having any guidance on any of those issues, it's difficult for us to say precisely what we need, nor, frankly, do I think that -- although it is convenient to be able to lay out everyone's proof beforehand, it's just -- at today's date it's not feasible.

THE COURT:  Okay.  Well, I don't see how Mr. Walker's pending motions affect that at all, but, like I said earlier, you need to get these motions in specifying the specific excerpts that you would like to be admitted in these affidavits.

MS. PERSICO:  May I -- I just want to inquire for a point of clarification.

We don't know all of the witnesses that are going to be testifying.  We don't know the -- you know, we don't know the designations of some of the people.  We don't know -- you know, we don't know -- we didn't know how the Court was going

Boyd v. County of Erie   22-CV-519                    103

to rule or whether we were going to be precluded from asking Mr. McLeod about his representation of Mr. Boyd.

And so I think we will do our best to get those things to the Court, but I do -- I think, you know, we can't try the case before we try the case.

THE COURT:  Well, and I get that.  And I'm not going to be unreasonable about it.  But you already submitted your deposition designations, right?

MS. PERSICO:  I'm not certain that we've submitted all of the deposition designations.  And I'm not entirely sure -- you know, those two things may not be -- may not go hand in hand.  Because, for example, some of the things that we might want to -- some of the materials that we might want to use that involve postconviction applications may be directed towards Professor Zeidman who will be testifying, and we now know that and we can, you know, rethink that.  I'm just saying that we just don't have it at the ready today, Your Honor.

THE COURT:  Okay.  Well, I need you to get those to me earlier than the day before you expect to put on this testimony or that the plaintiff is going to put on the testimony.  Okay?

MS. PERSICO:  Yes.

THE COURT:  Let's move on to plaintiff's motion to preclude County from presenting an apportionment defense and

Boyd v. County of Erie  22-CV-519                104

from presenting City policy evidence.

MS. SILOS:  Yes, Your Honor.  I'll be handling that motion.

Starting with the apportionment defense, Your Honor, plaintiff recognizes that this Court allowed the County to pursue the apportionment defense in the Walker trial.  We're not arguing that the current case is substantially distinguishable from the Walker trial on the issue of apportionment.  We understand that the Court is likely to adhere to its prior ruling.

In our papers we stated that we were moving to preclude the apportionment defense for preservation purposes.  And so we won't spend more time on that argument now.

However, the Court should grant plaintiff's motion in limine to the extent it seeks to exclude evidence of the City of Buffalo's policies, practices, training, supervision and discipline, what we refer to in our motion as the City policy evidence.  This evidence is not relevant to the apportionment defense that the County presented during the Walker trial, nor is it relevant to what the County says it will present in this trial.

In Walker the apportionment defense instruction that ended up going to the jury did not state that fault could be apportioned to the City, but instead that it could be apportioned to certain individual police officers for

Boyd v. County of Erie   22-CV-519                105

fabricating evidence.  The County argued throughout the Walker trial that it was pursuing an apportionment defense against the City as a basis to successfully admit certain policy evidence, but after the County rested and after we pointed out that the County had not come close to establishing a Monell claim against the City that could proceed to the jury, the County announced for the first time that its apportionment defense was not against the City but against -- but a claim for evidence fabrication by certain police officers.  Evidence of the City's policies, customs or practices is not relevant to that claim.

Similarly, the County's proposed jury instructions here is the same evidence fabrication claim against the individual officers.  The County's proposed jury instruction number 23, for example, states:  If you find that the County has shown by a preponderance of the evidence that any Buffalo Police Department employee or the department generally deprived Plaintiff Boyd of his right to a fair trial by fabricating evidence and forwarding the same to a prosecutor and that this caused the injury to plaintiff, then the County is entitled to an apportionment of fault.

Again, all of the elements of the evidence fabrication claim concern the conduct of individual police officers.  For example, the jury instruction number 23 proposed by the County also states:  The County is entitled to apportionment

Boyd v. County of Erie   22-CV-519                    106

if any Buffalo Police Department employee or officer fabricated evidence either intentionally or recklessly.

Even if there were some minimal relevance, which we don't believe there is, Federal Rule of Evidence 403 applies. The County can't try to shift the blame on the city officers by making the City itself seem like the bad entity.

While we haven't obviously gotten to trial yet, the County hasn't put forth any evidence.  There are several examples of exhibits on the County's proposed exhibit list that include City policy evidence.  For example, the counterstatement of material facts has statements, such as, the BPD had no written rules or policies as of January 1976 on appropriate practices for interrogating or questioning witnesses.  The complaints, the Boyd complaint and Walker complaint, are on their exhibit list as well.

And while the County just stated that they are not sure that their deposition designations that they submitted to the Court are the full list, the Guadagno deposition designations that they did submit include clear examples of City policy evidence that should be excluded as irrelevant.

For example, one of the designations states:

Question:  During your entire employment at the Buffalo Police Department were you aware of any police detective who was ever disciplined in any manner for misconduct in the investigation of a criminal case?

Boyd v. County of Erie   22-CV-519                    107

Answer:  None that I know of.

That's an example of what we're seeking to exclude as irrelevant.

There was also plenty of case law that shows that Monell evidence is irrelevant and/or unfairly prejudicial to Section 1983 claims against individual defendants.  And while those weren't in our papers, we're happy to provide those to the Court now, if the Court would like.

THE COURT:  No.  That's all right.  I understand your position.  I have some questions for defense counsel now.  Is there anything else?

MS. SILOS:  No, Your Honor.

THE COURT:  Okay.  Thank you.

What parties are you seeking an apportionment defense for?  Can you be specific?

MR. BLENK:  The parties that we pleaded the defense against, which are the City of Buffalo as well as the individual officers.

THE COURT:  All nine officers?

MR. BLENK:  Yes, Your Honor.

THE COURT:  Do you think that list could be limited?  I mean, we gave the jury a list of officers where I think some of them might not even have been -- were mentioned at trial.  Maybe they were very remotely.  So I'm not saying right now that you can't have all nine.  I'm just asking you, is it

Boyd v. County of Erie 22-CV-519                    108

reasonable to limit that list?

MR. BLENK: I'd have to give that some --

THE COURT: Each individual officer -- I mean, you have to show that this specific individual officer fabricated evidence. So you're saying that all nine of those officers fabricated evidence?

MR. BLENK: The plaintiffs said that. That's what the plaintiff's case -- the plaintiffs started the case with that allegation. The plaintiff has admitted to that allegation in their counterstatement of facts.

If that is an issue that was ripe for a directed verdict motion, that would be something that they could address at the end of proof, but I don't understand how at this posture we're having our claims whittled away when the plaintiff elected to proceed to trial with the claims that are in the case, which include our apportionment defense against the individuals and the City.

And I also don't really understand -- I disagree with the idea or I question the idea that limiting it to three officers versus six officers versus seven officers at all affects the prejudice of the arguments raised. The arguments are going to amount to fabrication by the individual officers. The addition -- the inclusion of one marginal or two marginal or three additional defendants does not provide -- does not create additional prejudice to any party.

Boyd v. County of Erie  22-CV-519                          109

THE COURT:  So different from what happened in Mr. Walker's trial, you are seeking to pursue apportionment against the City of Buffalo?

MR. BLENK:  We -- that remains an open issue in the case, and we may pursue that Your Honor, yes.

MS. SILOS:  Your Honor, if I may respond to that.

Their proposed jury instructions do not include a Monell instruction for the City.  Their proposed jury instructions are limited to the individual police officers. So they've already told us that they are not pursuing an apportionment defense against the City, but --

MR. DURLAND:  If I could just add to that, Your Honor.

The first element of a fabrication claim is the person alleged to have fabricated the evidence is an investigating official.  So, I mean, that's straight from Ortiz, the Second Circuit's recent case.  So the City is not an investigating official.  They removed from that their proposed jury instructions, but that is an element.  That's yet another reason why the City can't be a target of apportionment.

THE COURT:  I mean, I agree in that -- so why didn't you include the Monell instruction for the apportionment defense?

MS. PERSICO:  Your Honor, I will speak to that.

I don't -- I don't believe that we are under an obligation to bring a Monell cause of action.  I don't think

Boyd v. County of Erie   22-CV-519                110

that -- I mean, we are relying on -- and, of course, those are preliminary jury instructions.  As we can see from the last case, the jury instructions changed over time depending on the rulings.  I don't -- I think they are not meant to be binding necessarily, but I don't -- if we choose not to bring a Monell claim against the City of Buffalo, I don't know why we would have to apportion --

THE COURT:  Well, because the only way to bring -- you are basically saying that the City of Buffalo is a tortfeasor that should be --

MS. PERSICO:  We'll say an individual that -- we're naming the same parties that the plaintiff pleaded -- well, we're not naming anybody.  The plaintiff chose to plead the case against the City and the individual defendants.  We are seeking to apportion liability however the proof shakes out.

And if it doesn't -- I think, you know, in the last -- in the Walker matter I do recall at one of the pretrial conferences it was acknowledged by everybody that the claim -- that the apportionment claim is not a Monell claim.

THE COURT:  Well, not against the individual officers.

MS. PERSICO:  Obviously.

THE COURT:  But if you want to include the City of Buffalo, then, yes, it is.

MS. PERSICO:  And then we would, as we did, reserve our right to amend our jury charges.

Boyd v. County of Erie  22-CV-519                    111

THE COURT:  Okay.  So amend your jury charges so that you want to include a Monell claim against the City of Buffalo?

MS. PERSICO:  You know, Your Honor, we had not contemplated that particular issue at this juncture. Perhaps --

THE COURT:  From my perspective, the only way to include the City of Buffalo as one of the targets for your apportionment defense is if you allege that this was caused by a practice or policy by the City of Buffalo, and the Buffalo Police Department, which you also include, cannot be a target at all.  So we'll just take them off the list because --

MS. PERSICO:  Well, yes, it is an entity that cannot be sued, but if you name the Buffalo Police Department you are naming the City.  So they are the same.  If you want to take them off for housekeeping, of course, we have no objection to that.

THE COURT:  Well, I wouldn't say that it's just a housekeeping matter, but okay.

So right now you would like to pursue apportionment against the City of Buffalo as well as the nine individual officers?

MS. PERSICO:  Yes.

THE COURT:  Yes.  Go ahead.

Boyd v. County of Erie   22-CV-519                          112

MS. SILOS:  Your Honor, first of all, we have a couple of points in response.

The County didn't actually plead against the City.  It pled against any other tortfeasors.  Additionally, what we really want to avoid is a situation like during the Walker trial where the County basically pulled a bait and switch on the Court and argued throughout the Walker trial that it was pursuing an apportionment defense against the City as a basis to successfully admit this City policy evidence, which ended up not being relevant.

The -- it's our position that the County can't under -- you know, with no relevant Monell evidence can't put forward this apportionment defense against the City just for the purpose of getting this city policy evidence in, when we all know that there's no city policy evidence that they have.

MR. BLENK:  And, Your Honor, we haven't heard about a single piece of evidence that went in that was prejudicial to the case even as it turned out at the conclusion of trial. There's nothing that conflating these concepts is creating any sort of additional prejudice to the plaintiff that they've raised.

We're not -- we haven't, for example, introduced other -- in the Walker trial we haven't introduced other incidents of Buffalo Police Department conduct.  And I don't know if that would be prejudicial one way or the other

Boyd v. County of Erie  22-CV-519          113

anyway.  It's just a summary judgment motion that is being raised in a motion in limine.

THE COURT:  I think it's fair for everyone to know who the targets are before we start trial.  And so I'm going to require the defense to submit a written proffer of who the targets are for this apportionment defense and what evidence you expect to present regarding each individual officer as well as the City of Buffalo, which should include the Monell evidence, if you are seeking to pursue apportionment against the City of Buffalo.

MR. BLENK:  Understood.

THE COURT:  Okay.  And so you can submit that by Wednesday, next Wednesday.

MR. BLENK:  Yes, Your Honor.

MS. SILOS:  Thank you, Your Honor.

THE COURT:  Thank you.

MS. SILOS:  That's all.

THE COURT:  Okay.  Let's move on to plaintiff's motion to preclude prior bad acts of Mr. Boyd and his codefendants.

MR. HANFT:  Thank you, Your Honor.

We seek the same relief that the Court granted in Walker, exclusion of alleged prior bad acts of Mr. Boyd and his codefendants.  The County has not offered a basis to depart from its ruling -- for the Court to depart from its ruling in Walker.

Boyd v. County of Erie  22-CV-519                114

The County's attempt to admit this evidence is for the most part an attempt to play to racial prejudice and stereotypes to persuade the jurors that these were bad kids who are not to be believed, who committed the crime, who should go to jail.  And even if they didn't commit this crime, they should have been in prison because they likely did or committed others.

Much of our motion is not in dispute, but the County does not dispute on Rule 608 and 609 that these incidents are not relevant to impeachment.

On 404 the County has likewise conceded that if Your Honor adopted the guilt and innocence ruling that Your Honor did, they would not seek to admit that evidence on that basis.

The County's primary argument concerns damages.  First, the County argues that prior criminality is relevant to damages.  This is the same argument that Your Honor rejected in the Walker case.  The County has identified I think two new cases that were not briefed last time, but these cases actually concern discovery, and the magistrate judges in those cases explicitly did not hold that prior criminality was admissible evidence in a 1983 action.  There is no basis for Your Honor to depart from your prior ruling that Mr. Boyd's pre-incarceration criminal conduct is not relevant to damages.

Boyd v. County of Erie   22-CV-519                115

THE COURT:  Okay.  Thank you.  I understand your position.

I just want to say this:  I don't think it's necessary to try to imply that the defense is seeking this evidence because of racist motives.  I don't think any of you are doing that.  I think they are doing their job.  So I just think that doesn't help your argument.  Okay?

MR. HANFT:  Understood, Your Honor.

THE COURT:  Okay.  Go ahead.

MR. BLENK:  Thank you, Your Honor.

It's hard to think of an issue that is more different -- at least amongst the motions in limine that we have discussed today, it's hard to think of a motion that is more distinct in this case than it was in Mr. Walker's case. If we look -- so Mr. Boyd has four parole violations in addition to a long series of criminality after the time that he was released from prison the first time on parole. Plaintiff through Dr. Drob seeks to capitalize on that to piggyback his additional time incarcerated over the course of the subsequent two decades where he was incarcerated for approximately eight additional years.

