13:09:01
09:06:15

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - X
KATHLEEN WEPPNER, AS EXECUTOR
OF THE ESTATE OF DARRYL BOYD)          22CV0519
                Plaintiffs  )
vs.
                                    Rochester, New York
THE COUNTY OF ERIE
                Defendants  )    November 5, 2025
                                      1:30 p.m.
- - - - - - - - - - - - - - X
**TRIAL - VOLUME 3 - (PM SESSION)**

**TRANSCRIPT OF PROCEEDINGS**
**BEFORE THE HONORABLE MEREDITH A. VACCA**
**UNITED STATES DISTRICT JUDGE**

**FOR PLAINTIFF:   WILMER CUTLER PICKERING HALES AND DORR,**
**                 LLP**
                  BY:  ROSS FIRSENBAUM, ESQ.
                       GIDEON HANFT, ESQ.
                       ERIN HUGHES, ESQ.
                       MELISSA ZUBIZARRETA, ESQ.
                       PHOEBE SILOS, ESQ.
                       TRENA RILEY, ESQ.
                  7 World Trade Center
                  250 Greenwich Street
                  New York, New York 10007

COURT REPORTER: Karen J. Clark, Official Court Reporter
                Karenclark1013@AOL.com

CONTINUATION OF APPEARANCES


**FOR PLAINTIFF:**   LAW OFFICES OF JOEL B. RUDIN, PC.
                  BY:   JOEL B. RUDIN, ESQ.
                        DAVID E. RUDIN, ESQ.
                  152 West 57th Street
                  New York, New York 10019

                  HOOVER & DURLAND, LLP
                  BY:  Spencer Durland, Esq.
                  561 Franklin Street
                  Buffalo, New York 14202

**FOR DEFENDANT:**   LIPPES MATHIAS
                  BY:   JAMES BLENK, ESQ.
                        KIRSTIE MEANS, ESQ.
                        THOMAS SOUTHARD, ESQ.
                  50 Fountain Plaza - Suite 1700
                  Buffalo, New York 14202



**P R O C E E D I N G**
               *               *               *

THE COURT:  Okay.  We can go on the record. The parties are here.  The jurors are in the jury room. First, I'd like to let you know the juror issue that came up over break.  Let's see, Ms. Xxxxxx.  There was an accident in the parking lot or someone caused damage to her car and so she is just in the parking lot waiting for a police officer to respond to take down a report. So she is on call, as far as, like, we're going to call her when we need her to come, but I just want you to

K. WEPPNER V. THE COUNTY OF ERIE

know, there may be a little delay with that. But we'll address other things while we're waiting.

Okay. I did want to put a few things on the record regarding Professor Hirsch since I had reserved on some things, such as the decision for the Motion in Limine. I didn't preclude that before that, but I reserved on other portions. And I wanted no place on the record that I do find that Professor Hirsch meets the requirements under 702 that he does have sufficient, knowledge, skill, experience, training and education to testify as an expert and to provide expert opinions on the subject of false confessions. I also find that his testimony will be helpful for the jury, specifically as it relates to favorability and materiality as well as apportionment.

I also find that Professor Hirsch's testimony does not usurp the role of the duty. I wanted to state that on the record.

I wanted to address now the County's request to seek late subpoenas. Mr. Blenk, you had said the other day that the subpoenas that you provided that you have all of these records already and that you provided all of the records to Plaintiff already, it's just that you need certified records. Is that correct?

K. WEPPNER V. THE COUNTY OF ERIE

MR. BLENK:  It's actually, it's actually slightly different in a way that should be more sympathetic to your Honor.

THE COURT:  Okay.

MR. BLENK:  These are documents produced by the Plaintiff.  These are documents that the Plaintiff's expert relied upon.  And now -- and we are not attempting to use a single document that is outside of the universe and we're not -- we don't intend to introduce substantive testimony from any witness that would be responding to these subpoenas.  We're just trying to get -- these are exhibits that were on our exhibit list, that is what we're trying to clean up with the subpoena.

THE COURT:  Okay.  So you could still cross examine -- I am assuming that you're talking about Dr. Drob?

MR. BLENK:  No, they are not just limited to Dr. Drob.

