UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

KATHLEEN WEPPNER, AS EXECUTOR
OF THE ESTATE OF DARRYL BOYD,

                Plaintiff,

     v.

THE COUNTY OF ERIE,

                Defendant.

**DECISION & ORDER**

22-cv-0519-MAV

---

    The factual background of this matter is set forth in detail in the Court's Decision and Order dated January 14, 2025, ECF No. 219 ("SJ Order"), familiarity with which is assumed for purposes of the instant Decision and Order.  The only claim presently before the Court from the Boyd Estate's ("Plaintiff") Amended Complaint, which is the operative pleading, is a *Monell* claim against Defendant County of Erie based on policies of the Erie County District Attorney's Office ("DA's Office"). ECF No. 78.

    This Decision and Order addresses the parties' respective motions *in limine* addressing the so-called "other-case evidence" that Plaintiff proposes to introduce in support of its claim:

- The County's motion *in limine* for a preliminary hearing and to preclude "certain *Monell* evidence," ECF No. 326; and

- Plaintiff's motion for an *in limine* order admitting certain *Monell* evidence, ECF No. 352.

The Court rendered oral rulings on November 5, 2025 (PX 99, 104, 170) and November 7 (PX 95, 103, 105, 115, 121, 148, 152, 171, 175, 183, and 187) regarding

1

the admissibility of several exhibits of other case evidence proffered by Plaintiff. ECF Nos. 439, 456. This decision memorializes the Court's reasoning.

## LEGAL STANDARD

As the Supreme Court has noted, "[a]lthough the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Indeed, "[t]he purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996).

When granted, motions *in limine* operate to exclude inadmissible or prejudicial evidence before it is actually offered at trial. *Griffith v. Goodyear Dunlop Tires N. Am. Ltd.*, No. 11-CV-761S, 2018 WL 4658721, at *1 (W.D.N.Y. Sept. 28, 2018). The Court "should exclude evidence on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." *White v. CSX Transp., Inc.*, No. 19-CV-500SR, 2024 WL 3228158, at *1 (W.D.N.Y. June 28, 2024) (citing *United States v. Ozsusamlar*, 428 F. Supp. 2d 161, 164 (S.D.N.Y. 2006)). Thus, "courts considering a motion *in limine* may reserve judgment until trial, so that the motion is placed in the appropriate factual context." *United States v. Van Putten*, No. 04 CR. 803 (PKL), 2005 WL 612723, at *3 (S.D.N.Y. Mar. 15, 2005). Either way, "the ruling is subject to change when the case unfolds . . . . [E]ven if nothing unexpected happens at trial, the

district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling." *Luce*, 469 U.S. at 41–42.

## DISCUSSION

At the outset, the Court notes that the County seeks exclusion of all of Plaintiff's "other-case" evidence on the ground that Plaintiff has not identified from its amended exhibit list all of the evidence it will seek to admit. ECF No. 369. However, the Court finds that Plaintiff's amended exhibit list (ECF No. 391-1), together with the "Annotated Proposed R. 1006 Summary" that Plaintiff submitted in March 2025 (ECF No. 298), provide sufficient notice of Plaintiff's evidence. Therefore, the County's request in that regard [ECF No. 369] is denied.

## I.    Excluding "Certain *Monell* Evidence" (ECF No. 326-1[1])

The County also seeks the exclusion of "certain *Monell* evidence." ECF No. 326-1. The "other-case evidence" proffered by Plaintiff comes in various forms, including judicial decisions and appellate briefs from other criminal cases, and newspaper articles, all showing instances of misconduct or complaints of misconduct by prosecutors of the DA's Office during the period between 1966 and 1988. *See, e.g.,* ECF No. 298-1 (summarizing the other-case evidence from Plaintiff's perspective); ECF No. 391-1 (Plaintiff's amended exhibit list, PX 85–211). In addition to seeking a

---

[1] The Court notes that at oral argument on this motion, the County incorporated by reference his arguments from briefing in the case of *Walker v. County of Erie,* Case No. 22-cv-520 (W.D.N.Y.) at ECF Nos. 222, 296, 340-3, 384, 394. Further, following the Court's oral ruling on November 7, the County filed a brief "memorializing its objections to admission of Plaintiff's alleged *Monell* evidence." ECF No. 447. That briefing has been considered, though not expressly cited throughout this decision.

preliminary hearing to make a determination as to the admissibility of the evidence, the County's motion to preclude certain alleged municipal policy evidence makes three principal arguments: (1) Plaintiff should not be permitted to advance "overly broad or shifting" *Monell* theories; (2) Plaintiff's *Monell* evidence for both its *Brady* and summation misconduct theories is inadmissible because it is factually dissimilar, temporally remote, and lacks sufficient numerosity; and (3) Plaintiff's *Monell* evidence is inadmissible hearsay. ECF No. 326-1 at 3–16.

