| From: | Nicole Austin |
|---|---|
| To: | Firsenbaum, Ross; Joel B. Rudin; David Rudin; Spencer Durland; phoebe.silos@wilmerhale.com; James P. Blenk; Kirstie A. Means; Thomas R. Southard; Harrison L. Hartsough |
| Cc: | Meredith Vacca; NYWDml_Judge Vacca"s Chambers |
| Subject: | Boyd v. County of Erie (22-cv-519) - Proposed Final Jury Instructions and Verdict Sheet for review |
| Date: | Tuesday, November 18, 2025 9:39:32 PM |
| Attachments: | image001.png<br>external.png<br>Jury Instruction Top Sheet.pdf<br>Verdict Sheet - Boyd v. County of Erie - 11.18.25.pdf<br>Final Jury Instructions - Boyd Estate v. County of Erie 11.18.2025.pdf |
| Importance: | High |



Counsel,

Thank you for your patience. Attached are Judge Vacca's proposed Final Jury Instructions, top sheet, and Verdict Sheet.

As the Judge stated during trial today, she is requesting that the parties submit in writing to streamline the charge conference tomorrow morning. To that end, and because the Judge has already afforded the parties an additional opportunity to submit on jury instructions this past weekend, Judge Vacca would like the parties' written responses submitted **no later than 4:00 AM, Wednesday, November 19.**

Judge Vacca is aware that a 4:00 AM deadline seems slightly extreme, but hopefully this the last push. She thanks all of you for your hard work.

Thank you,



**Nicole W. Austin**
*Law Clerk to Judge Meredith A. Vacca*
*Western District of New York*
Kenneth B. Keating Federal Building
100 State Street, Rochester, NY 14614
O: 585-613-4374 | FAX: 716-613-4375
www.nywd.uscourts.gov

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

KATHLEEN WEPPNER, AS
EXECUTOR OF THE ESTATE OF
DARRYL BOYD,                                          Case No. 1:22-cv-00519

Plaintiff,

v.

THE COUNTY OF ERIE,

Defendant.

 

 

**The following is a copy of the instructions of law which the Court has read to you.  These instructions are provided to you in order to assist you in your deliberations.  You are to apply these instructions to the facts as you determine them to be.**

**You are reminded, however, that you are to read the following instructions as a whole.  You are not to single out any instruction as alone stating the law.**

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

KATHLEEN WEPPNER, AS
EXECUTOR OF THE ESTATE OF
DARRYL BOYD,                                    Case No. 1:22-cv-00519

Plaintiff,

v.

THE COUNTY OF ERIE,

Defendant.

---

## VERDICT SHEET

### PLAINTIFF'S *MONELL* CLAIM
### Section I: Liability

### Alleged Constitutional Violation Regarding Non-Disclosure of Evidence

1. Do you find that the Plaintiff has demonstrated by a preponderance of the evidence that Mr. Timothy Drury, a former prosecutor at the Erie County District Attorney's Office, violated Mr. Boyd's constitutional right to a fair criminal trial in 1977 due to the failure to disclose material exculpatory and/or impeachment evidence?

    ____ Yes

    ____ No

    ***If NO, please do <u>not</u> answer Question 2 and proceed to Question 3.***

2. Do you find that the Plaintiff has demonstrated by a preponderance of the evidence that a policy, custom, or practice of the Erie County District Attorney's Office, as attributed to the County of Erie, existed with respect to disclosures of exculpatory and/or impeachment evidence and, if so, that such policy, custom, or practice caused the violation of Mr. Boyd's constitutional right to a fair criminal trial in 1977 due to the failure to disclose material exculpatory and/or impeachment evidence to Mr. Boyd's defense?

    ____ Yes

    ____ No

    ***Regardless of your answer, please proceed to Question 3.***

1

**Alleged Constitutional Violation Regarding Summation Misconduct**

3. Do you find that the Plaintiff has demonstrated by a preponderance of the evidence that Mr. Timothy Drury, a former prosecutor at the Erie County District Attorney's Office, violated Mr. Boyd's constitutional right to a fair criminal trial in 1977 due to summation misconduct?

    _____ Yes

    _____ No

    ***If NO, please do <u>not</u> answer Question 4.***

4. Do you find that the Plaintiff has demonstrated by a preponderance of the evidence that a policy, custom, or practice of the Erie County District Attorney's Office, as attributed to the County of Erie, existed with respect to prosecutors' conduct during summation and, if so, that such policy, custom, or practice caused the violation of Mr. Boyd's right to a fair criminal trial in 1977 due to summation misconduct by Mr. Timothy Drury?

    _____ Yes

    _____ No

***If you answered YES in response to Questions 2 <u>or</u> 4, please proceed to Section II.***

***If you answered NO to <u>both</u> Questions in 2 and 4, then you should <u>not</u> answer any more questions and should proceed to the Signature Page.***

## <u>Section II: Damages</u>

5.  If you answered YES to either *or* both of Questions 2 and 4, please identify on the line below the total amount of compensatory damages that you find Mr. Boyd is entitled to for the period beginning on April 29, 1977 (the date of Mr. Boyd's conviction) until February 26, 2025 (the date of Mr. Boyd's death):


    $ _____

    ***Please proceed to Question 6.***

6.  Do you find that the Defendant, the County of Erie, has demonstrated, by a preponderance of the evidence, that one or more of the following individuals of Buffalo Police Department also caused or contributed to Mr. Boyd's total amount of compensatory damages by fabricating evidence, in a manner that misled or coerced Mr. Timothy Drury into making uninformed decisions regarding Mr. Boyd's criminal prosecution: Michael E. Guadagno, James E. Hunter, Robert F. Arnet, Frank C. Deubell, Leo J. Donovan, and/or Francis M. Manista, Jr.?

    _____ Yes

    _____ No


    ***If YES, please proceed to Question 7.***

    ***If NO, please do <u>not</u> answer Question 7 and proceed to the Signature Page***

3

7. Please apportion fault for the total damages that Mr. Boyd suffered based on what you determine to be the relative culpable conduct of the County of Erie and the culpable conduct of individual employees of the Buffalo Police Department.

      Please utilize percentages in your apportionment, totaling 100%.

