| | |
|---|---|
| **From:** | Jennifer C. Persico |
| **To:** | Nicole Austin |
| **Cc:** | Firsenbaum, Ross; jbrudin@rudinlaw.com; David@rudinlaw.com; Spencer Durland; phoebe.silos@wilmerhale.com; James P. Blenk; Kirstie A. Means; Thomas R. Southard; Harrison L. Hartsough; Serena M. Kemnitzer |
| **Subject:** | County"s objections to the Court"s Final Jury Instructions and County"s proposed verdict sheet |
| **Date:** | Wednesday, November 19, 2025 2:59:17 AM |
| **Attachments:** | image069434.png |
| | COE Proposed Final Verdict Sheet.docx |
| | FINAL COE Objections to Court"s Final Proposed Jury Instructions.pdf |

Dear Judge Vacca, Ms. Austin and Counsel:

In response to the Court's emails sent at 9:39 and 9:45 p.m. last night, attaching the Court's proposed final jury instructions and verdict sheet, and requesting written responses from the parties by 4:00 a.m. ahead of the charge conference scheduled to take place this morning, we write and reference Rule 51(b)(2), which entitles the parties to review proposed instructions and the verdict sheet before closing arguments, to ensure that arguments conform to the actual legal framework the jury will receive and to note any objections on the record.

We note our objection to the limited window afforded by this schedule, particularly given my need to travel from Buffalo to attend the trial in Rochester, in what will be mere hours from the Court's 4am deadline, as well as our need to fully articulate rather extensive objections on the record. We respectfully request that in order to facilitate a meaningful charge conference consistent with the spirit of Rule 51(b)(2) that the Court adjourn the start of tomorrow's proceedings until 1pm, approximately 8 hours from the deadline set by the Court to submit these responses and objections.  Please advise at your earliest convenience.

The County objects to the entirety of the Court's proposed verdict sheet. The bases for the County's position are as follows:

1. As to Question 1, the use of the terms, "material exculpatory and/or impeachment evidence" are vague and confusing and do not fully capture the concept of *Brady* evidence or an alleged *Brady* violation. For accuracy, we respectfully request that these terms be replaced with *Brady* evidence and that the jury additionally be asked to deliberate on materiality.

2. As to Questions 1 and 3, the County notes its exception to omitting intentionality (for the reasons articulated in its submission at Docket 467), or any *mens rea* element for that matter, which the County maintains is an element necessary to sustain Plaintiff's Section 1983 claim under *Monell*.

3. As to Questions 2 and 4, the County objects to conflating Plaintiff's dual *Monell*

theories. Because Plaintiff is pursuing two distinct *Monell* theories – for failure to discipline and for widespread custom or practice – the jury must be sufficiently instructed and distinct verdict sheet inquiries must issue to address the "different facts . . . and different showings" required to establish each theory. *See Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 127 (2d Cir. 2004) (recognizing that where the plaintiff was advancing "two distinct theories of McCue's deliberate indifference, alleging that he failed to supervise the officers and also that he failed to train them", "[b]ecause these theories emphasize different facts and require different showings in order to establish deliberate indifference, they must be analyzed independently, rather than evaluated collectively, as in the district court's analysis").  Combining these distinct theories into single questions for each violations prevents the jury from assessing either. Relatedly, the jury must resolve whether any policy was the moving force behind Mr. Boyd's alleged constitutional violation(s).

4. As to Question 5, the County objects to the omission of any language as to the issue of proximate cause.

5. As to Questions 6 and 7, the County incorporates its objections and prior submissions on the issue of apportionment of fault (Dkt. 467), objects to presenting the jury with a compound question, and disagrees with the suggestion implicit in these instructions that a police officer who conspires with or presents fabricated evidence that is later used in a criminal prosecution could or should be absolved of fault based on an allegation of complicity or knowledge on the part of the prosecutor. The County is unaware of any authority supporting that premise. The County additionally objects on the grounds that these questions are duplicative inasmuch as they encourage the jury not to even consider apportioning fault if the jury does not find that the officers acted "in a manner that misled or coerced Mr. Timothy Drury into making uninformed decisions" on two separate occasions.

The County submits herewith a counter proposed verdict sheet, resolving these issues and objections, and respectfully asks that the Court adopt the same.

The County additionally provides its objections to the Court's proposed final instructions, interlineated throughout the document in redline. In light of the limited window to supply these objections, please accept our apologies for the formatting of this document.

Respectfully submitted,

**Jennifer C. Persico**
Partner and Executive Committee Member

Lippes Mathias LLP

50 Fountain Plaza, Suite 1700
Buffalo, NY 14202-2216

ph: 716.853.5100 ext. 1350 | fx: 716.853.5199
jpersico@lippes.com | lippes.com
LinkedIn // Facebook

This email message, including attachments, are confidential and may be protected by the attorney/client or other applicable privileges.  The information is intended to be conveyed only to the designated recipient(s) of the email message.  Unauthorized use, dissemination, distribution or reproduction of this message by anyone other than the intended recipient(s) is strictly prohibited and may be unlawful.  If you are not an intended recipient, please notify the sender immediately, delete the message from your email system, and destroy any other copies in your possession.

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KATHLEEN WEPPNER, AS EXECUTOR
FOR THE ESTATE OF DARRYL BOYD,

                    Plaintiff,

    v.

THE COUNTY OF ERIE, et. al.,

                    Defendants.

_____

Case No.: 1:22-cv-00519

### **ALLEGED *BRADY* VIOLATION**

1. Did the plaintiff prove that Assistant District Attorney Timothy Drury intentionally withheld *Brady* evidence at the time of Mr. Boyd's 1977 prosecution?

   YES _____ NO _____

   If "Yes", go to number 2.

   If "No", go to number 7.

2. Did the plaintiff prove that there was a reasonable probability that disclosure of that evidence would have resulted in a different outcome at his 1977 criminal prosecution?

   YES _____ NO _____

   If "Yes", go to number 3.

   If "No", go to number 7.

3. Did the plaintiff prove that the District Attorney's Office had a widespread custom or practice of withholding *Brady* evidence from criminal defendants or their attorneys in April 1977?

   YES _____ NO _____

   If "Yes", go to number 4.

1

If "No", go to number 5.

4.  Did the plaintiff prove that such widespread custom or practice was the moving force that caused the alleged withholding of *Brady* evidence at issue in this case?

    YES _____ NO _____

    Go to number 5.

5.  Did the plaintiff prove that there was a pattern of failing to discipline Assistant District Attorneys for withholding Brady evidence before Mr. Boyd's trial in 1977?

    YES _____ NO _____

    If "Yes", go to number 6.

    If "No", go to number 7.

6.  Did the plaintiff prove that such failure to discipline was the moving force that caused the alleged withholding of Brady evidence at issue in this case?

    YES _____ NO _____

    Go to number 7.


## ALLEGED IMPROPER SUMMATION

7.  Did the plaintiff prove that Assistant District Attorney Timothy Drury's summation violated Mr. Boyd's constitutional right to due process?

    YES _____ NO _____

    If "Yes", go to number 8.

    If "No", go to "Instructions."

8.  Did the plaintiff prove that the County of Erie maintained a widespread practice of permitting improper summations which violate defendants' rights to due process?

    YES _____ NO _____

    If "Yes", go to number 9.

    If "No", go to number 10.

2

9. Did the plaintiff prove that the policy, custom or practice of the County of Erie was the moving force that caused Assistant District Attorney Timothy Drury to deliver an improper summation at the time of Mr. Boyd's April 1977 prosecution?

   YES _____ NO _____

   Go to number 10.

10. Did the plaintiff prove that the County of Erie acted with deliberate indifference in failing to discipline prosecutors for delivering improper summations at the time of Mr. Boyd's April 1977 prosecution?

    YES _____ NO _____

    If "Yes", go to number 11.

    If "No", go to "Instructions."

11. Did the plaintiff prove that the County of Erie's policy of deliberate indifference for failing to discipline was the moving force that caused Assistant District Attorney Timothy Drury to deliver an improper summation at Mr. Boyd's April 1977 prosecution?

    YES _____ NO _____

    Proceed to "Instructions."