This is what Dr. Drob is blaming on Mr. Boyd's incarceration:  Mental illness, substance abuse, economic difficulties, problematic behavior, physical conflicts, impulsive behavior, contact with police and the judicial

Boyd v. County of Erie   22-CV-519                116

system and failure to adequately adjust to society.  Dr. Drob juxtaposes those symptoms that manifest and cause his additional incarcerations -- he juxtaposes those symptoms against a beautiful childhood.  Those are his words, beautiful childhood.

We're in a position that we have to address the onset of substance abuse, mental illness, economic difficulties, problematic behavior, touch points to the police and judicial system.  The idea that plaintiff is going to gild the lilly and not just seek compensation for the time that Mr. Boyd was in prison but to then get additional compensation for the time that he was in prison again for violating and lost his parole and rely on this analysis to get there, it's farcical that we couldn't get into the circumstances of Mr. Boyd's life prior to his incarceration.

Throughout Mr. Boyd's parole history he has recurring problems with alcohol that are causing parole violations and other criminal touch points to the legal system.  Mr. Boyd specifically told counselors that he -- his heaviest use of alcohol was before prison, a pint of liquor a day, and when he returned from prison it returned to the same pattern. This is vital evidence that we need to get in to address who is actually the cause for Mr. Boyd's subsequent incarceration when he's losing parole privileges after his release.

MR. HANFT:  Your Honor, may I respond?

Boyd v. County of Erie  22-CV-519                    117

THE COURT:  Are you done, Mr. Blenk?

MR. BLENK:  I would just add all -- the entire twists and turns of his parole record, when plaintiff has put them so centrally at issue and is going to speak to the jury about specific time compensation for specific time in his life, all of those records are relevant, what's going on in his life while he is on parole, and that necessarily touches on his repeated touch points to the criminal justice system, that Mr. Boyd through his deposition designations would think that it's just consequences that are befalling him from on high, that there's these arbitrary and racist parole officers that are cracking down on him, when really he has habitual -- there's a habitual pattern of criminality that's going on in his probation history.  That has to come -- the jury has to see this to understand what's causing -- to understand both -- they're going to hear Mr. Boyd's account presumably, but understanding that there's more context to that from evidence from Mr. Boyd's own mouth.

THE COURT:  Okay.  Thank you.

Mr. Hanft, I tend to agree with Mr. Blenk regarding Mr. Boyd's postconviction bad acts.  I think that that evidence would go to damages.  I could maybe limit that testimony, but my inclination is to rule similarly as I did in Mr. Walker's trial as far as the prior bad acts before the conviction, which are very remote.

Boyd v. County of Erie   22-CV-519                    118

But as far as these parole violations, other bad acts after Mr. Boyd's conviction, I think that Mr. Blenk makes a good argument.  So if you want to respond to that, I'll give you a chance.

MR. HANFT:  Yes, Your Honor.

And, for the record, we were not disputing that where Mr. Boyd alleges that his parole was violated -- and we designate deposition testimony on those incidences -- the County can introduce their counter-designations showing them examining him fully.  We would say that all evidence still needs to be admissible.  They can't just dump parole records into the record without establishing all the requisite admissibility.  Many of these records are replete with hearsay.  So we would just maintain our objection to that.

We certainly agree that if we are affirmatively introducing an incident in which Mr. Boyd's parole was violated, the County is free to show its own cross-examination of Mr. Boyd from his deposition, just as it did in -- just as it could if he was testifying live.

Where the County didn't bring things up, where the County did not examine Mr. Boyd about it, they still need to show how this evidence is admissible.  And we are not going to have Dr. Drob testify regarding any incidents -- any specific incidents of Mr. Boyd's parole.  Dr. Drob's testimony regarding parole will just be limited to Mr. Boyd's

Boyd v. County of Erie  22-CV-519                 119

general experience of being a parolee.

THE COURT:  Okay.  So you're really just seeking to limit the amount or the evidence that comes in regarding these parole violations; is that it?

MR. HANFT:  Yes, Your Honor.  For parole incidents that we are claiming damages for, times he was violated and returned to prison, we agree that the circumstances of those incidents are relevant to evidence, but if they are incidents that he wasn't examined on, if they're incidents that we're not claiming damages on and the general records that were not shown to Mr. Boyd, we continue to believe those would be inadmissible evidence.

THE COURT:  Mr. Blenk, did you want to be heard any further?

MR. BLENK:  Your Honor, I think the entire parole records should be seen as admissible and we tend to get those in.  But I just want to -- I also don't think that we're limited to Mr. Boyd's own account of how things went with parole.  We're not limited to only talking about things that Mr. Boyd wanted to talk about.  That's about what we're talking about after his release.

I struggle to understand how Dr. Drob can advance an analysis that is based on a conclusion of onset of -- causal onset of mental illness, substance abuse, problematic behavior and physical conflicts and impulsive behavior as

Boyd v. County of Erie   22-CV-519                                    120

caused by the County when we have a person -- when the plaintiff was at the age of 12 he shot a gun into a house. He was drinking a pint of liquor a day at the age of 16 before his incarceration.  He attacked -- he shot a boy during the course of a robbery at the age of 15.  These are -- again, we're not fighting this -- we're not putting this at issue.  They have Dr. Drob coming in to dress up the damages theory with this analysis that's based on a causal connection to elements and symptoms of Mr. Boyd that are existing to an extraordinary degree prior to his incarceration and --

MR. DURLAND:  Judge, I think -- forgive me.  Sorry.  I just want to clarify since Dr. Drob is my witness.

I just wanted to clarify that the scope of his opinions is nothing like -- his report says all the material he considered, all the opinions he's reached.  What he's going to say is he's going to talk about PTSD.  It's a diagnosis that appears throughout the medical records.  He's going to explain that that PTSD comes from Mr. Boyd's incarceration.

He's going to talk about anxiety disorder.  He's going to talk about the reminiscence bump.  I think Your Honor recalls that testimony about why late teens to early twenties is a critical time in formation of memory and identity.  He's going to talk about depression.

He is not going to say that Mr. Boyd developed a

Boyd v. County of Erie   22-CV-519                    121

substance abuse problem because of his conviction, and he is not going to say that Mr. Boyd violated parole because he developed maladaptive traits in prison and that caused him to act in ways that violated his parole conditions.  All he's going to say are the things I just laid out along with his credentials and, you know, the testing and the experience of a person who believes himself innocent.

We're not going to be offering any allegation that, you know, Mr. Boyd is -- that his experience in prison caused him to become a certain way such that the County could then try to reach back into his past and say, oh, he was always that way.  That's not what we're doing.

And, you know, to the extent that they are trying to use our damages theories as their hook to get into all of these prior bad acts, well, we are offering limited damages theories tied to specific diagnoses, and we're not going in the direction that Mr. Blenk appears to assume that we are.

So, you know, I think that -- I appreciate the Court's point about if we say that he violated parole then, sure, they can get into -- if they have admissible evidence they can get into that parole violation, but they can't say, oh, let's go talk about other parole violations or other -- I think Mr. Blenk calls them touch points with the police.  If they didn't result in additional incarceration, then it's irrelevant.

Boyd v. County of Erie   22-CV-519                          122

Our point is part of the damage that he suffered was he was incarcerated for 20 years.  It seems like everyone agrees that, you know, that was causally related to the conviction.  He also developed mental illnesses as a result of his incarceration.  They don't have any theory that says that his mental illness was due to some, you know, other -- some other act like the dry cleaner robbery or something like that.

We also say that he violated -- he was subject to eight additional years of incarceration due to parole violations.  But that's just because he wouldn't have been on parole had he not been wrongfully convicted.  No one says that if you're outside your house that results in two years in incarceration other than the fact that it's a violation of his parole.  So that's the causal -- the causal connection we're drawing with these eight additional years on the parole violations is not that prison made him a way that caused him to violate his parole.  It's simply the fact that he was on parole because of the wrongful conviction.  So perhaps with that clarification I think it may make the discussion more streamlined.

THE COURT:  Okay.  Well, I'm going to preclude the prior bad acts of Mr. Boyd prior to his conviction, with all parties being on notice that it's possible that Dr. Drob's testimony could open the door to those.  From what Mr. Durland has said -- I don't think what Mr. Durland has

Boyd v. County of Erie   22-CV-519                    123

said would open the door to that, but it's possible it does. And so then you can raise that issue at the time.

MR. BLENK:  I'm taking this directly from Dr. Drob's report:  Causal connection.  One leads to the other leads to the next, leads to the parole violations.  Wrongful incarceration leads to posture of mistrust, impulsivity, aggressive action, blaming that on what happened to him from 16 to 36, and that's what in turn caused him after his release to engage in conduct, including physical conflicts with others and impulsive behavior, that, while not instrumentally criminal, resulted in contact with police and the justice system.  I'm using -- these are words that are coming from Dr. Drob.  I'm not making up this contact with police.  This is quoted from Dr. Drob's analysis.

MR. DURLAND:  Well, we don't have to offer that opinion though, Judge.

THE COURT:  Okay.

MR. DURLAND:  It's no different than if we decided not to seek damages for the parole violations at all.  They can't bootstrap their own bad acts by saying, well, Dr. Drob said this thing in his report, so we're going to try to elicit it from him and then introduce the additional evidence we want to put in.

I mean, their whole argument is tied to our damages analysis.  And that's fine.  They're allowed to say that.

Boyd v. County of Erie  22-CV-519                    124

But that also means that we're in control of what damages we seek.

We also didn't seek, for example, like loss of income over the years.  We don't have to seek that.  And if we don't, then they can't use loss of income as some justification to inject prior bad acts.

THE COURT:  I mean, I agree with that.  And you are not seeking to admit the report, correct?

MR. DURLAND:  Correct.

THE COURT:  So my ruling stands.  And everyone is on notice that the door could be opened.  And we'll just leave it at that.

So let's move on to --

MR. HANFT:  Your Honor, could we just ask that if the County believes the door has been opened they first raise it outside presence of the jury, for Your Honor to have that requirement?

THE COURT:  Of course.

Mr. Blenk, I'm assuming you would do that anyway.

So let's move on to --

MR. BLENK:  Yes, Your Honor.

THE COURT:  -- plaintiff's motion to preclude testimony from cold case detectives.  County does not oppose.  So that motion is granted.

The next one is plaintiff's motion to preclude

Boyd v. County of Erie  22-CV-519                125

defendant from asserting an improper defense to nondisclosure of Brady material.

MR. DURLAND:  That's mine, Your Honor.

You know, this was extensively discussed in the prior trial.  I think Your Honor has the point certainly about Lewis.

I just -- I do want to note three things about the cases that the County cites.  Most of them are highly favorable to us.  For example, the Leka case, it was a situation where it's similar to the type of argument that they want to make.  They want to say there were stray references to documents in the Gibson transcript, so Mr. Hulnick should have inquired.  And you knew who Larry Watson was and you knew who Debbie Jeffrey was, and so you should have interviewed them.  And I guess the idea is that Mr. Watson would have said I was the -- you know, the prime suspect in the police investigation and that would have been, you know, useful to Mr. Hulnick.

Leka, a situation very similar.  The defense knew that there was this off-duty police officer who had witnessed the crime, knew that that person had favorable evidence because all of a sudden the prosecution decided not to call him.  And the District Court said that's good enough.  You could have followed up.  And the Second Circuit -- this is a case that they cite, Your Honor.

Boyd v. County of Erie   22-CV-519                    126

The Second Circuit reversed and said it's the prosecutor's burden to make full disclosure.  The prosecutor never made specific disclosure of what Garcia had seen.  There is no doubt that the prosecutor had that information from the beginning of the case, and it is clear that the information was favorable to defense.  So there is really no question but that the government suppressed information that it was required to turn over.

The Barcelo case that the County cites, there the person who had the favorable evidence was a cooperator, but the Court makes clear to say the alleged Brady violation was the failure to turn over this information before a suppression hearing.  And the Court says, well, the prosecutor didn't have it at the time of the suppression hearing.  It was just information sitting in the cooperator's brain.  And because the cooperator is not akin to a police officer, the prosecutor isn't deemed to have that information as it would be if it was a police officer.  And when the prosecution did discover that this person had given favorable evidence, they were required to turn it over.  So, again, that's our point.

And the last case I want to mention Your Honor is DiSimone.  This is the case that the County cites for the proposition that, well, hey, look, this is all a jury question.  What's in the person -- what's in Mr. Hulnick's

Boyd v. County of Erie  22-CV-519                127

purview.  It's kind of vague.  So we should just kick all of this to the jury.  And that's absolutely not what the Second Circuit did in DiSimone.

What the Second Circuit did was remand for a factual hearing on whether the defense attorney had the favorable information itself, which we will have a jury trial on that.  That's fine.  Whether Mr. Hulnick actually had the favorable information, no problem.  But what they're not allowed to do is make an argument that, oh, Mr. Hulnick should have -- he should have followed this little trail of clues back to Debbie Jeffrey and somehow extracted from her the same information that she gave to the police.

The last thing I'll add on that is that even if -- even in a world where that were the correct view of the law, as you heard from Mr. Zeidman before, a big part of what makes the favorable information favorable is the fact that it was gathered by the police.  It is the fact that it was gathered from witnesses who had an obligation to tell the police the truth.  I mean, that's -- it's not just the information itself.  It's also kind of the packaging of the information.

So I don't -- I don't have to rest on that, but that's another -- you know, that's another point that I would make in terms of why this defense that the County is proffering is not a proper defense.

You know, we very much want the Court to make the same

Boyd v. County of Erie   22-CV-519                128

ruling that it made before.  I think the Court's ruling was clearly right.  There are a whole slew of Second Circuit cases showing that it was right.  And that's all I have to add.

THE COURT:  Thank you.

MR. BLENK:  Mr. Masse.

THE COURT:  Mr. Masse.

MR. MASSE:  Good afternoon, Your Honor.

So I think it's important to start out by framing this. We are not attempting, as plaintiff describes, to dilute the prosecutor's duty under Brady.  It's actually the other way around.  The knew or should have known defense is well recognized within the Second Circuit.  It's even recognized within pretty much all of the cases cited by plaintiff in their brief.  And it is, in fact, plaintiff who seeks to dilute the defense counsel's responsibility to conduct what amounts to a very basic investigation and their argument that should have known is essentially tantamount to actual knowledge or willful blindness.

As the Larson case that we cite to explains, you don't have to do the defense counsel's pretrial preparation for them to point out the obvious.  I think it's important to note that much of the information or much of the evidence that's at issue in this case is not buried by any meaningful sense of the term.  It didn't have to be uncovered.  It was

Boyd v. County of Erie   22-CV-519                    129

right in front of them.