THE COURT:  Well, you said that the Plaintiffs expert had reviewed them, are you talking about Dr. Drob or someone else?

MR. BLENK:  Dr. Drob has reviewed them, they are not exclusively -- we would not be using them

K. WEPPNER V. THE COUNTY OF ERIE

exclusively for that purpose.  There are documents that would go in that would be impeaching Mr. Boyd in limited ways about his experience on parole, but they are not entirely within the scope of simply rebutting Mr. Hirsch.  That is not, or, I'm sorry, Mr. Drob, that is not the way we would use them exclusively.

THE COURT:  So you expect that you would offer some of these medical records through your direct evidence.  Is that right?

MR. BLENK:  That's right, individual's statements.  We don't have any intention of dropping a bunch of records into the -- admitting a bunch of records at a time.  Just individual statements, many of which we've already brought to the Court's attention and to the Plaintiff's attention that go to specific things that are in the case that Mr. Boyd has testified to.

THE COURT:  Okay.  And are you also seeking specific people to come in and testify for admission of those records?

MR. BLENK:  If that is necessary, your Honor, and there is not a certification that is accepted or if the Plaintiff wishes to contend with a certification, that would be necessary without waiving alternative justifications to get the records in.

K. WEPPNER V. THE COUNTY OF ERIE

THE COURT:  Okay.

MR. BLENK:  But we would -- just to lay a foundation is what we would be looking at from those providers and/or custodians.

THE COURT:  Okay.  Because I know that you had listed a couple of records custodians in your witness list, but you hadn't identified anyone specific.  So now have you identified certain custodians that you would call.

MR. BLENK:  The custodians -- we don't know, for example, who the custodian of Horizon Health is.

THE COURT:  Plaintiff, do you want to respond?

MR. DURLAND:  Yes, Judge.  This is way, way, way too late to be doing this.  This is not just a technical issue of laying a foundation, if that is all they need to do, they want to now call seven people, three of whom are, Mr. Blenk tells me, are treating clinicians.  And they are going to try and have these people lay a foundation for all sorts of entries that we have every right to challenge.

Just as one example, this is one of the entries that the County has cited in that docket 416, this is DX 735, 46244 is the page number, this is an

K. WEPPNER V. THE COUNTY OF ERIE

unknown person writing in a record, "According to classification analysis "I.M, an out-of-wedlock child, whose parents never married," et cetera, et cetera, so this is a record taker who is quoting some other unidentified record and some other unidentified person as stating all of these various facts and they now want to call somebody to say, sure, all of these records made in the regular course of business.  I mean, we have every right -- if this had been done in the proper course, these people would be on a 26(a) disclosure, we have a right to depose them at least 30 days before trial, and we would be able to make use of that right. And we would depose them and say, how do you know who is taking down this record.  You can't say that the person who wrote the original entry was doing it in the regular course of business.  You don't even know who it is. That is just an example.  And I could give others, but I don't actually know everything that they intend to do because there are thousands of pages of documents here and they've identified just a few that they want to -- that they want to put into evidence.  But, your Honor, it's just -- it's not fair to say that we don't get to take the deposition that we would be entitled to take and to challenge the foundation that they are going to

K. WEPPNER V. THE COUNTY OF ERIE

attempt to lay. We're in the middle of trial and we've made strategic decisions about what we're going to do, what deposition designations we're going to put in for Mr. Boyd knowing that they don't have admissible evidence on this topic or that topic. And for them to now say, oh, well, now we want to call these seven records custodians and obviate the Plaintiff's right to take a deposition and hamstring the Plaintiff in having already started to put on our case, it's just not fair. They are way too late. And your Honor is correct, they could still cross examine Dr. Drob, because that is a different scenario, he has said, I've relied on these records. As long as they are not using the record for hearsay purpose, they can challenge, essentially, the foundation for his opinion and say, well, you've relied on this record and you see here there is a record that says something else, did you overlook that and so on, that is a different story. But what they are trying to do is put on substantive hearsay evidence and they haven't complied with any of the rules. This is not a mystery that you have to lay a hearsay foundation in order to put a document into evidence.