Plaintiff opposes the County's motion, arguing that its *Monell* theories are not overbroad; its "other case evidence is sufficiently similar [because] it involves the same general category of constitutional violation or is sufficiently similar or analogous that it is relevant" (ECF No. 379 at 4–11); that the Second Circuit has "stressed the significance of a long history of a policy-maker's deliberate indifference" and suggested that post-incident evidence could create the inference of an earlier policy or practice (*id.* at 11–13); and that it "need not adduce any particular number of other incidents to prevail on [its] *Monell* claim" (*id.* at 13). In answer to the County's hearsay argument, Plaintiff argues that the other-case evidence is admissible under Fed. R. Evid. 803(16), the "ancient documents" exception to the rule against hearsay. *Id.* at 14.

At the Final Pretrial Conference, and consistent with its first motion *in limine* order, the Court denied Plaintiff's request for a preliminary hearing on the evidence and explained its reasons on the record. ECF Nos. 396, 418. With respect to the remaining elements of the County's motion, for the reasons that follow, the motion is

**GRANTED IN PART AND DENIED IN PART**. For ease of discussion, the Court addresses the County's arguments out of order.

### A. Plaintiff's *Monell* Theories Are Not Overbroad

In response to the County's suggestion that its *Monell* theories are too broad, Plaintiff summarizes its theories as follows:

> [T]he Boyd Estate will present direct evidence that will be more than sufficient to prove that the Erie County District Attorney's Office (the "ECDAO") had widespread practices of Brady violations and summation misconduct, and that District Attorney Edward Cosgrove was deliberately indifferent to both types of misconduct. This includes evidence that ECDAO prosecutors regularly withheld exculpatory and impeachment evidence absent a specific request . . .; withheld impeachment evidence in general . . .; and withheld evidence favorable to the defense which the prosecutor did not subjectively believe . . . . Similarly, the Boyd Estate will present direct evidence that all types of summation errors were business-as-usual at the ECDAO . . . . The Boyd Estate's other-case evidence will supplement the direct admissions of policy, custom, or practice that the Boyd Estate will rely on.

ECF No. 379 at 3–4. That is, as it relates to Plaintiff's specific theories regarding the municipal policy or custom that caused Boyd's alleged injuries, there are four: (1) widespread practice of *Brady* violations, (2) widespread practice of summation misconduct, (3) District Attorney Edward Cosgrove failed to provide adequate supervision or discipline with respect to *Brady* violations, and (4) District Attorney Cosgrove failed to provide adequate supervision or discipline with respect to summation misconduct.

As the Court noted in its prior ruling, Plaintiff will not be pursuing a *Russo* theory. ECF No. 418 at 44. Additionally, the Court notes that the scope of a *Brady* violation claim is well-defined: "evidence . . . which a jury might reasonably infer was

favorable, withheld, and material to [the] underlying criminal trial." *Id.* Similarly, as the foregoing excerpt from Plaintiff's ECF No. 379 shows, Plaintiff has limited the scope of its second "widespread practice" theory to "summation misconduct," and its failure to supervise or discipline theories to District Attorney Cosgrove's deliberate indifference to *Brady* violations and summation misconduct. ECF No. 379 at 3–4.

The Court finds that these theories are not impermissibly broad. Plaintiff's request for a preliminary hearing and/or additional clarification is therefore denied. *See, e.g., Jones v. Town of East Haven*, 691 F.3d 72, 82 (2d Cir. 2012) (describing "a number of different ways in which, given sufficient evidence, Plaintiff might have satisfied the burden of showing municipal liability under the standards of *Monell* . . . . [for] abuse of the rights of black people . . . .").

## B. The Ancient Documents Hearsay Exception

As indicated above, Plaintiff's other-case evidence includes a number of judicial decisions and appellate briefs from other criminal cases, as well as newspaper articles, showing instances of misconduct or complaints of misconduct by County prosecutors between 1966 and 1988. Plaintiff maintains that the evidence is admissible both for the non-hearsay purpose of showing notice and for the truth of the matter under the ancient documents hearsay exception in Fed. R. Evid. 803(16). ECF No. 379 at 14. The County argues that all of the other-case evidence should be excluded because it is inadmissible hearsay and, even if the ancient documents exception does apply, because it is irrelevant. ECF No. 326-1 at 14–15. After a review of the parties' papers, as well as the other-case evidence exhibits proffered, the Court

finds that the ancient documents exception applies.

Fed. R. Evid. 801(c) defines "hearsay" as a statement the declarant does not make while testifying at the current trial or hearing, and which a party offers to prove the truth of the matter asserted in the statement. Under Fed. R. Evid. 802, hearsay is not admissible unless otherwise provided by federal law or other federal rules. Fed. R. Evid. 803 identifies a number of exceptions to the rule excluding hearsay evidence, including the "ancient documents" exception, which allows the admission of "[a] statement in a document that was prepared before January 1, 1998, and whose authenticity is established." Fed. R. Evid. 803(16). Fed. R. Evid. 901(8) provides that ancient documents satisfy the authenticity requirement where they are in a condition that creates no suspicion about authenticity; were in a place where, if authentic, they would be likely to be; and are at least 20 years old when offered.

The County does not offer any specific reason that the ancient documents exception does not apply here, other than that the ancient documents exception does not create relevance. ECF No. 326-1 at 15. Further, the parties have submitted a stipulation indicating that the parties have agreed to the authenticity of the evidence. ECF No. 404. As each of the documents is well over 20 years old, the Court finds that the ancient documents exception applies.