      If you do <u>not</u> find that the County has proven, by a preponderance of the evidence, that a particular individual listed below fabricated evidence in Mr. Boyd's criminal case, in a manner that misled or coerced Mr. Timothy Drury into making uninformed decisions regarding Mr. Boyd's criminal prosecution, please assign a percentage of zero ("0").

_____% County of Erie
_____% Michael E. Guadagno
_____% James E. Hunter
_____% Robert F. Arnet
_____% Frank C. Deubell
_____% Leo J. Donovan
_____% Francis M. Manista, Jr.

**<u>STOP</u>: Please proceed to the Signature Page**.

## **Signature Page**

Instructions to the Foreperson:  Once you have indicated the jury's answers to the questions above and have been directed by the instructions to the signature page, simply sign and date this page in the space provided below.  Then inform the court security officer that you have finished deliberating.

By his/her signature below, the jury foreperson affirms that the above are the answers of the unanimous jury in the case of *Kathleen Weppner, the Executor of the Estate of Darryl Boyd v. The County of Erie*, 1:22-cv-00519.

_____

██████████████████, FOREPERSON

Dated: November ____, 2025

5

| | |
|---|---|
| **From:** | Nicole Austin |
| **To:** | Firsenbaum, Ross; Joel B. Rudin; David Rudin; Spencer Durland; phoebe.silos@wilmerhale.com; James P. Blenk; Kirstie A. Means; Thomas R. Southard; Harrison L. Hartsough |
| **Cc:** | Meredith Vacca; NYWDml_Judge Vacca"s Chambers |
| **Subject:** | RE: Boyd v. County of Erie (22-cv-519) - Proposed Final Jury Instructions and Verdict Sheet for review |
| **Date:** | Tuesday, November 18, 2025 9:45:15 PM |
| **Attachments:** | image001.png |
| | external.png |
| | Final Jury Instructions - Boyd Estate v. County of Erie 11.18.2025 for distribution.pdf |



My apologies, counsel. Please see the attached Final Jury Instructions for review. I inadvertently attached an earlier version.

**Nicole W. Austin**
*Law Clerk to Judge Meredith A. Vacca*
*Western District of New York*
Kenneth B. Keating Federal Building
100 State Street, Rochester, NY 14614
O: 585-613-4374 | FAX: 716-613-4375
www.nywd.uscourts.gov

---

**From:** Nicole Austin
**Sent:** Tuesday, November 18, 2025 9:39 PM
**To:** Firsenbaum, Ross <ross.firsenbaum@wilmerhale.com>; Joel B. Rudin <jbrudin@rudinlaw.com>; David Rudin <david@rudinlaw.com>; Spencer Durland <sdurland@hooverdurland.com>; phoebe.silos@wilmerhale.com; James P. Blenk <jblenk@lippes.com>; Kirstie A. Means <kmeans@lippes.com>; Thomas R. Southard <tsouthard@lippes.com>; hhartsough@lippes.com
**Cc:** Meredith Vacca <Meredith_Vacca@nywd.uscourts.gov>; NYWDml_Judge Vacca's Chambers <NYWDml_Judge_Vacca's_Chambers@nywd.uscourts.gov>
**Subject:** Boyd v. County of Erie (22-cv-519) - Proposed Final Jury Instructions and Verdict Sheet for review
**Importance:** High

Counsel,

Thank you for your patience. Attached are Judge Vacca's proposed Final Jury Instructions, top sheet, and Verdict Sheet.

As the Judge stated during trial today, she is requesting that the parties submit in writing to streamline the charge conference tomorrow morning. To that end, and because the Judge has already afforded the parties an additional opportunity to submit on jury instructions this past weekend, Judge Vacca would like the parties' written responses submitted **no**

**later than 4:00 AM, Wednesday, November 19.**

Judge Vacca is aware that a 4:00 AM deadline seems slightly extreme, but hopefully this the last push. She thanks all of you for your hard work.

Thank you,



**Nicole W. Austin**
*Law Clerk to Judge Meredith A. Vacca*
*Western District of New York*
Kenneth B. Keating Federal Building
100 State Street, Rochester, NY 14614
O: 585-613-4374 | FAX: 716-613-4375
www.nywd.uscourts.gov

# FINAL JURY INSTRUCTIONS

## I.    General Instructions

Members of the jury, following summations, it now becomes my duty to instruct you as to the law applicable to this case. Before doing so, I would like to commend all of you for your patience and attention during the course of this trial. I would also like to commend the attorneys for the very able manner in which each has carried out their responsibility as an advocate. You have now received all the evidence that is to be presented in this case, and through the attorneys' closing arguments or summations, you have learned the conclusions which each side believes should be drawn from this evidence. It is now very important that you listen carefully to my final instructions to you.

A lawsuit is a civilized method of determining differences between parties. It is basic to the administration of any system of

justice that the determination on both the law and facts be made fairly and honestly. You as the jury and I as the Judge, therefore, have a very important responsibility – to ensure that a just result is reached in the determination of the differences between the Plaintiff and the Defendant in this case.

We have now arrived at that phase of your work where you will be instructed on the law and then retire to the jury room for your final deliberations. You will find that my instructions are divided into two main parts: first, a general statement of the law applicable to all jury trials in civil cases; and then second, a statement of the law that is applicable to this particular case.

During their summations, the attorneys suggested to you certain inferences and conclusions that you might reasonably and logically draw from the evidence. The summations of the attorneys are, of course, not evidence. However, if the arguments of the parties strike you as reasonable and logical and supported

by the evidence, you may, if you so conclude, adopt them.    On

the other hand, if you find such arguments to be unreasonable or

illogical or unsupported by the evidence, you may, if you so

conclude, reject them.  In the last analysis, it is your function as

the jury to draw your own inferences and conclusions from the

evidence, as you recollect the evidence, and as you find such

evidence credible and believable.

Keep in mind that you, as the jury, are the sole and exclusive

judge of the facts.  It is your duty to decide each and every issue

of fact which has arisen during the course of the trial.    No one,

not the attorneys, nor the Court, may presume to tell you how the

issues of fact should be decided.  I repeat that you and you alone,

are the sole and exclusive judge of the facts. I am the sole and

exclusive judge of the law.  These responsibilities are separate

and distinct, and each is of equal importance.  As the judge of the

law, it has been my function to regulate the course of the trial and

to determine what evidence, under the law, was admissible. My rulings in each instance were based solely upon the law. My other function is, of course, to instruct you on the law specifically applicable to this case.