## **INSTRUCTIONS**

If you have reached and answered "Yes" to questions 4, 6, 9 or 11, proceed to next section entitled "DAMAGES." On the other hand, if you have not reached or answered to "No" to questions 4, 6, 9 and 11, you have found a verdict in favor of the County of Erie, do not answer the "Damages" question, cease deliberation, foreperson please sign and date the verdict sheet and advise the court by note that you have reached a verdict, and are ready to return to the Courtroom to announce your verdict.

## **<u>DAMAGES</u>**

12. If you found a verdict in favor of the plaintiff on plaintiff's alleged improper summation claim and/or alleged *Brady* claim, please state the amount of damages, if any, that you award to the plaintiff for compensatory damages proximately caused by his April 29, 1977 conviction:

Amount $_____

Go to number 13.

## **APPORTIONMENT**

13. Did the County prove that any of the following detectives or officers of the Buffalo Police Department, including Chief Leo J. Donovan, Detective Michael E. Guadagno, James E. Hunter, Sergeant Robert F. Arnet, Detective Frank C. Deubell, and/or Detective Francis M. Manista, Jr. fabricated evidence that was used at the time of Mr. Boyd's April 1977 prosecution?

    YES _____   NO _____

    If "Yes", go to number 14.

    If "No", cease deliberation, foreperson please sign and date the verdict sheet and advise the court by note that you have reached a verdict, and are ready to return to the Courtroom to announce your verdict.

14. Did the County prove that use of the fabricated evidence at the time of Mr. Boyd's April 1977 prosecution was reasonably foreseeable, such that it caused or contributed to Plaintiff's alleged damages?

    YES _____   NO _____

    If "Yes", go to number 15.

    If "No", cease deliberation, foreperson please sign and date the verdict sheet and advise the court by note that you have reached a verdict, and are ready to return to the Courtroom to announce your verdict.

15. What is the percentage of fault that you attribute to each of the following?  The total must equal 100%.

    a.  County of Erie                          _____%

    b.  Chief Leo J. Donovan                     _____%

    c.  Detective Michael E. Guadagno            _____%

    d.  James E. Hunter                          _____%

    e.  Sergeant Robert F. Arnet                 _____%

    f.  Detective Frank C. Deubell               _____%

    g.  Detective Francis M. Manista, Jr.        _____%

_____
Signature of Foreperson

_____
Date

**RETURN TO COURT**

## FINAL JURY INSTRUCTIONS

### I. General Instructions

Members of the jury, following summations, it now becomes my duty to instruct you as to the law applicable to this case. Before doing so, I would like to commend all of you for your patience and attention during the course of this trial. I would also like to commend the attorneys for the very able manner in which each has carried out their responsibility as an advocate. You have now received all the evidence that is to be presented in this case, and through the attorneys' closing arguments or summations, you have learned the conclusions which each side believes should be drawn from this evidence. It is now very important that you listen carefully to my final instructions to you.

A lawsuit is a civilized method of determining differences between parties. It is basic to the administration of any system of

justice that the determination on both the law and facts be made fairly and honestly. You as the jury and I as the Judge, therefore, have

- 1 -

a very important responsibility – to ensure that a just result is reached in the determination of the differences between the Plaintiff and the Defendant in this case.

We have now arrived at that phase of your work where you will be instructed on the law and then retire to the jury room for your final deliberations. You will find that my instructions are divided into two main parts: first, a general statement of the law applicable to all jury trials in civil cases; and then second, a statement of the law that is applicable to this particular case.

During their summations, the attorneys suggested to you certain inferences and conclusions that you might reasonably and logically draw from the evidence. The summations of the attorneys are, of course, not evidence. However, if the arguments of the parties strike you as reasonable and logical and supported

- 2 -

by the evidence, you may, if you so conclude, adopt them. On the other hand, if you find such arguments to be unreasonable or illogical or unsupported by the evidence, you may, if you so conclude, reject them. In the last analysis, it is your function as the jury to draw your own inferences and conclusions from the evidence, as you recollect the evidence, and as you find such evidence credible and believable.

Keep in mind that you, as the jury, are the sole and exclusive judge of the facts. It is your duty to decide each and every issue of fact which has arisen during the course of the trial. No one, not the attorneys, nor the Court, may presume to tell you how the issues of fact should be decided. I repeat that you and you alone, are the sole and exclusive judge of the facts. I am the sole and exclusive judge of the law. These responsibilities are separate and distinct, and each is of equal importance. As the judge of the

law, it has been my function to regulate the course of the trial and

- 3 -

to determine what evidence, under the law, was admissible.  My rulings in each instance were based solely upon the law.  My other function is, of course, to instruct you on the law specifically applicable to this case.

As I have stated before, my instructions to you on the law must be accepted by you whether you agree with them or not.  If you have any ideas of your own of what the law is, or what you think it should be, it is now your duty, pursuant to the oath you took as jurors, to disregard your own ideas of the law, and to accept the law exactly as I give it to you.  Please remember that all of us are all bound by the laws of our Country exactly as those laws provide.

I may during these instructions by the level of my voice or by intonation seem to emphasize certain matters.  That is simply to help you understand the important principles of law.  It is not

intended to communicate any opinion about the facts.

- 4 -

During these instructions, I will not review or summarize the evidence. If necessary, I may refer to particular evidence to explain the law that relates to that evidence. My reference to the evidence, or my failure to refer to evidence, expresses no opinion about the believability, accuracy, or importance of any particular evidence.

No matter how careful a judge may be to avoid it, there is always the possibility that a juror may get an impression that the judge has some opinion with reference to whether the Defendant is liable or not liable, or that some particular witness is more believable than another, and so on.

If you have formed any such impression, you must put it out of your mind and utterly disregard it. Nothing I have said, or questions I may have asked of a witness, was intended to give any s

- 5 -

such impression, and nothing I am about to say or how I say it is intended to give any such impression.

Similarly, if in the interest of advocacy, the attorneys have done or said anything which you deem to be objectionable, you must not let such feeling interfere with your primary duty here, which is to judge the facts impartially and to be fair to both the Plaintiff and the Defendant.

It is the duty of the attorneys to offer evidence and press objections on behalf of their side. It is my function to cut off counsel from an improper line of argument or questioning, to strike offending remarks, and to admonish counsel when I think it is necessary. But you should draw no inference against the attorney or the attorney's client. It is irrelevant whether you like a lawyer or whether you believe I like a lawyer.

During the course of the trial, you may have heard some

conversation between myself and the lawyers at the bench.  Bear

in mind that such exchanges between myself and the lawyers did not constitute evidence and, to the extent that you may have overheard anything, it must be disregarded by you.

At times during the trial, I sustained objections to questions asked without permitting the witness to answer or, where an answer was made, instructed that it be stricken from the record and that you disregard the answer. You may not draw any inference from an unanswered question, nor may you consider testimony which has been stricken in reaching your decision. The law requires that your decision be made solely upon the competent evidence before you. The items I have excluded from your consideration were excluded because I determined that they were not admissible.

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are

not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

1.      Arguments and unsworn statements by the lawyers are not evidence.  What the lawyers may have said in their closing arguments, just like what they said in opening statements, and at other times during the trial, was intended to help you interpret the evidence, but it is not evidence itself.  If the facts as you remember them differ from the way they have been stated in closing arguments, your memory of the evidence controls.

2.      Questions and objections by the attorneys are not evidence.  Evidence consists of a question and an answer, not just the question.  As to objections, the attorneys have a duty to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the way

I ruled on it.

3.      Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition, if testimony or exhibits have been received only for a limited purpose, you must follow the limiting instructions I have given.

4.      Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at this trial. That means you may not consider or speculate on matters not in evidence or matters outside the case as it has been presented in this courtroom.

I would remind you now that any notes that you have taken during this trial are only aids to your memory. If your memory differs from your notes, you should rely on your memory and not

on the notes. The notes are not in evidence. If you have not taken notes, you should rely on your independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

Your verdict must be based solely upon the evidence developed at this trial, or the lack of evidence. It would be improper for you to consider any personal feelings you may have about one of the parties' race, religion, national origin, gender, or age. It would be equally improper for you to allow any feelings you might have about the nature of the claim against the Defendant to influence you in any way. Sympathy must not play a role in any of your decision making. During your deliberations you must remember the oath you each took to be a fair and impartial juror. The system cannot work unless you reach your

verdict through a fair and impartial consideration of the evidence.