I won't belabor the points too much, as it was subject to another motion that Your Honor has already listened to, but much of the evidence was inside of the trial transcripts from codefendants.  It was within the -- either the defendant's or codefendants' personal knowledge.  It was evidence from known key witnesses in this case.

Just a short aside on the Gibson trial transcript.  The idea that the length of the document was such an impediment to the discovery of the alleged Brady material within it is patently ridiculous.  Upon reading it it is manifest where the alleged Brady evidence is, and it's no more difficult a task to read through this transcript then than it is now, which both sides of this case have done.  That defense counsel couldn't be bothered to read such a document of such obvious import is not the fault of the County.

I also want to note that the Lewis case was decided decades after this underlying trial.  So the idea that the prosecution should have been aware of the standards articulated in Lewis is also -- does not follow.

And, lastly, this is at a minimum, Your Honor, a jury question.  I think Your Honor has heard colorable arguments from both sides about whether the defense counsel in this case should have known about certain documents.  We should not invade the province of the jury, and they should be

Boyd v. County of Erie   22-CV-519                    130

allowed to at least hear the arguments and decide for themselves on this issue.

THE COURT:   Okay.   Thank you.

Mr. Masse, I think that the cases that you just cited and the quotes that you gave us, they're not inconsistent with what Mr. Durland is arguing.  I think that those situations -- and I know we talked about this in Mr. Walker's trial, although, Mr. Masse, I don't think you were here for that.  Those cases seem to be that the defendant did have the Brady information and they should have known about it, but that they just didn't use it or find that within maybe the discovery they had.

And so I'm going to grant plaintiff's motion.  And just as I had ruled upon in Mr. Walker's trial -- and I'll cite Lewis again -- the defendant is precluded from making those kinds of arguments that they needed to do any sort of due diligence at all when they are provided with certain evidence.  And so I'll just quote Lewis:

The law imposes no duty upon the defendant who is reasonably unaware of exculpatory information to take affirmative steps to seek out and uncover such information in the possession of the prosecution in order to prevail under Brady.  The Supreme Court has never required a defendant to exercise due diligence to obtain Brady material.

And so I won't go on right now.  And I'll include that

Boyd v. County of Erie  22-CV-519                131

in my written decision, but that's the ruling of the Court.

MS. PERSICO:  Your Honor, we would just note our objection for the record.  I think that that is a criminal standard and not a 1983 standard, but we understand the Court's ruling.  We just want to note our objection.  Thank you.

THE COURT:  Exception noted.

MS. PERSICO:  Thank you.

THE COURT:  Okay.  Let's move on to plaintiff's motion to exclude testimony of Franco Kroese.  Is it Kroese?

MR. HANFT:  I believe it's Kroese.

THE COURT:  Kroese, Franco Kroese.

MR. HANFT:  Thank you, Your Honor.  I'll keep it brief.

We are seeking the same relief we sought last time.  We acknowledge Your Honor's ruling that Mr. Kroese was permitted to testify purely to the evidence he recalls being presented, and we ask for the same ruling here.

The issues are no different than they were last time. The only new information in the County's opposition is they quote some passages from Judge McLeod testifying as to the defense he put on.  None of those passages show him opining on what the jury thought, how the jury took the evidence.  It was merely him opining on the strategy he pursued and what he thought was important.  It does not open the door to a wide-ranging examination of the jury's feelings on

Boyd v. County of Erie  22-CV-519                    132

Mr. Martin's guilt or innocence.

So we merely ask Your Honor to choose the same ruling.

THE COURT:  Thank you.

Ms. Means?

MS. MEANS:  Your Honor, it sounds like plaintiff is not maintaining that Mr. Kroese should be wholesale precluded. So our opposition is also relatively brief, if that's correct.

We do think that he should be permitted to testify as a lay person pursuant to Rule 701 and to testify as to his mental impressions and his recall of the evidence.

We do maintain that Mr. McLeod's testimony crossed the line in Walker insofar as it did speak to issues bearing on innocence or purported innocence or purporting to opine as to the strength of certain evidence; and, therefore, to the extent Mr. McLeod opens the door in this trial, Mr. Kroese should likewise be permitted to testify as to his recall and his opinions on the strength of certain evidence.

THE COURT:  Okay.  Thank you, Ms. Means.

So Mr. Kroese may testify to his recollection of the evidence presented, the arguments made during the course of Mr. Martin's trial.  However, Mr. Kroese may not testify about why he and the other jurors thought Martin -- Mr. Martin was guilty despite his acquittal or the substance of the deliberations.  Mr. Kroese can't testify to his own

Boyd v. County of Erie  22-CV-519                133

mental kind of impressions of the deliberations or the guilt or innocence of Mr. Martin.

I wanted to touch upon Mr. McLeod, but are there any questions at all about the ruling regarding Mr. Kroese?

MS. MEANS:  No, Your Honor.

THE COURT:  Okay.  And so what I gather is that you are seeking Mr. Kroese's testimony to kind of rebut the expected testimony of Mr. McLeod.  And so I just want to be -- with respect to Mr. McLeod's testimony, Mr. McLeod is not permitted to testify why he thinks Mr. Martin was acquitted, nor is any other witness permitted to do that.

So Mr. Martin's trial is relevant as far as what evidence was introduced, whether, you know -- relevant to what evidence may have existed at the time or what was withheld from Mr. Boyd, allegedly withheld from Mr. Boyd, as well as how that alleged Brady material may have been favorable and material to Mr. Boyd's trial.

And so I know I mentioned this earlier, but Mr. McLeod can testify about how he had certain photographs, his strategy or how he used those photographs at Mr. Martin's trial and the fact that Mr. Martin was eventually acquitted. However, Mr. McLeod cannot testify about his opinion or speculate as to why the jury acquitted Mr. Martin or whether he thinks it was because of these photographs.  And so that is not permitted.

Boyd v. County of Erie   22-CV-519                134

And I think just -- I wanted to clarify that because I think that maybe the County's concerns about needing to rebut Mr. McLeod's testimony might be somewhat alleviated with that.

MR. BLENK:  I would just note, Your Honor, I think Mr. McLeod -- so we have four trials.  We have one trial that happens beforehand, which necessarily has to be -- we have to -- the County has to rely on it for disclosure purposes. We have the case at bar, and then we have two subsequent trials.

The Martin trial -- I don't see how the Martin trial -- I understand that Mr. McLeod -- so we would reject the idea that Mr. McLeod provides even competent Monell evidence by virtue of the fact that there's no -- the fact that an item was disclosed at his trial but not disclosed at a prior trial refutes a policy or custom relating to that evidence.

But if we're going to stipulate, which we will not, that the photographs are at issue as a Brady nondisclosure for the purposes of this case, I don't see why there's any reason that it can't come in more cleanly and less prejudicial that Mr. McLeod talk about what he experienced, talk about even that he relied on it in a defense because that supports his recollection of the photographs.  That goes to the existence of the photographs, which is really the only relevant thing in this case, the existence of the

Boyd v. County of Erie   22-CV-519                135

photographs.

To get to the acquittal, there's no relevance to the acquittal, and it just invites speculation by the jury that encourages some sort of materiality that should be on -- being made on the face of the document and by Mr. McLeod's description of the document and not on the outcome of the trial.

THE COURT:  Okay.  Do you want to respond to that last argument, anyone?

How about excluding the fact that Mr. Martin was acquitted but allowing Mr. McLeod to testify about the photographs and how he used the photographs at the trial?

MR. DURLAND:  I don't think that makes sense, Your Honor.

First off, I certainly don't hear the County offering to exclude the fact that Mr. Gibson was convicted and that Mr. Walker was convicted.  So I don't understand why the outcome would be excluded.  I understand that we can't make a sort of comparative analysis and say, aha, see, this just proves that the photos were material because that made the difference for Mr. Martin.

But, I mean, part of the reason that you need to -- it's parallel to the fact that Mr. Gibson was convicted, but then also that's the explanation for why there's no transcript is that he was acquitted.  It would look very odd

Boyd v. County of Erie   22-CV-519   136

to have all these transcripts from all these other cases and then say, well, for this one we don't have it, and offer the jury no explanation whatsoever.  And they can't say it's unfair since they're going to put in the exact same fact about Mr. Gibson and Mr. Walker.

THE COURT:  Okay.  Let me -- I'm going to reserve on just that very specific issue about whether there can be evidence of the acquittal of Mr. Martin.  But, other than that, Mr. McLeod can testify to what I've already said as well as Mr. Kroese.

Okay.  Let's move on to plaintiff's motion to preclude defendant from referencing the impact of any judgment on taxpayers.  The County does not oppose.  So that motion is granted.

Plaintiff's motion to preclude reference to witness Timothy Drury's judicial career.  That -- does anyone want to be heard on that?

MS. MEANS:  Your Honor, we'll rest on our papers.

THE COURT:  Okay.  That motion is granted.

And just to add -- and I can't remember exactly how he testified, but, I mean, he can testify to all of his years practicing.  He just can't mention his judicial career.  But I don't think there's going to be any kind of blank, you know, time where we don't know what he was doing.  So he can definitely testify about practicing the law during that time.

Boyd v. County of Erie  22-CV-519     137

Plaintiff's motion to preclude testimony regarding false alibi instructions in criminal trials. Your argument on that?

MR. SHARMA: Good afternoon, Your Honor.

Our position is that any testimony implying that Mr. Boyd's defense attorney would not have used specific pieces of suppressed evidence because of a risk of a false alibi instruction should be precluded from the Boyd estate trial. Such testimony would be wrong as a matter of law.

Firstly, none of the Brady material at issue in this case actually amounts to alibi evidence as to Mr. Boyd. Evidence of John Walker and Tyrone Woodruff in a taxicab at the time of the murder was, of course, alibi evidence for John Walker, but it does not directly exculpate Boyd. Rather, it is favorable evidence for Mr. Boyd because it impeaches Tyrone Woodruff's account that he witnessed a murder.

The County concedes that the taxicab timing evidence isn't alibi evidence in its papers, and its papers point to no other piece of alleged suppressed evidence that could be alibi evidence.

Second, in any event, even if any of the Brady material at issue here did constitute alibi evidence, its use cannot possibly risk a false alibi instruction because under New York law such an instruction is only warranted if there is

Boyd v. County of Erie   22-CV-519                    138

evidence of fabrication by a defendant independent of the evidence used to prove the defendant's guilt.

In New York this principle goes back to at least 1934 when the New York Court of Appeals decided People v. Russell, 266 N.Y. 147, cited in our papers.  In this case none of the evidence at issue suppressed by the prosecution was generated by Darryl Boyd.  So the prosecution couldn't have conceivably argued that Darryl Boyd fabricated it.  The County offers no argument in response at this point either.

For these reasons any testimony that Brady material would not have been used by Mr. Boyd's defense attorney due to the risk of a false alibi instruction would be wrong as a matter of law, and we request that the Court grant our motion.

THE COURT:  Thank you.

MR. SHARMA:  Thank you.

THE COURT:  Mr. Blenk?

MR. BLENK:  Yes, Your Honor.

It's certainly the case that the argument, as it was developed in Mr. Walker's trial, would not have an application here where Mr. Boyd put on two alibis that were in contradiction to each other.  And we plan on discussing that and addressing that in the course of materiality.

We don't specifically intend to -- we don't -- it would be unlikely -- we would not get into it in the same way that

Boyd v. County of Erie   22-CV-519                    139

we got into it in Walker, with the point being made in Walker that a defense counsel is going to be hesitant by virtue of this threat and that could explain why something could have been in Mr. Jay's possession and not turned out -- and not be used in a defense -- in the defense's actual case.  So they are two different issues.  The motion should be denied. There's no --

THE COURT:  So as of now are you intending to bring up false alibi instruction?

MR. BLENK:  We intend to bring up the idea of false alibi as evidence of culpability and how a jury would have seen evidence of contradictory alibi that was put in front of them at the underlying trial.  That's what happened in Mr. Boyd's trial.

THE COURT:  Was there a false alibi instruction given at Mr. Boyd's trial?

MR. BLENK:  No.

THE COURT:  So okay.  So you are intending to raise an issue regarding an alibi not being true or credible, but are you intending right now on referencing this false alibi instruction that wasn't presented to the jury at Mr. Boyd's trial?

MR. BLENK:  I don't anticipate discussing false alibi instruction, but for the fullness of disclosure I do anticipate the idea that the jury -- that we would be making

Boyd v. County of Erie   22-CV-519                    140

arguments that contemplate the idea that a contradicted alibi -- what was in essence a false alibi advanced by Mr. Boyd at the trial would be seen as independent evidence of guilt and it's properly considered in a case of this nature.

I included a cite to United States v. Nunez-Rios where they are balancing a posttrial motion against the existence -- for the purposes of materiality they are balancing it against the existence of a defendant's own repudiated alibi.

THE COURT:  Okay.  Then at this point I am going to grant plaintiff's motion to preclude any testimony regarding the false alibi instruction.  That's different than what you're trying to argue right now.  And so I'll just leave it at that.

MR. BLENK:  Understood, Judge.

THE COURT:  And if you want to -- well, I'll just leave it at that.

MR. BLENK:  Thank you, Your Honor.

MR. SHARMA:  Thank you, Your Honor.

THE COURT:  Okay.  So the next motion is plaintiff's motion to admit certain Monell evidence.

MR. JOEL RUDIN:  Your Honor, this also relates to the County's motion to -- I guess they are seeking some further specificity about what our theory is, and --

MS. PERSICO:  I'm sorry.  Joel, could you turn your mic

Boyd v. County of Erie  22-CV-519                    141

on?

MR. JOEL RUDIN:  It's on, but --

MS. PERSICO:  Sorry.

MR. JOEL RUDIN:  I gather the County's motion is for certain specificity as to what our theory is and to require us to relate the evidence that we intend to offer to that theory.  I think I'm going to touch on that in my remarks about our motion.

THE COURT:  That's fine.  I mean, we can address both kind of right now.  I think they're related.

So my question first, Mr. Rudin, is all of the Monell evidence that you are offering, is that -- that's filed in Mr. Boyd's docket too?  Is it filed -- it was filed in both dockets at the time; is that right?

MR. JOEL RUDIN:  Yes.

THE COURT:  Okay.  I just want to make sure that -- and this goes for this and any other motion, just to make sure if you're referring to an affidavit or whatever, just make sure that it's filed in Mr. Boyd's docket.

MR. JOEL RUDIN:  Yes.

THE COURT:  Okay.