And putting aside Rule 26 and putting aside, you know, your Honor's requirements in terms of not just

K. WEPPNER V. THE COUNTY OF ERIE

exhibits, but witness lists as well, still we don't have identified custodians in a number -- for a number of these subpoenas. And beyond that, we raised this specifically at the final pretrial conference. I remember clearly Mr. Hanft saying, we have stipulated to authenticity, but we have reserved our right to object to admissibility on hearsay grounds and these records are not admissible and the County has done nothing until now, three days into trial, it's just three days late. I don't know what to say beyond that.

It's just, we're playing by the rules and I don't think we should be punished because they've decided to wait this long to raise this issue. And if these records were really so critical to their case and to their defense, I don't think they would have waited this long to raise this issue. They can cross examine Dr. Drob, we recognize that. But trying to get the records in this late date, it's just not fair.

MR. BLENK: Your Honor, I think this is sandbagging on two different levels. The first level, your Honor, is that these are documents that are common sense relevant to this case. These are documents that their own Plaintiff has relied upon and these are documents that came directly from these providers going

K. WEPPNER V. THE COUNTY OF ERIE

to Mr. Rudin and we know where they came from.  They are attempting to just avoid, avoid any response or skepticism about their claims about -- that have dressed up and sanitized Mr. Boyd's life prior to incarceration.  And then have dressed up, for the purposes of this case, after preparing with Plaintiff, to talk about the experience that he had on parole, which is not consistent with what is reflected in these records.  On top of that, your Honor, we've brought -- this was on our exhibit list, these issues were -- we conferred with Plaintiff's counsel.

THE COURT:  Well, what was on your exhibit list?  I mean, I know the records were, but --

MR. BLENK:  The records, your Honor.  Oftentimes the source of the records, meaning that it came directly from the source to Mr. Rudin in the same manner they were produced to us.

THE COURT:  But they weren't -- the agreement wasn't to their admissibility, so, right?  And so, I guess, what I'm gleaning from Plaintiff is that, you know, from what they had agreed to and what they had, you couldn't, you couldn't get those records in, and they relied on that.  And now it's, you know, we're in the middle of trial.

K. WEPPNER V. THE COUNTY OF ERIE

MR. BLENK:  Your Honor, I think when we're having specific conversations -- conversations about authenticity, about a medical record, what is authenticity?  It is what it purports to be.  This is what we were conferring over.  They agreed to agree to the stip to the authenticity of these documents and then to act as if they are not medical records.  Medical records that Mr. Drob describes as medical records, that Dr. Drob has relied upon as medical records, it's just not fair.  Your Honor, and I also think there is case law supporting even these documents coming in without any further certification pursuant to *Hardy v. Adams*, 645 F. Supp 3d 159.

THE COURT:  Okay.  Then this is my response.  Then I'm not going to sign the subpoenas, but if you think you can get them in through what you have now, then you can try to do that, that's fine.  I mean, we can address that later.  But I'm not going to sign these subpoenas at this late a date.  I mean, I agree with Plaintiff that it's too late now to do this.  So if you think there is a way legally to get these medical records in, I don't know how you would do that, but you can certainly try to do that.

MR. BLENK:  Some of the records, your Honor,

K. WEPPNER V. THE COUNTY OF ERIE

are subject to the Ancient Documents Rule, including the record that Mr. Durland just referenced, though I don't think we have any specific intent of getting that document in in the portion that he is describing.  But that document would be subject to the Ancient Documents rule.

THE COURT:  Well, I don't want to address that now.  So assuming that you want to offer them sometime next week, then you can submit something in writing before that and Plaintiff can respond and we can address it.

MR. BLENK:  Thank you, your Honor.

THE COURT:  Okay.  Thank you.

(Whereupon, there was a break in the proceeding.)

THE COURT:  Okay.  I want to address the memorandum that was filed this morning regarding the admissibility of evidence of non-disclosure in the *Walker* and *Martin* prosecutions.