### C. The Relevance of Plaintiff's Other Case Evidence

Nevertheless, as the County notes, the applicability of the ancient documents exception does not necessarily create relevance or guarantee the admission of the proffered evidence. Accordingly, the Court must analyze the relevance of Plaintiff's

other-case evidence independent of the ancient documents exception. In that regard, the County argues that Plaintiff's other-case evidence should be excluded because it is irrelevant: specifically, the County maintains that it is too factually dissimilar, too temporally remote, and the instances are too few in number to constitute relevant evidence to the alleged misconduct in the present case. ECF No. 326-1.

Three fundamental rules govern the Court's consideration. Under Fed. R. Evid. 401, evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action. Fed. R. Evid. 402 establishes the basic rule that relevant evidence is admissible, and irrelevant evidence is not admissible. Fed. R. Evid. 403 provides that even relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

To determine whether a "fact is of consequence" on the issue of *Monell* liability, the Court observes that a plaintiff seeking to impose § 1983 liability on a municipality at trial must prove that the violation of its rights under the Constitution or federal law was caused by action pursuant to an official municipal policy or custom. *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978). Thus, in addition to demonstrating a violation of its rights, the plaintiff must prove the existence of a municipal custom or policy, and an "affirmative link between the policy and the particular constitutional violation alleged." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985); *see also City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989) (stating

the municipal custom or policy must be "the moving force" behind the constitutional

violation).

There are several theories by which a plaintiff can establish the existence of a

municipal "policy" or "custom" that caused the violation:

> (1) a formal policy officially endorsed by the municipality; (2) actions
> taken by government officials responsible for establishing the municipal
> policies that caused the particular deprivation in question; (3) a practice
> so consistent and widespread that, although not expressly authorized,
> constitutes a custom or usage of which a supervising policy-maker must
> have been aware; or (4) a failure by policymakers to provide adequate
> training or supervision to subordinates to such an extent that it amounts
> to deliberate indifference to the rights of those who come into contact
> with the municipal employees.

*Jones v. Westchester Cnty*, 182 F. Supp. 3d 134, 158 (S.D.N.Y. 2016) (quotations

omitted); *see also Iacovangelo v. Corr. Med. Care, Inc.*, 624 F. App'x 10, 13 (2d Cir.

2015).

The means of proving the policy or custom are different for each of the various

theories. As relevant to the present case, to prove a municipal policy or custom

through a "widespread practice," a plaintiff must show that the practice is "so

permanent and well settled as to constitute a 'custom or usage' with the force of law,"

and that it is "so manifest as to imply the constructive acquiescence of senior policy-

making officials." *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 870–71 (2d

Cir. 1992) (quoting *Monell*, 436 U.S. at 691; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144,

168 (1970)). One form of evidence supporting a plaintiff's allegations of *de facto*

customs or policies is other court cases involving similar misconduct. *See, e.g., Seward

v. Antonini*, No. 20-CV-9251 (KMK), 2023 WL 6387180, at *32–33 (S.D.N.Y. Sept. 29,

9

2023) (denying summary judgment against a *Monell* claimant where he relied upon five factually similar cases, as well as other direct evidence, to raise triable issues of fact). To demonstrate relevance, a plaintiff must demonstrate that the improper conduct in the other cases resembles the misconduct alleged in his particular claim and, typically, an adjudication of liability. *See, e.g., Williams v. Fryermuth*, No. 23-CV-2156 (PMH), 2024 WL 4557444, at *5 (S.D.N.Y. Oct. 23, 2024) (evaluating cases for a "widespread practice" claim).

A failure to supervise or discipline theory, on the other hand, requires proof of "deliberate indifference." *See, e.g., Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004). Deliberate indifference is a "stringent standard of fault" that goes beyond mere negligence, "requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quotation omitted). Indeed the Second Circuit has held that a plaintiff must make three showings to establish deliberate indifference: (1) that a policymaker knows to a moral certainty that her employees will confront a given situation; (2) that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation; and, (3)  that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights. *Jenkins v. City of New York*, 478 F.3d 76, 94 (2d Cir. 2007); *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007). A municipality's "'policy of inaction'" in light of notice that its policies, practices, or programs will cause constitutional violations 'is the functional

equivalent of a decision by the [municipality] itself to violate the Constitution.'" *Connick*, 563 U.S. at 61–62 (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (O'Connor, J., concurring in part and dissenting in part)).

"An obvious need [for action] may be demonstrated through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995) (citations omitted). However proven, "the identified deficiency . . . must be closely related to the ultimate injury." *City of Canton*, 489 U.S. at 391. Moreover, contrary to the widespread practice theory, "contemporaneous or subsequent conduct cannot establish a pattern of violations that would provide "notice to the cit[y] and the opportunity to conform to constitutional dictates . . ." sufficient to demonstrate deliberate indifference. *Connick*, 563 U.S. at 63 n.7.