As I have stated before, my instructions to you on the law must be accepted by you whether you agree with them or not. If you have any ideas of your own of what the law is, or what you think it should be, it is now your duty, pursuant to the oath you took as jurors, to disregard your own ideas of the law, and to accept the law exactly as I give it to you. Please remember that all of us are all bound by the laws of our Country exactly as those laws provide.

I may during these instructions by the level of my voice or by intonation seem to emphasize certain matters. That is simply to help you understand the important principles of law. It is not intended to communicate any opinion about the facts.

During these instructions, I will not review or summarize the evidence. If necessary, I may refer to particular evidence to explain the law that relates to that evidence. My reference to the evidence, or my failure to refer to evidence, expresses no opinion about the believability, accuracy, or importance of any particular evidence.

No matter how careful a judge may be to avoid it, there is always the possibility that a juror may get an impression that the judge has some opinion with reference to whether the Defendant is liable or not liable, or that some particular witness is more believable than another, and so on.

If you have formed any such impression, you must put it out of your mind and utterly disregard it. Nothing I have said, or questions I may have asked of a witness, was intended to give any

such impression, and nothing I am about to say or how I say it is intended to give any such impression.

Similarly, if in the interest of advocacy, the attorneys have done or said anything which you deem to be objectionable, you must not let such feeling interfere with your primary duty here, which is to judge the facts impartially and to be fair to both the Plaintiff and the Defendant.

It is the duty of the attorneys to offer evidence and press objections on behalf of their side. It is my function to cut off counsel from an improper line of argument or questioning, to strike offending remarks, and to admonish counsel when I think it is necessary. But you should draw no inference against the attorney or the attorney's client. It is irrelevant whether you like a lawyer or whether you believe I like a lawyer.

During the course of the trial, you may have heard some conversation between myself and the lawyers at the bench. Bear

in mind that such exchanges between myself and the lawyers did not constitute evidence and, to the extent that you may have overheard anything, it must be disregarded by you.

At times during the trial, I sustained objections to questions asked without permitting the witness to answer or, where an answer was made, instructed that it be stricken from the record and that you disregard the answer. You may not draw any inference from an unanswered question, nor may you consider testimony which has been stricken in reaching your decision. The law requires that your decision be made solely upon the competent evidence before you. The items I have excluded from your consideration were excluded because I determined that they were not admissible.

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are

not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

1.    Arguments and unsworn statements by the lawyers are not evidence.  What the lawyers may have said in their closing arguments, just like what they said in opening statements, and at other times during the trial, was intended to help you interpret the evidence, but it is not evidence itself.  If the facts as you remember them differ from the way they have been stated in closing arguments, your memory of the evidence controls.

2.    Questions and objections by the attorneys are not evidence.  Evidence consists of a question and an answer, not just the question.  As to objections, the attorneys have a duty to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the way

I ruled on it.

3.    Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.  In addition, if testimony or exhibits have been received only for a limited purpose, you must follow the limiting instructions I have given.

4.    Anything you may have seen or heard when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at this trial. That means you may not consider or speculate on matters not in evidence or matters outside the case as it has been presented in this courtroom.

I would remind you now that any notes that you have taken during this trial are only aids to your memory.  If your memory differs from your notes, you should rely on your memory and not

on the notes. The notes are not in evidence. If you have not taken notes, you should rely on your independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

Your verdict must be based solely upon the evidence developed at this trial, or the lack of evidence. It would be improper for you to consider any personal feelings you may have about one of the parties' race, religion, national origin, gender, or age. It would be equally improper for you to allow any feelings you might have about the nature of the claim against the Defendant to influence you in any way. Sympathy must not play a role in any of your decision making. During your deliberations you must remember the oath you each took to be a fair and impartial juror. The system cannot work unless you reach your verdict through a fair and impartial consideration of the evidence.

You also must completely disregard any report which you may have read in the press, watched on television, heard on the radio, or seen on the internet. It would be unfair to consider such reports, because they are not evidence, and the parties have no opportunity to contradict their accuracy or otherwise explain them away. It would be a violation of your oath as jurors to allow yourselves to be influenced in any manner by such publicity.

I will now turn to the fundamental legal principles which are applicable to civil cases in general. These basic principles are applicable to every civil trial conducted in all of the courts of our country. I made reference to these principles in my preliminary instructions at the beginning of the trial, but because of the importance of these principles, I am going to repeat and amplify my instructions as to each of them.

In a civil case, a plaintiff has the burden of proving the material allegations of the complaint by a **preponderance of the**

**evidence**.  If, after considering all of the testimony, you are satisfied that the Plaintiff has carried his burden on each essential point as to which he has the burden of proof, then you must find for the Plaintiff on the claim under consideration.

If after such consideration you find the testimony of both parties to be in balance or equally probable, then the Plaintiff has failed to sustain his burden, and you must find for the Defendant.

If upon consideration of all the facts, you find that the Plaintiff has failed to sustain the burden cast upon him, then you should proceed no further, and your verdict must be for the Defendant.

The Plaintiff has the burden of proving every disputed element of a claim to you by a preponderance of the evidence. What does "preponderance of the evidence" mean?  To establish a fact by a preponderance of the evidence means to prove that a fact is more likely true than not true.  A preponderance of the

evidence means the greater weight of the evidence.  It refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents.  In determining whether a claim has been proved by a preponderance of the evidence, you may consider the relevant testimony of all witnesses, regardless of who may have called them, and all the relevant exhibits received in evidence, regardless of who may have introduced them.

If you find that the credible evidence on a given issue is evenly divided between the parties – that it is equally probable that one side is right as it is that the other side is right – then you must decide that issue against the Plaintiff.  That is because the Plaintiff must prove more than simple equality of evidence—the Plaintiff must prove the element at issue by a preponderance of the evidence.  On the other hand, the Plaintiff need prove no more than a preponderance.  So long as you find that the scales tip, however slightly, in favor of the Plaintiff—that what Plaintiff

claims is more likely true than not true—then that element will have been proved by a preponderance of the evidence.

In that regard, you may have heard of proof beyond a reasonable doubt, which is the proper standard of proof in a criminal trial. That requirement does not apply to a civil case such as this, and you should put it out of your mind.