- 11 -

You also must completely disregard any report which you may have read in the press, watched on television, heard on the radio, or seen on the internet.  It would be unfair to consider such reports, because they are not evidence, and the parties have no opportunity to contradict their accuracy or otherwise explain them away.  It would be a violation of your oath as jurors to allow yourselves to be influenced in any manner by such publicity.

I will now turn to the fundamental legal principles which are applicable to civil cases in general.  These basic principles are applicable to every civil trial conducted in all of the courts of our country.  I made reference to these principles in my preliminary instructions at the beginning of the trial, but because of the importance of these principles, I am going to repeat and amplify my instructions as to each of them.

In a civil case, a plaintiff has the burden of proving the

material allegations of the complaint by a **preponderance of the**

**evidence**. If, after considering all of the testimony, you are satisfied that the Plaintiff has carried his burden on each essential point as to which he has the burden of proof, then you must find for the Plaintiff on the claim under consideration.

If after such consideration you find the testimony of both parties to be in balance or equally probable, then the Plaintiff has failed to sustain his burden, and you must find for the Defendant. If upon consideration of all the facts, you find that the Plaintiff has failed to sustain the burden cast upon him, then you should proceed no further, and your verdict must be for the

Defendant.

The Plaintiff has the burden of proving every disputed element of a claim to you by a preponderance of the evidence. What does "preponderance of the evidence" mean? To establish a fact by a preponderance of the evidence means to prove that a fact is more likely true than not true. A preponderance of the evidence means

the greater weight of the evidence. It refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents. In determining whether a claim has been proved by a preponderance of the evidence, you may consider the relevant testimony of all witnesses, regardless of who may have called them, and all the relevant exhibits received in evidence, regardless of who may have introduced them.

If you find that the credible evidence on a given issue is evenly divided between the parties – that it is equally probable that one side is right as it is that the other side is right – then you must decide that issue against the Plaintiff. That is because the Plaintiff must prove more than simple equality of evidence—the Plaintiff must prove the element at issue by a preponderance of the evidence. On the other hand, the Plaintiff need prove no more than a preponderance. So long as you find that the scales tip, however slightly, in favor of the Plaintiff—that what Plaintiff claims is more likely true than not true—

then that element will have been proved by a preponderance of the evidence.

In that regard, you may have heard of proof beyond a reasonable doubt, which is the proper standard of proof in a criminal trial. That requirement does not apply to a civil case such as this, and you should put it out of your mind.

That concludes our discussion of the burden of proof applicable in civil cases. I will now turn to your estimate of the credibility of each witness's testimony and the weight to be accorded to such testimony.

As judges of the facts, you alone determine the truthfulness and accuracy of the testimony of each witness. You must decide whether a witness told the truth and was accurate, or instead, testified falsely or was mistaken. You must also decide what importance to give to the testimony you accept as truthful and accurate. It is the quality of the testimony that is controlling, not the number of witnesses who testify.

There is no particular formula for evaluating the truthfulness and

accuracy of another person's statements or testimony. You bring to this process all of your varied experiences. In life, you frequently decide the truthfulness and accuracy of statements made to you by other people. The same factors used to make those decisions, should be used in this case when evaluating the testimony.

Some of the factors that you may wish to consider in evaluating the testimony of a witness are as follows:

• Did the witness have an opportunity to see or hear the events about which he or she testified?

• Did the witness have the ability to recall those events accurately?

• Was the testimony of the witness plausible and likely to be true, or was it implausible and not likely to be true?

• Did the manner in which the witness testified reflect upon the truthfulness of that witness's testimony?

• To what extent, if any, did the witness's background,

- 17 -

training, education, or experience affect the believability of that witness's testimony?

•        What was the demeanor of the witness when testifying? Did the witness have a conscious bias, hostility, or some other attitude that affected the truthfulness of the witness's testimony?

•        Did the witness show an "unconscious bias," that is, a bias that the witness may have even unknowingly acquired from stereotypes and attitudes about people or groups of people, and if so, did that unconscious bias impact that witness's ability to be truthful and accurate?

•        You may consider whether a witness had, or did not have, a motive to lie.

•        If a witness had a motive to lie, you may consider whether and to what extent, if any, that motive affected the truthfulness of that witness's testimony.

•        If a witness did not have a motive to lie, you may

consider that as well in evaluating the witness's truthfulness.

• You may consider whether a witness has any interest in the outcome of the case, or instead, whether the witness has no such interest.

• You are not required to reject the testimony of an interested witness, or to accept the testimony of a

witness who has no interest in the outcome of the case.

• You may, however, consider whether an interest in the outcome, or the lack of such interest, affected the truthfulness of the witness's testimony.

You may consider whether a witness made statements at this trial that are inconsistent with each other. You may also consider whether a witness made previous statements that are inconsistent with his or her testimony at trial. You may consider whether a witness testified to a fact here at trial that the witness omitted to state, at a prior time, when it would have been reasonable and logical for the witness to have stated the fact. In determining whether it would have been reasonable and logical for the witness to have stated the omitted fact, you may consider whether the witness's attention was called to the matter and whether the

witness was specifically asked about it. If a witness has made such

inconsistent statements or omissions, you may consider whether and to what extent they affect the truthfulness or accuracy of that witness's testimony here at this trial. The contents of a prior inconsistent statement are generally not proof of what happened. You may ordinarily use evidence of a prior inconsistent statement only to evaluate the truthfulness or accuracy of the witness's testimony here at trial. However, where a witness was subject to cross examination about a prior inconsistent statement that was made under oath, the statement is inconsistent with their trial testimony and was given under penalty of perjury at a trial, a hearing, or in a deposition, you may consider the prior statement for the truth.

**Commented [A1]:** @kirstie what is this about?

• You may consider whether a witness's testimony is consistent with the testimony of other witnesses or with other evidence in the case.

• If there were inconsistencies by or among witnesses, you may consider whether they were significant inconsistencies related

to important facts, or instead were the kind of minor inconsistencies that one might expect given the circumstances of this case.

I permitted Mr. Hirsch, Professor Zeidman, and Dr. Drob to express their opinions about matters that are in issue. A witness may be permitted to testify to an opinion on those matters about which they have specialized knowledge, skill, experience, and/or training. Such testimony is presented to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding the evidence or in reaching an independent decision on the facts. In weighing this opinion testimony, you may consider the witness's qualifications, their opinions, the reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether to believe a witness's testimony. In addition, because they gave their opinions, you should consider the soundness of each opinion, the reasons for the opinion, and the witness's motive, if any, for testifying. You may afford the testimony of this witness

- 22 -

such weight, if any, that you think it deserves in light of all the evidence. You should not permit a witness's opinion testimony to be a substitute for your own reason, judgment, and common sense. You may reject the testimony of any opinion witness in whole or in part, if you conclude the reasons given in support of an opinion are unsound or, if you, for other reasons, do not believe the witness. The determination of the facts in this case rests solely with you.

In this case you also heard the testimony of a former police officers ~~and/or former prosecutors~~ Michael Guadagno and, Edward Cosgrove, and from former prosecutors, David Henry, and Timothy Drury. The testimony of a witness should not be believed solely and simply because the

witness was a police officer or a prosecutor. At the same time, a

- 23 -

witness's testimony should not be disbelieved solely and simply because the witness was a police officer or prosecutor. You must evaluate their testimony in the same way you would evaluate the testimony of any other witness.

As to the witnesses who testified, even if you find that the testimony given by any witness was not contradicted by any other evidence in the case, such finding does not relieve you of your duty and responsibility to evaluate the credibility of the witness and to make your own determination of what weight, if any, that you will give such testimony.

By the processes that I have just described, you as the sole and exclusive judge of the facts will determine which of the witnesses you believe, what portion of their testimony you accept, and what weight you will give it.

Now, of course, facts must be proven by evidence.  The

evidence from which you are to decide what the facts are consists

of sworn testimony of witnesses, both on direct and cross examination, and any re-direct and re-cross examination, regardless of who called the witness, the exhibits that have been received into evidence, regardless of who introduced them, and any stipulations between the parties. Keep in mind that the law does not require any party to call as a witness every person who might have knowledge of the facts related to this trial. Similarly, the law does not require any party to present as exhibits all papers and things mentioned during this trial.

As to evidence, there are two kinds: direct and circumstantial. Direct evidence is when a witness testifies about something they know by virtue of their own senses – something they have seen, felt, touched, or heard. Direct evidence may also be in the form of an exhibit when the fact to be proved is its present existence or condition.