MS. PERSICO:  If I could just interject.

Mr. Rudin, if you could tell us where that is.  That has been one of the sticking points.  We don't -- in the application the Monell evidence that they are seeking from

Boyd v. County of Erie  22-CV-519                142

Walker to admit in Boyd, other than the new cases that are included, is not identified.  And so we would like to know if it is filed somewhere else where we might see it.

MR. JOEL RUDIN:  I think, Your Honor, in the course of my argument it will become very clear what our evidence is and where it is.  I mean, it seems to me that what is happening here is that the defense is conflating the idea of what a plaintiff is entitled to put forward as a Monell theory of liability and what evidence should be admitted to prove that theory.

They have not cited a single case that holds that the plaintiff is constrained from pursuing any particular Monell theory.  Particularly, a theory of a policy, practice or custom to withhold or condone the withholding of Brady material or a policy, practice or custom of engaging in summation misconduct.  They don't cite a single case that even suggested any such theory is overly broad.

What they have cited are cases, all but one of which are in the 12(b)(6) context, where courts have held that in light of the pleaded facts in a complaint that the theory -- the broad theory or relatively broad theory that a plaintiff has outlined in a complaint is not plausible.  And so every single case that they cite, with the exception of Greene v. City of New York, the Second Circuit case that's unpublished, is a motion to dismiss a complaint on the basis that the

Boyd v. County of Erie  22-CV-519                143

Monell theory has not been shown to be plausible because of the absence of factual allegations in the complaint that would make it plausible.

Greene v. The City of New York, which is the only -- the one case that they cite which is a summary judgment case where there's been discovery, is exactly the same way.  The Second Circuit holds that -- not that the theory of Monell liability, the County's indifference to its Brady obligations or -- the County's indifference to its Brady obligations is invalid, but that the evidence that the defense put forward after full discovery was insufficient to make out that theory, and that theory was not a policy or practice.  It was deliberate indifference.

And in the Greene case where there was no evidence cited, like in our case, of direct admissions by prosecutors or an expert of practices or policies that their conduct was consistent with, but rather two cases -- two prior Brady violations, one ten years before and one six years before, involving dissimilar conduct on a failure to train theory under Connick as opposed to a policy and practice theory.  The Second Circuit held in an unpublished opinion that that did not establish the theory that had been pleaded or that was the plaintiff's theory.

Again, they have not cited a single case that says that a theory of indifference to Brady or policy or practice of

Boyd v. County of Erie  22-CV-519                    144

condoning or allowing Brady violations to occur is overly broad and should be precluded as a matter of law, which is essentially what they are suggesting the Court should do.

And if Your Honor considers the evidence that we presented in the Walker case that we're going to present now, Your Honor will recall that in the Walker case virtually every kind of Brady material was allegedly withheld.  We're talking about exculpatory evidence that somebody else committed the crime.  We're talking about impeachment material.

We had a total of 21 items of evidence.  Impeachment material of every sort going to motive, bias and interest, prior inconsistent statements, recantations, that Woodruff could not have seen what he allegedly claims to have seen because he had already gone home in a taxicab.  It's impeachment material of every kind.

And Drury testified that his Brady decisions prior to trial and during trial were consistent with all office training and practice.

ADA Henry testified with respect to the Walker trial that he also -- that his Brady decisions also were consistent with office training and practice, and he, too -- the evidence shows and the jury found -- suppressed every type of Brady material one can imagine, the same ones that had been suppressed by Mr. Drury, even more.

Boyd v. County of Erie  22-CV-519      145

Mr. Henry also testified as a 30(b)(6) witness at his deposition and he admitted to an unlawful policy or practice of limiting Brady to exculpatory evidence and requiring a specific request before any kind of Brady had to be turned over, which encompasses all types of Brady material.

And Mr. Gagan testified at his deposition, and Your Honor allowed it to be introduced into evidence, as we suggest you should do in this trial as well, that the Erie County DA's office had a practice to withhold every type of Brady material, any Brady material, impeachment or exculpatory, that the prosecutor had a subjective disbelief of, any Brady material that was not the subject of a specific request, which covers all Brady material and all impeachment evidence.

So the district attorney certainly given his position should have been aware, had to have been aware of an office-wide policy and practice of those kinds.  He should have been aware of the kinds of Brady suppression that Mr. Drury testified was consistent with the practices and policies of the office.

So the evidence is overwhelming, if you accept our evidence that the office had a practice of violating Brady in every which way, and therefore, a theory that is along the lines of that evidence is certainly appropriate, and we cannot be precluded from pursuing our theory.

Boyd v. County of Erie   22-CV-519                    146

Your Honor denied summary judgment on their argument that we didn't have enough evidence to prove our theory.  The issue is whether or not -- the proof is in the pudding.  Either we prove our theory at trial or we don't.  If we don't prove this theory, then Your Honor will grant a directed verdict for the other side or the jury will not accept our case.  But if we do prove our theory, then we're entitled to have the jury evaluate that theory.

I mean, it also happens that several of the policies that there are admissions -- direct admissions of are unlawful policies, where that alone would establish causation, and the three subjects that I just mentioned are all unlawful policies.  But our overarching theory is that the office condoned and had a practice of committing Brady violations and doing nothing about it.

So the next question is what kind of evidence should we be allowed to offer in support of that theory, and this is where our motion really comes in.  We suggest that the six cases that Your Honor admitted in the Walker trial, the Brady violations, should be admitted in this trial as well.

As I just indicated, the kinds of Brady violations that the office -- I'm sorry -- the kinds of Brady violations that were committed in this case covered virtually every kind of Brady obligation, evidence of innocence, alibi impossibility, recantation, third-party culpability.  The Simpson store

Boyd v. County of Erie   22-CV-519                    147

evidence which impeached Woodruff, the taxicab evidence. This is evidence that third parties have, people who haven't testified, that the prosecution has an obligation to disclose because third-party or extrinsic evidence on a material point can be used for impeachment, the extent to which the undisclosed evidence showed police dishonesty, which tainted the overall integrity of the case.

So the violations were of every kind.  And so by definition the Brady violations that were reported in these six cases that Your Honor allowed in had to have related to the kinds of Brady violations that we allege happened in our case, but more to the point they tend to show a deliberate indifference and a policy of condonation by the district attorney to Brady violations of all kinds.

They're not temporally remote.  One of them was before the trial.  Four of them were -- four or five of them were decided -- the articles or the Court decisions were within three or fours years.  One was one year and one was two years.  But all of them were within three or four years of the Boyd trial, but they all involved trials that occurred either before or almost contemporaneously with the Boyd trial.

So to the extent that they are admissible to show a custom or practice, they clearly -- they clearly come in because, as the Court correctly held at the Walker trial

Boyd v. County of Erie   22-CV-519                148

based on a lot of case authority, posttrial evidence showing practice should be admitted because it will allow a jury to infer that the same practice and the same state of mind of a district attorney existed at the time of the trial.

One of the cases they cite, Chepilko, was directly on that point, that post-incident cases are relevant to a policy or practice claim.

With regard to summation misconduct, we established in the Walker case and will establish now based essentially on the same evidence that the Erie County DA's office had a broad policy to commit or tolerate the commission of summation misconduct.

The seminal case on this is Bellamy v. City of New York, which was decided about five or six years ago, where the Second Circuit made clear how this kind of claim should be analyzed.  You look at all the summation misconduct in its entirety and then evaluate whether or not the various instances of summation misconduct considered cumulatively or as a whole served to violate a criminal defendant's constitutional right to a fair trial.

Every case has a different combination of summation violations.  I've been an appellate lawyer for many years, and I can't even think of any summation misconduct case where any appellate court in New York State has reversed a conviction because of one mistake.  It's always a combination

Boyd v. County of Erie  22-CV-519          149

of mistakes.  And to require that every other case of summation misconduct that we want to introduce to show a pattern or to show condonation or deliberate indifference has to involve exactly the same kind of summation misconduct and only one form of summation misconduct would make it impossible by definition to ever prove a constitutional violation given that one violation really makes out a constitutional violation.

Again, as with the Brady, you know, we're entitled to define our theory.  Our theory is that the Erie County DA's Office had a policy and practice of committing summation misconduct or tolerating or condoning summation misconduct in order to achieve convictions.  And then the issue is whether or not we have the facts to prove it.  And Your Honor is called upon to decide whether or not certain individual cases that I'm going to discuss should be admitted because they tend to prove that theory.  If they tend to prove that theory or even one part of the theory if they're relevant, each case doesn't have to prove the entire theory.  It can just be relevant to prove one element of the theory.

And just to drive home the point, Mr. Drury even more than Mr. Henry in the Walker case committed virtually every kind of summation error.  He made knowingly false and misleading arguments, especially the argument that there was no collusion between -- in presenting the testimony of Hough

Boyd v. County of Erie   22-CV-519                150

and Woodruff when he knew but didn't disclose that before they testified in the grand jury that the police had taken Hough's new story and presented it to Woodruff who then adopted it.

He argued facts not in evidence.  For example, he argued that Officer Delano had he called him would have given the same testimony as Detective Guadagno.  He became an unsworn witness in representing to the jury why he didn't call Delano.  He expressed personal opinions and vouched for his witnesses after giving that string of adjectives for describing Mr. Woodruff.  He said that he believed him.  And there were other witnesses as to whom he expressed a personal belief.

He made all sorts of inflammatory comments appealing to racial prejudice.  The County disagrees.  But that's our position.  And I think it's fair to make that argument from his summation.  He ridiculed the defendant and defense witnesses throughout his summation.

And then he testified that his summation conformed to office training and practice, which establishes that the office had a training and practice that's consistent with his summation misconduct.

Mr. Henry gave the same testimony as to his summation, that it was consistent with office practice.

Mr. Gagan testified both in his deposition and at trial

Boyd v. County of Erie   22-CV-519                    151

that Henry and Drury's summations were consistent with office policy and practice.

Cosgrove, his excerpts, he admittedly never disciplined summation misconduct, despite the knowledge.

It has to be presumed, I think, the widespread, unlawful practice that Drury, Henry and Gagan's testimony established.

THE COURT:  Mr. Rudin, I'm sorry to interrupt, but I'm very familiar with your position.  I just want to make sure we have enough time to get through all of the motions.  If you could just kind of finish up.

MR. JOEL RUDIN:  So the seven summation misconduct cases from Walker that we submit should come into this trial for the exact same reasons.

I just want to highlight a few additional case that are in our motion, and a couple that are in our exhibit list but not in our motion.

One of them is the Conorozzo case.  That's where -- it is particularly relevant because it was a pre-Boyd trial ADA Drury case where, according to the newspaper article, he engaged in coercive conduct with a witness by suggesting to the witness that he name the two defendants as the people who were present and committed the incident -- it was an assault I believe -- and then threatened the witness with a perjury prosecution if he deviated from that testimony.  It seems to

Boyd v. County of Erie   22-CV-519                    152

me that that is sufficiently probative -- probative of the issue of causation in particular.

If Mr. Drury was not disciplined, which he was not, and there was no disciplinary inquiry after that article -- those articles appeared in two newspapers about that case.  No disciplinary inquiry by the DA, even though he was alleged to have coerced a witness and then threatened a witness with perjury.

It's certainly reasonable to infer that he believed he could engage in the coercion of Woodruff and Hough and not disclose his own coercion, that he could not disclose the police coercion, and that he would have threatened a witness with a perjury prosecution and not disclosed that.  If he got away with the conduct in Conorozzo, despite its publication in the newspaper, he would have reason to think he could get away was this misconduct in the Boyd case.

In the Williams case, which isn't in our brief, also a Drury case, he cross-examined the defendant about a dismissed rape charge, which the Court said poisoned the atmosphere.  This was similar to the Boyd case where he poisoned the atmosphere with racial comments and demeaned the defendant and witnesses and made a number of other comments.

THE COURT:  Okay.  Mr. Rudin, you don't need to go through any more specific cases.

MR. JOEL RUDIN:  May I just -- Your Honor, may I just

Boyd v. County of Erie   22-CV-519                   153

bring to the Court's attention several cases that -- I'll just give the PX number if Your Honor could look at them.

THE COURT:   Sure.

MR. JOEL RUDIN:   PX-158 was Ranni's conduct as reported in the newspaper article about the Mordino case.  People against Ketchum, which is an appellate division decision in 1984 finding grievance misconduct, although not reversing.  And our position is if the Court doesn't reverse, that doesn't mean that the conduct isn't deserving of sanction when it's called out like that by an appellate court.

People against Weston is a 1976 case.  I'm sorry.  Ketchum is PX-144, and Westin is PX-166.

Just one more case.  The appellate division decision in Mordino, PX-157 at page 207, where the office acknowledged that ADA Ranni's conduct was indefensible.  I'm sorry.  That was not -- yeah, that was Ranni.  And yet apparently there was no disciplinary action.

Thank you, Your Honor.  I'm sorry for going on so long.

THE COURT:   Thank you, Mr. Rudin.

Ms. Persico?

MS. PERSICO:   Thank you, Your Honor.  I do always enjoy counsel's learned opinions, although I still don't know what the claims are.

So except for the prior claim that -- sort of this anything goes claim, which I think has been endorsed by

Boyd v. County of Erie    22-CV-519                 154

plaintiff's counsel in several instances in several of their motions -- and I'll just briefly address those, but I think just to sort of -- I'm not certain how to address -- how to respond in a manner that is cohesive with Mr. Rudin.  So I'm just going to do my own thing, if the Court is okay with that.

THE COURT:  That's fine.

MS. PERSICO:  So plaintiff has asked this Court to admit Monell evidence.  As I noted, ideally we'll be able to figure out what that Monell evidence is that they're talking about other than the cases cited.  We can talk with plaintiff's counsel about that.

But, as a broader concept, I just want to address a couple of things that Mr. Rudin said.

This Court knows well the law on Monell, has written on it, has listened to us drone on about it for far too long. And while we're not trying to tell the plaintiff what they can or cannot -- what theory they can try and bring their claims under, but we are trying to advise the client -- I mean advise the plaintiff that some theories are not permitted.

And so I would take issue with the fact that -- Mr. Rudin said that, you know, we cited to 12(b)(6) cases talking about, you know, what is proper or improper Monell theories.  That is not the case.  We were very specific.  In

Boyd v. County of Erie   22-CV-519                155

fact, we cited to I think one of the -- one of the most controlling and clearest Brady violation cases in recent memory, and that would be the Connick case.