I guess, I just want to start out by saying that this case is different in that the order of the trials, and so I think with Mr. Walker's trial, there was an agreement between the parties to admit, I guess, a lot more evidence than in this trial, specifically the

K. WEPPNER V. THE COUNTY OF ERIE

transcripts.  And there was -- because since the order of the trials of Gibson, Boyd, Walker and Martin, that Mr. Boyd's trial was relevant to the disclosure or non-disclosure of certain alleged Brady evidence.  So I think the distinction is relevant, but I just want to say this first.  I'm not ready to make this decision today.  I looked at your memorandum, but I really haven't had a chance to go through it.  And I understand that this is -- it's not a small decision, and I want to consider it.  But I can't make it today.  So we'll finish Professor Hirsch's testimony, and I don't know what else you have, but I understand that if your next presentation would have been Henry's designations, is that what you were expecting to do?

MR. FIRSENBAUM:  Yes, your Honor.  Perhaps it would make sense, let's sort of see what time it is when we finish Mr. Hirsch's testimony, and then we can figure out if there are portions that we can play.

THE COURT:  And if we have to leave and finish a little early today, then that is fine.  I get that because I just want some time to -- I can give you a decision by tomorrow morning, but I really want to consider this a little more.

MR. RUBIN:  Can we have an opportunity to be

K. WEPPNER V. THE COUNTY OF ERIE

heard on that, your Honor?

THE COURT:  Yes.  Let's check on the status of the juror.  Do you know, Katelyn?  Can you check on that?

THE CLERK:  I haven't heard.

THE COURT:  While checking on that, did you want to add anything right now?

And, Mr. Blenk, I'll give you a chance to respond.

MR. FIRSENBAUM:  Yes, your Honor.  And thank you.  So we certainly appreciate that the order of the criminal trials is different, but don't think it matters for the purpose of this issue even just applying your Honor's ruling on Monell evidence from the *Walker* case, which I understand your Honor has said the ruling on the Monell generally in this case will be the same.  Your Honor, in *Walker*, allowed evidence of cases that occurred after Mr. Walker's trial for the purpose of showing that there was a policy, custom or practice.

THE COURT:  And I'll just say this.  I still hold that principle.  I think the case law is -- supports that.  That that kind of Monell evidence to prove widespread practice and policy is admissible.  It's not that I necessarily think that the other

K. WEPPNER V. THE COUNTY OF ERIE co-defendant's cases can't be Monell, it's that weighing the value as Monell evidence against prejudice.  So that is really where -- that is where I am.  So I agree that it could be Monell, so go ahead.

MR. FIRSENBAUM:  Thank you, your Honor.  And we thought that may be the case.  So let me try to explain why I don't think it's unduly prejudicial to do what we would like to do and it would be unduly prejudicial to us if we can't.  The evidence of non-disclosure, I mean, I think it's clear that Mr. Walker had a criminal trial from the evidence that your Honor has allowed in.  And the evidence -- your Honor's ruling in *Walker* allowed into evidence subsequent cases where there was a finding of a constitutional violation. I think that was the line that your Honor drew.  And even applying that line, the *Walker* case would now qualify.

Now, we appreciate that it qualifies because of the 440 ruling on the photographs and then the civil trial ruling as to the other Brady evidence and that your Honor doesn't want that before the jury and we, of course, are not trying to put either of those before the jury, but it meets the criteria.  And so, you know, you can exclude the evidence of the civil trial verdict and

K. WEPPNER V. THE COUNTY OF ERIE

of the 440 ruling on 403 grounds and allow the evidence with just the non-disclosure without causing any undue prejudice to the County.  Same thing with the *Martin* case.  So that is sort of point one.

Point two, we just heard from the County that they intend to call Mr. Henry.  Mr. Henry was the prosecutor for the *Walker* case and the *Martin* case as your Honor knows.  And I would expect that they are calling him for the purpose of talking about the County's policy, custom and practice.  We have to be able to cross examine their witness, who is going to tell the jury what he believes the County policy, custom and practice was with evidence of his own conduct in accordance with that policy to show whether his testimony is accurate or not accurate, contradicted by the evidence or not.  And this is the most powerful evidence for cross examination as to whatever his testimony is about policy, custom or practice to show the jury what he did in the cases that he prosecuted. And then in terms what cases he prosecuted are most relevant, well, if you take the county's theory in order for it to be Monell evidence, it has to be so specifically the same as the Boyd case at issue in order to be relevant, that is their theory, by their

K. WEPPNER V. THE COUNTY OF ERIE

definition, the *Walker* and *Gibson* cases are the only cases relative to Monell.