### D. Forms of Evidence

The other-case evidence that Plaintiff seeks to admit in the present case include primarily judicial decisions in other criminal cases involving prosecutors from the DA's office, and newspaper articles reporting on misconduct at the DA's Office.[2]

---

[2] Plaintiff's exhibit list also includes a number of appellate briefs. As of the date of this decision, Plaintiff has not sought admission of any of those briefs. As it relates to legal briefs from other cases, the Court notes its agreement with the Fifth Circuit that "statements in appellate briefs ha[ve] a special danger of creating jury confusion, because appellate briefs address the facts shown by the record below only as they are relevant to the specific legal questions presented by that particular appeal." *Hardy v. Johns-Manville Sales Corp.*, 851 F.2d 742, 745 (5th Cir. 1988). As such, the Court is inclined exclude legal briefs as unfairly prejudicial under Fed. R. Evid. 403. *See, e.g., Burnett v. Walker Cnty. Comm'n*, No. 6:13-CV-01506-HNJ, 2018 WL 2927755, at *1

ECF No. 391-1.

*i. Judicial Decisions*

The Court notes that other courts in this Circuit have tended to exclude judicial decisions based on Fed. R. of Evid. 403, finding that "the prejudice to defendants in admitting a prior judicial decision significantly outweighed the prior decision's probative force." *Haynes v. Acquino*, No. 10-CV-355F, 2018 WL 3126725, at *5 (W.D.N.Y. June 26, 2018), *aff'd*, 771 F. App'x 75 (2d Cir. 2019) (citing *Brundidge v. City of Buffalo*, 79 F. Supp. 2d 219, 223 n.2 (W.D.N.Y. 1999)). Specifically, courts have explained that "[t]he difficulty in assessing the probative force of comments by a judge . . . is especially great for a jury, which may give exaggerated weight to a judge's supposed expertise on such matters." *Blue Cross & Blue Shield of New Jersey, Inc.*, 141 F. Supp. 2d at 324 (addressing the danger with respect to a judge's credibility assessment of a witness). Thus, "[e]xcluding credibility-assessing-statements by judges in other cases avoids the practical difficulty of weighing judicial opinions against contrary evidence [in the case at bar]." *Id.* at 323–24 (citing Margaret A. Berger, et al., EVIDENCE, 803.28[6] (2001)); *see also Greycas, Inc. v. Proud*, 826 F.2d 1560, 1566 (7th Cir.1987); *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 505 F. Supp. 1125, 1185 (E.D. Pa. Aug. 7, 1980).

However, in cases presenting *Monell* claims, courts have found that a plaintiff may show the existence of *de facto* customs or policies by citing decisions in other

___

(N.D. Ala. May 16, 2018) (precluding, in a different context, the presentation of legal arguments pursuant to Fed. R. Evid. 403 "because of their tendency to confuse and unduly prejudice the jury").

cases that contain similar allegations and resulted in an adjudication of liability. *See, e.g., McCrae v. Town of Brookhaven*, 759 F. Supp. 3d 372, 400 (E.D.N.Y. 2024) (reviewing cases to support its statement that "[f]our federal lawsuits in a short amount of time alleging similar conduct against [defendant's] employees certainly amount to repeated complaints of civil rights violations," but ultimately found the lawsuits subsequent to plaintiff's alleged injury failed to provide defendant of notice of widespread deficiencies in their training or supervision practices). Accordingly, the Court finds that the probative value of qualifying judicial decisions is not substantially outweighed by the potential for unfair prejudice or juror confusion in this matter, but may direct redaction of particularly concerning passages as circumstances warrant.[3]

### ii. Newspaper Articles

Newspaper articles are generally hearsay excluded by Fed. R. Evid. 802 when offered for the truth of the matters asserted therein. *See, e.g., Jacobson v. Deutsche Bank, A.G.*, 206 F. Supp. 2d 590, 594 (S.D.N.Y. 2002), *aff'd*, 59 F. App'x 430 (2d Cir. 2003). As noted above, however, the articles in the present case are more than 40 years old, and their authenticity is established. Therefore, the newspaper articles in the present case are ancient documents under Fed. R. Evid. 803(16), and, as such, are not categorically excluded by the hearsay rule. *See Murphy v. City of Tulsa*, No. 15-

---

[3] In this regard, the Court notes that, at trial, counsel for Plaintiff read into the record excerpts from the admitted exhibits, and the Court directed the parties to confer regarding any requested redactions. ECF No. 456. To date, the parties have not made any requests for redactions.

CV-528-GKF-FHM, 2018 WL 660010, *3 (N.D. Okla. Feb. 1, 2018).

Further, where a party can show that newspaper articles are not being offered for the truth of the matter, a Court may allow their admission as non-hearsay. *Jordonne v. Ole Bar & Grill, Inc.,* No. 13CIV1573VBJCM, 2016 WL 3409088, at *6 (S.D.N.Y. Apr. 26, 2016), *report and recommendation adopted sub nom. Jordan v. Ole Bar & Grill, Inc.*, No. 13 CV 1573 (VB), 2016 WL 3360524 (S.D.N.Y. June 16, 2016). One such purpose is notice, which Plaintiff asserts in several instances here. *See, e.g., United States v. Briguet*, No. 2:17-CV-3482, 2020 WL 6945929, at *1 (E.D.N.Y. Nov. 25, 2020) (finding articles relevant where defendant testified he read the financial page each day, and article headlines were likely to catch his eye).