That concludes our discussion of the burden of proof applicable in civil cases. I will now turn to your estimate of the credibility of each witness's testimony and the weight to be accorded to such testimony.

As judges of the facts, you alone determine the truthfulness and accuracy of the testimony of each witness. You must decide whether a witness told the truth and was accurate, or instead, testified falsely or was mistaken. You must also decide what importance to give to the testimony you accept as truthful and

accurate. It is the quality of the testimony that is controlling, not the number of witnesses who testify.

There is no particular formula for evaluating the truthfulness and accuracy of another person's statements or testimony. You bring to this process all of your varied experiences. In life, you frequently decide the truthfulness and accuracy of statements made to you by other people. The same factors used to make those decisions, should be used in this case when evaluating the testimony.

Some of the factors that you may wish to consider in evaluating the testimony of a witness are as follows:

- Did the witness have an opportunity to see or hear the events about which he or she testified?

- Did the witness have the ability to recall those events accurately?

- Was the testimony of the witness plausible and likely to be true, or was it implausible and not likely to be true?

- Did the manner in which the witness testified reflect upon the truthfulness of that witness's testimony?

- To what extent, if any, did the witness's background, training, education, or experience affect the believability of that witness's testimony?

- What was the demeanor of the witness when testifying? Did the witness have a conscious bias, hostility, or some other attitude that affected the truthfulness of the witness's testimony?

- Did the witness show an "unconscious bias," that is, a bias that the witness may have even unknowingly acquired from stereotypes and attitudes about people or groups of people, and if so, did that

unconscious bias impact that witness's ability to be truthful and accurate?

- You may consider whether a witness had, or did not have, a motive to lie.

- If a witness had a motive to lie, you may consider whether and to what extent, if any, that motive affected the truthfulness of that witness's testimony.

- If a witness did not have a motive to lie, you may consider that as well in evaluating the witness's truthfulness.

- You may consider whether a witness has any interest in the outcome of the case, or instead, whether the witness has no such interest.

- You are not required to reject the testimony of an interested witness, or to accept the testimony of a

witness who has no interest in the outcome of the case.

- You may, however, consider whether an interest in the outcome, or the lack of such interest, affected the truthfulness of the witness's testimony.

You may consider whether a witness made statements at this trial that are inconsistent with each other. You may also consider whether a witness made previous statements that are inconsistent with his or her testimony at trial. You may consider whether a witness testified to a fact here at trial that the witness omitted to state, at a prior time, when it would have been reasonable and logical for the witness to have stated the fact. In determining whether it would have been reasonable and logical for the witness to have stated the omitted fact, you may consider whether the witness's attention was called to the matter and whether the witness was specifically asked about it. If a witness has made such

inconsistent statements or omissions, you may consider whether and to what extent they affect the truthfulness or accuracy of that witness's testimony here at this trial. The contents of a prior inconsistent statement are generally not proof of what happened. You may ordinarily use evidence of a prior inconsistent statement only to evaluate the truthfulness or accuracy of the witness's testimony here at trial. However, where a witness was subject to cross examination about a prior inconsistent statement that was made under oath, the statement is inconsistent with their trial testimony and was given under penalty of perjury at a trial, a hearing, or in a deposition, you may consider the prior statement for the truth.

- You may consider whether a witness's testimony is consistent with the testimony of other witnesses or with other evidence in the case.

- If there were inconsistencies by or among witnesses, you may consider whether they were significant inconsistencies related to important facts, or instead were the kind of minor inconsistencies that one might expect given the circumstances of this case.

I permitted Mr. Hirsch, Professor Zeidman, and Dr. Drob to express their opinions about matters that are in issue. A witness may be permitted to testify to an opinion on those matters about which they have specialized knowledge, skill, experience, and/or training. Such testimony is presented to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding the evidence or in reaching an independent decision on the facts. In weighing this opinion testimony, you may consider the witness's qualifications, their opinions, the reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether to believe a witness's testimony. In addition, because

they gave their opinions, you should consider the soundness of each opinion, the reasons for the opinion, and the witness's motive, if any, for testifying.  You may afford the testimony of this witness such weight, if any, that you think it deserves in light of all the evidence.  You should not permit a witness's opinion testimony to be a substitute for your own reason, judgment, and common sense. You may reject the testimony of any opinion witness in whole or in part, if you conclude the reasons given in support of an opinion are unsound or, if you, for other reasons, do not believe the witness. The determination of the facts in this case rests solely with you.

In this case you also heard the testimony of a former police officer and/or former prosecutors—Michael Guadagno, Edward Cosgrove, David Henry, and Timothy Drury. The testimony of a witness should not be believed solely and simply because the witness was a police officer or a prosecutor. At the same time, a

witness's testimony should not be disbelieved solely and simply because the witness was a police officer or prosecutor. You must evaluate their testimony in the same way you would evaluate the testimony of any other witness.

As to the witnesses who testified, even if you find that the testimony given by any witness was not contradicted by any other evidence in the case, such finding does not relieve you of your duty and responsibility to evaluate the credibility of the witness and to make your own determination of what weight, if any, that you will give such testimony.

By the processes that I have just described, you as the sole and exclusive judge of the facts will determine which of the witnesses you believe, what portion of their testimony you accept, and what weight you will give it.

Now, of course, facts must be proven by evidence. The evidence from which you are to decide what the facts are consists

of sworn testimony of witnesses, both on direct and cross examination, and any re-direct and re-cross examination, regardless of who called the witness, the exhibits that have been received into evidence, regardless of who introduced them, and any stipulations between the parties. Keep in mind that the law does not require any party to call as a witness every person who might have knowledge of the facts related to this trial. Similarly, the law does not require any party to present as exhibits all papers and things mentioned during this trial.

As to evidence, there are two kinds: direct and circumstantial. Direct evidence is when a witness testifies about something they know by virtue of their own senses – something they have seen, felt, touched, or heard. Direct evidence may also be in the form of an exhibit when the fact to be proved is its present existence or condition.

The other type of evidence is circumstantial evidence. This is evidence which tends to prove a disputed fact by proof of other facts. There is a simple example of circumstantial evidence which is often used in this courthouse.

Assume that when you came into the courthouse this morning the sun was shining, and it was a nice day. As you are sitting here, someone walked in with an umbrella that was dripping wet. Then a few minutes later another person also entered with a wet umbrella. Now, you cannot look outside of the courtroom, and you cannot see whether it is raining. So you have no direct evidence of that fact. But on the combination of facts which I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.