The other type of evidence is circumstantial evidence. This is evidence which tends to prove a disputed fact by proof of other facts. There is a simple example of circumstantial evidence which is often used in this courthouse.

Assume that when you came into the courthouse this morning the sun was shining, and it was a nice day. As you are sitting here, someone walked in with an umbrella that was dripping wet. Then a few minutes later another person also entered with a wet umbrella. Now, you cannot look outside of the courtroom, and you cannot see whether it is raining. So you have no direct evidence of that fact. But on the combination of facts which I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining.

That is all there is to circumstantial evidence. You infer on the basis of reason and experience and common sense from one established fact, the existence or non-existence of some other fact.

- 27 -

Circumstantial evidence is of no less value than direct evidence, for it is a general rule that the law makes no distinction between direct evidence and circumstantial evidence but simply requires that your verdict must be based on a preponderance of all the evidence presented.

~~II.~~  **<u>Specific Instructions</u>**

**<u>II.</u>**

This completes my discussion of the general principles of  law applicable to all civil trials.  Let us turn our attention to the definitions and rules applicable to each of the specific causes of action that will be submitted to you for your final determination. The Plaintiff brings a claim under a federal civil rights law:  Title 42 U.S.C. § 1983. This law provides that any person or persons who, under the color of state law, deprives another of any rights, privileges, or immunities secured by the United States Constitution and federal statutes, shall be liable to the injured

party.

[1]~~The Section 1983 claim in this case is called a "*Monell*" claim, which means that the "person" the Plaintiff is attempting to hold liable is a municipality here, the County of Erie and not a specific individual.~~ The Plaintiff has the burden of proving each essential element of the claim by a preponderance of the evidence. To prove an assertion by a preponderance of the evidence means proving that it is more likely true than not true.

To succeed on this claim, the Plaintiff must prove each of the following three elements by a preponderance of the evidence:

1. *First*, that Assistant District Attorney Timothy Drury acted under the color of state law;

_____

[1] The County objects on the grounds this constitutes a misstatement of the law and that referencing the concept of *Monell* first will~~may~~ confuse the jury, as it must first find a constitutional violation before proceeding to an analysis concerning *Monell* liability.  Thus, the jury must be instructed that they have to find the underlying violation by Mr. Drury *before* considering whether there is a claim against the County pursuant to Monell.  *Valentin v City of Rochester*, 2018 WL 5281799 at *16 [WDNY Oct. 24, 2018], affd, 783 Fed Appx 97 [2d Cir 2019]

2. *Second*, that Assistant District Attorney Timothy Drury by his conduct, deprived Mr. Boyd of rights, privileges, or immunities secured by the Constitution or laws of the United States—here, his right to a fair trial; and

3.2. *Third*, that such conduct by Assistant District Attorney Timothy Drury was caused by a policy of the County of Erie, the municipality at issue in this case, ~~as alleged here, a widespread practice or custom and/or a policy of deliberate indifference to the constitutional rights of criminal defendants due to a failure to discipline,[2]~~ such that the County's custom, practice or policy was the "moving force" behind the violation of Mr. Boyd's constitutional rights, meaning the custom, practice or policy "actually caused the alleged harm." ~~"is a substantial factor in bringing about the harm."[3]~~

If you find that any of the essential elements of the Plaintiff's Section 1983 claim has not been proven by a preponderance of the evidence, you must return a verdict for the Defendant.

I will describe each of the elements of Plaintiff's claim in more

---

[2] This instruction conflates widespread practice and custom and deliberate indifference. As is noted in the Court's decision, they are two distinct theories requiring different proof. (Dkt. 471, pp 9-10). Thus this is a misstatement of the law.

[3] The County objects to the Court's proposed language on the grounds that it lessens the operative burden and departs from Second Circuit precedent. To succeed under *Monell*, a plaintiff must prove the policy "actually caused or was the moving force behind the alleged violations." *Reynolds v. Giuliani*, 506 F.3d 183, 193 (2d Cir. 2007).

detail.

On the first element, there is no dispute in this case that Mr. Timothy Drury was acting under the color of state law in the

criminal prosecution of Mr. Boyd. Therefore, I instruct that this first element is met.

On the second, the Plaintiff alleges that two types of constitutional violations occurred—that Mr. Timonthy Drury failed to disclose exculpatory and impeachment evidence that was material to Mr. Boyd's defense in his criminal case (a "*Brady* violation"), and also that Mr. Timonthy Drury's conduct during his summation "caused substantial prejudice by so infecting the trial with unfairness as to make the resulting conviction a denial of due process."

Before discussing the third element of the Plaintiff's *Monell* claim, I will explain the law on the two constitutional violations that the Plaintiff contends occurred, and only if you find a constitutional violation occurred, will you move onto the analysis required of that third element.

### ***Brady* Violation**

The first constitutional violation alleged by the Plaintiff

involves the non-disclosure of certain evidence, what is known as

a "*Brady* violation." To prove a *Brady* violation, the Plaintiff must prove the following by a preponderance of the evidence:

1. First, that evidence allegedly withheld from Mr. Boyd's defense was "favorable" to his defense—meaning that the evidence was "exculpatory" and/or "impeaching";

2. Second, that this favorable evidence was "suppressed"—meaning that the prosecutor, either ~~willfully or inadvertently~~<u>recklessly or intentionally</u>,[4] did not disclose information in a manner that allowed Mr. Boyd to reasonably make beneficial use of the evidence at trial; and

3. Third, that the *cumulative* effect of the suppressed favorable

_____

[4] The County incorporates its prior submission (Dkt. 467) reiterating the County's request for an instruction on intentionality, and more globally objects to the suggestion that Plaintiff's claim requires no mens rea analysis. At a minimum, the County requests to include intentional or reckless, and maintains that intentionality is required to sustain Plaintiff's claim. "To recover money damages for a *Brady* due process violation under Section 1983, the violation must have been *intentional" Valentin v. City of Rochester*, 2018 WL 5281799, at *12 [WDNY Oct. 24, 2018], affd, 783 Fed Appx 97 [2d Cir 2019](emphasis in original); *see also Fappiano v. City of New York*, 640 F. App'x 115, 118 (2d Cir.) ("We have never held that anything less than an intentional *Brady* violation establishes a § 1983 due process claim for damages[.]"), *cert. denied sub nom. Fappiano v. City of New York, N.Y.*, ─── U.S. ─── ─, 137 S.Ct. 341, 196 L.Ed.2d 263 (2016).

evidence was "*material*" to Mr. Boyd's criminal trial—meaning that the cumulative effect of the suppressed evidence undermines confidence in the outcome of the trial, based on the evidence that was actually presented at Mr. Boyd's criminal trial.

Evidence is "exculpatory" if it tends to establish that the

accused is not guilty of the crime or tends to cast serious doubt on

their guilt. Favorable evidence includes exculpatory evidence tending to show that someone other than the accused may have committed the crime. Evidence is "impeaching" if it would have tended to make a reasonable jury less likely to believe a witness who testified against the accused at the criminal trial. ~~Evidence may also be favorable to the defense if it would reasonably permit the defense to attack the reliability, carefulness, or good faith of the police investigation.[5]~~

~~The issue is not whether a document itself is entirely favorable to the defense—in other words that the document contains *only* favorable information—but whether a document contains some information that was favorable to the defense. In other words, the Plaintiff is not~~

---

[5] The County objects to including this language, as was set forth in the County's Response and Objections to Plaintiff's Supplemental Requests to Charge dated April 6, 2025~~16~~, on the grounds Plaintiff's purported basis for including the same is limited to a citation to a case entirely inapposite and the reference to offering a witness devil's food cake cannot credibly "attack the reliability, carefulness, or good faith of the police investigation", at least as would have or should have been known to the Erie County District Attorney's Office. The County also objects to using favorability and exculpatory interchangeably because ~~on the basis that~~ it is a misstatement of the law and will confuse the jury.

required to prove that every piece of information in a document is "favorable" to trigger a prosecutor's disclosure obligations.

~~When there is *any* interpretation of the evidence that could be deemed favorable to the defense, then it must be disclosed.~~ [6]A prosecutor's own assessment that certain evidence is not reliable does not negate the prosecutor's disclosure obligations. Furthermore, a defense attorney's knowledge of some impeachment information does not lessen the prosecutor's obligation to disclose other impeachment information not known to the defense.