And I do have to point out -- there's a couple of things. Plaintiff does admit at document 352 on page two, footnote one that they are still advancing what they have acknowledged is a -- that this Court doesn't endorse an anything goes theory, sort of that all of the prosecutorial misconduct in the world can be actionable right now in connection with this case, and we have gone over why that is not -- or at least the Court's draft decision addressed that, but what I want to specifically point out is there isn't any case law to support the concept that you can bring a successful Monell claim if you just use a scattershot approach and try and, you know, sort of just say all prosecutorial misconduct that ever came in that had anything to do with anything is now going to be reflected in our Brady violation claim.

And one of the cases that very much cites that point is Connick v. Thompson wherein the Court said, we granted certiorari to decide whether a DA's office may be held liable under 1983 for failure to train based on a single Brady violation. We hold that it cannot.

Now, I understand that plaintiff is trying to say that the range of Brady violations alleged in this case is so

Boyd v. County of Erie  22-CV-519                    156

broad that you couldn't possibly narrow it down and that it is just Brady violations.  Now, again, we did cite to cases that address exactly that.  In fact, we cite to the Jones case, that's Jones v. The Town of East Haven, which the plaintiff cited curiously to say that the Jones case approved a theory of a policy of deliberate indifference to the abuse of rights -- abuse of the rights of black people that could be supported by police misconduct, different from the misconduct alleged in that case, such as varieties of physical force, abusive language, harassment and unlawful stops.

I have to point out to the Court that that is precisely not the holding in Jones.  Similar representations or I should say misrepresentations were made about Connick, but I won't go into that.  But, specifically, in Jones because the Court went -- took great, great care to identify the reasons that the incidents that were cited by the plaintiff in that case were not sufficiently similar, I think it is instructive in this case.

So in the Jones case -- I'll be brief about this, but the plaintiff was advancing a theory that the municipality had a custom and practice of abusing the rights of black people.  And in that case the Court went through the various incidents -- which I won't go through on the record now, but went through the various incidents that the plaintiff put

Boyd v. County of Erie   22-CV-519                157

forth at trial.  This case had gone to trial.  Not a 12(b)(6) motion.  It had gone to trial, and then it was -- it had been -- you know, they were unable to establish a Monell claim based upon the abuse of rights of black people.

The Court went through -- just bear with me briefly.  But, you know, they went through a number of different scenarios that the plaintiff entered into evidence in the trial, one of which was a traffic stop.  There were a couple of other ones.

But one that the Court went into detail about was there was a message on a T-shirt worn by police officers while they were playing at a softball game or something.  And the chief knew about the message on the T-shirt, which was disrespectful, and the plaintiff put that forth as offensive behavior by the police department towards African-Americans.  And the Court said, essentially, yeah, it was disrespectful, but it's not the same as being able to show an inclination on the part of the officers to abuse the rights of black people.

And so this is -- I raise this because I think it's important to maybe finally put this issue to at least some common ground.  The plaintiff can make any claim they want.  We're certainly not trying to say that you can't make whatever theory you want to make.  But the plaintiff can't change the law, and the law holds that, you know -- which is evidenced by the Jones decision that the Court made when --

Boyd v. County of Erie  22-CV-519                158

went out of its way to make a very clear distinction that although definitely the messages on the T-shirts were evidence of disrespect and regrettable, they did not rise to the level of abuse of the rights of black people, nor were they similar, right?  It wasn't the same thing.

And I know the plaintiff wants this to be a case that can encompass everything, but it really isn't.  And so, you know, I think that just as -- you know, just as the Court just said, that if the defendants are going to be raising issues relative to our apportionment defense, that we need to sort of lay those out and say what the claims are and tell the Court and plaintiff's counsel what those are.  I think that that is what we've been looking for all along.  You know, what are you claiming.  Because plaintiff's jury -- proposed jury instructions, while I acknowledge are not necessarily binding, they indicate their theory of a custom and practice and a theory of deliberate indifference solely on the failure to discipline issue.  And so if those are the issues, then those are the issues.

But I would point out in reviewing the other motions through the course of this flurry of in limine motions -- in fact, in advocating the need for Hirsch to testify as an expert the plaintiff says that he's necessary to abut our apportionment defense, but what was I think troubling, and it really I think underscores the urgency of a ruling from this

Boyd v. County of Erie   22-CV-519                 159

Court, is that the plaintiff says, and this is a quote, while the Boyd estate could oppose this apportionment defense by denying that detectives fabricated evidence at all, it will instead argue that detectives did coerce Woodruff and Hough into giving fabricated evidence and that the County was complicit.  So, now, are -- that made me wonder, is this now a conspiracy to violate plaintiff's civil rights between the BPD, the City of Buffalo, the police officers and the County?

And I think, you know, as we indicated in our papers, which plaintiff kind of scoffed at but I think would actually be useful is a preliminary hearing to understand what evidence is directed at what claim because just like -- just like it's fair for the plaintiff to -- and the Court to understand what it is that we are going to be submitting in terms of support of our apportionment defense, whether that, you know -- which parts of the complaint, et cetera, which, you know, we will do by Wednesday, as directed by the Court, I think that it would really clarify for everyone where we're going with this case because I don't -- you know, this is -- what I was just talking about, the complicit and coercion by the police is sort of a new thing.

I think that just saying that somebody did something wrong at some point and the Court admonished them for it, although didn't reverse the conviction, I think is a significant point because, as the Court well knows, it has

Boyd v. County of Erie   22-CV-519                    160

to -- the prior conduct has to be the same in the sense that it violated a constitutional right.  It can't just be an ineffectual error by one person.  It has to be a significant deprivation of a constitutional right.  And I think that that -- if the reviewing criminal court didn't reverse the conviction and didn't determine that there had been something that rose to the level of requiring that, which then I think is not a constitutional violation.

I'm channel surfing a little bit here trying to keep an eye on the time.  But what I think we are asking for is the plaintiff to identify once and for all what their claims are.  And they can be whatever they want them to be, right, but we are entitled to know what they are and we are entitled to know what proof plaintiff intends to support them.

Thank you.

THE COURT:  Okay.  Thank you.

I mean, we've gotten a little bit away from the original issue, which was the Monell evidence.  I think that example that you just raised about the conspiracy -- the new conspiracy theory, I believe that is regarding plaintiff arguing that there was kind of a superseding intervening cause in response to your apportionment defense.  Am I right?

MR. JOEL RUDIN:  Yes.

THE COURT:  Yes.

MR. JOEL RUDIN:  That Drury had knowledge of what the

Boyd v. County of Erie   22-CV-519                161

police were doing.

THE COURT:  Okay.  So just to make a note that that's what that is.

MS. PERSICO:  Well, maybe --

THE COURT:  So that's not a new theory.  That's in response to your apportionment defense.

MS. PERSICO:  But -- I'm sorry to interrupt, Your Honor, but that was in connection with an affirmative motion about why they need their expert to testify.

THE COURT:  Yes, if I allow your apportionment defense.  And I understand that.  So, I mean, I'm not going to rule on that yet because we still need to hear from you as far as your proffer for apportionment.

But, anyway, I want to just go back to the Monell evidence.

I am going to issue a written decision regarding what's admissible.  Just so everyone is aware, I am inclined to make a very similar ruling as I did in Mr. Walker's case, but I want to have that written down.  I think that at least for the other decisions in the Erie County DA's office, I think I did that orally, and I want to get that in writing.  And, of course, there's other Monell evidence that plaintiff is offering, such as in deposition designations, and I don't know if my decision will include all of that.  I think that will come when I give my rulings on those specific deposition

Boyd v. County of Erie   22-CV-519                   162

designations, but at least kind of the overarching policy for what's admitted as Monell evidence.

MR. JOEL RUDIN:  Your Honor, I don't mean to interrupt. I just --

THE COURT:  Go ahead.

MR. JOEL RUDIN:  There's one point that -- it's an important point that I overlooked.

People against Ashley and some of the other cases we're asking Your Honor to admit.  Even though you did not at the Walker trial, I think it's important for -- I would ask Your Honor to consider that Mr. Cosgrove testified in his deposition excerpts, that were admitted before and that I believe will be admitted now, that he did not condone misconduct, that he engaged -- that he would discipline misconduct.

And so I think that the extreme misconduct that Mr. Drury engaged in in Ashley and that was manifested in some of the other cases we've asked Your Honor to sort of add to the evidence that we can admit goes to show that Mr. Cosgrove's testimony was untrue because, in fact, he tolerated that misconduct no matter how bad it was.  And I think Ashley is -- it's true that Ashley doesn't involve similar misconduct to this case, but it involves such extreme misconduct that it tends to negate and contradict Mr. Cosgrove's testimony, which, otherwise, is unimpeached.

Boyd v. County of Erie  22-CV-519                   163

THE COURT:  Okay.  Yes.  We're going to get to that.  I think when we get to defendant's motion regarding People v. Ashley, I understand your position.  You are seeking that for more impeachment purposes for Mr. Cosgrove.  So we'll get to that in a few minutes.

MR. JOEL RUDIN:  But that also is true for some of the other cases as well, Your Honor.

THE COURT:  Okay.  And I did see that.  And I will address that in the written decision.

So let's move on.  So defendant's motion to preclude re-litigation and to admit postconviction applications.  I don't think we really have to go into that because we've already addressed it.

I know defense counsel is going to provide any specific excerpts from affidavits with respect to 440 motions, hopefully as soon as possible, so I can make a ruling on that.

Defendant's motion to preclude certain deposition testimony of Edward Cosgrove.  And this was regarding Mr. Cosgrove's testimony about being kind of the chief law enforcement officer.

Go ahead, Mr. Southard.

MR. SOUTHARD:  Yes, Your Honor.  Thank you.

Your Honor, as you're aware, defendant has brought a motion to preclude Mr. Cosgrove's testimony, essentially

Boyd v. County of Erie   22-CV-519                164

stating that because he was the chief law enforcement officer at Erie County, he was thereby considered to be the head of the Buffalo Police Department at the time of the investigation of the Crawford murder.

Your Honor, this statement is prejudicial insofar as it is demonstrably false.  Mr. Cosgrove was not the head of the BPD at the time of the Crawford investigation.  In fact, at the time of the Crawford investigation Thomas Blair was the head of the Buffalo Police Department.  And, as Your Honor is aware, Leo Donovan was head of the Buffalo Police Department's homicide unit.

Your Honor, a juror is not going to be able to differentiate between two very distinct entities, one of which Mr. Cosgrove had no policy-making authority over.  And Mr. Cosgrove is saying -- if Mr. Cosgrove's statement, which is demonstrably false, is allowed to come in to evidence, again, these are two very obviously distinct entities.

Mr. Cosgrove, while he was chief law enforcement officer for Erie County, was not the head of the BPD.  Mr. Cosgrove -- saying he was chief law enforcement officer and therefore the head of BPD would be akin to the Attorney General of New York State saying that she was the head of the New York Police Department because she is the chief law enforcement officer for New York State, and we know that just simply isn't the case.

Boyd v. County of Erie   22-CV-519                    165

We have provided -- excuse me.  I understand that plaintiff has objected to our motion in limine on the basis that they say it is relevant to our apportionment defense, but there is no testimony concerning Mr. Cosgrove that was developed in the course of his deposition which indicates any connecting nexus between the interrogations of Andre Hough and Tyrone Woodruff and any instruction or cooperative resources or collaborative -- or collaborative resource that may have been afforded to BPD.  There's just simply no causal nexus there.

There was no -- they had every opportunity to develop Mr. Cosgrove's testimony to that end in their questioning of him.  They did not.  What Mr. Cosgrove is simply speaking to is the fact that ADAs were available as resources to Buffalo police officers when it comes down to interrogation. Mr. Cosgrove had no policymaking or no decisionmaking authority as to the specific means and methods by which BPD officers interrogated witnesses.

I would also note that in plaintiff's own complaint they do not implicate any ADA or implicate the Erie County District Attorney's Office in any way.  They allege when it comes to the Hough testimony -- excuse me -- when it comes to the Hough confession that it was the result of coercion by Detectives Guadagno and Deubell.

With regards to the Woodruff confession on January

Boyd v. County of Erie  22-CV-519                166

12th, 1976, they allege that it was Manista, Arnett and Chief Leo Donovan himself.  Chief Leo Donovan who, as Your Honor is aware, was the chief of homicide at the Buffalo Police Department, somebody with actual decisionmaking and policymaking authority with regards to the policies implemented towards interrogating witnesses.

Your Honor, the prejudicial effect of Mr. Cosgrove indicating something that simply is not true, indicating -- which implies that he had some decisionmaking and policymaking authority over the BPD's interrogation practices, should be precluded outright.

THE COURT:  Thank you.

Plaintiff?

MR. HANFT:  So I'll just start at the end, Your Honor.

Whether a fact is true or not is a matter for the jury to decide, not for Mr. Southard to decide.

Mr. Cosgrove stated, and I quote, I'm the head of all the police departments, and I supervise the Buffalo Police Department with respect to how they interrogated witnesses. So a relevant admission on a key issue by one of their witnesses.

They don't like the admission.  That doesn't mean they can't exclude it.  They have raised a bunch of things that they say suggest this was false.  I don't think any of them actually suggest this was false.  We never said there was not

Boyd v. County of Erie  22-CV-519                    167

a Buffalo Police Department commissioner.  Mr. Cosgrove testified he was the head of all the police departments, implying he supervised each police commissioner.

The Attorney General issue -- in fact, the Attorney General of the United States is the supervisor of the FBI. So, I mean, it's quite often the case that legal personnel oversee investigative functions.

Mr. Gagan also testified that police departments are frequently supervised in interrogation by assistant district attorneys.

With regards to the allegation that we didn't say that ADAs were involved in the coercive practice, just a minute ago Ms. Persico said we did make that statement, and we did. ADA Drury was directly involved in these interrogations, and we've used that to rebut the apportionment defense.  And Mr. Cosgrove's statement supports that rebuttal by suggesting that Mr. Drury was doing exactly what Mr. Cosgrove wanted him to do.

In short, this is relevant evidence on a disputed issue.  I haven't heard any legal authority cited for why it would be inadmissible beyond the fact that they say it's prejudicial.  But just because an admission is damaging to a side does not make it improperly prejudicial.  It's not likely to inflame the jury.

THE COURT:  Do you think that -- if the defense does

Boyd v. County of Erie    22-CV-519                    168

not pursue apportionment, would this be relevant at all?

MR. HANFT:  It would be a closer issue.  And we'd have -- we'd think it would still be relevant just given Mr. Cosgrove's involvement overall in overseeing the misconduct that went wrong here and Drury's role in the underlying conduct.