THE COURT:  Or so closely related it's potentially prejudicial.  I agree with that, but I also kind of see the other side of the coin there.

MR. FIRSENBAUM:  But if they are going to call Mr. Henry to testify about the policy and custom and practice, I mean, to not be allowed to cross examine him with evidence of his own disclosures or non-disclosures in cases that were at the exact same time period with the same exact Brady evidence, give or take one or two pieces, I mean, that is taking away our ability to contradict whatever his testimony is going to be.

THE COURT:  And I understand your position. I think that, you know, as I was going through all of these designations for Mr. Henry, because so many of the questions were kind of couched in the context of did you do this, did you disclose this for Mr. Walker's trial, based on my current ruling, that is why I excluded them, but I do think there is a way to ask him kind of the same question but in a different way.

MR. FIRSENBAUM:  But that is sort of like opinion evidence.  The factual evidence, whether

K. WEPPNER V. THE COUNTY OF ERIE

something was disclosed, is the stuff that has a clear yes or no answer that we can argue to the jury is true or not true based on his testimony. If it's just his opinion --

THE COURT: Well, you know, without kind of going back through all of the designations, I think a lot of the testimony was, even if he didn't recall specifically whether he had turned something over or not, it was really an opinion like, I don't remember, but I don't think that I would have had to turn this over. I mean, that is kind of an opinion, right? Because of the time that has elapsed, I think that is a lot of what the testimony was. And I would allow that kind of testimony.

MR. FIRSENBAUM: And we certainly appreciate that and agree that that should be admissible. But just for example, you know, Professor Zeidman would testify about the same chart with the 19 pieces of Brady evidence instead of the 21 from *Walker* as to what documents were disclosed on the record in each of the three criminal trials plus the pretrial transcripts. That is like one question and one document. It doesn't come anywhere close to talking about materiality in other cases in terms of talking about the results of

K. WEPPNER V. THE COUNTY OF ERIE

other cases.  It's literally, you know, I reviewed the transcripts of these cases and the exhibits that were marked, it's all stipulated to by the parties and it really is a visual depiction of what the parties' stipulation is.  And to just be able to testify that the 19 pieces of Brady evidence were not disclosed in the *Walker* trial either as marked exhibits were not disclosed in the pretrial proceedings, which is, in part, the Boyd proceeding.

And which brings me to the last point, I mean, we included this in the memo.  The County opened on disclosure, they didn't say how many, but disclosure of Brady evidence in *Gibson*.  I understand that *Gibson* came first, but whether it came first or after for purposes of showing a policy when these cases all took place at the same time pretrial and were within a few months of each other at the time of trial, it really doesn't matter in terms of showing the policy.  And if they've opened on disclosure in *Gibson,* we have to be able to respond about non-disclosure.  And if they are saying that disclosure in one of the related cases is evidence that there isn't a policy of non-disclosure, we have to be able to rebut that with non-disclosure in the related cases is evidence of a policy of non-disclosure.

K. WEPPNER V. THE COUNTY OF ERIE

And so if they are allowed to call Mr. Henry to testify about policy and they are allowed to put in evidence of disclosure in the *Gibson* case, that is incredibly unduly prejudicial to us to be able to prove our policy claim.

THE COURT:  Are you aware of any decisions that had to deal with a similar issue of a co-defendant's -- no.

MR. FIRSENBAUM:  No.

THE COURT:  Okay.

MR. FIRSENBAUM:  In either direction, your Honor.

THE COURT:  I mean, I very much understand your position, I do.

MR. RUDIN:  Your Honor, I think *Chronic v. Thompson* involved more than one trial and the Supreme Court said that the conduct, proof of conduct in several related cases and the failure to discipline would not, by itself, be sufficient to prove a training claim, but the point is that in that case, conduct came in involving more than one trial involving the same group of prosecutors and was certainly -- the Court considered that there was any suggestion that there was anything improper.  I don't know that the case is exactly what your Honor is looking for.