Accordingly, the Court will admit newspaper articles that otherwise satisfy the Court's guidance above.

### E. Rulings with Respect to Specific Incidents

As described below, and consistent with the Court's discussion with the parties on the record on November 5 and November 7, 2025, the Court finds that the following other-case evidence is admissible in this matter. As explained for each particular item which the Court finds to be admissible, the Court finds the evidence to be factually similar – and therefore relevant – to one or more of Plaintiff's theories of policy or custom: widespread practice of *Brady* violations, widespread practice of summation misconduct, or District Attorney Cosgrove's failure to supervise or discipline as it relates to either *Brady* violations or summation misconduct.

Further, the Court finds the following cases are not too remote in time. The

inference that a custom or policy existed may be drawn from circumstantial proof. *See DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998) (citing *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 123 (2d Cir.1991)). While subsequent or contemporaneous conduct cannot serve as notice to policymakers of deficiencies in their supervision, or serve as proof of causation, it may "be circumstantial evidence of the existence of preceding municipal policy or custom." *Chepilko v. City of New York*, No. 06-CV-5491 ARR LB, 2012 WL 398700, at *15 (E.D.N.Y. Feb. 6, 2012) (citing *inter alia, Bordanero v. McLeod*, 871 F.2d 1151, 1167 (1st Cir. 1989) ( "Post-event evidence can shed some light on what policies existed in the city on the date of an alleged deprivation of constitutional right"); *see also Jones*, 691 F.3d at 84 ("It is not unreasonable to infer that Town officials who were indifferent to such abuse in 2000 might have held similar attitudes three years earlier."). Thus, the Court will consider evidence of subsequent conduct through the end of District Attorney Cosgrove's tenure in 1982 as circumstantial evidence supporting Plaintiff's "widespread practice" theories, but not as evidence supporting Plaintiff's failure to supervise or discipline theories.

Lastly, with respect to Plaintiff's argument that there are too few cases, the Court finds that there is no "magic number" of instances of unconstitutional conduct that will suffice to permit the inference of a pattern. *Brown v. Fire Dep't of City of New York*, No. 19-CV-2400 (LDH), 2020 WL 6940992, at *9 (E.D.N.Y. Nov. 25, 2020) (finding that two instances were not sufficient). Particularly where the plaintiff has put forth additional evidence to establish widespread practice, such as Plaintiff has

in the present case, other factually similar cases constitute probative evidence. *Seward*, 2023 WL 6387180 at \*33. Here, as Plaintiff points out, the cases do not serve as its only evidence of municipal policy or custom, but rather to "supplement the direct admissions of policy, custom, or practice that [it] will rely on." ECF No. 379 at 4.

In light of the foregoing principles, the Court finds as follows with respect to the admissibility of Plaintiff's other-case evidence. Unless otherwise specified, all rulings acknowledge that circumstances may evolve during trial.

Incident 1, *Bader and Horton*, includes a 1976 newspaper article indicating that an arson sentence was vacated due to the prosecution's failure to disclose favorable, material evidence. ECF No. 391-1 at PX 95. PX 95 is admissible for the truth of the matter as it relates to Plaintiff's widespread practice of *Brady* violations theory, and for notice of potential misconduct relevant to Plaintiff's theory that District Attorney Cosgrove failed to supervise or discipline *Brady* violations.

Incident 2, *Ivey*, includes a 1981 decision from the Appellate Division of the New York State Supreme Court condemning the prosecutor's statements on summation intended to scare the jury and inject sympathy for the victim. *Id.* at PX 96–100. PX 99, the judicial decision, is admissible for the truth of the matter as it relates to Plaintiff's widespread practice of summation misconduct theory. The decision is not admissible as evidence of Plaintiff's widespread practice of *Brady* violations theory, or as notice of potential misconduct relevant to failure to supervise or discipline theories: there are no clear references to a *Brady* violation, and the decision was subsequent to Mr. Boyd's trial.

16

Incident 3, *Clark*, is not admissible because the proferred decision from the Appellate Division of the New York State Supreme Court did not result in adjudication of liability for a *Brady* violation. *Id.* at PX 101–02.

Incident 4, *McKinley*, includes a 1978 newspaper article reporting that a judge called a mistrial in a murder case after the prosecution failed to disclose testimony to defense counsel. *Id.* at PX 103. PX 103 is admissible for the truth of the matter as it relates to Plaintiff's widespread practice of *Brady* violations theory, but – because it was subsequent to Mr. Boyd's trial – not for notice of potential misconduct relevant to Plaintiff's theory that District Attorney Cosgrove failed to supervise or discipline *Brady* violations.

Incident 5, *Reese*, includes a 1979 newspaper article reporting that a mistrial was declared in a murder trial after prosecutors failed to disclose favorable material. *Id.* at PX 104. PX 104 is admissible for the truth of the matter as it relates to Plaintiff's widespread practice of *Brady* violations theory, but – because it was subsequent to Mr. Boyd's trial – not for notice of potential misconduct relevant to Plaintiff's theory that District Attorney Cosgrove failed to supervise or discipline *Brady* violations.