That is all there is to circumstantial evidence. You infer on the basis of reason and experience and common sense from one established fact, the existence or non-existence of some other fact.

Circumstantial evidence is of no less value than direct evidence, for it is a general rule that the law makes no distinction between direct evidence and circumstantial evidence but simply requires that your verdict must be based on a preponderance of all the evidence presented.

## II.   <u>Specific Instructions</u>

This completes my discussion of the general principles of law applicable to all civil trials.  Let us turn our attention to the definitions and rules applicable to each of the specific causes of action that will be submitted to you for your final determination.

The Plaintiff brings a claim under a federal civil rights law: Title 42 U.S.C. § 1983. This law provides that any person or persons who, under the color of state law, deprives another of any rights, privileges, or immunities secured by the United States Constitution and federal statutes, shall be liable to the injured party.

The Section 1983 claim in this case is called a "*Monell*" claim, which means that the "person" the Plaintiff is attempting to hold liable is a municipality—here, the County of Erie—and not a specific individual. The Plaintiff has the burden of proving each essential element of the claim by a preponderance of the evidence. To prove an assertion by a preponderance of the evidence means proving that it is more likely true than not true.

To succeed on this claim, the Plaintiff must prove each of the following three elements by a preponderance of the evidence:

1.    *First*, that Assistant District Attorney Timothy Drury acted under the color of state law;

2.    *Second*, that Assistant District Attorney Timothy Drury by his conduct, deprived Mr. Boyd of rights, privileges, or immunities secured by the Constitution or laws of the United States—here, his right to a fair trial; and

3.     *Third*, that such conduct by Assistant District Attorney Timothy Drury was caused by a policy of the County of Erie, the municipality at issue in this case, as alleged here, a widespread practice or custom and/or a policy of deliberate indifference to the constitutional rights of criminal defendants due to a failure to discipline, such that the County's policy was the "moving force" behind the violation of Mr. Boyd's constitutional rights, meaning the policy "is a substantial factor in bringing about the harm."

If you find that any of the essential elements of the Plaintiff's Section 1983 claim has not been proven by a preponderance of the evidence, you must return a verdict for the Defendant.

I will describe each of the elements of Plaintiff's claim in more detail.

On the first element, there is no dispute in this case that Mr. Timothy Drury was acting under the color of state law in the

criminal prosecution of Mr. Boyd. Therefore, I instruct that this first element is met.

On the second, the Plaintiff alleges that two types of constitutional violations occurred—that Mr. Timonthy Drury failed to disclose exculpatory and impeachment evidence that was material to Mr. Boyd's defense in his criminal case (a "*Brady* violation"), and also that Mr. Timonthy Drury's conduct during his summation "caused substantial prejudice by so infecting the trial with unfairness as to make the resulting conviction a denial of due process."

Before discussing the third element of the Plaintiff's *Monell* claim, I will explain the law on the two constitutional violations that the Plaintiff contends occurred.

## *Brady* Violation

The first constitutional violation alleged by the Plaintiff involves the non-disclosure of certain evidence, what is known as

a "*Brady* violation." To prove a *Brady* violation, the Plaintiff must prove the following by a preponderance of the evidence:

1.    First, that evidence allegedly withheld from Mr. Boyd's defense was "favorable" to his defense—meaning that the evidence was "exculpatory" and/or "impeaching";

2.    Second, that this favorable evidence was "suppressed"— meaning that the prosecutor, either willfully or inadvertently, did not disclose information in a manner that allowed Mr. Boyd to reasonably make beneficial use of the evidence at trial; and

3.    Third, that the *cumulative* effect of the suppressed favorable evidence was "*material*" to Mr. Boyd's criminal trial—meaning that the cumulative effect of the suppressed evidence undermines confidence in the outcome of the trial, based on the evidence that was actually presented at Mr. Boyd's criminal trial.

Evidence is "exculpatory" if it tends to establish that the accused is not guilty of the crime or tends to cast serious doubt on

their guilt. Favorable evidence includes exculpatory evidence tending to show that someone other than the accused may have committed the crime. Evidence is "impeaching" if it would have tended to make a reasonable jury less likely to believe a witness who testified against the accused at the criminal trial. Evidence may also be favorable to the defense if it would reasonably permit the defense to attack the reliability, carefulness, or good faith of the police investigation.

The issue is not whether a document itself is entirely favorable to the defense—in other words that the document contains *only* favorable information—but whether a document contains some information that was favorable to the defense. In other words, the Plaintiff is not required to prove that every piece of information in a document is "favorable" to trigger a prosecutor's disclosure obligations.

When there is *any* interpretation of the evidence that could be deemed favorable to the defense, then it must be disclosed. A prosecutor's own assessment that certain evidence is not reliable does not negate the prosecutor's disclosure obligations. Furthermore, a defense attorney's knowledge of some impeachment information does not lessen the prosecutor's obligation to disclose other impeachment information not known to the defense.

"Suppression" of favorable evidence assesses whether the accused was reasonably able to make beneficial use of that information at trial. This may mean that information was not disclosed at all, or that the favorable information was disclosed too late for the accused to reasonably make beneficial use of that evidence at trial.

Further, the issue is not merely whether a document itself was disclosed to the defense, but whether favorable information

contained therein was disclosed. For example, even if a specific document was not disclosed, if favorable information contained in that document was known or "already within the purview" of Mr. Boyd's defense by another means, such information would not be "suppressed." However, a defendant does *not* need to actively seek out *Brady* material. In other words, a defendant's failure to exercise due diligence to obtain *Brady* material is not a valid defense to a *Brady* claim.

Additionally, if a portion of the favorable information contained in a document is deemed disclosed, that, alone, would not permit you to find that *all* of the favorable information contained in that document was in fact disclosed.

As of the time of Mr. Boyd's criminal trial in 1977, the United States Supreme Court had ruled that prosecutors are obligated to turn over favorable evidence to the defense even without a specific request by the defense.