"Suppression" of favorable evidence assesses whether the accused was reasonably able to make beneficial use of that information at trial. This may mean that information was not disclosed at all, or that the favorable information was disclosed too late for the accused to reasonably make beneficial use of that evidence at trial.

Further, the issue is not merely whether a document itself

---

[6] The County objects to including this language on the grounds that no caselaw or authority has been provided to suggest this broad interpretation existed as of 1977; it sets forth the standard for a criminal trial, not a civil money damages action and the instruction is biased in favor of the Plaintiff.

was disclosed to the defense, but whether favorable information

contained therein was disclosed. For example, even if a specific document was not disclosed, if favorable information contained in that document was known or "already within the purview" of Mr. Boyd's defense by another means, such information would not be "suppressed." However, a defendant does *not* need to actively seek out *Brady* material. ~~In other words, a defendant's failure to exercise due diligence to obtain *Brady* material is not a valid defense to a *Brady* claim.~~[7]

~~Additionally, if a portion of the favorable information contained in a document is deemed disclosed, that, alone, would not permit you to find that *all* of the favorable information contained in that document was in fact disclosed.~~[8]

If the evidence was merely speculative, cumulative or duplicative of other evidence available at trial, it does not qualify as *Brady*

---

[7] This instruction misstates the law applicable to a civil money damages action under §1983

[8] The County objects to including this language as no caselaw or authority has been provided to justify or support this charge.

material.[9]

As of the time of Mr. Boyd's criminal trial in 1977, the United States Supreme Court had ruled that prosecutors are obligated to turn over favorable evidence to the defense even without a specific request by the defense.[10]

_____

[9] _Brady v. Maryland_, 373 U.S. 83, 87; _United States v. Agurs_, 427 U.S. 97 (1976); _United States v. Rowland_, 826 F.3d 100, 113 (2d Cir. 2016) ("[W]here the undisclosed evidence merely furnishes an additional basis on which to challenge a witness whose credibility has already been shown to be questionable or who is subject to extensive attack by reason of other evidence, the undisclosed evidence may be cumulative, and hence not material." (quoting _United States v. Avellino_, 136 F.3d 249, 257 (2d Cir. 1998))); _United States v. Spinelli,_ 551 F.3d 159, 165 (2d Cir. 2008) (holding that a new trial is not required where "information withheld is merely cumulative of equally impeaching evidence introduced at trial, so that it would not have materially increased the jury's likelihood of discrediting the witness"); _Tankleff v. Senkowski,_ 135 F.3d 235, 251 (2d Cir. 1998) ("When a witness's credibility has already been substantially called into question in the same respects by other evidence, additional impeachment evidence will generally be immaterial and will not provide the basis for a _Brady_ claim.").

[10] The County objects on the grounds this instruction is duplicative of the language above: "However, a defendant does _not_ need to actively seek out _Brady_ material. In other words, a defendant's failure to exercise due diligence to obtain _Brady_ material is not a valid defense to a _Brady_ claim."

The Plaintiff must also prove that the withheld favorable evidence was "material" to Mr. Boyd's criminal case. ~~You have heard some evidence about the criminal trials of Mr. Gibson, Mr. Walker, and Mr. Martin Mr. Boyd's co-defendants. As I mentioned though, materiality is assessed in light of the evidence adduced against Mr. Boyd at *his* criminal trial, and it is an objective test. A showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal (whether based on the presence of reasonable doubt or acceptance of an explanation for the crime that does not inculpate the defendant). The touchstone of materiality is a *reasonable probability* of a different result. The question is *not* whether the defendant would more likely than not have received a different verdict due to the cumulative effect of~~

~~the withheld evidence, but whether, in its absence, he received a~~

~~fair trial, understood as a trial resulting in a verdict worthy of confidence.~~[11]

**Summation Misconduct**

To prove that Erie County Assistant District Attorney, Timothy Drury, violated Mr. Boyd's right to a fair trial through summation misconduct, the Plaintiff must prove that Mr. Drury's conduct during summation, also called closing argument, "caused substantial prejudice by so infecting the trial with unfairness as to make the resulting conviction a denial of due process" by a preponderance of the evidence.

In assessing whether summation misconduct caused "substantial prejudice," you must consider "the severity of the misconduct, the measures adopted to cure the misconduct, and the certainty of conviction absent the misconduct."

---

[11] The County objects to including this language as no caselaw or authority has been provided to justify or support this charge and it is unfairly biased in favor of the Plaintiff.

Prosecutors may fairly comment on the evidence introduced

at trial and make argument in response to defense counsel's

closing argument. Prosecutors are permitted to comment on the evidence and to respond to arguments made and evidence introduced by defense counsel. Remarks that address such arguments are not improper simply because they may be forceful or unfavorable to the defendant.

To rise to the level of a constitutional violation, Plaintiff must prove by a preponderance of the evidence that during his summation [12] ADA Drury intentionally made comments meant to cause substantial prejudice and to infect the trial with such unfairness as to make the resulting conviction a denial of due process.[13] This is a heavy burden because Plaintiff must show that the misconduct was so severe and significant as to result in the denial of due process.[14] It is rare for a

---

[12] Because this constitutional violation also sounds in the due process clause of the Fourteenth Amendment, the County avers that Plaintiff must show that the prosecutor intentionally infected the trial with unfairness so as to make the resulting conviction a denial of due process.

[13] *United States v. Best*, 142 F. App'x 500, 501 (2d Cir. 2005) ("We must examine whether the prosecutor's actions 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" (quoting *United States v. Melendez*, 57 F.3d 238, 241 (2d Cir. 1995))).

[14] *United States v. Locascio*, 6 F.3d 924, 945 (2d Cir. 1993).

prosecutor's statements to be so prejudicial as to make the resulting conviction a denial of due process.[15]

However, prosecutors may not, for example, make false or misleading arguments, vouch for the credibility of witnesses, make inflammatory remarks, appeal to racial prejudice, or shift the burden of proof to the criminal defendant. If you find that Erie County Assistant District Attorney Timothy Drury made one or more improper remarks during his summation in Mr. Boyd's criminal trial, you must assess whether these remark(s) infected the trial with such unfairness to deprive Mr. Boyd of his due process right to a fair trial. ~~You may also consider whether any comments by the prosecutor in summation tended to exploit the withholding of favorable, withheld information.~~ [16]If you find that Mr. Drury made more than one improper remark

---

[15] *Best*, 142 F. App'x at 502 ("It is a rare case in which improper comments in a prosecutor's summation are so prejudicial that a new trial is required." (quoting *United States v. Rodriguez*, 968 F.2d 130, 142 (2d Cir. 1992))); *see also Marcic v. Reinauer*, 397 F.3d 120, 124 (2d Cir. 2005).

[16] For the reasons advanced in the County's recently filed Rule 50(a) motion seeking a directed verdict (Dkt. 466), the County objects to the idea of an improper summation claim premised on "exploiting" *Brady* violations. The idea of "exploiting" a *Brady* violation it is merely duplicative of Plaintiff's *Brady* theory, not a distinct constitutional violation. Indeed, the County has located no authority recognizing a

during summation, you must consider the cumulative effect of such remarks on the fairness of the trial.

---

_Monell_ claim based on a policy of "exploiting" _Brady_ material in summation. Nor has Plaintiff provided any such authority. The County thus objects to including this language for the reasons set forth at Docket 466, including that it proposes to charge the jury twice on an alleged _Brady_ violation, impermissibly conflates a _Brady_ violation with alleged summation misconduct and renders a _Monell_ analysis untenable.

**Policy Evidence**

<u>If</u> you find that Mr. Boyd's constitutional right or rights were violated, you must consider the cause of such violation or violations. Specifically, you must determine whether a municipal policy was the "moving force" behind the Erie County Assistant District Attorney's violation or violations of Mr. Boyd's constitutional rights, meaning a custom, practice or policy of the Erie County Assistant District Attorney's Office "is a substantial factor in bringing about the harmactually caused the alleged harm."[17]

A municipality such as the County of Erie may <u>not</u> be held liable for the actions of its employees simply because they are employed by the County. Rather, an unconstitutional policy, practice, or custom of the Defendant must exist and be the moving force behind the Erie County Assistant District Attorney's specific actions in this

---

[17] The County repeats its objection to the Court's proposed language on the grounds that it lessens the operative burden and departs from Second Circuit precedent. To succeed under *Monell*, a plaintiff must prove the policy "actually caused or was the moving force behind the alleged violations." *Reynolds v. Giuliani*, 506 F.3d 183, 193 (2d Cir. 2007).