THE COURT:  Okay.  I mean, I'm not sure about that.  I do think that if there's -- if the defense does pursue an apportionment defense, then I think that it would be admissible.  So I'm going to reserve decision on that.  I think it really kind of hinges on whether the defense is going to pursue apportionment.

Let's move on to the next motion, the defendant's motion to preclude the Central Park Five reference. Plaintiff does not oppose.  So that motion is granted.

Defendant's motion to limit reference to cancer and physical injuries.  Did you want to be heard?

MR. MASSE:  Yes.  I'll be taking that one, Your Honor.

So I wanted to start by outlining the potential prejudice of bringing this information in.  Cancer is uniquely prejudicial insofar as it is a common and ubiquitous type of terminal illness.  Almost every juror will have some aspect of their life that has been impacted by this, whether they know family or friends that have suffered from this.

Additionally, the plaintiff concedes that the County

Boyd v. County of Erie   22-CV-519                    169

had absolutely nothing to do with the development of cancer. They are not causally related to the cancer developing; and therefore, this is irrelevant.

The plaintiff's theory upon which they claim that this cancer diagnosis has probative value, the problem is that there is simply no limiting factor to this theory.  As they put it, the cancer compounded the psychological distress that was already existent from the period in which he was incarcerated.  There is literally an infinite universe of conceivable misfortunes that could come in under this framework.

If he had lost a leg in a car accident, now it's already bad, but it's even worse because he missed out on opportunities to hike or to travel or to ride a bicycle while he was in prison.  If he developed cataracts, you know, it's bad, but it's even worse because he was in prison and didn't get to see as many sunsets when he was in prison.  There's no reason to turn this case into a separate trial about everything bad that happened that's completely unrelated to the allegations against the County defendants in this case.

Additionally, the cases cited by plaintiff are easily distinguishable.

Firstly, the Wedyke case, W-e-d-y-k-e, that involved a plaintiff who already had cancer at the time that the injuries happened.  It's a case of a classic eggshell

Boyd v. County of Erie  22-CV-519                    170

plaintiff in a slip and fall case where she was claiming that her skin cancer -- essentially the existence of that caused additional injuries when she slipped and fell.  In this case it demonstrates precisely the flaw in the plaintiff's theory of admissibility insofar as the eggshell status only happened long after, decades after, the alleged harm.

Additionally, in the Nielsen case they discuss how cancer can be relevant to plaintiff's case because it can impact life expectancy, whether that person has an ability to work or whether any of their physical pain is due to the cancer as opposed to physical injuries that they sustained in the underlying case.  None of those issues are present in this case.  All of the reasons which the Nielsen Court articulate as to why a cancer diagnosis could potentially be probative and, therefore, admissible is completely inapplicable here.

And it is additionally worth pointing out that in the Nielsen case it was actually the plaintiff that was seeking to keep the cancer diagnosis out, and it was precisely the opposite case here.  And the Court mentioned that the plaintiff had put his physical condition at issue by alleging a foot injury sustained when he was caught in between two rail cars, and, once again, that's not the issue here.

Thank you.

THE COURT:  Thank you, Mr. Masse.

Boyd v. County of Erie  22-CV-519                    171

MS. SILOS:  I'd like to respond to the County's points one by one.

The County mentioned that the cancer diagnosis had nothing to do with Mr. Boyd's incarceration.  We agree. We're not arguing that.  We're arguing that it's relevant to his damages.  It's relevant to his damages because, as we stated in our papers, Mr. Boyd spent over four decades incarcerated or under parole supervision until his conviction was vacated.

During the final fifteen months of his life, which is more than twenty-five percent of his adult life as a free man, Mr. Boyd battled a terminal illness, cancer, that exacerbated his psychological suffering, placed enormous stress on him psychologically and resulted in a compounding of his feeling that the life he hoped to live was taken from him by his years of wrongful imprisonment, which Dr. Drob will testify to.

The County mentioned that there's no limiting factor to damages, this infinite universe of misfortunes.  I think the County brought up the example that, you know, if Mr. Boyd was injured on a bike that would maybe be relevant, but it's different here because with cancer it's reasonably foreseeable that when the County violated an individual's constitutional rights in a murder case that that individual could go to prison for 20 years to life, and even if they

Boyd v. County of Erie  22-CV-519                    172

ever got out on parole, it would be at an older age where it's reasonably foreseeable that illness could limit their life as a free person.  So it's reasonably foreseeable here that an older person who went away on a murder charge would come out and that illness could limit their life as a free person.

The County also attempted to distinguish our cases. The first case that they mentioned was Wedyke.

We agree that the plaintiff in that case already had cancer.  The County mentioned that, you know, it was relevant because it was under an eggshell plaintiff theory.  That's actually not why the Court held that the cancer diagnosis was relevant in that case.  The Court held that it was relevant to the plaintiff's damages -- well, first of all, the Court held that it's relevant background information which will allow the jury to know the plaintiff and may be helpful in their analysis of her credibility.

The Court also held that it's relevant to a determination of her pain and suffering damages claim as they may explain how her injuries have impacted her daily routines and how her injuries after the fall may have exacerbated whatever pain and suffering was owing to her skin cancer. That's very similar to what we have here, which is cancer compounding with the injury caused by the County.

THE COURT:  Ms. Silos, I have a question regarding the

Boyd v. County of Erie   22-CV-519          173

other physical injuries.

MS. SILOS:  Sure.

THE COURT:  So aside from the reference to Mr. Boyd's cancer diagnosis --

MS. SILOS:  Yep.

THE COURT:  -- were you seeking to offer any evidence of other physical injuries?  I think there was reference to like back pain, high blood pressure, hypertension and kidney disease.  Are you seeking to offer evidence of those, and, if so, under what basis?

MS. SILOS:  Right.  So I think that with respect to the other physical ailments besides cancer, there's really two groups.  The group that the County addresses in its motion are injuries that they argue we're claiming are caused by Mr. Boyd's incarceration.  So, for example, the back pain is a long-lasting injury, and the County's argument is that we can't say that that back injury was caused by Mr. Boyd's incarceration without, you know, medical testimony.

We're not seeking to admit testimony or evidence of Mr. Boyd's back injury.  We're not seeking to admit testimony or evidence about any injury that we're saying is caused by Mr. Boyd's incarceration.  However, that does not include testimony or evidence which we are planning to provide in Mr. Boyd's deposition designations regarding the conditions of prison.

Boyd v. County of Erie   22-CV-519                     174

So, for example -- I believe one example of this would be Mr. Boyd mentions mold in the showers and how he, you know, had a foot fungus because of the mold in the showers. That's not -- we're not claiming that he had a long-lasting injury that was caused by this mold.  He's just merely testifying about conditions of prison.

The second group of health conditions were ailments or illnesses that Mr. Boyd contracted after his release from prison.  This set of health conditions -- again, we're not in any way claiming that these health conditions were caused by Mr. Boyd's incarceration in any way.

For example, Mr. Boyd suffered from kidney disease. And this is similar to Mr. Boyd's cancer diagnosis, really are relevant for the same reason, are relevant to his damages because they exacerbated his depression and sense of loss of his freedom, and it's foreseeable that someone who went to prison on a life sentence would come out and be older and not experience life in the same way as a young person would.

THE COURT:  Okay.  Thank you.

MR. MASSE:  Your Honor, could I just respond to a few points?

THE COURT:  Sure.

MR. MASSE:  Firstly, the two cases cited by plaintiff, once again, they are concerning how the cancer diagnosis interacts with other physical injuries that were sustained in

Boyd v. County of Erie   22-CV-519                                    175

those cases.  And also, once again, the cancer diagnosis was pre-existing at the time the injuries that were sustained. These are important factors which distinguish those cases.

Furthermore, I wanted to mention that the plaintiff notes that the cancer diagnosis would be probative insofar as providing an explanation for why the plaintiff was grimacing during his deposition.  There's absolutely no need to talk about what his cancer was in order to explain that.  I mean, that symptom is entirely compatible with a stomach ache as well.  The County would be willing to stipulate that he was experiencing some sort of health issues during the deposition, if that's necessary in order to explain it. Certainly, we don't need to go so far as to start talking about his cancer.

And then also with the plaintiff's attempt to distinguish some of the hypotheticals provided, this explains precisely why this deserves a different ruling than what was reached in Walker.  It's absolutely not foreseeable that at the time of the plaintiff's conviction that he would develop pancreatic cancer.  There's been absolutely no evidence to support that whatsoever.  He just as easily could have had it shortly before or after his conviction.  There's absolutely no evidence to show that it's likely that he would have developed it later in life after he had been released.

THE COURT:  Okay.  Thank you.

Boyd v. County of Erie  22-CV-519                    176

The Court finds that Mr. Boyd's terminal cancer diagnosis, which was two years after his conviction was vacated after a lengthy sentence of incarceration and parole, is relevant and probative to damages, particularly, with respect to Mr. Boyd's pain and suffering.  And so I will allow plaintiff to present evidence and testimony with respect to that.

I can give an instruction to the jury.  And I think I'm going to probably preliminarily just explain to the jury briefly that Mr. Boyd passed away after a cancer diagnosis.  And I'll give you the specific wording later.  But I am planning on telling the jury that.  So I am going to allow that.

As far as the other physical injuries, I'm going to reserve decision.  I think I need to look at the specific deposition designations for Mr. Boyd to rule on those.

MS. SILOS:  Thank you, Your Honor.

THE COURT:  Thank you.

Let's move on to defendant's motion to preclude reference to People v. Ashley.

MR. SOUTHARD:  Thank you, Your Honor.

As you're aware, the County has moved to preclude reference to Mr. Drury's conduct in People v. Ashley.  Your Honor, this particular instance of conduct has no bearing on any of the claims of this lawsuit.  It has nothing to do with

Boyd v. County of Erie   22-CV-519                    177

a Brady violation nor summation misconduct.

THE COURT:  Well, I'm going to just stop you there because it seems like what Mr. Rudin was talking about before, he kind of conceded that it was dissimilar to the violations here, but they are seeking to admit it for impeachment purposes.  So why don't we focus on that.

MR. SOUTHARD:  Yes, Your Honor.

First of all, their characterization of Mr. Cosgrove's testimony as being indifference is simply incorrect.  He testifies in his deposition that he doesn't recall one way or the other about this.  He indicates that Judith Manzella would have likely been aware of this.  His testimony generally just confirms that high-level policymakers delegate duties such as these insofar as disciplining line prosecutors.  It has nothing to do with Mr. Cosgrove's so-called indifference to this.  It was simply he was asked about an instance of conduct from 45 years before his deposition, and he said he didn't recall.

Plaintiff has also said in their opposition papers that Cosgrove's failure to discipline Drury -- again, he didn't say one way or another he -- excuse me -- he said he didn't discipline Drury, but he also -- he also couched that by the fact that he did not recall the case.

Once again, these are two very distinct issues that are going on here.  One has to do with obviously in Mr. Boyd's

Boyd v. County of Erie   22-CV-519                178

case the issue of a Brady violation and summation misconduct. In the People v. Ashley case it is something to do with talking to a criminal defendant outside the presence of counsel.  There's just too much factual dissimilarity.

THE COURT:  Well, we're not addressing -- you don't need to address that issue.

MR. SOUTHARD:  Okay.  Just for the record, Your Honor, that's -- those two issues are comparing apples to oranges. The problem with introducing this is it carries such a prejudicial effect as to the fact that it concerns Drury, Drury in particular, with extraordinarily limited -- with extremely minimal probative value.  The fact that -- once again, as I mentioned, Cosgrove didn't indicate indifference to this.  He indicated he didn't recall or did not recall simply 45 years after the particular -- the particular incident in question.

And with that, Your Honor, I would rest on my papers.

MS. PERSICO:  Your Honor, may I just address one thing?

THE COURT:  Sure.

MS. PERSICO:  As I understood from today's discussions, plaintiff's counsel is not seeking to introduce People v. Ashley as a Monell-supporting piece of evidence, but rather as something to cross-examine Mr. Drury with.  Is that what --

THE COURT:  That's what I got from what Mr. Rudin said

Boyd v. County of Erie   22-CV-519                179

before.

MS. PERSICO:  Okay.

THE COURT:  And that's how I'm going to -- how I'm ruling.  I'm not going to allow it as Monell evidence. But --

MS. PERSICO:  Just to --

THE COURT:  I wanted to hear about using it as impeachment evidence.

MS. PERSICO:  I would say for the same reason that, for example, the McLeod impeachment evidence of prior bad acts has been precluded by Your Honor and many of the other prior bad acts.  This was from 1978.  So I think that the relevance -- you know, if prior bad acts of other witnesses that are testifying in this -- now, Mr. Drury is not a defendant.  He is a fact witness.  He's not a 30(b)(6) witness.  He's nothing different than McLeod in terms -- really, right?  I mean, they were both involved in the prosecution.

So I would reiterate the arguments that Your Honor has accepted with regard to the prior bad acts of Mr. McLeod and posit that this should receive the same treatment.

THE COURT:  Okay.  Well, that's -- I mean, that's a different kind of analysis.  So here the argument is that there was a statement made.  Mr. Cosgrove made a statement that is inconsistent with his actions.  So that's different

Boyd v. County of Erie   22-CV-519                    180

than the ruling I made on Mr. McLeod.

MS. PERSICO:  I'm sorry.  Then I misunderstood.  I was having trouble hearing what was going on over there.  I think -- so to impeach Mr. Cosgrove's testimony with this would essentially, you know -- how is there -- how is Mr. Cosgrove able to refute impeachment when, you know, it was not -- it was not -- as far as I recall, it was not addressed during his deposition.

He is no longer with us.  There is no way -- A, it's very prejudicial.  It's probative of virtually nothing in this case.  And there is effectively no way that we can have -- you know, if this were true impeachment material and Mr. Cosgrove was here in front of us testifying live, if he were to say on cross-examination let's say by plaintiffs, Mr. Rudin was to ask him here are the facts of this case, did you ever discipline anybody, and he says no, that would be the end of it, right?  The article would not come into evidence as impeachment material.  The plaintiff would have to be satisfied with Mr. Cosgrove's response at that point.  And if he said yes, I did, and it turns out he didn't, that would be a different set of circumstances, but we are not in that position.

So I think it would be -- maybe I'm obtuse, but I don't see how this would come in and not be utilized as a Monell piece of evidence if it's just to impeach someone who was

Boyd v. County of Erie   22-CV-519                181

deposed by plaintiff and yet never asked about this.