K. WEPPNER V. THE COUNTY OF ERIE

MR. FIRSENBAUM:  And if I could just -- one other thing, your Honor.  If the issue really is a 403 issue, I would just say that there has to be some, this is why I go back to Professor Zeidman and the chart where it's literally putting before the jury what the record shows.  You know, I can appreciate if your Honor doesn't want hours of testimony about the John Walker trial given what's happened in the *John Walker* case, but, I mean, again, if Mr. Henry is going to be testifying about his own conduct and understanding, I really do think that is prime cross examination material.  But in terms of at least our own case, until we see what kind of doors they open as to Mr. Henry and Mr. Gibson, you know, I think I understand that your Honor is allowing Mr. McCloud to testify about the photographs, but, again, I think we can much more quickly than we did in *Walker*, if it's your Honor's preference, but in *Walker* he testified that he didn't receive the Brady material, either.  We wouldn't talk about materiality in *Walker* and we wouldn't talk about materiality again.  He did testify about favorability as to the evidence or, you know, as how he viewed it.  We really focused our brief on non-disclosure to try and address your Honor's 403 concerns by having limited

K. WEPPNER V. THE COUNTY OF ERIE

testimony in our case in chief that gets us the necessary facts to show policy, custom or practice from these four cases.  We obviously have other evidence, but from these four cases without overwhelming the jury with evidence about the other cases that creates the 403 issue.  And whatever they do to open the door, we would say, they opened the door.

MR. RUDIN:  Your Honor, I thought of another answer to your question.

THE COURT:  Okay.

MR. RUDIN:  There are various Monell cases where the theory is that the municipalities practice of not taking remedial action against the same official who commits misconduct in a series of cases, where the question is whether or not he committed this conduct in this case, but also whether or not the misconduct that he committed in this case resulted from the failure of the same municipality to take action against the same official when he committed misconduct in prior cases is a proper Monell theory.  So here you have a sequence of cases where the same group of prosecutors, allegedly, did not turn over the same material in a series of cases.  And this case is even less prejudicial, although I don't see any prejudice at all, but this case of

K. WEPPNER V. THE COUNTY OF ERIE

*Walker* is even less prejudicial to the County because it's a different prosecutor. And we're not arguing that because the prosecutor in the *Walker* case didn't turn over certain material, that necessarily Mr. Drury didn't turn over the material, we simply want to argue that there was a practice in the office and a policy to tolerate that practice that caused both prosecutors to do what they did. And I think that is a completely legitimate Monell theory. And to -- just a little bit illogical to me that you can have the notion that if conduct is not sufficiently similar, then it doesn't come in, but -- and you have to move towards the line where it's similar as possible. And here we have a case involving exactly the same material and it's not disclosed in both cases. What could show a policy, custom or practice more than that?

So I think to let the slight possibility that somehow it will prejudice, I don't see it, that somehow it will prejudice the jury in judging what Mr. Drury did to take out Monell in policy, custom or practice in a similar case doesn't seem, to me, to make sense. And it's sort of letting the very, very slight risk of prejudice overwhelm the powerful evidence that it is a policy and practice.

K. WEPPNER V. THE COUNTY OF ERIE

THE COURT:  Okay.  Thank you, Mr. Rudin. We'll take a look at all of those.  I'm going to give Mr. Blenk a chance to respond.  I do want to give a very friendly reminder that Plaintiff has very strongly insisted that these trials be separate, and it's just -- and I granted that request, but, you know, what you're asking me to do is really just -- I mean, I guess, I don't understand why you -- why you insisted on that when you really want all of this evidence in together.

MR. FIRSENBAUM:  Your Honor --

THE COURT:  You know, you don't have to answer that question.  I had to say that because it's a little frustrating, but you don't have to answer the question.

MR. FIRSENBAUM:  Can I though?  You said I didn't have to.  Your Honor, I think we were very candid with Judge Vilardo first and then with your Honor, we did acknowledge that there were some issues that would be the same in both cases.  And we did say that the issues of non-disclosure and the issues of the Monell policy would be the same.  We said it was the issues of materiality that wouldn't be the same and damages that would not be the same and the differences on those two issues were what could prejudice one client versus the

K. WEPPNER V. THE COUNTY OF ERIE

other.  So, I mean, that was our argument and I think in arguing the issue of non-disclosure comes in across cases is consistent with what our position is.

THE COURT:  I agreed with you, and that is why I granted the request.