Incident 6, *Mitchell*, includes a 1979 decision of the New York State Supreme Court in the County of Erie ordering prosecutors to turn over exculpatory and favorable material. *Id.* at 105–06. PX 105 is admissible for the truth of the matter as it relates to Plaintiff's widespread practice of *Brady* violations theory, but – because it was subsequent to Mr. Boyd's trial – not for notice of potential misconduct relevant

17

to Plaintiff's theory that District Attorney Cosgrove failed to supervise or discipline *Brady* violations.

Incident 7, *Cadby*, includes a 1980 decision from the Appellate Division of the New York State Supreme Court. *Id.* at PX 107–14. The entire incident is excluded; it is not clearly relevant to any of Plaintiff's *Monell* theories.

Incident 8, *Steele*, includes a 1980 newspaper article reporting that a mistrial was declared in a larceny trial after prosecutors failed to disclose favorable material. *Id.* at PX 115. PX 115 is admissible for the truth of the matter as it relates to Plaintiff's widespread practice of *Brady* violations theory, but – because it was subsequent to Mr. Boyd's trial – not for notice of potential misconduct relevant to Plaintiff's theory that District Attorney Cosgrove failed to supervise or discipline *Brady* violations.

Incident 9, *Duke*, includes a 1980 newspaper article reporting that a fraud case was dismissed after the trial court found that had the prosecution disclosed favorable witness testimony to the grand jury, the grand jury never could have returned an indictment. *Id.* at PX 116. The incident is excluded; it is not clearly relevant to any of Plaintiff's *Monell* theories.

Incident 10, *Ciccarelli*, includes a 1981 newspaper article reporting that a rape conviction was overturned after prosecutors failed to disclose favorable material. *Id.* at PX 121. PX 121 is admissible for the truth of the matter as it relates to Plaintiff's widespread practice of *Brady* violations theory, but – because it was subsequent to Mr. Boyd's trial – not for notice of potential misconduct relevant to Plaintiff's theory

that District Attorney Cosgrove failed to supervise or discipline *Brady* violations.

Incidents 11, 12, and 13 – *Moore, Slaughter*, and *Damon* – include judicial decisions for three cases between 1965 and 1969. *Id.* at PX 122–35. Although Plaintiff argues that the Second Circuit has noted the relevance of a "long history" of a particular policy or custom, the Court notes that the Second Circuit has also been clear that a municipality "may not be held liable under § 1983 simply for the isolated unconstitutional acts of its employees . . . ." *Curry v. City of Syracuse*, 316 F.3d 324, 330 (2d Cir. 2003) (citing *Sorlucco*, 971 F.2d at 870). Therefore, these matters are excluded as irrelevant to Plaintiff's attempt to establish a pattern of misconduct; they are too episodic to constitute a pattern.

Incident 14, *Cardinale*, includes a 1970 judicial decision by the Appellate Division of the New York State Supreme Court reversing judgment and granting the defendant a new trial because the appellate division found the defendant's motion for a mistrial after the prosecutor made a prejudicial opening statement should have been granted. *Id.* at PX 136–38. This matter is excluded as factually dissimilar to Plaintiff's *Monell* theories; it involves opening statement misconduct.

Incidents 15 and 16, *Freeland* and *Ketchum*, include – among other items, two court decisions referencing an "inflammatory summation" and "grievous misconduct" on summation, respectively. *Id.* at PX 140–41. However, these incidents are excluded under Fed. R. Evid. 403, as the probative value is substantially outweighed by the potential for unfair prejudice or confusing the jury because, despite the respective court's opinion regarding the prosecution's conduct on summation, neither court

found that the conduct deprived the defendant of a fair trial. That is, there was no adjudication of liability. Plaintiff's additional arguments regarding *Freeland* will be discussed further below.

Incident 17, *Gesegnet*, includes a newspaper article noting that a mistrial had been declared in a previous trial of defendant after the prosecution made prejudicial statements during opening remarks. *Id.* at PX 145. This incident is excluded as factually dissimilar to Plaintiff's *Monell* theories; it involved opening statement misconduct.

Incident 18, *Donaldson*, includes a 1975 decision from the Appellate Division of the New York State Supreme Court reversing judgment and granting the defendant a new trial because the prosecutor's conduct on summation in a 1974 trial denied the defendant a fair trial. PX 146–49. PX 148 is admissible for the truth of the matter as it relates to Plaintiff's widespread practice of summation misconduct theory, and – because it was prior to Mr. Boyd's trial – for notice of potential misconduct relevant to Plaintiff's theory that District Attorney Cosgrove failed to supervise or discipline summation misconduct.

Incident 19, *Balsano*, includes a 1976 decision from the Appellate Division of the New York State Supreme Court reversing judgment and granting the defendant a new trial, and observing that there were at least eight objections sustained during the prosecutor's summation. *Id.* at PX 146–49. The court found that because of the trial judge's curative instructions, the prosecutor's misconduct on summation standing alone would be insufficient to warrant a new trial. This case is

distinguishable from other instances in which there was no adjudication of liability because the decision indicates the summation misconduct would have been sufficient to warrant a new trial but for the curative instructions of the court. Therefore, PX 152 is admissible for the truth of the matter as it relates to Plaintiff's widespread practice of summation misconduct theory, and – because it was prior to Mr. Boyd's trial – for notice of potential misconduct relevant to Plaintiff's theory that District Attorney Cosgrove failed to supervise or discipline summation misconduct.