The Plaintiff must also prove that the withheld favorable evidence was "material" to Mr. Boyd's criminal case. You have heard some evidence about the criminal trials of Mr. Gibson, Mr. Walker, and Mr. Martin—Mr. Boyd's co-defendants. As I mentioned though, materiality is assessed in light of the evidence adduced against Mr. Boyd at *his* criminal trial, and it is an objective test. A showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal (whether based on the presence of reasonable doubt or acceptance of an explanation for the crime that does not inculpate the defendant). The touchstone of materiality is a *reasonable probability* of a different result. The question is *not* whether the defendant would more likely than not have received a different verdict due to the cumulative effect of the withheld evidence, but whether, in its absence, he received a

fair trial, understood as a trial resulting in a verdict worthy of confidence.

## Summation Misconduct

To prove that Erie County Assistant District Attorney, Timothy Drury, violated Mr. Boyd's right to a fair trial through summation misconduct, the Plaintiff must prove that Mr. Drury's conduct during summation, also called closing argument, "caused substantial prejudice by so infecting the trial with unfairness as to make the resulting conviction a denial of due process" by a preponderance of the evidence.

In assessing whether summation misconduct caused "substantial prejudice," you must consider "the severity of the misconduct, the measures adopted to cure the misconduct, and the certainty of conviction absent the misconduct."

Prosecutors may fairly comment on the evidence introduced at trial and make argument in response to defense counsel's

closing argument. However, prosecutors may not, for example, make false or misleading arguments, vouch for the credibility of witnesses, make inflammatory remarks, appeal to racial prejudice, or shift the burden of proof to the criminal defendant. If you find that Erie County Assistant District Attorney Timothy Drury made one or more improper remarks during his summation in Mr. Boyd's criminal trial, you must assess whether these remark(s) infected the trial with such unfairness to deprive Mr. Boyd of his due process right to a fair trial. You may also consider whether any comments by the prosecutor in summation tended to exploit the withholding of favorable, withheld information. If you find that Mr. Drury made more than one improper remark during summation, you must consider the cumulative effect of such remarks on the fairness of the trial.

## Policy Evidence

<u>If</u> you find that Mr. Boyd's constitutional right or rights were violated, you must consider the cause of such violation or violations. Specifically, you must determine whether a municipal policy was the "moving force" behind the Erie County Assistant District Attorney's violation or violations of Mr. Boyd's constitutional rights, meaning a policy of the Erie County Assistant District Attorney's Office "is a substantial factor in bringing about the harm."

A municipality such as the County of Erie may <u>not</u> be held liable for the actions of its employees simply because they are employed by the County. Rather, an unconstitutional policy, practice, or custom of the Defendant must exist and be the moving force behind the Erie County Assistant District Attorney's specific actions in this case to establish the County's liability to Plaintiff.

To establish a claim against the County based on an unconstitutional policy, practice, or custom, Plaintiff must prove that the County adopted such a policy, practice, or custom through the deliberate choice or acquiescence of a policymaker on behalf of the municipality. A policymaker is an official or a body to whom the County has given final policymaking authority. The actions of that official or body represent a decision by the County itself, and the County is responsible for them.

I instruct you that the policymaker in this case is the Erie County District Attorney at the time of Mr. Boyd's criminal investigation and prosecution – Mr. Edward Cosgrove.

Plaintiff must prove by a preponderance of the evidence that each alleged violation of Mr. Boyd's constitutional rights was not an isolated incident but was part of a policy of the County of Erie *specific to that type* of constitutional violation. This means that you must analyze any policies of the County of Erie with respect

to <u>each</u> of the two types of alleged violations of Mr. Boyd's constitutional right to a fair criminal trial – *Brady* violation and summation misconduct.

A policy need not be in writing or be labeled a "policy." There need not be a formal statement of policy. A policy may be inferred from the informal acts or omissions of the District Attorney or his designees. This includes a situation where the District Attorney knew about the improper actions or failure to act by other prosecutors in the Erie County District Attorney's office by virtue of his position and allowed them to continue.

## Policies re. *Brady* Violation

With respect to the Erie County Assistant District Attorneys' alleged *Brady* violation or violations, Plaintiff alleges there are <u>two</u> kinds of municipal policies that caused such *Brady* violations in his case. <u>If</u> you find that the Erie County Assistant District Attorney Mr. Timothy Drury failed to disclose favorable, material

evidence to Mr. Boyd's defense attorney, Plaintiff need only prove *one* unconstitutional County policy caused such *Brady* violation by a preponderance of the evidence.

First, Plaintiff contends that the Defendant had a persistent or widespread practice or custom, *i.e.,* a "pattern of conduct," of failing to disclose favorable, material evidence to criminal defendants. You may infer that a practice or custom existed in the Erie County District Attorney's Office even if Erie County did not formally approve such custom or practice, so long as you conclude that the District Attorney knew of acts of misconduct and did not act to prevent them from continuing. This includes a situation where the District Attorney must have known about the actions or failure to act by prosecutors in the Erie County District Attorney's Office by virtue of his position and allowed them to continue.

Alternately, Plaintiff alleges that the Defendant had a policy of "deliberate indifference" towards criminal defendants' rights to a fair trial under *Brady* because, prior to April 1977, the policymaker was on sufficient notice of such repeated violations by Erie County Assistant District Attorneys and failed to discipline Erie County Assistant District Attorneys for these violations. Deliberate indifference is more than negligence. It is a conscious disregard on the part of the County for the known or obvious consequences of its actions in failing to discipline prosecutors when they violated the constitutional rights of criminal defendants by failing to disclose favorable, material evidence. Importantly, evidence of prosecutorial misconduct may only provide "notice" to the County as required to support a policy of "deliberate indifference" to the extent that the misconduct occurred prior to Mr. Boyd's criminal conviction in April 1977.

If you find that Plaintiff has proven the existence of any of these policies, you must determine whether such policy or policies directly caused a constitutional *Brady* violation or violations in Mr. Boyd's criminal case. Again, the Defendant's policy must be the "moving force" behind this specific type of violation of Mr. Boyd's constitutional rights, meaning the policy "is a substantial factor in bringing about the harm."

## Policies re. Summation Misconduct

With respect to Mr. Timothy Drury's alleged summation misconduct, Plaintiff alleges there are <u>two</u> types of municipal policies that caused such summation misconduct. <u>If</u> you find that Mr. Drury violated Mr. Boyd's constitutional rights through his summation, Plaintiff need only prove that <u>one</u> type of County policy caused such summation violation by a preponderance of the evidence.