- 49 -

case to establish the County's liability to Plaintiff.

To establish a claim against the County based on an unconstitutional policy, practice, or custom, Plaintiff must prove that the County adopted such a policy, practice, or custom through the deliberate choice or acquiescence of a policymaker on behalf of the municipality. A policymaker is an official or a body to whom the County has given final policymaking authority. The actions of that official or body represent a decision by the County itself, and the County is responsible for them.

I instruct you that the policymaker in this case is the Erie County District Attorney at the time of Mr. Boyd's criminal investigation and prosecution – Mr. Edward Cosgrove.

Plaintiff must prove by a preponderance of the evidence that each alleged violation of Mr. Boyd's constitutional rights was not an isolated incident but was ~~part~~ actually caused by~~of~~ a custom, practice or policy of the County of Erie *specific to that type* of constitutional violation.

- 50 -

This means that you must analyze any alleged customs, practices or policies of the County of Erie with respect to each of the two types of alleged violations of Mr. Boyd's constitutional rights to a fair criminal trial — *Brady* violation and summation misconduct.

A policy need not be in writing or be labeled a "policy." There need not be a formal statement of policy. A policy may be inferred from the informal acts or omissions of the District Attorney or his designees. This includes a situation where the District Attorney knew about the improper actions or failure to act by other prosecutors in the Erie County District Attorney's office by virtue of his position and allowed them to continue.[18]

**Policies re. *Brady* Violation**

---

[18] The County objects to including this language on the grounds that it permits suggests the jury to find the County liable under a theory of *respondeat superior* liability—an approach explicitly rejected by the Supreme Court in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and reaffirmed by the Second Circuit in *Walker v. City of New York*, 974 F.2d 293, 297–98 (2d Cir. 1992) and *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). The instruction as drafted improperly lessens Plaintiff's burden under *Monell* and improperly permits the jury to presume that the policymaker (Mr. Cosgrove) had the requisite knowledge despite the lack of evidentiary support for that claim.

With respect to the Erie County Assistant District Attorneys'

alleged *Brady* violation or violations, Plaintiff ~~alleges~~ argues there are

two ~~kinds of municipal policies~~theories that allegedly ~~that~~ caused such

*Brady* violations

in ~~his~~ Mr. Boyd's 1977 prosecution~~case~~.[19] ~~If you find that the~~

~~Erie County Assistant District~~


~~Attorney Mr. Timothy Drury failed to disclose favorable, material~~

_____

[19] The County maintains Plaintiff has yet to identify a single policy, much less two, and objects to this language on that basis. It is improper to refer ~~The County also objects to referring~~ to these theories as policies, particularly because Plaintiff's claim ~~his claim~~ is dependent upon ~~arises, in part, pursuant to a theory dependent on~~ establishing a widespread practice or custom.

~~evidence to Mr. Boyd's defense attorney, Plaintiff need only prove *one* unconstitutional County policy caused such *Brady* violation by a preponderance of the evidence.[20]~~

First, Plaintiff contends that the Defendant had a persistent or widespread practice or custom, *i.e.,* a "pattern of conduct," of failing to disclose favorable, material evidence to criminal defendants. In order for conduct to be the result of a persistent, widespread custom or "pattern of conduct," Plaintiff must establish that it involved a practice so persistent or widespread as to carry the force of law or that the misconduct of a subordinate agent or employee was so manifest as to imply the constructive acquiescence of senior policy-making officials that caused an alleged injury.[21]

In other words, Mr. Walker must prove that the violation of his federally protected rights was not an isolated incident but was part of

---

[20] The County objects to this language for the reasons set forth above and in its prior briefings. The County additionally maintains its objection to the notion that Plaintiff can pursue a *Monell* claim grounded in a vague and general claim for a policy sounding in deliberate indifference to criminal defendant's rights to a fair trial under *Brady*, or to broad alleged *Brady* violations generally. The County maintains the arguments set forth in its Rule 50(a) motion, and particularly argues that the proof established at trial cannot establish notice to sustain a *Monell* claim generally.

[21] *Swinton v. Livingston Cnty.*, 2023 WL 2317838, *1 (2d Cir. 2023).

a persistent, widespread practice of the County of Erie.  Whether there was such a practice or custom is a question of fact for you, the jury, to determine. In making this determination, you may consider whether there is sufficient evidence to prove the existence of any alleged custom, the extent how long the alleged practice existed, the number and percentage of the County of Erie's officers engaged in the practice, and the similarity of the conduct engaged in by its employees.

You may infer that a practice or custom existed in the Erie County District Attorney's Office even if Erie County did not formally approve such custom or practice, so long as you conclude that the District Attorney knew of acts of misconduct and did not act to prevent them from continuing. This includes a situation where the District Attorney must have known about the actions or failure to act by prosecutors in the Erie County District Attorney's Office by virtue of his position and allowed them to continue.[22]

---

[22] Same objection as set forth above relative to this language.

- 54 -

Alternately, Plaintiff alleges that the Defendant had a policy of "deliberate indifference" towards criminal defendants' rights to a fair trial under *Brady* because, prior to April 1977, the policymaker was on sufficient notice of such repeated violations by Erie County Assistant District Attorneys and failed to discipline Erie County Assistant District Attorneys for these violations. Deliberate indifference is a mental state more blameworthy than negligence - it is a state of mind that is the equivalent of criminal recklessness[23]. is more than negligence. It is a conscious disregard on the part of the County for the known or obvious consequences of its actions in failing to discipline prosecutors when they violated the constitutional rights of criminal defendants by failing to disclose favorable, material evidence. The conduct must involve an act or a failure to act that shows a conscious disregard of a substantial risk of serious harm.[24]

---

[23] *James v. County of Monroe,* 2022 WL 17155831 (W.D.N.Y. 2022).
[24] *Id.*

Importantly, evidence of prosecutorial misconduct may only provide "notice" to the County as required to support a policy of "deliberate indifference" to the extent that the misconduct occurred prior to Mr. Boyd's criminal conviction inon April 29, 1977.[25]

Any alleged failure to discipline must reflect a need for corrective action that is "so obvious, and the inadequacy of current practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberately indifferent to the need."[26] An "obvious need" may be shown through repeated complaints of civil rights violations, and deliberate indifference may be inferred when such complaints are followed by no meaningful effort by the municipality to investigate or prevent further misconduct.[27]

If you find that Plaintiff has proven the existence of any either of

---

[25] The County intends to move to dismiss the Plaintiff's failure to discipline claim based upon the Court's *Monell* decision dated November 18, 2025 (Dkt. 471) and received only a few hours before receipt of the Court's proposed instructions. Thus, the County reserves its right to propose modifications to the language depending on the determination as to that claim.

[26] *Hulett v. City of Syracuse*, 253 F.Supp.3d 462, 500 (N.D.N.Y. 2017).

[27] *Id.* (citing *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991); *Fiacco v. City of Rensselaer*, 783 F.2d 319, 328 (2d Cir. 1986)).

these policies, you must determine whether such policy or policies directly caused a constitutional *Brady* violation or violations in Mr. Boyd's criminal case. Again, the Defendant's policy must be the "moving force" behind this specific type of violation of Mr. Boyd's constitutional rights, meaning the policy

"actually caused the alleged harm." "[28] ~~"is a substantial factor in bringing about the harm."~~

### Policies re. Summation Misconduct

With respect to Plaintiff's claim alleging Mr. Timothy Drury's alleged summation misconduct, Plaintiff argues there are two theories that allegedly caused such *Brady* violations

in Mr. Boyd's 1977 prosecution ~~alleges there are two types of municipal~~

policies that caused such summation misconduct. Under If you find that

---

[28] The County objects to the Court's proposed language on the grounds that it lessens the operative burden and departs from Second Circuit precedent. To succeed under *Monell*, a plaintiff must prove the policy "actually caused or was the moving force behind the alleged violations." *Reynolds v. Giuliani,* 506 F.3d 183, 193 (2d Cir. 2007).