MR. JOEL RUDIN:  Because that's not true, Your Honor.

MS. PERSICO:  Well, maybe --

MR. JOEL RUDIN:  He was asked about it.  He said he didn't remember it.  He testified -- they are offering his testimony that he ran an ethical office and that he would have not tolerated misconduct.

Then we tried to ask him about Ashley.  I believe he said he didn't remember.  However, he did acknowledge that he read the Buffalo newspapers regularly.  There was a big article about this in the Buffalo newspapers.  Mr. Drury testified that after the newspaper article appeared he was not questioned about it by anyone in the office.  There was no disciplinary follow-up of any kind and he was not disciplined.

So this is not a collateral issue.  And so we're entitled to offer extrinsic evidence to establish that his testimony is not true or misleading.  They are offering it obviously because they think it's important to establish that he ran an ethical office.

MS. PERSICO:  Well, I think that's also a little bit of a different analysis.  This I think is a way to, frankly, get in -- evade the Court's prior ruling not letting this in on Monell.  I don't know how else it would ever be relevant here.  It doesn't involve the same -- he answered the

Boyd v. County of Erie   22-CV-519                    182

question.  He didn't remember it.  So I would posit that it is inadmissible for those purposes as well.

THE COURT:  I mean, I do think that it's relevant for impeachment purposes.  My concern is the potential prejudice of People v. Ashley.  And so I'm wondering if there's a way to present those questions that you posed to Mr. Cosgrove about People v. Ashley, but without identifying that Mr. Drury was the DA.  I don't know if that's possible.  Is there a way to edit it?

Because I think I would allow those questions -- if Mr. Cosgrove was here I would allow that line of questioning for purposes of impeachment, but not allow you to identify that it was Mr. Drury, especially since Mr. Drury was the ADA that handled this trial.  But I don't know if it's possible to do that.  Maybe -- you don't have to answer that question now.  You could look at the video and see if there's a way to edit it.

MR. JOEL RUDIN:  You mean whether or not -- well, I don't know.  Does anyone -- is anyone offering the part where -- I guess it was Mr. Hanft asking the questions where you asked about Ashley.

MR. HANFT:  We designated it last time and we included it in this round of designations.

MR. JOEL RUDIN:  Does it identify Mr. Drury?

MR. HANFT:  It does, but we can talk to our vendor

Boyd v. County of Erie  22-CV-519                    183

about potentially cutting the Drury reference.

THE COURT:  You can look into that or you could at least have it read and just edit out the name of Mr. Drury.

MR. JOEL RUDIN:  If that's Your Honor's ruling, of course, we will follow it.

THE COURT:  Okay.  So why don't you look into that and just let us know what -- I guess what forum you would offer it as.

MS. PERSICO:  I'm sorry, Your Honor.  Just a point of clarification.

So are you ruling yes or no on --

THE COURT:  So what I'm doing is I'm ruling that it would be admissible for impeachment purposes, not for Monell.  But because of the potential prejudice, because this relates to Mr. Drury, I am directing them to keep out Mr. Drury's name, and so whether that be by editing the video or whether it be by just having the testimony of that section read without identifying Mr. Drury.

MS. PERSICO:  And I just wanted to point out for the Court's edification I believe that when Mr. Drury was asked about this case he also didn't remember any of it.  So they -- had Cosgrove been here live -- Drury was here live -- I think that they both said they didn't remember.  I would just add that for the Court's edification.

MR. JOEL RUDIN:  I think he did remember, Your Honor,

Boyd v. County of Erie   22-CV-519                184

but I can't say with 100 percent certainty.

MR. SOUTHARD:  Your Honor, in Mr. Drury's deposition he is asked about this case at page 93, line 21.

He is asked:  But you don't remember this one way or another?

He responds:  No.  I don't remember it at all.

MR. JOEL RUDIN:  But then he remembered that he was never disciplined for it.  He was shown the article and he acknowledges he was not disciplined.  And then I went on to question him further about the article.  I thought as we went on it refreshed his recollection, but I'd have to look at his deposition.  I'm not quite sure.

THE COURT:  Okay.  That's fine.  Why don't you just do this:  Why don't you provide the section that you would like to admit for the impeachment purposes and I'll take a look at it.  Okay?  But that's my I guess preliminary ruling.  And I'll take a look at the specific language.

MR. JOEL RUDIN:  Even if he didn't remember it, the article appeared.  That's a historical fact that that article appeared.  And so the DA was on notice of the misconduct in that article.  And the point is that it ran contrary to running an ethical office and he did nothing about it.

THE COURT:  Yes.

So, just so you understand, Ms. Persico -- because I'm allowing it not in response to do you remember this case and

Boyd v. County of Erie   22-CV-519                185

he doesn't remember it.  I mean, this is in response to the statements he made earlier, and the statements are in plaintiff's brief about not -- about if he knew about something like this he would have done something about it. So that's -- that is what I'm allowing this impeachment evidence for.  And so the statements are -- I don't want to -- I don't remember the exact wording, but they're in plaintiff's brief.

MS. PERSICO:  My concern is, Your Honor, that it's sort of a roundabout -- a way around your ruling that it is inadmissible for Monell purposes.  So if this is the -- I guess my clarification was is the -- is the article coming in to evidence or is there just going to be edits to the designations?

THE COURT:  I'm not going to allow the article itself to come into evidence.  And I also can give an instruction to the jury about the purpose they should consider this evidence for.  Okay?  So it's not Monell evidence, and it shouldn't be considered for that.  And I will give an instruction for that.

MS. PERSICO:  Thank you, Your Honor.

THE COURT:  So let's move on to defendant's motion to preclude Mr. Davis and -- I'm sorry -- Judge Davis and Mr. Shields.  Plaintiff does not oppose, reserves the right to call the witnesses.  So defendant's motion is granted with

Boyd v. County of Erie  22-CV-519                186

respect to plaintiff's case in chief.

Defendant's motion to preclude the testimony of John Walker and reference to his 1977 and 2025 trials.

MR. BLENK:  Thank you, Your Honor.

As I previewed when we were talking about the Martin trial, the facts and circumstances of the -- so as a preliminary matter, which I think this Court has previously rejected, we reject the idea that contemporaneous events are sufficient evidence of a Monell policy or practice or deliberate indifference.

Setting that aside, the Walker case really doesn't have much relevance to the idea of disclosure because it comes after the fact and it has -- its only effect in terms of Monell would be far more prejudicial than probative.

We have outlined many of the differences in our papers between the two cases, and there's many ways of distinguishing between the conduct of -- Mr. Drury's conduct versus the conduct of Mr. Henry.  And in light of the fact that there will be necessarily some matters discussed, including that are adverse to the County out of the -- in the Martin trial and in the Gibson trial, that that provides the sufficient basis for everything that the plaintiff needs to make their case.

The summation misconduct is very easily distinguishable.  The nature of the summation misconduct is

Boyd v. County of Erie   22-CV-519                    187

far different, and it's not supported by a broader -- it really doesn't line up with the broader policy and practice. So the overall relevance of Walker really I don't think plays a necessary role in the plaintiff's case.  Matters that are addressed in this case -- in the case at bar could be compared to the other incidents that the plaintiff has come forward with to the extent that those are allowed in.

There's really very little marginal value to getting in to the Walker trial, and the Walker trial obviously comes with a great deal of confusion.  It invites a rebuttal to every one of the points that were addressed in the Walker trial.  It invites confusion that the plaintiff was initially concerned about and justified an independent trial to be begin with.

In addition to that, we don't see the value of Mr. Walker as a witness vis-à-vis Mr. Boyd.  Mr. Boyd is going to -- has a recorded deposition.  Mr. Boyd has very broad designations from the plaintiff.  There's really no reason that Mr. Walker has to come into Mr. Boyd's case, just like Mr. Boyd's video depositions did not come into Mr. Walker's case.

And, again, particularly -- particularly, if we get into the outcomes -- and it's hard to see how we could get into the outcomes.  That would be highly prejudicial.  It's going to encourage the jury to search for what had happened

Boyd v. County of Erie   22-CV-519               188

in Mr. Walker's trial and to find the various news stories that the plaintiffs themselves had contributed to.

So we think as a preliminary matter at the very least Mr. Walker should not testify and that the civil trial in 2025 should not come in except as is strictly necessary to use transcripts.

We understand that we would have to use transcripts and we understand that there wouldn't be like a mum on Mr. Walker's name.  There would be an understanding that there would be a codefendant, but the substance -- the facts and circumstances of the criminal trial and the civil trial are not relevant -- they are not relevant, and, to the extent they are relevant at all, are highly prejudicial relative to probative value.

THE COURT:  Okay.  Thank you, Mr. Blenk.

Who is handling this?

MR. DURLAND:  I am, Judge.

THE COURT:  Mr. Durland.  Okay.  So let's start with the 2025 civil trial.  Are you seeking to offer any evidence of that?

MR. DURLAND:  No.

THE COURT:  Then we don't have to worry about that. Okay.

And so why don't you tell us then -- if you could just summarize the expected testimony of Mr. Walker.

Boyd v. County of Erie  22-CV-519       189

MR. DURLAND:  Sure.  So, just to clarify, I mean, I think we intend to offer -- we're not intending to say anything about the 2025 trial beyond what Mr. Blenk alluded to.  In other words, using transcripts from prior witness testimony.

Our plan -- I think we suggested in our papers that we just call it a prior proceeding rather than trying to refer to a trial.

THE COURT:  That's fine.

MR. DURLAND:  In terms of Mr. Walker's testimony, I anticipate him giving some basic background like who is Floyd Martin, who is Tyrone Woodruff, where did you live, authenticating some photographs.  I think Your Honor recalls there were Polaroid photographs of Mr. Hough, Mr. Woodruff.  This is the apartments.  This is the Golden Nugget.  Describing the kind of basic steps in the police investigation.  You gave a statement on this date.  Here's what it said.  Arrested on this date, arraigned.  Here's the trial, nondisclosure.  It's the same.

Mr. Blenk is incorrect.  We did admit Mr. Boyd's deposition designations in Mr. Walker's trial, and they concerned nondisclosure in there.  It was Mr. Boyd's case.  But Mr. Walker would give similar testimony.  At the time of your trial were you aware of a police report saying X, Y, Z.  No, I wasn't.

Boyd v. County of Erie   22-CV-519                    190

We would talk about some postconviction advocacy. There are several photographs.  Mr. Boyd in his deposition designations talks about the strain that the conviction continued to put upon him even after he was released. Dr. Drob addresses that issue as well.

And there are some photographs we would have Mr. Walker authenticate depicting, you know, events where the two of them were campaigning for the vacatur of their conviction. We would have Mr. Walker describe how it is that they came to be in possession of the material that we allege was undisclosed because, otherwise, the jury is going to wonder, well, how do you guys have it if the prosecution didn't disclose it.

So Mr. Walker is going to describe the circumstances of the FOIL request, the obtaining of the documents.  He'll probably state the fact that his conviction was vacated on August 18th, 2021, but that's the limit of his testimony.

I don't anticipate -- I know in our papers we alluded to some commonalities in the facilities where they were both incarcerated.  I don't think that we're going to ask Mr. Walker to do that.

So I think his testimony is just going to be what I outlined.  He may -- there was an allusion earlier to the DA Flynn's press conference.  We put that in through Mr. Walker in the first trial.  I anticipate doing the same thing.  But

that's his testimony.

I'm not going to -- I think Your Honor has the points on his trial transcript and why that's relevant Monell evidence. It's the same reason that the Court gave previously.

THE COURT: Okay. I'm not going to preclude Mr. Walker from testifying. I do think that he can testify to background information and identify some photographs.

My concern was just the 2025 civil trial. And so since you're not seeking that, I'm not going to -- well, I'll say this: I will clarify more in the written decision, but I'm going to deny the defendant's motion to preclude Mr. Walker's testimony.

What else do we have left? Defendant's motion to preclude references to decisions vacating plaintiff's convictions and subsequent actions following same. I think we already addressed this. So we'll move on to the next one.

Defendant's motion for preliminary hearing and to preclude certain Monell evidence. We've already addressed this.

I do want to state for the record that I'm denying the defendant's request for a preliminary hearing regarding this Monell evidence. I don't think that the defendant is entitled to that hearing. I don't think it's necessary.

I'm going to issue a written decision on the Monell

Boyd v. County of Erie   22-CV-519                      192

evidence, as I stated earlier.

Defendant's motion to stay trial is denied.

Then we have defendant's motion to preclude expert testimony.  I think we've somewhat addressed this, but, Mr. Blenk, did you want to go ahead?

MS. PERSICO:  Your Honor, I'll be brief.

THE COURT:  Okay.

MS. PERSICO:  I think we've addressed a lot of these. I'm sorry.  A little catchup there, Your Honor.

I think that with regard to -- I want to make sure we're on the right motion.  Are you on the plaintiff's experts motion?

THE COURT:  So I'm on your motion to preclude expert testimony.  I think it was one of the last ones filed.

MS. PERSICO:  So, Your Honor, I think we talked about Professor Zeidman earlier.  So I'll just sort of rely on those arguments.  I recognize it's getting late and the Court is running out of time.

I did want to address -- I think it's Mr. Hirsch and not Dr. Hirsch.  So there is -- plaintiff has indicated that they are going to be calling Mr. Hirsch as an expert.  As I understand it, police coercion -- well, interrogation tactics.  At least that's what's in his report.  And I think we addressed that a little bit in their application to -- probably in opposition to this, although admittedly I've lost

Boyd v. County of Erie   22-CV-519                193

track of what's in opposition to what.

They indicate that really he -- his purpose is, according to plaintiff's opposition, to rebut our apportionment defense.  And I'll come back to that, but I think if that's his -- first and foremost, there's really no -- been no demonstration at least -- as the Court knows, it is the plaintiff's burden to explain why expert testimony is necessary.  We indicate in our papers I think fairly thoroughly that courts have very commonly and often held specifically that expert testimony about interrogation tactics is not permissible.  It's not required.  And, moreover, it's not necessary because, as this Court is well aware, the purpose of an expert is to -- right, their testimony is to help the trier of fact understand evidence or determine a question of fact that is before them.

As I think we said in our papers, but I will just highlight it for the moment, federal courts, including within this circuit, have consistently considered and excluded expert testimony on the topic of false confessions.  And that's Kogut v. County of Nassau.  It's in all the papers. Unless the Court wants, I won't cite it.