So anyway, Mr. Blenk, you can go ahead.

MR. BLENK:  I don't have a whole lot more to add, your Honor.  I think, as we made points throughout the trial, we don't think contemporaneous evidence is necessarily valid for Monell, but setting that aside, we understand that's not your Honor's view of it, it's still more prejudice than probative and it's something that could have been consolidated and we would have all dealt with our lumps one way or the other.  And to give a cleaner case, we have *Gibson* to point to, if anything to make the reference elsewhere, it should come in without Mr. Walker.  Thank you.

THE COURT:  Okay, thank you.  Let's check on our juror.

(Whereupon, there was a pause in the proceeding.)

THE COURT:  Okay.  We're going to have to take a recess.  We need to check on this juror because she is still at the parking lot and so we'll take a

K. WEPPNER V. THE COUNTY OF ERIE

recess, probably five minutes.

(Whereupon, there was a break in the proceeding.)

THE COURT:  I don't know how long this is going to take with the juror.  So, what I'm going to do, unless there is an objection, bring the jurors in and tell them we're going to recess for the rest of the day and I'm going to work on the other issues and I don't know how long she is going to be.  And hopefully everybody will be back tomorrow morning.  Is there any objection to that?

MR. HANFT:  No objection, your Honor.

THE COURT:  Mr. Blenk, what I was just saying, I don't know how long it's going to take for this juror.  There is still no police there to take down the report, so I was going to bring in the jurors and just recess for the rest of the day so I can address these issues and then we'll resume tomorrow morning.

MR. BLENK:  We have no objection.  Thank you.

THE COURT:  Okay.  I'm sorry, Professor Hirsch.  Okay.  Then we'll go ahead and do that.  We'll bring the jurors in.

(Whereupon, the jury is escorted into the

K. WEPPNER V. THE COUNTY OF ERIE

courtroom.)

THE COURT: Okay. Have a seat, everyone. Thank you. Our jurors have returned to the courtroom except for Ms. XXXXXX. I know we're have a delay unexpectedly, so instead of keeping you all here, we're not sure when we can resume, we're just going to recess for the rest of the day. And so all of the recess admonitions apply. Do not talk about this case with anyone. If you could please report tomorrow at 9:15. Thank you. Have a good night.

(Whereupon the jury is escorted from the courtroom.)

THE COURT: Have a seat.

Before we recess for the day, in addition to the issues we just spoke about and Cosgrove's deposition, is there anything else that we need to address?

MR. FIRSENBAUM: Your Honor, two things. One is, I think given the schedule now, we will probably go directly from Hirsch's testimony to Mr. Drury tomorrow.

THE COURT: Okay.

MR. FIRSENBAUM: So just to give your Honor a head's up to that, and quite relatedly, I think we

K. WEPPNER V. THE COUNTY OF ERIE

filed a motion to ask leading questions during our direct examination of Mr. Drury.

THE COURT:  Yes.

MR. FIRSENBAUM:  So that would become more relevant now.

THE COURT:  Did you have an objection to that?

MR. SOUTHARD:  Yes, your Honor.  We filed a response to Plaintiff's motion last night.

THE COURT:  Last night you said?

MR. SOUTHARD:  I believe so.

THE COURT:  Okay.  Okay.  Thank you.  I'll address it tomorrow morning then.

MR. FIRSENBAUM:  Thank you, your Honor.

MR. BLENK:  May I make a request not for a particular work product, but your Honor had said set a timeline of this evening or today for the defendant to file a motion or to file a proffer in connection with a potential Monell claim against the City of Buffalo.  The defendant or the defendants claim in that regard is highly dependent on how Mr. Hirsch's testimony comes in, so we would just ask for an extension at least until tomorrow to make that filing.

THE COURT:  Okay.  That's fine.

K. WEPPNER V. THE COUNTY OF ERIE

MR. BLENK:  Thank you, your Honor.

THE COURT:  Okay.  Have a good night, everyone.  8:45 tomorrow.

                    *     *     *

                CERTIFICATE OF REPORTER


   I certify that the foregoing is a correct transcript of the record of proceedings in the above-entitled matter.

S/ Karen J. Clark,   RPR

Official Court Reporter