Incident 20, *Mordino*, includes a 1977 decision from the Appellate Division of the New York State Supreme Court reversing judgment and granting the defendant a new trial. *Id.* at PX 154–58. This incident is excluded under Fed. R. Evid. 403. The primary issues in the case involved press coverage interfering with the defendant's ability to receive a fair trial.

Incident 21, *Mordino II*, includes a 1981 decision from the Appellate Division of the New York State Supreme Court affirming defendant's conviction. *Id.* at PX 159–63. This incident is excluded; the conviction was upheld, and there was no adjudication of liability.

Incident 22, *Weston*, includes a 1976 decision from the Appellate Division of the New York State Supreme Court reversing judgment and granting the defendant a new trial. *Id.* at PX 164–67. The court stated that the prosecutor's remarks in summation "might well be termed . . . inflammatory and intimidating," but that they were not so prejudicial of themselves to grant a new trial. This incident is excluded under Fed. R. Evid. 403 as unfairly prejudicial and potentially misleading; the

summation misconduct was not the cause of the reversal.

Incident 23, *Johnson*, includes a 1978 decision from the Appellate Division of the New York State Supreme Court affirming the defendant's conviction, and a 1984 decision from the United States District Court in the Western District of New York granting the defendant's petition for habeas corpus and ordering a new trial due to misconduct by the prosecutor – including during summation – during his 1977 trial. *Id.* at PX 168–72. PX 170 and PX 171 are admissible for the truth of the matter as it relates to Plaintiff's widespread practice of summation misconduct theory, but – because the favorable decisions were subsequent to Mr. Boyd's trial – not for notice of potential misconduct relevant to Plaintiff's theory that District Attorney Cosgrove failed to supervise or discipline summation misconduct.

Incident 24, *Keller*, includes a 1979 decision from the Appellate Division of the New York State Supreme Court reversing judgment and granting the defendant a new trial on the basis of the prosecutor's remarks on summation referring to matters not in evidence. *Id.* at PX 173–76. PX 175 is admissible for the truth of the matter as it relates to Plaintiff's widespread practice of summation misconduct theory, but – because it was subsequent to Mr. Boyd's trial – not for notice of potential misconduct relevant to Plaintiff's theory that District Attorney Cosgrove failed to supervise or discipline summation misconduct.

Incident 25, *Terry*, includes a 1981 decision from the Appellate Division of the New York State Supreme Court, reversing judgment and granting defendant a new trial. *Id.* at PX 177–80. This matter is excluded under Fed. R. Evid. 403 as unfairly

prejudicial and confusing for the jury; the matter is not clearly indicative of summation misconduct.

Incident 26, *Vance*, includes a 1982 decision from the Appellate Division of the New York State Supreme Court reversing judgment and granting defendant a new trial on the basis of the prosecutor's improper reference during summation to his involvement in gathering evidence. *Id.* at PX 181–84. PX 183 is admissible for the truth of the matter as it relates to Plaintiff's widespread practice of summation misconduct theory, but – because it was subsequent to Mr. Boyd's trial – not for notice of potential misconduct relevant to Plaintiff's theory that District Attorney Cosgrove failed to supervise or discipline summation misconduct.

Incident 27, *Herlan*, involves a 1984 decision from the Appellate Division of the New York State Supreme Court reversing a judgment from 1982 and granting defendant a new trial where "remarks by the prosecutor during summation compounded the prejudicial effect of" his improper cross-examination. *Id.* at PX 185–87. PX 187 is admissible for the truth of the matter as it relates to Plaintiff's widespread practice of summation misconduct theory, but – because it was subsequent to Mr. Boyd's trial – not for notice of potential misconduct relevant to Plaintiff's theory that District Attorney Cosgrove failed to supervise or discipline summation misconduct.

Except as discussed below in the Court's consideration of Plaintiff's motion to admit six additional incidents, the Court declines to discuss in detail the incidents in exhibits PX 188–211. The Court has thoroughly reviewed the proferred submissions,

and finds that each incident should be excluded as too dissimilar to the misconduct at issue in the present case.

## II. The Admission of Certain *Monell* Evidence (ECF No. 352-1)

Plaintiff maintains that in addition to the evidence admitted above, the Court "should admit evidence of six judicial decisions involving prosecutorial misconduct alleged in this case to be probative of deliberate indifference or causation, regardless of whether the court reversed the underlying conviction." ECF No. 352-1 at 7.

Proposed Case 1, *Conorozzo,* includes a newspaper article dated March 15, 1977. ECF No. 391-1 at PX 201. The article reports that a witness testified on cross-examination that ADA Drury influenced his identification of suspects, and threatened him. However, the report seems to indicate that the prosecutor's redirect examination elicited testimony that ADA Drury's conduct was not as improper as the testimony on cross-examination suggested. Plaintiff argues that this case is relevant proof of District Attorney Cosgrove's deliberate indifference because there was not a disciplinary inquiry following the public reporting of ADA Drury's apparent misconduct, and because ADA Drury is similarly accused of personal involvement in witness coercion and evidence fabrication with respect to Tyrone Woodruff and Andre Hough. ECF No. 352-1 at 8. This case is excluded: the purported misconduct is too ambiguous, unrelated to *Brady* evidence or summation misconduct, and there is no suggestion of an adjudication of liability.