First, Plaintiff contends the Defendant had a persistent or widespread custom, or "pattern of conduct," of engaging in summation misconduct that deprived criminal defendants of a right to a fair trial. You may infer that a custom or practice existed in the Erie County District Attorney's Office even if Erie County did not formally approve such custom or practice, so long as you conclude that the District Attorney knew of acts of misconduct and did not act to prevent them from continuing. This includes a situation where the District Attorney must have known about the actions or failure to act by other prosecutors in the Erie County District Attorney's Office by virtue of his position and allowed them to continue.

Alternately, Plaintiff alleges that the Defendant had a policy of "deliberate indifference" towards criminal defendants' rights to a fair trial because, prior to April 1977, the policymaker was on sufficient notice of repeated summation violations of Erie

- 42 -

County Assistant District Attorneys and failed to *discipline* Erie County Assistant District Attorneys for these violations. Deliberate indifference is more than negligence. It is a conscious disregard on the part of the County for the known or obvious consequences of its actions in failing to discipline prosecutors when they violated the constitutional rights of criminal defendants by engaging in summation misconduct. Evidence of prosecutorial misconduct may only provide "notice" to the County as required to support a policy of "deliberate indifference" to the extent that the misconduct occurred prior to Mr. Boyd's criminal conviction in April 1977.

If you find that Plaintiff has proven the existence of either of these policies, you must determine whether such policy or policies directly caused a constitutional summation violation in Mr. Boyd's criminal case. Again, the Defendant's policy must be the "moving force" behind this specific type of violation of Mr.

Boyd's constitutional rights, meaning the policy "is a substantial factor in bringing about the harm."

## III. <u>**Damages**</u>

That concludes our discussion of the Plaintiff's causes of action.  Now we will turn to the instruction on damages.  Keep in mind, my charge to you on the law of damages must not be taken as a suggestion that you should find for the Plaintiff.  It is for you to decide based on the evidence presented and the rules of law I have given you whether the Plaintiff is entitled to recover from the Defendant. If you decide that the Plaintiff is not entitled to recover from the Defendant, you should not consider damages. Only if you decide that the Plaintiff is entitled to recover will you consider the measure of damages.

If you find that the Plaintiff is entitled to recover from the Defendant, you must render a verdict for a sum of money that will

justly and fairly compensate the Plaintiff for all the losses resulting from any injury or injuries he sustained.

The purpose of the law of damages is to award, as far as possible, just and fair compensation for the loss, if any, which resulted from the Defendant's violation of Plaintiff's rights. If you find that the Defendant is liable, then you must award the Plaintiff sufficient damages to compensate him for any injury proximately caused by the Defendant's conduct. Again, an injury is proximately caused by conduct when a reasonable person would regard it as a substantial factor in bringing about such injury.

Compensatory or actual damages seek to make a plaintiff whole – that is, to compensate him for the damage suffered. Furthermore, compensatory damages are not limited merely to expenses that a plaintiff may have sustained. A prevailing plaintiff is entitled to compensatory damages both for the physical

and psychological injury, pain and suffering, and loss of liberty that he has suffered because of a defendant's conduct.

I remind you that you may award compensatory damages only for injuries that the Plaintiff proves were proximately caused by the Defendant's allegedly wrongful conduct. The damages that you award must be fair and reasonable, neither inadequate nor excessive. You should not award compensatory damages for speculative damages, but only for those injuries that the Plaintiff has actually suffered.

In awarding compensatory damages, if you decide to award them, you must be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require a plaintiff to prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

In all instances, you are to use sound discretion in fixing an award of damages, drawing reasonable inferences where you deem appropriate from the facts and circumstances in evidence.

In addition to denying liability, the County contends that, if it is liable to violating Mr. Boyd's constitutional rights, then it is not entirely at fault because certain detectives of the Buffalo Police Department fabricated evidence, which contributed to Mr. Boyd's loss of liberty after his criminal conviction. This defense is known as "apportionment," and it is an affirmative defense, meaning that the County bears the burden of proving this defense by a preponderance of the evidence.

The six individual former members of the Buffalo Police Department—Michael Guadagno, James Hunter, Robert Arnet, Frank Deubell, Leo Donovan, and Francis Manista—to which the County seeks to apportion fault, if it is found liable to Plaintiff on Plaintiff's *Monell* claim, are not employees of the County of Erie

and are not parties to this case. You should not speculate about or draw any conclusions from the fact that these six individuals are not parties in this case.

To prove that an individual officer of the Buffalo Police Department fabricated evidence that was used against a defendant in the criminal case, the Defendant must prove each of the following.

First, the alleged fabricator of evidence must have been an investigating official. I instruct you that Michael Guadagno, James Hunter, Robert Arnet, Frank Deubell, Leo Donovan, and Francis Manista all qualify as investigating officials. Therefore, this element is met.

Second, the officer must have fabricated evidence. Fabricated evidence is false or untrue evidence. Evidence is false if it was untrue at the time it was made and known to be untrue at the time it was made by the person who made it or caused it to be

made. Coercing a witness to provide false information can satisfy this second element. However, coercion—on its own—is not sufficient because an individual can be coerced into providing truthful evidence. To satisfy this element, the evidence at issue must be false.

A person can only fabricate evidence with a conscious aim or purpose to tell a lie. An officer's good-faith mistake about what he thinks he saw is not fabricated evidence. Nor is a good-faith mistake in paperwork. That said, the County does not need to prove that an individual officer had a specific intent to cause harm to Mr. Boyd or to violate his constitutional rights.

Third, the fabricated evidence must be likely to influence the jury's verdict.

Fourth, the fabricated evidence must have been "forwarded" to the prosecutors in Mr. Boyd's criminal case—here, Mr. Timothy Drury.

Lastly, Mr. Boyd must have been deprived of liberty as a result of the fabrication. To satisfy this element, the County must show that the individual officer-at-issue's fabrication was the proximate cause of Mr. Boyd's loss of liberty following his conviction. If the individual detective misled or coerced Mr. Drury into making uninformed decisions about Mr. Boyd's prosecution, proximate cause would be established. For example, if you were to find that Mr. Drury was unaware that the certain alleged evidence was fabricated, that would demonstrate that Mr. Drury was "misled." If, however, you find that Mr. Drury was *not* misled or coerced by the BPD officer, the chain of causation is broken and Mr. Drury's actions in prosecuting Mr. Boyd would preclude any apportioning of fault to the officer-at-issue. For example, if you were to find that Mr. Drury was aware that the evidence was fabricated, that would demonstrate that Mr. Drury was not "misled."