- 57 -

Mr. Drury violated Mr. Boyd's constitutional rights through his summation, Plaintiff must next establish that that a County custom, policy or practice in place at the time of Mr. Boyd's April 1977 prosecution was the moving need only prove that one type of County

Policyforce that caused such summation violation by a preponderance of the evidence.

First, Plaintiff contends the Defendant had a persistent or widespread custom, or "pattern of conduct," of engaging in summation misconduct that deprived criminal defendants of a right to a fair trial. You may infer that a custom or practice existed in the Erie County District Attorney's Office even if Erie County did not formally approve such custom or practice, so long as you conclude that the District Attorney knew of acts of misconduct and did not act to prevent them from continuing. This includes a situation where the District Attorney

~~must have known about the actions or failure to act by other prosecutors in the Erie County District Attorney's Office by virtue of his position and allowed them to continue.~~

In order for conduct to be the result of a persistent, widespread custom or "pattern of conduct," Plaintiff must establish that it involved a practice so persistent or widespread as to carry the force of law or that the misconduct of a subordinate agent or employee was so manifest as to imply the constructive acquiescence of senior policy-making officials that caused an alleged injury.[29]

In other words, Mr. Walker must prove that the violation of his federally protected rights was not an isolated incident but was part of a persistent, widespread practice of the County of Erie.  Whether there was such a practice or custom is a question of fact for you, the jury, to determine. In making this determination, you may consider whether there is sufficient evidence to prove the existence of any alleged

---

[29] *Swinton v. Livingston Cnty.*, 2023 WL 2317838, *1 (2d Cir. 2023).

custom, the extent how long the alleged practice existed, the number and percentage of the County of Erie's officers engaged in the practice, and the similarity of the conduct engaged in by its employees.

Alternately, Plaintiff alleges that the Defendant had a policy of "deliberate indifference" towards criminal defendants' rights to a fair trial because, prior to April 1977, the policymaker was on sufficient notice of repeated summation violations of Erie County Assistant District Attorneys and failed to *discipline* Erie County Assistant District Attorneys for these violations. Deliberate indifference is a mental state more blameworthy than negligence - it is a state of mind that is the equivalent of criminal recklessness[30]. ~~is more than negligence~~. It is a conscious disregard on the part of the County for the known or obvious consequences of its actions in failing to discipline prosecutors when they violated the constitutional rights of criminal defendants by engaging in summation misconduct. The conduct must

---

[30] *James v. County of Monroe,* 2022 WL 17155831 (W.D.N.Y. 2022).

involve an act or a failure to act that shows a conscious disregard of a substantial risk of serious harm.[31]

~~Importantly, e~~Evidence of prosecutorial misconduct may only provide "notice" to the County as required to support a policy of "deliberate indifference" to the extent that the misconduct occurred prior to Mr. Boyd's criminal conviction ~~in~~ on April ~~29,~~ 1977.[32]

Any alleged failure to discipline must reflect a need for corrective action that is "so obvious, and the inadequacy of current practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberately indifferent to the need."[33] An "obvious need" may be shown through repeated complaints of civil rights violations, and deliberate indifference may be inferred when such complaints are followed by no meaningful effort by the municipality to investigate or prevent further misconduct.[34]

---

[31] *Id.*
[32] See fn 25
[33] *Hulett v. City of Syracuse*, 253 F.Supp.3d 462, 500 (N.D.N.Y. 2017).
[34] *Id.* (citing *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991); *Fiacco v. City of Rensselaer*, 783 F.2d 319, 328 (2d Cir. 1986)).

If you find that Plaintiff has proven the existence of either ~~of~~ a widespread custom or practice or a policy of deliberate indifference~~these policies~~, you must determine whether such ~~policy~~ custom or practice or policies directly caused a constitutional summation violation in Mr. Boyd's criminal case. Again, the Defendant's policy must be

the "moving force" behind this specific type of violation of Mr.

Boyd's constitutional rights, meaning the policy "actually caused the alleged harm." "[35]"is a substantial factor in bringing about the harm."

**III.  Damages**

**III.**

That concludes our discussion of the Plaintiff's causes of action. Now we will turn to the instruction on damages.  Keep in mind, my charge to you on the law of damages must not be taken as a suggestion that you should find for the Plaintiff.  It is for you to decide based on the evidence presented and the rules of law I have given you whether the Plaintiff is entitled to recover from the Defendant. If you decide that the Plaintiff is not entitled to recover from the Defendant, you should not consider damages. Only if you decide that the Plaintiff is entitled to recover will you consider the measure of damages.

If you find that the Plaintiff is entitled to recover from the

---

[35] The County objects to the Court's proposed language on the grounds that it lessens the operative burden and departs from Second Circuit precedent. To succeed under *Monell*, a plaintiff must prove the policy "actually caused or was the moving force behind the alleged violations." *Reynolds v. Giuliani*, 506 F.3d 183, 193 (2d Cir. 2007).

Defendant, you must render a verdict for a sum of money that will

justly and fairly compensate the Plaintiff for all the losses resulting from any injury or injuries he sustained.

The purpose of the law of damages is to award, as far as possible, just and fair compensation for the loss, if any, which resulted from the Defendant's violation of Plaintiff's rights. If you find that the Defendant is liable, then you must award the Plaintiff sufficient damages to compensate him for any injury proximately caused by the Defendant's conduct. Again, an injury is proximately caused by conduct when a reasonable person would regard it as a substantial factor in bringing about such injury.

Compensatory or actual damages seek to make a plaintiff whole – that is, to compensate him for the damage suffered. Furthermore, compensatory damages are not limited merely to expenses that a plaintiff may have sustained. A prevailing

plaintiff is entitled to compensatory damages both for the physical

and psychological injury, pain and suffering, and loss of liberty that he has suffered because of a defendant's conduct.

I remind you that you may award compensatory damages only for injuries that the Plaintiff proves were proximately caused by the Defendant's allegedly wrongful conduct. The damages that you award must be fair and reasonable, neither inadequate nor excessive. You should not award compensatory damages for speculative damages, but only for those injuries that the Plaintiff has actually suffered.

In awarding compensatory damages, if you decide to award them, you must be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require a plaintiff to prove the amount of his losses with mathematical precision, but only with as much

definiteness and accuracy as the circumstances permit.

In all instances, you are to use sound discretion in fixing an award of damages, drawing reasonable inferences where you deem appropriate from the facts and circumstances in evidence.

In addition to denying liability, the County contends that, if it is liable to violating Mr. Boyd's constitutional rights, then it is not entirely at fault because certain detectives of the Buffalo Police Department fabricated evidence, which contributed to Mr. Boyd's loss of liberty after his criminal conviction. This defense is known as "apportionment," and it is an affirmative defense, meaning that the County bears the burden of proving this defense by a preponderance of the evidence.

The six individual former members of the Buffalo Police Department—Michael Guadagno, James Hunter, Robert Arnet, Frank Deubell, Leo Donovan, and Francis Manista—to which the County seeks to apportion fault, if it is found liable to Plaintiff on

Plaintiff's *Monell* claim, are not employees of the County of Erie

and are not parties to this case. You should not speculate about or draw any conclusions from the fact that these six individuals are not parties in this case.

To prove that an individual officer of the Buffalo Police Department fabricated evidence that was used against a defendant in the criminal case, the Defendant must prove each of the following.

First, the alleged fabricator of evidence must have been an investigating official. I instruct you that Michael Guadagno, James Hunter, Robert Arnet, Frank Deubell, Leo Donovan, and Francis Manista all qualify as investigating officials. Therefore, this element is met.

Second, the officer must have fabricated evidence. Fabricated evidence is false or untrue evidence. Evidence is false if it was untrue at the time it was made and known to be untrue at

the time it was made by the person who made it or caused it to be

made. Coercing a witness to provide false information can satisfy this second element. However, coercion—on its own—is not sufficient because an individual can be coerced into providing truthful evidence. To satisfy this element, the evidence at issue must be false.

A person can only fabricate evidence with a conscious aim or purpose to tell a lie. An officer's good-faith mistake about what he thinks he saw is not fabricated evidence. Nor is a good-faith mistake in paperwork. That said, the County does not need to prove that an individual officer had a specific intent to cause harm to Mr. Boyd or to violate his constitutional rights.

Third, the fabricated evidence must be likely to influence the jury's verdict.