And I think he really -- there's been no real establishing why Dr. -- why Hirsch's testimony about false confessions or coercion is outside the ken of the normal juror.  I think everybody has watched enough Law and Order to

Boyd v. County of Erie   22-CV-519                194

understand the concepts that are involved there.

But, moreover, to distinguish the case that plaintiff cites in support of why the jury could benefit from testimony from an expert like Dr. Hirsch to get to explain the rather counterintuitive idea of false confession -- and the Pollok case does deal with that, but it's almost completely different.  The Pollok case deals with -- it talks generally about the Rule 702, 403 principles, but it really is focused and it makes a point of saying "in this situation," and that situation is expert opinion explaining the counterintuitive act of maintaining a complex interpersonal relationship with a sexual predator as a result of grooming.  That's -- you know, that's far afield from what we're dealing with here.

So I think really there has been no established reason, which is, of course, the plaintiff's burden, why other than citing to Pollok and citing to, you know, the average person wouldn't understand why somebody falsely confessed.  And I think, you know, this is not -- this is a fairly sophisticated time in the world.  I think the concept that somebody either participated in a crime or thought they could get out of something by saying whatever it is they want to say is fairly self-explanatory.  Although hearing me just articulate it is not that self-explanatory.  But there's been no indication that that would be necessary here.

Moreover, one of the other things, besides helping the

Boyd v. County of Erie   22-CV-519                     195

jury and besides that they either understand evidence or determine a fact at issue, and but for the allegation that it would somehow help determine the apportionment issue, there's no other fact that Mr. Hirsch would be -- there's no other question before the jury that Mr. Hirsch would be addressing.

So but beyond that, the next step of 702 is that the testimony must be based on sufficient facts or data, that it is the product of reliable principles and methods and that the opinion reflects a reliable application of the principles and methods to the facts of the case.

You know, we talked about the law that applies to that when we're talking about Zeidman.  So I won't belabor that. But there is nothing in the record to, A, demonstrate it's necessary.  Mr. Hirsch is not licensed in psychology.  He's not a psychiatrist.  He's not -- you know, he's going to be talking about sort of what -- the psychological driver of false confessions or coercive interrogation techniques, and I don't think he's qualified to do that.

And I will contrast that with the expert in Pollok, which the Court went out of its way to say that the expert in Pollok was there to educate the jury on those very complex interpersonal relationships in that very unfortunate set of circumstances.  And not only was that distinctly different, that expert made no reference to the facts of the case in Pollok in which she was testifying.  She simply described the

Boyd v. County of Erie   22-CV-519                    196

phenomenon of why would somebody who had gone through this sort of grooming process against all, you know, intuitiveness -- even if you are not a captive, why would you go back, right?  And so that was to help the jury understand a very unusual and counterintuitive circumstance.  That expert didn't talk about the facts of that case because the Court there found that that would risk telling the jury how to come out on that question.

So with regard to Mr. Hirsch, I don't think that there's been a proper showing.

Go ahead.

MR. BLENK:  Thank you.

Before it goes back to the plaintiff, Your Honor, Mr. Hirsch and Mr. Woodruff don't come in for any fact that's relevant to the plaintiff's case.  They don't tie Mr. Drury to anything that went on in those interrogation rooms at the BPD.  This evidence -- they are couching it as somehow relevant to the apportionment defense, but it only comes in in our favor on apportionment.  They have some evidence from Mr. Drury that rebuts -- that would rebut our apportionment defense, but there's not a single line that comes from Mr. Woodruff or Mr. Hirsch that speaks to that case, that speaks to Mr. Drury's involvement.

So we're left with a case where they are simply attempting to -- they are simply jumping over something

Boyd v. County of Erie   22-CV-519                 197

that's actually relevant to their burden and going straight to evidence that goes to innocence.

THE COURT:  Thank you.

Mr. Durland?

MR. DURLAND:  Sure.  Thank you, Judge.

First, just to start with, the record in the courts -- I think the record is overwhelmingly in favor of this sort of testimony being admitted.  Mr. Hirsch himself has been permitted to testify 60 times.  And there are, you know, a handful here and there, but, you know, I think Your Honor already permitted him to testify, and I think that his testimony gave proof to the way that this sort of testimony can be helpful to the jury.

We don't want them basing their opinions on Law and Order.  We want them basing their opinions on the extensive literature and studies that Mr. Hirsch reviewed.  Those studies extrapolate --

THE COURT:  Mr. Durland, sorry to interrupt, but I don't need to hear about that argument.  Can you just focus on, you know, the relevancy, I guess, whether the defense pursues apportionment or not?

MR. DURLAND:  Sure.  So apportionment is one reason why his testimony is relevant.  And I'll start with that one.

THE COURT:  Okay.

MR. DURLAND:  But there are others.

Boyd v. County of Erie   22-CV-519                198

THE COURT:  Okay.

MR. DURLAND:  So with respect to apportionment, they are saying that Buffalo police detectives fabricated evidence and that they share some of the fault for Mr. Boyd's wrongful conviction.  They cannot complain about fabrication of evidence being in the case having injected it themselves.  So we're entitled to make whatever response to apportionment that we want to.

As we say in our papers, we could -- if we thought that the BPD had not fabricated evidence, we could take the opposite position.  Instead what we're doing, as the Court already noted, is our point is, yes, they did fabricate.  Yes, but ADA Drury was aware of it.  It's not correct, as Mr. Blenk just said, that Tyrone Woodruff offers no testimony putting ADA Drury right in the middle of the fabrication of evidence.  He does.

I know the Court already heard Mr. Woodruff's testimony.  So I'm not going to recite it.  But they have injected apportionment into the case.  They have injected evidence fabrication into the case.  We're entitled to make whatever rebuttal we'd like.  And our rebuttal is, yes, it's absolutely true that the BPD fabricated evidence by coercing a false accusation from Tyrone Woodruff, and doing something similar with respect to Mr. Hough, and ADA Drury was involved.  He was aware.

Boyd v. County of Erie   22-CV-519                    199

That is a superseding cause which defeats their apportionment defense.  They can't limit us to say, well, you can't put in evidence that, you know, helps us to the extent that our rebuttal to apportionment overlaps with their apportionment defense.  And they also can't say, well, if your witness only addresses the part of -- the part where you two overlap, then he can't come in.  You can only have a witness who also makes the County was complicit point.

So, I mean, we're entitled to rebut apportionment however we'd like.  And I don't see how they can claim prejudice that fabrication of evidence is coming into the case when they are putting it into the case.  They should be happy that we have an expert making their point for them.

The second point, Judge, is even if there were no apportionment defense, it's still context for Tyrone Woodruff's testimony.  He's going to describe the exact process by which his statement was coerced.

And the Pollok case is right on point.  It's not just about grooming.  The Court specifically says that this evidence could have helped the jurors understand and contextualize why sexual abuse victims might not report their abuse or attempt to leave their abuser even when not physically restrained or why they may falsely confess to something they did not do.  That's 2025 from the Second Circuit saying that's a perfectly appropriate use of expert

Boyd v. County of Erie   22-CV-519                    200

testimony.  That's what Mr. Hirsch is doing.

MR. BLENK:  Again, convincing the jury that somebody has a propensity to give a false confession is not their case.

THE COURT:  So it seems then you agree on some things. Would there -- is there any situation where you could stipulate to the fact that there was some fabricated evidence?  And assuming that the defense pursues apportionment, then the issue of whether there was that intervening superseding cause, Mr. Drury, I mean, that would be litigated.  But could you agree to that?

MR. DURLAND:  Well, I think that we're certainly open to -- if the County is going to say we will stipulate that Tyrone Woodruff's testimony was fabricated, that his accusation against Darryl Boyd was false, and we all agree that the detectives had something to do with that and the only question left for litigation was the degree to which ADA Drury was involved, I think that's something we're certainly open to.  A lot would depend on the details, what they're willing to stipulate to.

But, I mean, I do still think that Mr. Hirsch's testimony is relevant to other aspects of the case apart from apportionment.  He also touches -- or he also helps to explain in conjunction with Professor Zeidman why the material relating to the interrogations was favorable to the

Boyd v. County of Erie  22-CV-519                    201

defense.

I guess the best I can do, Your Honor, is to say that we're open to exploring it.

THE COURT:  Okay.  So I do tend to agree with you, Mr. Durland, that it's relevant whether the defense pursues apportionment or not.  I would just say the parties should confer about that possible stipulation.

MR. BLENK:  I would just say we're talking about being very disciplined and focused on the Boyd trial, and we're talking about these documents that are flowing out -- it's outside in the world that are alleged to have been in existence at that time and then not disclosed.  We saw the list of 21.  Mr. Woodruff does not create that list.  The underlying -- the reality of those documents is the list, right?  And we're working off of that trial and understanding how the trial would have played out in a different world where we're assuming that a piece of evidence was given over to the other side.

There's no role for impeachment of that evidence.  There's no role for the plaintiff to come in and to impeach the underlying evidence at trial, or we should be allowed to impeach and add additional evidence that's exculpatory.  That's -- as soon as we talk about Mr. Woodruff's testimony it broadens the jury's focus to the underlying truth or guilt.  And we're being handcuffed on our side, and it

Boyd v. County of Erie   22-CV-519                   202

doesn't go to any issue that is relevant to the plaintiff's case. It can't be relevant.

So I don't think they have a right to introduce prejudicial evidence that supports our burden. They don't -- I don't think they have a right to do that. It only supports our burden. But the idea that it would still be relevant and outside -- if we had withdrawn our apportionment defense, it doesn't line up with the Court's own prior rulings about how we're supposed to be focused on the Boyd trial and kind of circulating around that Boyd trial and all of the arguments should be flowing through about what happened at the Boyd trial, not what happened at the Boyd trial plus impeaching the worst -- the best or the strongest evidence at the Boyd trial in the jury's mind.

MR. DURLAND: Your Honor, that's simply not correct that the Brady evidence is limited to documents. I mean, what ADA Drury knew and what he was involved in is intimately intertwined with, one, his disclosure obligations. Two, it informs his acknowledgement or recognition that the documents are favorable. And, three, it informs the analysis of his summation.

Our argument is that he's making misleading or false statements, and in part that's because he knows what happened with respect to the interrogation and his coercion and coaching of Mr. Woodruff himself, and then he turns around

Boyd v. County of Erie  22-CV-519                203

and he tells the jury that this never happened.

So it's simply not correct that the Brady questions or the summation misconduct questions are limited to specific records.  And I think that's why you didn't hear the County make any argument that Tyrone Woodruff should be excluded entirely from the first trial because it's clear that he has relevant testimony to give irrespective of apportionment.

MR. BLENK:  Your Honor, if I may address that.

At the first trial I think all parties went into it with a greater understanding that there would be more evidence about the underlying reality and testimony about what happened on January 2nd.  That was then dialed back in the Court's order.  By that time the parties had already named witnesses.  Many things were basically undercooked the last time that we approached this.

The Court is right though that it should be focused on the trial and that the parties shouldn't be offering their own corroboration of evidence that was presented at the trial or impeachment of evidence that was presented at the trial.  It strains the entire focus of the proceeding.

THE COURT:  Okay.  Thank you.

I really do have to go.  I have to get my husband to the airport.

So we're going to adjourn.  And what I'm thinking is we address I guess preliminary instructions Monday morning of

Boyd v. County of Erie  22-CV-519                    204

the trial because the Friday -- I was thinking of having you come Friday, but Friday is Halloween, and I don't want people to have to come for Halloween.  So Monday morning at 8:30. And then we'll plan on picking the jury that morning, later that morning.

Is everyone available to come at 8:30 on Monday?

MR. JOEL RUDIN:  Yes, Your Honor.

MR. BLENK:  Yes, Your Honor.

THE COURT:  And then I know defendants are going to provide the proffer on Wednesday for the apportionment.  And then I didn't give you a deadline for the other things like the excerpts from the affidavits or anything else, but I guess for all of you if you could please get that in to me sometime next week.  Okay?  Even if it's a little later in the week so we have those things in advance.

MR. BLENK:  Understood.

MR. DURLAND:  Your Honor, the plan is to open Tuesday?

THE COURT:  I'm sorry?

MR. DURLAND:  The plan is to open on Tuesday?  If you have to go, that's fine.

THE COURT:  You know what, I hadn't thought about it yet.  But is that your request to open on Tuesday?

MR. DURLAND:  Well, that was just my question just for planning purposes.  I hadn't given it enough thought to have a position.

Boyd v. County of Erie  22-CV-519          205

THE COURT:  It's possible we can open on Monday afternoon.

MS. PERSICO:  Do the jury instructions, pick a jury and then open on Monday?

THE COURT:  Yes.  I know I'm being very optimistic, but it's possible that you would open on Monday afternoon.

MR. FIRSENBAUM:  Your Honor, we sent a letter at 391 asking permission to file an amended exhibit list.  We didn't want to just assume that Your Honor granted it, but we want to submit the exhibits to Your Honor.  So --

THE COURT:  That's fine.  I thought I granted it, but I guess -- I'm going to grant it.

MR. FIRSENBAUM:  Okay.

THE COURT:  Yes.

MR. FIRSENBAUM:  Thank you.  We'll file it.

THE COURT:  Okay.

MR. FIRSENBAUM:  We'll ask our paralegal to file it imminently.

THE COURT:  Great.

MR. FIRSENBAUM:  Thank you.

THE COURT:  And have you given exhibits --

MR. BLENK:  If I may clarify, Your Honor -- and we have a request out to the other side and hopefully we can clean it up.  We did submit an exhibit list, the same kind of letter motion and an exhibit list as well as the exhibits.  We

Boyd v. County of Erie  22-CV-519                    206

actually found an issue, an error in our prior submission.

THE COURT:  Okay.

MR. BLENK:  We're working that out I hoped with

plaintiff's counsel.  But all I'm asking is that there should

be a forthcoming motion, and that motion is basically

withdrawn without prejudice or I would just ask the motion to

be withdrawn without prejudice.

THE COURT:  Okay.  That's fine.

MR. BLENK:  Thank you.

THE COURT:  Okay.  Thank you, everyone.  Have a good

weekend.

(Proceeding adjourned at 4:02 p.m.)

*              *              *

CERTIFICATE OF REPORTER

In accordance with 28, U.S.C., 753(b), I certify

that these original notes are a true and correct record of

proceedings in the United States District Court of the

Western District of New York before the Honorable Meredith A.

Vacca on October 27, 2025.


S/ Joony L. Odenbach

Joony L. Odenbach, RPR, CRR

Official Court Reporter