Proposed Case 2, *Greer,* includes a 1975 decision from the Appellate Division of the New York State Supreme Court reversing the judgment and granting a new

trial on the basis of the prosecutor's improper questioning of the defendant about prior bad acts in front of the jury. ECF No. 391-1 at PX 198–200. Plaintiff argues that this case should be admitted because the conduct is similar to ADA Drury's allegedly inflammatory summation in the Boyd case. This case is excluded: it involves improper cross-examination, and is therefore factually dissimilar.

Proposed Case 3, *Reingold*, includes a 1974 decision from the Appellate Division of the New York State Supreme Court reversing the judgment and granting a new trial, also on the basis of the prosecutor's improper questioning of defendant about prior bad acts. *Id.* at PX 195–97. Plaintiff argues that this case should be allowed because the conduct is similar to ADA Drury's in the Boyd trial, where he allegedly made knowingly false or misleading argument about the absence of coercion and collusion and he tried to inflame and prejudice the jury with racially charged comments. This case is excluded: it involves improper cross-examination, and is therefore factually dissimilar.

Proposed Case 4, *Williams*, includes a 1973 newspaper article reporting that the trial court declared a mistrial in a rape case after ADA Drury asked defendant on cross-examination about an unrelated rape allegation. *Id.* at PX 194. Plaintiff argues that this case should be admitted because, as Plaintiff alleges he did in the Boyd case, ADA Drury was allegedly using a tactic to inflame the jury and distract it from the competent evidence in the case, and that District Attorney Cosgrove's failure to investigate likely caused ADA Drury to believe he could get away with similar inflammatory and distracting behavior. ECF No. 352-1 at 10. This case is excluded:

it involves improper cross-examination, and is therefore factually dissimilar.

Proposed Case 5, *Freeland*, was discussed briefly above. The *Freeland* decision from the Appellate Division of the New York State Supreme Court noted "excesses" in the prosecution's summations regarding the defendant's associations with the "Black Muslims," but declined to find defendant was deprived of a fair trial because it was the defendant who initially developed the testimony relative to the Black Muslim faith. ECF No. 391-1 at PX 140. Plaintiff argues that this case should be admitted because the District Attorney's failure to discipline the prosecutor was likely to cause other prosecutors to believe summation misconduct would be condoned. ECF No. 352-1 at 11. This case is excluded: there was no adjudication of liability, the extent of the prosecutor's "excesses" is ambiguous, and the probative value to Plaintiff's theories of widespread practice of *Brady* violations, widespread practice of summation misconduct, or District Attorney Cosgrove's deliberate indifference to *Brady* violations or summation misconduct is substantially outweighed by the risk of unfair prejudice.

Proposed Case 6, *Washington*, includes a 1969 decision from the Appellate Division of the New York State Supreme Court reversing judgment and granting a new trial where the appellate court found the prosecutor conducted an improper cross-examination in an "effort to persuade the jury that defendant was an habitual groin kicker." ECF No. 391-1 at PX 193. Plaintiff maintains that this case should be admitted because it was sufficiently similar to Mr. Drury's tactics in summation in the Boyd case to distract the jury from the competent evidence and unfairly prejudice

it against the defendant. ECF No. 351-1 at 11. This case is excluded: it is too remote in time, and too dissimilar to warrant admission on any of Plaintiff's theories of municipal policy or custom.

## CONCLUSION

For the reasons stated, IT IS HEREBY ORDERED that the County's motion *in limine* to preclude certain *Monell* evidence is GRANTED IN PART AND DENIED IN PART, ECF No. 326; and it is further

ORDERED that Plaintiff's motion *in limine* to admit certain *Monell* evidence is DENIED, ECF No. 352-1; and it is further

ORDERED that the County's cross-motion *in limine* to exclude the other-case evidence on the grounds that it has not been specifically identified is DENIED, ECF No. 369.

SO ORDERED.

Dated:      November 18, 2025
            Rochester, New York

HON. MEREDITH A. VACCA
United States District Judge

## <u>Appendix A</u>

### Admitted "Other-Case Evidence"

**Admitted for widespread practice of *Brady* violations:**
- Bader/Horton (PX 95)
- McKinley (PX 103)
- Reese (PX 104)
- Mitchell (PX 105)
- Steele (PX 115)
- Ciccarelli (PX 121)

**Admitted for widespread practice of summation misconduct:**
- Ivey (PX 99)
- Donaldson (PX 148)
- Balsano (PX 152)
- Johnson (PX 170, 171)
- Keller (PX 175)
- Vance (PX 183)
- Herlan (PX187)

**Admitted for notice in failure to discipline *Brady* violations:**
- Bader/Horton (PX 95)

**Admitted for notice in failure to discipline summation misconduct:**
- Donaldson (PX 148)
- Balsano (PX 152)