If you find that each of these elements are met with respect to an alleged individual Buffalo Police Department officer, you should apportion fault for Mr. Boyd's total damages based on what you determine to be the relative fault of that individual in causing or contributing to Plaintiff's alleged damages. You can apportion fault to one, some, of all BPD officers, or decide to not apportion fault to any BPD officers. Upon such a finding, you will state the percentage of fault, if any, of the County of Erie and any and all specified individuals of the Buffalo Police Department for Mr. Boyd's total damages, and the total of these percentages must add up to 100 percent. This will be laid out for you in a Verdict Sheet that will accompany these instructions, which I will discuss more in a few moments.

Again, this affirmative defense that the County has the burden to prove, by a preponderance of the evidence, does *not*

apply, if you find that Mr. Drury was not misled or coerced regarding the alleged fabricated evidence.

## IV.  **Concluding Instructions**

I have now outlined for you the rules of law that apply to this case and the processes by which you weigh the evidence and decide the facts.  In a few minutes you will retire to the jury room for your deliberations.  In order for your deliberations to proceed in an orderly fashion, you must have a foreperson, but of course, their vote is entitled to no greater weight than that of any other juror.  ██████████, you are the foreperson.  Your responsibilities will be to make sure that everyone has an opportunity to participate during deliberations, to communicate with the Court if the jury has a question, to tell us when the jury has reached a verdict, and, of course, to announce the verdict.  If you need to communicate with me, that is, if you have a question or if you want to indicate that you have a verdict, you need to do

so in writing and sign the note.

If, in the course of your deliberations, your recollection of any part of the testimony should fail, or you should have any question about my instructions to you on the law, you have the right to return to the courtroom for the purpose of having such testimony or instructions read to you. A copy of these final jury instructions will be sent back into the jury room. However, with respect to reading back testimony, keep in mind that it takes just as long to read testimony back as it did for a witness to testify in the first instance. For example, if it took a particular witness one hour to testify, then it will take approximately one hour to read that witness's testimony back. Therefore, if you desire just a portion of the witness' testimony, please indicate that, or else the entire testimony, both direct and cross-examination, will be read. Also, if you request testimony, certain things need to occur before it can be read back. First, our court reporter, must find the

requested testimony in her notes.  Second, we must all reassemble here in court before the testimony can be read to you.  I'm telling you this not to discourage you from requesting that testimony be read back if you have a question, but rather to explain that it will take a period of time to comply with your request.

In deciding the case, you may consider only the exhibits which have been admitted into evidence, the testimony of the witnesses as you have heard such testimony in this courtroom, evidence of which I informed I took "judicial notice," and any stipulations between the parties in evidence. As to the exhibits that were received into evidence, they will be sent into the jury room.

Your verdict must represent the considered judgment of each juror.  In order to return a verdict, it is necessary that each juror agree.  Your verdict *must* be unanimous.

Additionally, to assist you during your final deliberations, I have prepared a "Verdict Sheet" which contains the list of questions that you will answer, after careful consideration of all the evidence in accordance with my instructions.  Each of the questions calls for a "yes or no" answer, or some numerical figure.  Please make sure you follow the directions indicated on the verdict sheet carefully and consistent with the instructions provided. And again, your verdict must be unanimous.

As I mentioned, this verdict sheet contains the list of questions that you will answer, after careful consideration of all the evidence in accordance with my instructions.  Do not assume from the questions or from their order what your answers should be.  That is, of course, for you to decide.  When you have all agreed upon an answer, there will be just one verdict sheet back with you in the jury deliberation room.  When you all agree on an answer, ███████████ should record the answer in the space

provided.  When you reach a verdict, merely indicate on a note that you have done so.  **<u>Do not include the verdict sheet with your note and do not indicate in any way what the verdict is</u>**.

███████████ should retain possession of the verdict sheet until the verdict has been announced in court.

Ms. Popp will bring a copy of the verdict sheet to the jury room when you retire for your final deliberations.  If, at any time during your deliberations, you have any questions concerning your use of the verdict sheet and/or exhibit list, or any questions concerning any of my instructions, please feel free to send a note in writing, and we will respond as promptly as possible to your inquiry.  The note needs to be completed by ███████████, put in an envelope, sealed, and signed on the seal with the date and time of the note.

Members of the jury, please remember at all times that you are not advocates for one side or the other.  Rather, you are

judges—judges of the facts.  Your sole interest is to seek the truth from the evidence in this case.  In reaching your verdict, you are not to be affected by sympathy, bias, or prejudice.  Nor must you let any personal feelings concerning the nature of the causes of action alleged interfere with your decision-making process. Further, you must not be influenced by what you might believe the reaction to your verdict will be, whether it will please or displease anyone, be popular or unpopular, or indeed, any consideration outside the case as it has been presented to you in this courtroom.  You should consider only the evidence—both the testimony and exhibits, find the facts from what you consider to be the believable evidence, and apply the law as I have given it to you, to those facts.  Your verdict will be determined by the conclusions thus reached.

Also, keep in mind that your function to reach a decision based on the evidence and the law is a very important one.  When

you are in the jury room, listen to each other, and discuss the evidence and issues in the case among yourselves. It is the duty of each of you, as jurors, to consult with one another, and to deliberate with a view toward reaching agreement on a verdict, if you can do so without violating your individual judgment and your conscience. While you should not surrender honest convictions of what the truth is and of the weight and effect of the evidence, and while each of you must decide the case yourself and not merely consent to the decision of other members of the jury, you should examine the issues and the evidence before you with candor and frankness, and with proper respect and regard for the opinions of each other.

Additionally, if somebody needs to take a break during the deliberations—for instance, a bathroom break, that is fine, but deliberations must stop until the juror returns from the break. In other words, you may only deliberate when all jurors are present

together.

Members of the jury, this case is obviously important to both the Plaintiff and to the Defendant. Therefore, they and I rely upon you to give full and conscientious attention and consideration to the issues and evidence before you. By doing so, you will carry out to the fullest your oaths as jurors to truly try the issues of this case and to render a true verdict.