Fourth, the fabricated evidence must have been "forwarded" to the prosecutors in Mr. Boyd's criminal case—here, Mr.

Timothy Drury.

Lastly, Mr. Boyd must have been deprived of liberty as a result of the fabrication. To satisfy this element, the County must show that the individual officer-at-issue's fabrication was the proximate cause of Mr. Boyd's loss of liberty following his conviction. ~~If the individual detective misled or coerced Mr. Drury into making uninformed decisions about Mr. Boyd's prosecution, proximate cause would be established. For example, if you were to find that Mr. Drury was unaware that the certain alleged evidence was fabricated, that would demonstrate that Mr. Drury was "misled." If, however, you find that Mr. Drury was *not* misled or coerced by the BPD officer, the chain of causation is broken and Mr. Drury's actions in prosecuting Mr. Boyd would preclude any apportioning of fault to the officer at issue. For example, if you were to find that Mr. Drury was aware that the evidence was fabricated, that would demonstrate that Mr. Drury was not "misled."~~

If you find that each of these elements are met with respect to an alleged individual Buffalo Police Department officer, you should apportion fault for Mr. Boyd's total damages based on what you determine to be the relative fault of that individual in causing or contributing to Plaintiff's alleged damages. In evaluating whether any alleged Buffalo Police Department Officer caused or contributed to Plaintiff's alleged damages, you must determine whether it was reasonably foreseeable that such fabricated evidence would be used by ADA Drury in Mr. Boyd's 1977 trial.[36]

You can apportion fault to one, some, of all BPD officers, or

_____

[36] For the reasons set forth in the County's submission at Docket 466, the County objects to a charge that attempts to render the County's apportionment defense hollow. The County additionally disputes the suggestion that a police officer could or should be absolved of fault in the event he forwards fabricated evidence to a prosecutor. Instead, the operative inquiry is whether it was reasonably foreseeable by the officers of the Buffalo Police Department that such evidence would have been used in prosecuting Mr. Boyd's case. Any alleged knowledge on the part of ADA Drury (which the County denies) may factor into the jury's analysis in apportioning fault, but it should not preclude the jury from even reaching the question. Thus, the County maintains its objection and position that any jury instruction or verdict sheet that frames the proximate cause inquiry in terms of whether ADA Drury "knew" of the alleged coercion would be misleading and improper. Framing the issue around ADA Drury's knowledge is improperly restrictive as the case law demonstrates that deception is not the only path to foreseeability. The relevant question is whether his use of the challenged testimony was a foreseeable consequence of the investigators' alleged misconduct.

decide to not apportion fault to any BPD officers. Upon such a finding, you will state the percentage of fault, if any, of the County of Erie and any and all specified individuals of the Buffalo Police Department for Mr. Boyd's total damages, and the total of these percentages must add up to 100 percent. This will be laid out for you in a Verdict Sheet that will accompany these instructions, which I will discuss more in a few moments.

Again, this affirmative defense that the County has the burden to prove, by a preponderance of the evidence, does *not*

~~apply, if you find that Mr. Drury was not misled or coerced regarding the alleged fabricated evidence.[37]~~

## IV.  <u>Concluding Instructions</u>

I have now outlined for you the rules of law that apply to this case and the processes by which you weigh the evidence and decide the facts.  In a few minutes you will retire to the jury room for your deliberations.  In order for your deliberations to proceed in an orderly fashion, you must have a foreperson, but of course, their vote is entitled to no greater weight than that of any other juror.  ███████████, you are the foreperson.  Your responsibilities will be to make sure that everyone has an opportunity to participate during deliberations, to communicate with the Court if the jury has a question, to tell us when the jury has reached a verdict, and, of course, to announce the verdict.  If you need to communicate with me, that is, if you have a question or if you want to indicate that you have a verdict, you need to do

---

[37] The County repeats and maintains the objection articulated immediately above.

so in writing and sign the note.

If, in the course of your deliberations, your recollection of any part of the testimony should fail, or you should have any question about my instructions to you on the law, you have the right to return to the courtroom for the purpose of having such testimony or instructions read to you.  A copy of these final jury instructions will be sent back into the jury room. However, with respect to reading back testimony, keep in mind that it takes just as long to read testimony back as it did for a witness to testify in the first instance.  For example, if it took a particular witness one hour to testify, then it will take approximately one hour to read that witness's testimony back.  Therefore, if you desire just a portion of the witness' testimony, please indicate that, or else the entire testimony, both direct and cross-examination, will be read. Also, if you request testimony, certain things need to occur before it  can  be read  back.   First,  our  court  reporter,  must  find  the

requested testimony in her notes.  Second, we must all reassemble here in court before the testimony can be read to you.  I'm telling you this not to discourage you from requesting that testimony be read back if you have a question, but rather to explain that it will take a period of time to comply with your request.

In deciding the case, you may consider only the exhibits which have been admitted into evidence, the testimony of the witnesses as you have heard such testimony in this courtroom, evidence of which I informed I took "judicial notice," and any stipulations between the parties in evidence. As to the exhibits that were received into evidence, they will be sent into the jury room.

Your verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree.  Your verdict *must* be unanimous.

Additionally, to assist you during your final deliberations, I have prepared a "Verdict Sheet" which contains the list of questions that you will answer, after careful consideration of all the evidence in accordance with my instructions. Each of the questions calls for a "yes or no" answer, or some numerical figure. Please make sure you follow the directions indicated on the verdict sheet carefully and consistent with the instructions provided. And again, your verdict must be unanimous.

As I mentioned, this verdict sheet contains the list of questions that you will answer, after careful consideration of all the evidence in accordance with my instructions. Do not assume from the questions or from their order what your answers should be. That is, of course, for you to decide. When you have all agreed upon an answer, there will be just one verdict sheet back with you in the jury deliberation room. When you all agree on an answer, ███████████ should record the answer in the space

provided.            When you reach a verdict, merely indicate on a note that you have done so.  **<u>Do not include the verdict sheet with</u>**

      **<u>your note and do not indicate in any way what the verdict is</u>**.

      ██████████ should retain possession of the verdict sheet until the verdict has been announced in court.

Ms. Popp will bring a copy of the verdict sheet to the jury room when you retire for your final deliberations.  If, at any time during your deliberations, you have any questions concerning your use of the verdict sheet and/or exhibit list, or any questions concerning any of my instructions, please feel free to send a note in writing, and we will respond as promptly as possible to your inquiry.  The note needs to be completed by ██████████, put in an envelope, sealed, and signed on the seal with the date and time of the note.

Members of the jury, please remember at all times that you

are not advocates for one side or the other.   Rather, you are

judges—judges of the facts. Your sole interest is to seek the truth from the evidence in this case. In reaching your verdict, you are not to be affected by sympathy, bias, or prejudice. Nor must you let any personal feelings concerning the nature of the causes of action alleged interfere with your decision-making process. Further, you must not be influenced by what you might believe the reaction to your verdict will be, whether it will please or displease anyone, be popular or unpopular, or indeed, any consideration outside the case as it has been presented to you in this courtroom. You should consider only the evidence—both the testimony and exhibits, find the facts from what you consider to be the believable evidence, and apply the law as I have given it to you, to those facts. Your verdict will be determined by the conclusions thus reached.

Also, keep in mind that your function to reach a decision based on the evidence and the law is a very important one. When

you are in the jury room, listen to each other, and discuss the evidence and issues in the case among yourselves. It is the duty of each of you, as jurors, to consult with one another, and to deliberate with a view toward reaching agreement on a verdict, if you can do so without violating your individual judgment and your conscience. While you should not surrender honest convictions of what the truth is and of the weight and effect of the evidence, and while each of you must decide the case yourself and not merely consent to the decision of other members of the jury, you should examine the issues and the evidence before you with candor and frankness, and with proper respect and regard for the opinions of each other.

Additionally, if somebody needs to take a break during the deliberations—for instance, a bathroom break, that is fine, but deliberations must stop until the juror returns from the break. In other words, you may only deliberate when all jurors are present

together.

Members of the jury, this case is obviously important to both the Plaintiff and to the Defendant.  Therefore, they and I rely upon you to give full and conscientious attention and consideration to the issues and evidence before you. By doing so, you will carry out to the fullest your oaths as jurors to truly try the issues of this case and to render a true verdict.